# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE: | Case No. 20-51066-MAR |
| HENRY FORD VILLAGE, INC., | Chapter 11 |
| Debtor. | Honorable Mark A. Randon |

---

## FIRST DAY MOTION OF THE DEBTOR FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING (A) THE DEBTOR TO PAY CERTAIN PREPETITION SALARIES, WAGES, AND COMPENSATION AND (B) THE CONTINUATION OF EMPLOYEE BENEFIT PROGRAMS AND (II) DIRECTING BANKS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH EMPLOYEE OBLIGATIONS

Henry Ford Village, Inc. ("HFV" or the "Debtor"), hereby moves (this "Motion") pursuant to sections 105(a), 363(b), and 507 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for the entry of interim and final orders, substantially in the form attached hereto as **Exhibits A and B**, (i) authorizing the Debtor to (a) pay prepetition wages, salaries, and other compensation, taxes and withholdings, reimbursable employee expenses, and any payroll related fees to third parties and (b) honor and continue benefit programs for employees; and (ii) authorizing and directing the applicable banks and financial institutions at which the Debtor maintains disbursement and other accounts (collectively, the "Banks") to honor and process checks and transfers related to such employee obligations. In

support of this Motion, the Debtor relies upon, and incorporates by reference, the *Declaration of Chief Restructuring Officer in Support of the Debtor's Chapter 11 Petition and First Day Pleadings* (the "First Day Declaration") filed with the Court contemporaneously herewith. In further support of this Motion, the Debtor respectfully represents as follows:

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are Bankruptcy Code sections 105, 363, 507, 1107, and 1108 and Bankruptcy Rules 6003 and 6004.

## BACKGROUND

### A. The Debtor

4. On October 28, 2020 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").

5. The Debtor is a not for profit,[1] non-stock corporation established to operate a continuing care retirement community located at 15101 Ford Road,

---

[1] According to HFV's Articles of Incorporation, the corporation is organized to: promote the health of the elderly through the ownership and or operation of one or

Dearborn, Michigan 48126.  The Debtor provides senior living services comprised of 853 independent living units, 96 assisted living unites and 89 skilled nursing beds (the "Facility").  The Debtor is governed by an independent Board of Directors and is advised by a Resident Council elected by the residents of the Debtor.[2]  Further factual background regarding the Debtor, including its business operations, capital and debt structure, and the events leading to the filing of the Chapter 11 Case is set forth in the First Day Declaration and is incorporated herein by reference.[3]

6.      The Debtor remains in possession of its assets and continues to operate and manage its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

7.      No trustee, examiner or committee of creditors has been appointed in this Chapter 11 Case.

## B.     The Debtor's Workforce, Compensation, and Benefits

8.      HFV has approximately 387 employees in the aggregate:    126 employees are paid full-time hourly; 170 employees are paid part-time hourly; 68

---

more residential communities offering various levels of care services for elderly persons; carry on educational activities related to the promotion of health of the residential community; promote and carry on scientific research related to the promotion of health of the residential community; perform other activities permitted by nonprofit corporations under the laws of the State of Michigan.

[2] The Board of Directors is an active volunteer board predominantly comprised of current residents, and family members of current or former residents.

[3] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

are full-time salaried employees, and 23 are *pro re nata* (collectively, the "Employees").

9.     In addition to the Employees, the Debtor utilizes staff at its facilities, including certain individuals that are not designated as Employees but provide services to the Debtor as independent contractors ("Independent Contractors"). Specifically, the medical director over the Facility is an independent contractor, who is paid a recurring, average monthly compensation of $2,500.00. In addition, there are other individuals who provides periodic services, including: an IT consultant, who handles critical IT issues at the Facility; general service consultants who provide services related to the Facility's boilers and chillers; individuals who provide activities for the residents, *e.g.* massage therapists, physical education instructors, and others. Excluding the medical director, the Debtor's aggregate monthly compensation to these Independent Contractors is relatively *de minimus*— *i.e.* less than $5,000.00. The Debtor's Independent Contractors, including the medical director, have specialized skills and provide essential services for the Debtor's residents and the Debtor's Facility. As of the Petition Date, the Debtor is not aware of any amounts that it owes to any Independent Contractors, but anticipates that there are likely manually issued checks to the Independent Contractors that have not yet been cashed and there may be circumstances in which amounts have not yet been billed for services rendered. The Debtor requests that the

Banks be allowed to honor these uncashed checks and to pay these Independent Contractors for not yet billed prepetition services, provided that no amounts to be paid to any Independent Contractor for prepetition amounts owed shall exceed the Priority Limit (defined below).

10.     Indeed, the Employees and the Independent Contractors are critical to the Debtor's operations and to the health and safety of the residents under the Debtor's care at the Facility. The Debtor also relies upon the expertise of its management team to provide the strategic and operational direction of the Debtor's daily activities. These individuals' skills and their specialized knowledge and understanding of the Debtor's business are essential to the Debtor's continuing operations. Consequently, they are vital to the Debtor's ability to accomplish its strategic goals and objectives and carry out its daily operations.

## PREPETITION OBLIGATIONS

### A.     The Debtor's Payroll Obligations

11.     The Debtor seeks an order authorizing the Debtor to honor all its outstanding prepetition payroll obligations included in the categories set forth above, up to the Priority Limit (defined below). In the ordinary course of business, the Debtor pays its Employees one week in arrears every two weeks. The most recent payroll was paid on October 23, 2020, which covered the period from October 4, 2020 through October 17, 2020. The Debtor processes and issues its own payroll

checks to Employees. In the ordinary course of business, the Debtor provides the funds necessary to meet its payroll obligations on the pay date. The Debtor funds approximately $350,000 on each payroll date for salaries, wages and other compensation of the Employees.

12.     As of the Petition Date, the Debtor estimates that approximately $300,000 in unpaid salaries, wages and other compensation is owing to its Employees. Although the majority of the Employees are paid by direct deposit, a small percentage of Employees are paid by manually issued checks, which may include expense reimbursements. Therefore, it is likely that some Employees may not have cashed those checks (the "Uncashed Checks") prior to the commencement of the Debtor's Chapter 11 Case.[4]

13.     In the ordinary course of business, the Debtor maintains a commission and bonus program (the "Residency Counselor Commission and Bonus Policy") for Employees who work in its sales and marketing department, i.e. approximately fourteen (14) employees. The commissions and bonuses paid are based on meeting specific criteria and sale closing metrics, as summarized below, and paid on a monthly basis as earned upon meeting or exceeding stringent monthly, quarterly and

---

[4] Independent Contractors are also paid by manually issued checks and it is likely that some of the Independent Contractors may not have cashed their checks prior to the commencement of the Debtor's Chapter 11 Case; therefore, "Uncashed Checks" includes checks to Independent Contractors.

annual sales targets. Since January 2020, the Debtor has paid to its Employees under the Residency Counselor Commission and Bonus Policy a monthly average, ranging from approximately $100.00 to $1,700.00 per employee. As of the Petition Date, the Debtor estimates that $18,100.00 in commissions and bonuses are due and owing under the Residency Counselor Commission and Bonus Policy. The Debtor seeks authorization to continue to maintain this policy and, to the extent there exists accrued but unpaid prepetition amounts, authority to pay such amounts consistent with its prepetition practices.

| RESIDENCY COUNSELOR COMMISSION & BONUS POLICY | |
|---|---|
| | |
| **Individual Compensation Plan** | |
| IL Entrance Fee Closing/Move-In | $ 1,100 per move in |
| Lease Closing | $ 550 per move in |
| Conversion of Lease to Entrance Fee | $ 550 per move in |
| Monthly Net Sales Bonus [1] | $250 - $500 per move in |
| Quarterly Net Sales Bonus [2] | $ 1,000 |
| Annual Bonus for exceeding 30 Net Sales | $ 7,500 |
| Annual Bonus for exceeding 35 Net Sales | $ 15,000 |
| Annual Bonus for exceeding 40 Net Sales | $ 30,000 |
| | |
| **Team Performance Bonus Pool [3]** | |
| 108 Net Sales | $ 15,000 |
| 115 Net Sales | $ 25,000 |
| 120 Net Sales | $ 40,000 |
| 125 Net Sales | $ 75,000 |
| 130 Net Sales | $ 90,000 |
| 140 Net Sales | $ 125,000 |

[1] Applies when individual net sales exceed 2 per month.
[2] Applies when individual net sales for any quarter where budgeted net sales are met.
[3] Allocated to individuals based on percentage of sales to total team sales.

14.     In the ordinary course of its business, the Debtor also maintains a Milestone Recognition Program ("Milestone Recognition Program"), where Employees receive a gift on a quarterly basis when they meet certain tenure milestones based on the schedule below:

| 2019 & 2020 Milestone Recognition Program | |
|---|---|
| **Milestone** | **Gift** |
| 3 years | $25 |
| 5 years | $50 |
| 10 years | $500 |
| 15 years | $750 |
| 20 years | $1,000 |
| 25 years | $1,500 |

The accrued and unpaid amount for the quarter ending September 2020 is approximately $5,000.00. The Debtor seeks authorization to continue to maintain this Milestone Recognition Program and authority to pay such amounts consistent with its prepetition practices, including the accrued but unpaid prepetition amounts.

15.     The Debtor seeks authority to honor its payroll obligations by paying, in the ordinary course, any prepetition amounts owed to the Employees, in light of the critical role of the Employees in the Debtor's business operations. The Debtor also seeks authority to honor those Uncashed Checks that remain outstanding as of the Petition Date.

16. In no event will any Employee or Independent Contractor receive more than the $13,650.00 priority limit under section 507(a)(4) of the Bankruptcy Code (the "Priority Limit") on account of prepetition amounts owed pursuant to salaries, wages, Uncashed Checks, the Residency Counselor Commission and Bonus Policy, the Milestone Recognition Policy, PTO[5] and/or any similar policy.

## B.    Payroll Taxes and Other Withheld Amounts

17. The Debtor deducts 403(b) Plan (as defined herein) and health savings account deductions and other miscellaneous amounts from its Employees' paychecks (collectively, the "Employee Deductions"). The Employee Deductions comprise property of the Debtor's Employees and are forwarded by the Debtor to appropriate third-party recipients at varying times.

18. The Debtor is required by law to withhold from Employees' wages amounts related to federal, state and local income taxes, social security and Medicare taxes, garnishments, and child support payments, etc. (together with the Employee Deductions, the "Payroll Taxes") and remit the same to the appropriate taxing authorities (collectively, the "Taxing Authorities").[6] The Debtor's Payroll Taxes,

---

[5] In the event an Employee is entitled to a payout of prepetition PTO based upon a separation of employment under the PTO Policy (defined below), then the Debtor would limit such payment up to the Priority Limit.

[6] The employer portion of the payroll tax deferral continues until December 31, 2020; the Debtor will no longer be deferring the same, starting January 1, 2021. The

including both the Employee and the employer portion, for a typical payroll total approximately $148,000. In the event that funds have been deducted from Employee wages but have not yet been forwarded to the appropriate third-party recipients, the Debtor seeks authority to pay and/or remit to the applicable Taxing Authorities any such Payroll Taxes attributable to the period before the Petition Date. Absent such authority, the Debtor exposes its officers and directors to personal liability, which could be highly disruptive to the Debtor's efforts in this Chapter 11 Case.

## C.    Employee's Reimbursable Business Expenses

19.    Prior to the Petition Date and in the ordinary course of business, the Debtor reimbursed Employees for certain business expenses incurred in the scope of their employment, including, without limitation, expenses for business travel, such as for mileage, meals, parking and other expenses on behalf of the Debtor (collectively, the "Reimbursable Expenses"). All the Reimbursable Expenses were incurred on the Debtor's behalf in connection with their employment by the Debtor and in reliance upon the understanding that such expenses would be reimbursed.

20.    Reimbursable Expenses are paid through reimbursement to Employees upon submission of receipts. Prior to the Petition Date, the Debtor reimbursed Employees approximately $1,800.00 per month and there may be accrued and

---

portion that has been deferred is not payable until December 2021 and 2022, respectively, in equal installments.

unpaid amounts that may become due post-petition. In addition, there may be reimbursement checks sent to Employees that have not yet been cashed. Accordingly, the Debtor seeks authority to honor the Debtor's Reimbursable Expense obligations by paying, in the ordinary course, any prepetition Reimbursable Expenses, and allowing the Banks to continue to honor such reimbursement checks post-petition. Furthermore, to the extent any Employee has suffered any actual monetary penalty or charge due to the inadvertent dishonor of any check of the Debtor on account of any prepetition Expense Obligations, the Debtor seeks authority to reimburse the Employee for such charges.

**D.** **Employee Benefits**

21.    In the ordinary course of the Debtor's business, and as is customary for most companies, the Debtor provides its Employees with various benefits as described herein (collectively, the "Employee Benefits Programs"). The Debtor seeks authority to pay and/or honor its unpaid obligations under the Employee Benefits Programs that arose from services rendered within 180 days before the Petition Date (the "Prepetition Benefits"). The Employee Benefits Programs and corresponding unpaid Prepetition Benefits are described below:

**i.**    **Health Insurance (Medical, Prescription, Dental, and Vision)**

22.    The Debtor provides its full time Employees with the option to purchase medical and prescription insurance through Blue Care Network of Michigan. A

portion of the premiums are paid by the Employees, which are deducted from their paychecks. Dental and vision insurance is also provided through Delta Dental Blue Care Network of Michigan and VSP, respectfully, at little cost to the full time Employees. In addition, the Debtor contributes to eligible employee's health savings account, approximately $1,225.00 per month and approximately $15,000.00 annually. Seventeen (17) employees are currently enrolled. The total medical/prescription, dental and vision premiums and HSA contributions payable by the Debtor is approximately $125,000.00 per month.

23. The Debtor seeks authority to pay, in the ordinary course of business, any unpaid premiums, deductibles, and prepetition claims relating to the foregoing medical, dental, and vision insurance that arose from services rendered within 180 days prior to the Petition Date.

24. The Debtor maintains an account to provide health insurance benefits under the Consolidated Omnibus Budget Reconciliation Act ("<u>COBRA</u>") to employees who have been terminated. As of the Petition Date, there is one former Employees who participate in COBRA insurance. The Debtor seeks authority to continue the COBRA insurance program.

### ii.    <u>Basic Life, AD&D, Long-Term Disability</u>

25. The Debtor offers basic life insurance, accidental death and dismemberment insurance ("<u>AD&D</u>"), and long-term disability insurance coverage

(collectively, "<u>Life and Disability Benefits</u>") is available at no cost to full time Employees. Full time Employees may also purchase additional life, short-term disability, accident and crises insurance. The Debtor seeks authority to pay, in the ordinary course of business, any outstanding unpaid premiums and deductibles relating to life insurance, AD&D, and disability insurance that arose before the Petition Date.

### iii. <u>403(b) Plan</u>

26. The Debtor offers eligible Employees an opportunity to participate in a 403(b) plan (the "<u>403(b) Plan</u>") administered by Nationwide. The Debtor matches 2% of the employee contributions up to 3% of such employee's annual compensation.

27. As of the Petition Date, the Debtor has funded its participating Employees' contributions for prepetition pay periods. As described below, the Debtor deducts these amounts from paychecks of the Employees. The Debtor's contributions total approximately $17,000.00 per payroll period. The Debtor seeks authority to continue to maintain the 403(b) Plan and pay any accrued but unpaid

## E. <u>PTO Policy</u>

28. All full time Employees are eligible for paid time off ("<u>PTO</u>"). Part time employees working fewer than 40 hours but at least 24 hours per week, in which case, time is earned on a pro-rated basis.

29.     The PTO plan has two separate banks.  Employees may carry over PTO year to year, but not to exceed 1.5 times the annual earned PTO.  Amounts exceeding 1.5 times the annual earned PTO is transferred to an extended leave bank.

30.     The PTO may be used as follows:

      a.     The regular PTO bank ("<u>PTOB</u>") which may be used for vacation, medical appointments, or illnesses that are less than three days and other personal reasons; and

      b.     An extended leave bank ("<u>ELB</u>") that may be used for illnesses exceeding three days or for qualified FMLA reasons.

31.     PTO is accrued based upon years of employment as outlined below:

| PAID TIME OFF PAY SCHEDULE | | | | |
|---|---|---|---|---|
| Full Time, Regular Employees (40 hours): | | | | |
| | **REGULAR PTO BANK** | | **EXTENDED LEAVE BANK** | |
| **Years of Service** | **Hours Per Pay** | **Annual Allotment** | **Hours Per Pay** | **Annual Allotment** |
| 0-4 years | 4.923 | 16 days | 1.847 | 6 days |
| 5-9 years | 6.46 | 21 days | 1.847 | 6 days |
| 10+ years | 8 | 26 days | 1.847 | 6 days |
| Management* Full Time, Regular Employees (40 hours): | | | | |
| | **REGULAR PTO BANK** | | **EXTENDED LEAVE BANK** | |
| **Years of Service** | **Hours Per Pay** | **Annual Allotment** | **Hours Per Pay** | **Annual Allotment** |
| 0-4 years | 6.46 | 21 days | 1.847 | 6 days |
| 5-9 years | 8 | 26 days | 1.847 | 6 days |
| 10+ years | 9.53 | 31 days | 1.847 | 6 days |

*Managers in grade 29 and above, Classifications in grade 28 who supervise 3 or more employees and are required to work at least one weekend a month.

| Part Time, Regular Employees (30-39 hours): | | | | |
|---|---|---|---|---|
| | REGULAR PTO BANK | | EXTENDED LEAVE BANK | |
| Years of Service | Hours Per Pay | Annual Allotment | Hours Per Pay | Annual Allotment |
| 0-4 years | 3.0769 | 10 days | 1.5 | 4.8 days |
| 5-9 years | 4.3 | 14 days | 1.5 | 4.8 days |
| 10+ years | 5.5385 | 18 days | 1.5 | 4.8 days |

| Part Time, Regular Employees (24-29 hours): | | | | |
|---|---|---|---|---|
| | REGULAR PTO BANK | | EXTENDED LEAVE BANK | |
| Years of Service | Hours Per Pay | Annual Allotment | Hours Per Pay | Annual Allotment |
| 0-4 years | 1.846 | 6 days | 1.5 | 4.8 days |
| 5-9 years | 2.7692 | 9 days | 1.5 | 4.8 days |
| 10+ years | 3.692 | 12 days | 1.5 | 4.8 days |

| Directors, Regular Employees (40 hours): | | | | |
|---|---|---|---|---|
| | REGULAR PTO BANK | | EXTENDED LEAVE BANK | |
| Years of Service | Hours Per Pay | Annual Allotment | Hours Per Pay | Annual Allotment |
| 0-4 years | 8 | 26 days | 1.847 | 6 days |
| 5-9 years | 9.53 | 31 days | 1.847 | 6 days |
| 10+ years | 11.06 | 36 days | 1.847 | 6 days |

32.     As of the Petition Date, there are approximately 24,261 hours of accrued and unused PTO by the Debtor's full time Employees. The Debtor estimates

that the accrued, outstanding amount of unused time under the PTO Policy, if it were payable in cash, is approximately $596,122 as of the Petition Date. The PTO policy permits the payout of unused PTOB upon separation of employment and meeting the criteria for resignation, including adequate notice. 100% of the unused PTOB may be paid out from the Debtor through July 4, 2021. Effective July 5, 2021 the amount of the payment of unused PTOB is reduced to 25%. Unused ELB is not paid out at the time of separation from employment.

33. The Debtor seeks authorization, in its sole discretion, to continue honoring the PTO Policy in the ordinary course and to continue its practice of making cash payments for a separation for employment for unused PTO that has accrued prepetition with regard to the Priority Limit.

## F. *De Minimus* Employee Benefits

34. The Debtor also provides other employee benefits that are *de minimus* (the *De Minimus* Employee Benefits") such as a bonus debit cards (typically $50.00) for Employees who voluntarily take on additional shifts. The Debtor pays approximately $1,100.00 per month on account of *De Minimus* Employee Benefits, which boost morale and encourage teamwork. The Debtor seeks authorization: (i) to pay any prepetition amounts owed in connection with these *De Minimus* Employee Benefits, and (ii) to continue such benefits post-petition consistent with prepetition practice.

## RELIEF REQUESTED

35. The Debtor seeks authority, pursuant to sections 105(a), 363, 507(a), 1107(a), and 1108 of the Bankruptcy Code, to pay certain of its prepetition obligations, including, but not limited to, (i) amounts owed to Employees for wages, salaries, bonuses, and other compensation, (ii) amounts owed on account of Payroll Taxes; (iii) reimbursement of Reimbursable Expenses incurred in the ordinary course, such as travel, lodging, and parking expenses, (iv) maintenance of Employee Benefits Programs, (v) maintenance of the Milestone Recognition Program, (vi) other miscellaneous employee expenses and benefits; and (vii) amounts owed to Independent Contractors for services provided (collectively, the "Prepetition Obligations"), subject to the Priority Limit and the terms and conditions of the Interim Cash Collateral Order.

36. The Debtor seeks authority to honor the Prepetition Obligations because payment of these obligations is critical and essential to the morale of the Employees and the Debtor's future business needs. If the Prepetition Obligations are not honored in the ordinary course, the morale of Employees would suffer, which would adversely impact the Debtor's business. Failure to honor the Prepetition Obligations could also cause Employees to endure personal hardship. This result would impair Employee morale and lead to unmanageable Employee turnover.

Indeed, the Debtor will be unable to sustain operations and effectuate a successful reorganization without the ongoing goodwill of its Employees.

37.     Consequently, the Debtor seeks to continue paying Prepetition Obligations (as set forth below) in the ordinary course and to direct the Banks at which the Debtor maintains employee-related accounts to receive, process, honor and pay all payroll and employee benefit- related checks, drafts, wires, or automated clearing house transfers, provided sufficient funds are available to honor all such payments, without regard to when the applicable payroll check was issued, up to the Priority Limit and subject to the terms and conditions of the Interim Cash Collateral Order.[7]

## BASIS FOR RELIEF

**A.     Prepetition Obligations to Employees Are Entitled to Priority Treatment**

38.     Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, entitle the Prepetition Obligations, subject to certain conditions, to priority treatment under the Bankruptcy Code in an amount to $13,650.00 per Employee.  *See* 11 U.S.C. §§ 507(a)(4), 507(a)(5).  In addition, section 507(a)(4) and 507(a)(5) priority claims

---

[7] *See First Day Emergency Motion Of Debtor For Interim And Final Orders Authorizing (I) Continued Use Of Existing Cash Management System, (II) Maintenance Of Existing Bank Accounts, (III) Continued Use Of Existing Business Forms, And (IV) Maintenance Of Existing Deposit Practices* ("Cash Management Motion") filed contemporaneously with this Motion, where the Debtor seeks authorization regarding the continued use of certain existing accounts.

are entitled to payment in full under a chapter 11 plan of reorganization.  *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims for (a) wages, salaries, or commission, including severance, and sick leave pay earned by an individual and (b) contributions to an employee benefit plan).  Thus, granting the relief requested herein is consistent with the Bankruptcy Code's purpose in ensuring employees are paid in full on account of the priority status of his or her claims, up to the statutorily imposed limit. Accordingly, the Debtor submits that no prejudice to creditors or other parties in interest would result from granting the relief requested herein.

**B.**     **Certain Prepetition Obligations Are Required by Law**

39.     Additionally, the Debtor seeks authority to pay the applicable Payroll Taxes to the appropriate third party entities or persons.  These amounts principally represent Employee earnings that governments, Employees, and judicial authorities have designated for deduction from the Employees' paychecks.   Indeed, certain Payroll Taxes are not property of the Debtor's estate because the Debtor has withheld such amounts from the Employees' paychecks on another party's behalf.  *See* 11 U.S.C. §§ 541(b)(1), (d).  Further, federal and state laws require the Debtor to withhold certain tax payments from the Employees' paychecks and to pay such amounts to the appropriate taxing and/or governmental authority.  *See* 26 U.S.C. §§ 6672, 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–97 (3d

Cir. 1994) (finding that the state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between the debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes). Because certain Payroll Taxes may not be property of the Debtor's estate, the Debtor requests that the Court authorize it to transmit the Payroll Taxes on account of the Employees to the proper parties in the ordinary course of business.

## C.   Ample Authority Exists To Authorize The Debtor To Honor Prepetition Obligations

40.   Courts generally acknowledge that it is appropriate to authorize the payment (or other special treatment) of pre-petition obligations in appropriate circumstances. *See*, *e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 174 (Bankr. S.D.N.Y. 1989) (granting authority to pay pre-petition wages); *see also Armstrong World Indus., Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983) (granting authority to pay pre-petition claims of suppliers who were potential lien claimants). As set forth herein, in authorizing payments of certain pre-petition obligations, courts have relied on several legal theories, based on §§ 1107(a), 1108, 363(b), and 105(a).

41.   Pursuant to §§ 1107(a) and 1108, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of

[their] creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." *Id.* Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a pre-petition claim." *Id.* The *CoServ* court specifically noted that the preplan satisfaction of pre-petition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate . . . ." *Id.*

42.     Consistent with a debtor's fiduciary duties, courts have also authorized payment of pre-petition obligations under § 363(b) where a sound business purpose exists for doing so. *See*, *e.g.*, *Ionosphere Clubs*, 98 B.R. at 175 (discussing prior order authorizing payment of pre-petition wage claims pursuant to § 363(b); relief appropriate where payment was needed to "preserve and protect its business and ultimately reorganize, retain its currently working employees and maintain positive employee morale."); *see also Armstrong*, 29 B.R. at 397 (relying on § 363 to allow contractor to pay pre-petition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors).

43.     Courts have also authorized payment of pre-petition claims in appropriate circumstances pursuant to § 105(a).  Section 105(a), which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Under section 105(a), courts may permit preplan payments of pre-petition obligations when such payments are essential to the continued operation of the debtor's business and, in particular, where nonpayment of a pre-petition obligation would trigger a withholding of goods or services essential to the debtor's business reorganization plan.  *See Ionosphere Clubs*, 98 B.R. at 177 (finding that § 105 empowers bankruptcy courts to authorize payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor); *In re Gulf Air, Inc.*, 112 B.R. 152 (Bankr. W.D. La. 1989) (authorizing payment of pre-petition amounts due, inter alia, for wages, benefits, health insurance premiums and per diem expenses under the "necessity of payment doctrine," without regard to statutory priorities of § 507).

44.     Courts have repeatedly recognized the importance of employees to a debtor's reorganization and the severe harm to employees that can arise if courts do not grant motions such as this one.  *In re Braniff, Inc.*, 218 B.R. 628, 633 (Bankr. M.D. Fla. 1998) (approving payment of pre-petition employee wage claims due to the important role the employees play to the debtor's reorganization).  *See also, In*

*re Engineered Plastic Products, Inc*., No. 06-42714, Docket No. 34, (Bankr. E.D. Mich. March 13, 2006); *In re Greektown Holdings, LLC*, No. 08-53104, Docket No. 120 (Bankr. E.D. Mich. June 24, 2008); *In re LSC Liquidation, Inc*., No. 15-45784, Docket No. 42 (Bankr. E.D. Mich. April 15, 2015); *In re General Products Corporation*, No. 16-49267, Docket No. 44 (E.D. Mich. June 30, 2016); *In re Body Contour Ventures, LLC,* No. 19-42510, Docket No. 105 (Bankr. E.D. Mich. March 5, 2019).

45.     In order to maintain the continuity of their business and to preserve the morale of their important labor force, it is essential that the Debtor be permitted to pay the funds requested through this Motion.  The Debtor seeks the relief requested in this Motion because any delay or disruption in providing employee compensation will destroy the Debtor's relationships with the Employees and irreparably impair workforce morale at the very time when the dedication, confidence, and cooperation of these individuals is most critical.  The same is true if the Independent Contractors, including the medical director and other individuals, are not paid for any unpaid Prepetition Obligations.  The Debtor faces the risk that its operations may be severely impaired if authority is not granted for the Debtor to make the payments described above.

46. In addition, bolstering the Employees' morale will assist the Debtor in maintaining a "business as usual" atmosphere and, in turn, facilitate the Debtor's restructuring efforts.

47. Because the amounts represented by the Debtor's Prepetition Obligations to the Employees enable them to meet their own personal obligations, absent the relief requested herein, they will suffer undue hardship and, in many instances, serious financial difficulties. Moreover, without the requested relief, the stability of the Debtor would be undermined by the potential threat that otherwise loyal Employees would seek other employment.

## D. __Bankruptcy Rule 6003 Has Been Satisfied__

48. Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. For the reasons discussed herein and in the First Day Declaration, the Debtor to pay the Prepetition Obligations and granting the other relief requested herein is integral to the Debtor's ability to transition its operations into the Chapter 11 Case. Failure to receive such authorization and other relief during the first 21 days of this Chapter 11 Case would severely disrupt the Debtor's operations at this critical juncture. Accordingly, the Debtor submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## RESERVATION OF RIGHTS

49.     Nothing contained herein is intended to or should be construed as an admission as to the validity of any claim against the Debtor, a waiver of the Debtor's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  The Debtor expressly reserves its right to contest any claim related to the relief sought herein.  Likewise, if the Court grants the relief requested herein, any payment made pursuant to an order of this Court is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtor's rights to subsequently dispute such claim.

## WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)

50.     To implement the foregoing successfully, the Debtor requests a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h).  As explained herein, it is critical that the Debtor retain its Employees to continue to operate its business. Without the retention of its Employees, the Debtor would have to either close down, potentially harming its residents, or provide a lower level of care and customer service.  Either would be fatal to the Debtor's ability to maximize the value of the Debtor's business.  Accordingly, for the reasons set forth herein and the Debtor's First Day Declaration, the Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that

the Debtor has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## **NO PRIOR REQUEST**

51.     No prior request for the relief requested herein has been made to this Court or any other court.

## **NOTICE**

52.     Notice of the Motion has been provided to: (a) the Office of the United States Trustee for the Eastern District of Michigan; (b) all secured creditors, including counsel to UMB Bank, as Bond Trustee; (c) the Debtor's twenty (20) largest unsecured creditors; (d) parties who have filed UCC-1 Financing Statements with respect to Debtor and its assets; (e) the Michigan Corporations, Securities and Commercial Licensing Bureau of the Department of Licensing and Regulatory Affairs; (f) the U.S. Department of Health and Human Services' Centers for Medicare and Medicaid Services ("CMS"); (g) the United States Attorney's Office for the Eastern District of Michigan (Attention: Civil Division); (h) the Michigan Department of Health and Human Services; (i) the United States Small Business Administration; (j) the banks, other financial institutions, and other parties in interest directly involved in the Debtors' Cash Management System as described in the Cash Management Motion; and (k) any party filing a notice of appearance in this Chapter

11 Case. The Debtor submits that, in light of the nature of the relief requested, no further notice of this Motion is required.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, granting the relief requested herein and granting such other relief as is just and proper.

Dated: October 28, 2020

**DYKEMA GOSSETT PLLC**

By: */s/ Sheryl L. Toby*

    Sheryl L. Toby (P39114)
    Jong-Ju Chang (P70584)
    39577 Woodward Avenue, Suite 300
    Bloomfield Hills, Michigan 48304
    (248) 203-0700 / Fax (248) 203-0763
    SToby@dykema.com
    JChang@dykema.com

    and

    Patrick L. Huffstickler
    Texas Bar No. 10199250
    Danielle N. Rushing
    Texas Bar No. 24086961
    112 East Pecan Street, Suite 1800
    San Antonio, Texas 78205
    (210) 554-5500 / Fax (210) 226-8395
    PHuffstickler@dykema.com
    DRushing@dykema.com

    ***PROPOSED COUNSEL FOR***
    ***DEBTOR AND DEBTOR-IN-***
    ***POSSESSION***

# EXHIBIT A

IN RE:                                              Case No. 20-51066-MAR

HENRY FORD VILLAGE, INC.,              Chapter 11

    Debtor.                                      Honorable Mark A. Randon

_____/

**INTERIM ORDER (I) AUTHORIZING (A) THE DEBTOR TO PAY
CERTAIN PREPETITION SALARIES, WAGES, AND COMPENSATION
AND (B) THE CONTINUATION OF EMPLOYEE BENEFIT PROGRAMS;
AND (II) DIRECTING BANKS TO HONOR AND PROCESS CHECKS
AND TRANSFERS RELATED TO SUCH EMPLOYEE OBLIGATIONS**

Upon the *First Day Motion of the Debtor for Interim and Final Orders (I)
Authorizing (A) the Debtor to Pay Certain Prepetition Salaries, Wages, and
Compensation and (B) Discontinuing of Employee Benefit Programs and (II)
Directing Banks to Honor and Process Checks and Transfers Related to Such
Employee Obligations* (the "Motion")[1] for an interim order (this "Interim Order"),
pursuant to sections 105(a), 363, 507(a), 1107(a), and 1108 of the title 11 of the
United States Code (the "Bankruptcy Code"), and Rules 6003 and 6004(h) of the
Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing (a)
the Debtor to pay prepetition wages, salaries, and other compensation, taxes and

_____

[1] All capitalized terms used but not otherwise defined herein shall have the meanings
ascribed to them in the Motion and the First Day Declaration.

withholdings, reimbursable employee expenses, and any payroll related fees to third parties up to the Priority Limit and (b) authorizing the Debtor to honor and continue benefit programs for employees; and (ii) authorizing and directing the applicable banks and financial institutions at which the Debtor maintains disbursement and other accounts (collectively, the "Banks") to honor and process checks and transfers related to such employee obligations, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and this Court having jurisdiction to consider the Motion and the relief requested therein under 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding under 28 U.S.C. § 157(b)(2); and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing were adequate and appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and this Court being otherwise advised in the premises:

IT IS HEREBY ORDERED THAT:

1.     The Motion is hereby granted on an interim basis as set forth herein.

2.     Subject to the limitations contained in sections 507(a)(4) and (a)(5) of the Bankruptcy Code, the Debtor is hereby authorized, but not directed, to pay all Prepetition Obligations, including but not limited to, outstanding salaries, wages, and compensation to Employees, withheld amounts, Payroll Taxes, Employee Deductions, Reimbursable Expenses, any outstanding amounts under the Residency Counselor Commission and Bonus Policy, any outstanding amounts under the Milestone Recognition Program, and all Employee Benefits Programs, including health insurance, Life and Disability Benefits, 403(b) Plan obligations, and *De Minimus* Employee Benefits, including payment to any third parties that process, provide, aid, administer the Prepetition Obligations, subject to the terms of the *Interim Cash Collateral Order.*

3.     The Debtor is authorized to maintain all Employee Benefit Programs consistent with prepetition practice and pay all fees, premiums, matching contributions in the ordinary course of business.

4.     Nothing herein shall be deemed to authorize the payment of any amounts in satisfaction of severance obligations or which are otherwise subject to section 503(c) of the Bankruptcy Code.

5.     The Debtor is authorized, but not directed, in its sole discretion, to honor and continue its expense reimbursement programs, policies, plans, practices, and procedures, in the ordinary course in accordance with prepetition practices, that

were in effect as of the Petition Date and to pay any prepetition amounts associated therewith; *provided, however*, that such relief shall not constitute or be deemed an assumption or an authorization to assume any of such Reimbursable Expenses, under section 365(a) of the Bankruptcy Code.

6. The Debtor may pay any and all withholding, including social security, FICA, federal, state and local income taxes, garnishments, health care premiums, 403(b) Plan withholding, and other types of withholding, whether or not these relate to the period prior to the Petition Date.

7. The Debtor is hereby authorized, but not directed, to pay any unpaid prepetition compensation to the Independent Contractors up to the Priority Limit and subject to the terms of the Interim Cash Collateral Order.

8. The Banks are directed to honor all checks, drafts or payment requests (provided that such funds are on deposit to cover such checks) without regard to the date of issue of such checks, drafts or payment requests in the same manner that such checks, drafts and payment requests were honored during the prepetition period, including electronic payment requests made by the Debtor related to employee obligations and benefits.

9. In accordance with this Interim Order, the Banks are authorized to (a) receive, process, honor, and pay all checks presented for payment and to honor all fund transfer requests made by the Debtor related to the Prepetition Obligations, to

4

the extent that sufficient funds are on deposit in those accounts and (b) accept and rely on all representations made by the Debtor with respect to which checks, drafts, wires, or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of the Court, whether such checks, drafts, wires, or transfers are dated prior to, on, or subsequent to the Petition Date, without any duty to inquire otherwise.

10.     The Debtor is authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, on account of prepetition obligations and claims as set forth herein, and to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtor's Chapter 11 Case. To the extent any Employee has suffered any actual monetary penalty or charge due to the inadvertent dishonor of any check of the Debtor on account of any Prepetition Obligations, the Debtor shall be authorized, but not directed, to reimburse the Employee for such amount without further order of this Court.

11.     Nothing contained herein is intended or shall be construed as (i) an admission as to the validity of any claim against the Debtor, (ii) a waiver of any of the Debtor's or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtor, (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (iv) an

approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtor and any third-party under section 365 of the Bankruptcy Code. Any payment made pursuant to this Interim Order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of any of the Debtor's rights to dispute such claim.

12. Notwithstanding entry of this Interim Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

13. The final hearing (the "**Final Hearing**") to consider the entry of a final order granting the relief requested in the Motion shall be held on _____, 2020, at __:__ _.m. Prevailing Eastern Time. The Debtor will provide notice of this Interim Order and of the Final Hearing by first class mail to (a) the Office of the United States Trustee for the Eastern District of Michigan; (b) all secured creditors, including counsel to UMB Bank, as Bond Trustee; (c) the Debtor's twenty (20) largest unsecured creditors; (d) parties who have filed UCC-1 Financing Statements with respect to Debtor and its assets; (e) the Michigan Corporations, Securities and Commercial Licensing Bureau of the Department of Licensing and Regulatory Affairs; (f) the U.S. Department of Health and Human Services' Centers for Medicare and Medicaid Services ("CMS"); (g) the United States Attorney's Office for the Eastern District of Michigan (Attention: Civil Division); (h) the Michigan

Department of Health and Human Services; (i) the banks, other financial institutions, and other parties in interest directly involved in the Debtor's Cash Management System as described in the Cash Management Motion; (j) the United States Small Business Administration; and (k) any party filing a notice of appearance in this Chapter 11 Case. Any party wishing to object to the relief requested in the Motion on a final basis shall file such objection with the Court, together with proof of service thereof, and serve such objection upon: (a) counsel for the Debtor; (b) counsel for the Bond Trustee; and (c) the Office of the United States Trustee, so as to be received no later than ___, 2020 at ___ p.m. Prevailing Eastern Time (the "Objection Deadline"). If no objections are filed and served on or before the Objection Deadline, at the Final Hearing, the Court may enter a final order: (a) permitting the Debtor to pay prepetition wages, salaries, and other compensation, taxes and withholdings, reimbursable employee expenses, and any payroll related fees to third parties and (b) authorizing the Debtor to honor and continue benefit programs for employees; and (ii) authorizing and directing the applicable Banks to honor and process checks and transfers related to such employee obligations

14. The Debtor is authorized and empowered to take all actions it deems necessary to effectuate the relief granted pursuant to this Interim Order in accordance with the Motion.

15. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion.

16. The requirements of Bankruptcy Rule 6003(b) have been satisfied.

17. Notwithstanding anything in the Bankruptcy Rules to the contrary, the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

18. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Interim Order.

19. Notwithstanding anything to the contrary contained herein, any payment made or to be made under this Interim Order, and any authorization contained in this Interim Order, shall be in compliance with and subject to the terms and conditions of the *Interim Cash Collateral Order*.

# EXHIBIT B

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

IN RE:                                    Case No. 20-51066-MAR

HENRY FORD VILLAGE, INC.,                 Chapter 11

      Debtor.                            Honorable Mark A. Randon
_____/

## FINAL ORDER (I) AUTHORIZING (A) THE DEBTOR TO PAY CERTAIN PREPETITION SALARIES, WAGES, AND COMPENSATION AND (B) THE CONTINUATION OF EMPLOYEE BENEFIT PROGRAMS AND (II) DIRECTING BANKS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH EMPLOYEE OBLIGATIONS

Upon the *First Day Motion of the Debtor for Interim and Final Orders (I) Authorizing (A) the Debtor to Pay Certain Prepetition Salaries, Wages, and Compensation and (B) Discontinuing of Employee Benefit Programs and (II) Directing Banks to Honor and Process Checks and Transfers Related to Such Employee Obligations* (the "Motion")[1] for a final order (this "Final Order"), pursuant to sections 105(a), 363, 507(a), 1107(a), and 1108 of the title 11 of the United States Code (the "Bankruptcy Code"), and Rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing (a) the Debtor to pay prepetition wages, salaries, and other compensation, taxes and withholdings,

_____

[1] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion and the First Day Declaration.

reimbursable employee expenses, and any payroll related fees to third parties up to the Priority Limit and (b) authorizing the Debtor to honor and continue benefit programs for employees; and (ii) authorizing and directing the applicable banks and financial institutions at which the Debtor maintains disbursement and other accounts (collectively, the "Banks") to honor and process checks and transfers related to such employee obligations, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and this Court having jurisdiction to consider the Motion and the relief requested therein under 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding under 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing were adequate and appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and this Court being otherwise advised,

IT IS HEREBY ORDERED THAT:

1.     The Motion is hereby granted on a final basis as set forth herein.

2.      Subject to the limitations contained in sections 507(a)(4) and (a)(5) of the Bankruptcy Code, the Debtor is hereby authorized, but not directed, to pay all Prepetition Obligations, including but not limited to, outstanding salaries, wages, and compensation to Employees, withheld amounts, Payroll Taxes, Employee Deductions, Reimbursable Expenses, any outstanding amounts under the Residency Counselor Commission and Bonus Policy, any outstanding amounts under the Milestone Recognition Program, and all Employee Benefits Programs, including health insurance, Life and Disability Benefits, 403(b) Plan obligations, and *De Minimus* Employee Benefits, including payment to any third parties that process, provide, aid, administer the Prepetition Obligations, subject to the terms and conditions of the *Final Cash Collateral Order*.

3.      The Debtor is authorized to maintain all Employee Benefit Programs consistent with prepetition practice and pay all fees, premiums, matching contributions in the ordinary course of business.

4.      Nothing herein shall be deemed to authorize the payment of any amounts in satisfaction of severance obligations or which are otherwise subject to section 503(c) of the Bankruptcy Code.

5.      The Debtor is authorized, but not directed, in their sole discretion, to honor and continue its business expenses reimbursement, policies, plans, practices, and procedures, in the ordinary course in accordance with prepetition practices, that

were in effect as of the Petition Date and to pay any prepetition amounts associated therewith; *provided, however*, that such relief shall not constitute or be deemed an assumption or an authorization to assume any of such Reimbursable Expenses, under section 365(a) of the Bankruptcy Code.

6.      The Debtor may pay any and all withholding, including social security, FICA, federal, state and local income taxes, garnishments, health care premiums, 403(b) withholding, and other types of withholding, whether or not these relate to the period prior to the Petition Date.

7.      The Debtor is hereby authorized, but not directed, to pay any unpaid prepetition compensation to the Independent Contractors up to the Priority Limit and subject to the terms of the Final Cash Collateral Order.

8.      The Banks are directed to honor all checks, drafts or payment requests (provided that such funds are on deposit to cover such checks) without regard to the date of issue of such checks, drafts or payment requests in the same manner that such checks, drafts and payment requests were honored during the prepetition period, including electronic payment requests made by the Debtor related to employee obligations and benefits.

9.      In accordance with this Final Order, the Banks are authorized to (a) receive, process, honor, and pay all checks presented for payment and to honor all fund transfer requests made by the Debtor related to the Prepetition Obligations, to

the extent that sufficient funds are on deposit in those accounts and (b) accept and rely on all representations made by the Debtor with respect to which checks, drafts, wires, or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of the Court, whether such checks, drafts, wires, or transfers are dated prior to, on, or subsequent to the Petition Date, without any duty to inquire otherwise.

10.    The Debtor is authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, on account of prepetition obligations and claims as set forth herein, and to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtor's Chapter 11 Case. To the extent any Employee has suffered any actual monetary penalty or charge due to the inadvertent dishonor of any check of the Debtor on account of any Prepetition Obligations, the Debtor shall be authorized, but not directed, to reimburse the Employee for such amount without further order of this Court.

11.    Notwithstanding entry of this Final Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

12.    Nothing contained herein is intended or shall be construed as (i) an admission as to the validity of any claim against the Debtor, (ii) a waiver of any of

the Debtor's or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtor, (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtor and any third-party under section 365 of the Bankruptcy Code. Any payment made pursuant to this Final Order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of any of the Debtor's rights to dispute such claim.

13.     The Debtor is authorized and empowered to take all actions it deems necessary to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

14.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion.

15.     The requirements of Bankruptcy Rule 6003(b) have been satisfied.

16.     Notwithstanding anything in the Bankruptcy Rules to the contrary, the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry.

17.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Final Order.

18.     Notwithstanding anything to the contrary contained herein, any payment made or to be made under this Final Order, and any authorization contained in this Final Order, shall be in compliance with and subject to the terms and conditions of the *Final Cash Collateral Order*.