# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

IN RE:                                          Case No.  20-51066-MAR

HENRY FORD VILLAGE, INC.,          Chapter 11

     Debtor.                                   Honorable Mark A. Randon

_____

## FIRST DAY EMERGENCY MOTION OF DEBTOR FOR INTERIM AND FINAL ORDERS AUTHORIZING (I) CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, (II) MAINTENANCE OF EXISTING BANK ACCOUNTS, (III) CONTINUED USE OF EXISTING BUSINESS FORMS, AND (IV) MAINTENANCE OF EXISTING DEPOSIT PRACTICES

Henry Ford Village, Inc. (the "Debtor"), hereby moves (this "Motion") pursuant to sections 105(a), 345, 363, and 364 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4002-1 of the Local Rules of Practice and Procedure for the Eastern District of Michigan (the "Local Rules") for the entry of interim and final orders (i) authorizing, but not directing, the Debtor to continue to maintain and use its existing cash management system, including maintenance of existing bank accounts and business forms; (ii) granting the Debtor a waiver of certain bank account and related requirements of the Office of the United States Trustee for the Eastern District of Michigan (the "U.S. Trustee") to the extent that such requirements are inconsistent with the Debtor's practices under its existing cash

management system or other actions described herein; and (iii) authorizing, but not directing, the Debtor to continue to maintain and use existing deposit practices notwithstanding the provisions of Bankruptcy Code section 345(b). In support of the Motion, the Debtor relies upon the *Declaration of Chief Restructuring Officer in Support of the Debtor's First Day Pleadings* (the "First Day Declaration") filed with the Court contemporaneously herewith. In further support of the Motion, the Debtor respectfully represents as follows:

## JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b) and the Court has the constitutional authority to enter an Interim and Final Order on this Motion.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a), 345, 363, and 364, and Bankruptcy Rule 6003.

## BACKGROUND

4. On the date hereof (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").

2

5.     Debtor is a not for profit[1], non-stock corporation established to operate a continuing care retirement community located at 15101 Ford Road, Dearborn, Michigan 48126.   Debtor provides senior living services comprised of 853 independent living units, 96 assisted living unites and 89 skilled nursing beds (the "Facility").  Debtor is governed by an independent Board of Directors and is advised by a Resident council elected by the residents of Debtor.[2]   Further factual background regarding the Debtor, including its business operations, capital and debt structure, and the events leading to the filing of the Chapter 11 Case is set forth in the First Day Declaration and is incorporated herein by reference.[3]

6.     The Debtor continues to operate and manage its business as a debtor in possession pursuant to Bankruptcy Code sections 1107 and 1108.

7.     No trustee, examiner, or creditors' committee has been appointed in the Chapter 11 Case.

---

[1] According to HFV's Articles of Incorporation, the corporation is organized to: promote the health of the elderly through the ownership and or operation of one or more residential communities offering various levels of care services for elderly persons; carry on educational activities related to the promotion of health of the residential community; promote and carry on scientific research related to the promotion of health of the residential community; perform other activities permitted by nonprofit corporations under the laws of the State of Michigan.

[2] The Board of Directors is an active volunteer board predominantly comprised of current residents, and family members of current or former residents.

[3] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

3

## THE CASH MANAGEMENT SYSTEM

8.      Before the Petition Date, the Debtor maintained a cash management system (the "Cash Management System") which helped the Debtor efficiently and effectively manage and operate its business and track its funds, revenues and expenses.  As part of its Cash Management System, the Debtor maintains several bank and other accounts, as more fully described below and in the Description of Bank Accounts table, attached hereto as Exhibit "A", and the Cash Management System chart, attached hereto as Exhibit "B".

**A.      The Debtor's Bank Accounts – General Description**

9.      As of the Petition Date, the Debtor's Cash Management System employed a total of eight (8) bank accounts maintained at Comerica Bank (collectively called the "Bank Accounts").  Six (6) of the accounts are used to facilitate normal operating transactions and two of the accounts were previously utilized to hold Resident Entrance Fee Funds prior to the implementation of the Resident Entrance Fee Escrow Order (which is described below).  One of these now inactive account was repurposed to be the Lease Security Deposit Account. The Accounts are now identified as follows:

      a.      <u>Operating Account (Acct. No. 0518)</u> – The Debtor maintains an account at Comerica Bank (the "Operating Account") which serves as the Debtor's primary operating account for deposits and disbursements.  This account receives deposits of Resident service fees, receipts from private and governmental payors and,

ultimately, the earned portion of Resident Entrance Fee refunds. The account also serves as the disbursement account to pay operating expenses, payroll taxes, employee benefits and it funds the Payroll Account.

b.  Payroll Account (Acct. No. 1218) – The Debtor maintains a zero-balance account at Comerica Bank to pay the net payroll obligations of its employees. The account is funded periodically when direct deposit payroll and checks are presented for payment.

c.  Credit Card Collateral Account (Acct. No. 6701) – The Debtor maintains a money market account at Comerica Bank that collateralizes the procurement cards that employees use to pay for goods and services on behalf of the Debtor. Procurement card obligations run approximately $35,000 per month. The account holds approximately $75,000. The account can be funded by the Operating Account if additional collateral is required to support the procurement card program.

d.  Resident Clubs Account (Acct. No. 1028) - The Debtor maintains a resident clubs account (the "Resident Clubs Account") at Comerica Bank for the benefit of its Residents. The Resident Clubs Account is an account that holds funds for the various Resident Clubs at the Facility, where the various Resident's Clubs have deposited their funds for the Club's uses. The Debtor manages and accounts for the Residents' Clubs' funds. The Debtor will continue to maintain the Resident Clubs Account. Funds in the account are used, for instance, for the purpose of providing staff appreciation gifts based on the length of service as Residents do not confer gratuities directly to Debtor's staff. Funds deposited in such account are not property of the Debtor's estate, but rather are property of the Debtor's Residents. The account holds approximately $228,000. The funds in this account are "Restricted Funds" and are not part of Debtor's general operating funds and cash collateral.

e.  Benevolent Care, Scholarship and Quality of Life Donations Account (Acct. No. 1135) - The Debtor maintains an account at Comerica Bank to provide quality of life care financial assistance for Residents in need. Funds in the account are also used for

college scholarships for employees of Debtor and for costs to enrich the lives of Residents, such as facility beautification projects. The funds are provided by donations from Residents and family members of Residents. Debtor will continue to maintain the account. Any funds deposited in such account are not property of the Debtor's estate, but rather are the property of the Debtor's Residents for the purposes described above. The account holds approximately $204,000. The funds in this account are "Restricted Funds" and are not part of Debtor's general operating funds and cash collateral.

     f.    <u>Lease Security Deposit Account (Acct. No. 8738)</u> - The Debtor maintains another account at Comerica Bank for the purpose of receiving lease security deposits for rental units at the Facility.

     g.    <u>Pre-Occupancy Deposit Account (Acct. No. 1010)</u> – This account of Debtor held deposits of potential Residents. As a result of the implementation of the Escrow Agreement and Escrow Account described below under the Resident Entrance Fee Escrow Order (defined below), Debtor transferred the potential Resident deposits in this account to the Escrow Agent, which deposits made up a significant portion of the funds in this account. The account now holds approximately $209,000 consisting of non-specifically identifiable deposits collected over time. These remaining funds shall remain in this account pending a determination as to their eventual disposition.

     h.    <u>Entrance Fee Escrow Account (Acct. No. 9459)</u> - The Debtor maintained an account at Comerica Bank for the purpose of collecting Entrance Fees from new Residents. The funds in this account have been sent to the Escrow Agent to be placed in the Escrow Account (as described below) and the account is inactive. The balance in this account is zero.

## B.    <u>Merrill Lynch Accounts (the "ML Accounts")</u>

10.    The Debtor also maintains four accounts at Merrill Lynch (the "<u>ML Accounts</u>") as part of its Cash Management System as follows:

a.   <u>Marketable Securities Account (Inactive) (Account #2175)</u> - This account previously held marketable securities and other investments but Debtor determined it was best to convert these assets to cash and deposit the resulting funds into a money market account at Merrill Lynch. This was done and the account is inactive and the balance in the account is now zero. Debtor expects to close this account post-petition.

b.   <u>Marketable Securities Account (Acct. #2157)</u> - This account holds the funds from Acct. #2175 arising from the liquidation of the investments described immediately above. The funds are held in an associated Bank of America money market account. The Debtor's Board established this account as an investment account for Debtor and it is maintained as such. The balance of the account is approximately $2.48 million.

c.   <u>Charitable Annuities Account (CGA) (Acct. #2119)</u> - This is a charitable gift annuity account holding annuities related to Debtor's Residents. The annuities are paid to the respective Resident and, upon that Resident's death, the remaining annuity funds go to the Debtor. These annuity funds are "Restricted Funds" not considered by Debtor to be Debtor funds included in the Estate and are not cash collateral and are not usable by Debtor as general operating funds or cash. The funds are currently only usable by the Residents for whom the annuity was established. The balance in this account (reflecting Debtor's potentially payable current share from all of the annuities were the annuities payment to Debtor provisions triggered) is approximately $112,500.00. This marketable securities account holds funds in a money market account.

d.   <u>Endowed Scholarship Account (Acct. #2117)</u> - The funds held in this account are funds donated to Debtor to endow scholarships. The funds are to be used to ultimately fund scholarships for Debtor's employees pursuing a college education for specific educational tracts although no specific scholarships have been established at this point. These funds are "Restricted Funds" not considered by Debtor to be Debtor funds included in the Estate and are not cash collateral and are not funds usable by Debtor as general operating funds or cash. The funds are only usable for the scholarship purposes for which they

7

were donated. The balance in this account is approximately $429,320.00. This is a marketable securities account holding fixed income, equities and mutual fund investments as well as cash accounts. Debtor proposes that this account simply remain in place pending establishment of the intended scholarships.

11.     Debtor seeks to maintain the ML Accounts as described above and to use the funds in such accounts for the purposes for which such accounts were established, consistent with the customary and ordinary practices existing pre-petition with respect to such accounts and the funds and other assets therein.[4]

## C.     The Debtor's Cash Management System – Operating Accounts

12.     The Description of Bank Accounts table attached hereto as **Exhibit A** sets forth for each of the Debtor's accounts, the name of the institution at which the account is maintained, the account number (last four digits only), and a description of the purpose of the account. The Debtor manages its cash receipts, transfers and disbursements through the Bank Accounts. In doing so, the Debtor routinely deposits, withdraws and otherwise transfers funds to, from and between the Bank Accounts by various methods including check, wire transfer, automated

---

[4] In addition to the accounts described herein, there are various accounts held by the Bond Trustee, UMB Bank, N.A. (the "Bond Trustee"), under the bond financing transactions and related loan and other agreements entered into by the Debtor. All of these accounts are maintained by the Bond Trustee at UMB Bank, N.A. and are not affected by the relief sought in this Motion. Debtor has been advised by the Bond Trustee that the Bond Trustee has set-off all of the funds in these accounts in connection with the acceleration of the bond debt, and the balance in each account is now zero.

clearing house transfer and electronic funds transfer. On a daily basis, the Debtor processes large numbers of transactions through the Cash Management System. The Debtor maintains current and accurate records of all transactions processed through the Cash Management System.[5]

13. Prior to the Petition Date and in the ordinary course of business, the Debtor maintained its Operating Account at Comerica Bank. All operating revenue (other than Resident Entrance Fees, which are discussed below) is deposited into, and all operating disbursements, including payroll taxes and employee related deductions and benefits are paid from, this Operating Account. The Debtor also maintains a Payroll Account, which is a zero-balance account, which is funded from the Operating Account as net payroll obligations are paid. In addition, Debtor utilizes procurement cards that employees use to charge goods and services on behalf of the Debtor. The procurement card obligations are funded by transfers from the Operating Account as required on a monthly basis and the procurement card obligations are cash collateralized by a segregated account (the "Credit Card Collateral Account"). A chart depicting the flow of funds in the Cash Management System is attached hereto as **Exhibit B**.

---

[5] One of the primary challenges to altering the Cash Management System currently maintained by the Debtor is the potentially devastating disruption of electronic deposits from Residents and Payors, Medicare, and Medicaid that flow into the existing Bank Accounts.

**D.  Procurement Card Program**

14.     Debtor has a credit card agreement (the "Procurement Card Program") with Comerica Bank under which certain of Debtor's employees are issued credit cards ("Procurement Cards") which can be used to purchase necessary goods and services for Facility operations.  The employees who have Procurement Cards are generally Department heads and their administrative assistants as well as Debtor's officers.   Each employee card has a specific credit limit consistent with the respective employee's responsibilities and need to purchase goods and services for Debtor.  Under the Procurement Card Program Agreement with Comerica, Comerica generates a monthly bill early each month and thereafter debits Debtor's Operating Account in the middle of the month for the monthly bill.  Debtor maintains a Credit Card Collateral Account (Acct.  #6701) which collateralizes Debtor's obligations under the Procurement Card Program agreement with Comerica.  The Procurement Card Program monthly obligations usually run approximately $30,000 to $35,000 and the Credit Card Collateral Account holds approximately $75,000.  Debtor is current on its Procurement Card Program obligations as of the Petition Date.  Debtor seeks to maintain and continue to operate under the Procurement Card Program in the ordinary course postpetition.

**E.     Resident Entrance Fee Escrow Funds**

15.     On June 10, 2020, the Director (the "<u>Administrator</u>") of the Michigan Corporations, Securities & Commercial Licensing Bureau of the Department of Licensing and Regulatory Affairs (the "<u>Department</u>") issued its *Order Requiring Escrow of Funds* (the "<u>Resident Entrance Fee Escrow Order</u>") requiring Debtor to deposit all entrance fee payments of members or prospective members (*i.e.*, residents or prospective residents) with an escrow agent acceptable to the Department arising after the date of service of the Resident Entrance Fee Escrow Order  pursuant to the Continuing Care Community Disclosure Act, 2014 PA 448, MCL §54.903et seq. (the "<u>Act</u>").  Compliance with the Resident Entrance Fee Escrow Order is necessary for Debtor to maintain its registration with the Department so it can continue to operate the Facility.

16.     As a result, Debtor has entered into the *Continuing Care Community Disclosure Act Escrow Agreement* (the "<u>Escrow Agreement</u>") with American Deposit Management, LLC (the "<u>Escrow Agent</u>") to meet its obligations under the Resident Entrance Fee Escrow Order.[6]  The Escrow Agreement essentially provides that the Debtor, once it receives a potential Resident's deposit, will contact the Escrow Agent to "clear" the potential Resident under Federal "know your customer"

---

[6] The Department has approved the Escrow Agreement as required by the Act and the Resident Entrance Fee Escrow Order.

rules and regulations and, once such person is cleared by the Escrow Agent per the Escrow Agent's customer identification program, the Debtor shall thereafter remit the initial deposit, and if the potential Resident becomes a Resident, the balance of the required Entrance Fee paid by such party to the Escrow Agent to be held in the Escrow Account subject to the Escrow Agreement. Thereafter, to the extent that any of the Entrance Fees held in the Escrow Account are earned by the Debtor (as certain amounts of the Entrance Fee are non-refundable and are earned by and payable to Debtor per the Resident's residency agreement with the Debtor), Debtor may request on quarterly basis disbursements from the Escrow Account of such earned amounts, which earned disbursements must be approved by the Department. The other Entrance Fee amounts (not payable to Debtor) remain in the Escrow Account as property of the respective Resident, to be released and disbursed back to the Resident when appropriate per the Escrow Agreement and the Resident's residency agreement with the Debtor.

17.     Until earned and disbursed to the Debtor, the funds in the Escrow Account are held for and are the property of the Resident for whose account the funds were deposited and are not, consequently, funds of the Debtor and the Escrow Agreement specifically provides that such funds are not subject to a lien or charge by the Escrow Agent or any of Debtor's creditor's claims.

18.     As part of the relief requested in this Motion, particularly as the Escrowed Funds in the Escrow Account are not funds of the Debtor until earned, payable to and received by Debtor, and as Debtor must maintain the Escrow Account under the Escrow Agreement to maintain registration with the Department, Debtor requests that the Court authorize the Debtor, the Department and the Escrow Agent to continue to operate under the terms of the Escrow Agreement post-petition in the normal, ordinary and customary manner under the Escrow Agreement (which implements the Resident Entrance Fee Escrow Order), including payment of the Escrow Agent's fees and reimbursable expenses under the Escrow Agreement.  The proposed Interim Order provides for the granting and implementation of this relief and the proposed Final Order will provide for same.

**F.     Merrill Lynch Accounts**

19.     With respect to the ML Accounts, Debtor requests that such accounts remain in place and the Debtor be authorized to continue to use the funds and other assets in such accounts for the purposes for which such accounts were established consistent with the customary and ordinary practices existing pre-petition with respect to such ML Accounts.

**G.     Cash Management System and Related Business Forms are Common Business Practices**

20.     The Debtor's Cash Management System is similar to those commonly employed by enterprises of similar size and complexity.  The Cash Management

System permits the Debtor to accurately monitor cash availability at all times, track and manage the collection and transfer of funds from a central position, and thereby reduce administrative burdens and expenses while increasing interest income.

21.     Before the Petition Date, in connection with its Cash Management System, the Debtor also used in the ordinary course of its business numerous business forms, including checks, deposit slips, letterhead, contracts, purchase orders, and invoices.  Because the Debtor has the ability to print checks on an as-needed basis, the Debtor will be able to utilize existing check stock and will include the language "Debtor-in-Possession" and Bankruptcy Case number on all post-Petition checks as required by the U.S. Trustee Guidelines.  Soon after the filing, Debtor anticipates it will take fifteen (15) business days to convert its check printing program to include the "Debtor-in-Possession" and case number information on its checks.

**H.     <u>Restricted Accounts and Restricted Funds</u>**

22.     Debtor's Restricted Accounts consist of the following accounts:

  a.     **Resident Clubs Account (Comerica Bank Account #1028);**
  b.     **Benevolent Care, Scholarship and Quality of Life Donations Account (Comerica Account #1135);**
  c.     **Lease Security Deposit Account (Comerica Account #8738);**
  d.     **Charitable Gift Annuities Account (CGA) (Merrill Lynch Account #2119); and**
  e.     **Endowed Scholarship Account (Merrill Lynch Account #2117).**

14

23.     The Restricted Accounts are held under the name of the Debtor. However, the funds in the Restricted Accounts are funds of the Debtor's Residents or are gifts, donations and/or bequests made to the Debtor for certain specific and restricted purposes, such as for use by the Residents for their activities at the Facility or for benevolent purposes to benefit the Debtor's Residents in conformity with the Debtor's charitable purposes.

24.     The Restricted Accounts and the Restricted Funds are not included in the Bond Trustee's Collateral and thus will not be subject to the Interim Order or the Final Order with respect to Debtor's use of cash collateral and Budgets associated with same. Debtor has proposed in this Motion that Debtor be authorized to maintain and continue to use the Restricted Accounts and the Restricted Funds in the ordinary and customary course for the purposes for which the Restricted Accounts were established and for which the Restricted Funds are held.

25.     As part of the relief requested by Debtor herein, Debtor specifically requests that the Court authorize Debtor to continue to operate the Restricted Accounts in the ordinary course of business such that any checks or other disbursements made prepetition shall be honored and cleared postpetition by the Banks maintaining such Restricted Accounts. This relief is appropriate as the Restricted Funds are not assets of the Debtor's Estate.

## RELIEF REQUESTED

26.     By this Motion, the Debtor seeks entry of an Interim Order, which is subject to the terms and conditions of the Interim Cash Collateral Order, substantially in the form of **Exhibit C** attached hereto, (a) authorizing, but not directing, the Debtor to continue to maintain and use the existing Cash Management System, including maintenance of existing accounts, checks, and business forms; (b) granting the Debtor a waiver of certain account and related requirements of the U.S. Trustee to the extent that such requirements are inconsistent with the Debtor's practices under the existing Cash Management System or other actions described herein; and (c) authorizing, but not directing, the Debtor to continue to maintain and use the existing deposit practices notwithstanding the provisions of Bankruptcy Code section 345(b).  The Debtor also requests that the Court authorize and direct all banks with which the Debtor maintains accounts to continue to maintain, service, and administer such accounts in the ordinary course of business (including deducting and paying any customary fees and costs associated with such accounts from the applicable account) and authorize third-party administrators and providers to prepare and issue payments on behalf of the Debtor.  Debtor also seeks entry of an order providing for the relief requested herein on a final basis (a "Final Order").  Debtor will submit a proposed Final Order on this Motion as directed by the Court prior to a Final Hearing on the Motion.

16

## BASIS FOR RELIEF REQUESTED

**A.** **The Debtor Should Be Authorized to Continue to Use Its Existing Cash Management System and the Debtor's Existing Accounts**

27.     The Cash Management System is an ordinary course, customary, and essential business practice, the continued use of which is essential to the Debtor's business operations during the Chapter 11 Case and the goal of maximizing value for the benefit of all parties in interest.  To require the Debtor to adopt a new cash management system at this early and critical stage would be expensive, impose needless administrative burdens, and cause undue disruption.  Any disruption in the collection of funds as currently implemented would adversely (and perhaps irreparably) affect the Debtor's ability to maximize estate value.  Moreover, such a disruption would be wholly unnecessary because the Cash Management System provides a valuable and efficient means for the Debtor to address cash management requirements and, to the best of the Debtor's knowledge, the Bank Accounts over which the Debtor has control are held at financially stable institutions approved by the U.S. Trustee (*i.e.,* Comerica Bank).  For the aforementioned reasons, maintaining the existing Cash Management System without disruption is in the best interests of the Debtor, the estate, and all interested parties.  Accordingly, the Debtor requests that it be allowed to maintain and continue to use the Cash Management System, including maintenance of its existing Bank Accounts.

28.     As part of the relief requested herein, and to ensure that the transition into chapter 11 is as smooth as possible, the Debtor seeks an order, which is subject to the terms and conditions of the Interim Cash Collateral Order, authorizing the Debtor to (a) maintain and continue to use the Debtor's accounts listed on **Exhibit A** hereto, in the same manner and with the same account numbers, styles, and document forms as are currently employed;[7] (b) deposit funds in and withdraw funds from the Bank Accounts and the ML Accounts in the ordinary course by all usual means, including checks, wire transfers, drafts, and electronic fund transfers or other items presented, issued, or drawn on the Bank Accounts and the ML Accounts; (c) pay ordinary course bank fees in connection with the Bank Accounts and the ML Accounts, including prepetition fees; (d) perform the obligations under the documents and agreements governing the Bank Accounts and the ML Accounts; and (e) for all purposes, treat the Bank Accounts and the ML Accounts as accounts of the Debtor in its capacity as debtor-in-possession.

29.     If the relief requested herein is granted, subject to the terms of conditions of the Interim Cash Collateral Order, the Debtor will implement appropriate mechanisms to ensure that no payments will be made on any debts incurred by the Debtor prior to the Petition Date, other than those authorized by this

---

[7] As noted herein, the Debtor has the ability to, and will, include the "Debtor-in-Possession" and Bankruptcy Case number on checks issued post-petition.

Court. To prevent the possible inadvertent payment of prepetition claims against the Debtor, except those otherwise authorized by the Court, the Debtor will stop payment on all uncleared prepetition checks and Debtor will work closely with the institutions at which the Bank Accounts and ML Accounts are maintained (each a "Bank" and, collectively, the "Banks") and the Debtor's advisors to ensure appropriate procedures are in place to prevent checks issued by the Debtor prepetition from being honored absent this Court's approval and to ensure that no third-party with automatic debit capabilities is able to debit amounts attributable to the Debtor's prepetition obligations unless approved by the Court.

30.   The Debtor requests that no Bank that implements such handling procedures and then honors a prepetition check or other item drawn on any account that is the subject of this Motion (a) at the direction of the Debtor to honor such prepetition check or item, (b) in a good faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as a result of a good faith error made despite implementation of reasonable item handling procedures, be deemed to be liable to the Debtor or to the estate on account of such prepetition check or other item being honored postpetition. The Debtor believes that such flexibility accorded the Banks is necessary to induce the Banks to continue providing the necessary cash management services to the Debtor.

31. The Debtor further requests that the Banks be authorized to deduct from the appropriate Bank Accounts the Banks' fees and expenses (the "Bank Fees and Expenses"), and that no liens on any Bank Accounts take priority over the Bank Fees and Expenses (including those liens granted to the Bond Trustee under the Interim Cash Collateral Order or otherwise), except as set forth in any deposit agreements between the Debtor and the Banks.

32. Additionally, in each instance in which the Debtor holds one or more accounts at a bank that is a party to a Uniform Depository Agreement with the U.S. Trustee, within fifteen (15) days of the date of entry of an interim or final order granting this Motion, the Debtor will (a) contact such bank, (b) provide such bank with the Debtor's employer identification numbers, and (c) identify each of the accounts held at such bank as held by a debtor-in-possession in a bankruptcy case. If the Debtor holds one or more accounts at a bank that is not a party to a Uniform Depository Agreement with the U.S. Trustee, the Debtor will use good faith efforts to cause such bank to execute a Uniform Depository Agreement in a form prescribed by the Office of the U.S. Trustee within forty-five (45) days of the date of entry of an interim or final order granting this Motion.

33. In the interest of maintaining the continued and efficient operation of the Cash Management System during the pendency of the Chapter 11 Case, the Debtor requests that all Banks be authorized and directed to continue to administer,

service, and maintain the Bank Accounts and the ML Accounts as such accounts were administered, serviced, and maintained prepetition, without interruption and in the ordinary course (including making deductions for Bank Fees and Expenses), and, when requested by the Debtor in its sole discretion, to honor any and all checks, drafts, wires, electronic fund transfers, or other items presented, issued, or drawn on the Bank Accounts or the ML Accounts on account of a claim arising on or after the Petition Date.

34.     The Debtor further requests that it be authorized to implement such reasonable changes to the Cash Management System as the Debtor may deem necessary or appropriate, including, without limitation, closing any of the Bank Accounts or ML Accounts and opening any additional bank accounts following the Petition Date (the "New Accounts") wherever the Debtor deems that such accounts are needed or are appropriate, subject to prior notice to the Bond Trustee and U.S. Trustee.  The Debtor requests that the relief sought by this Motion extend to any New Accounts and that any order approving this Motion provide that the New Accounts are deemed to be Bank Accounts or ML Accounts that are similarly subject to the rights, obligations, and relief granted in such order.  The Debtor will provide the U.S. Trustee and Bond Trustee with prompt notice of any Bank Accounts or ML Accounts that are closed or New Accounts that are opened.  In furtherance of the foregoing, the Debtor also requests that the relevant banks be authorized to honor

the Debtor's requests to open or close (as the case may be) such Bank Account(s), or ML Accounts or New Account(s).

## B. The Debtor Should Be Granted Authority to Continue to Use Existing Checks and Business Forms

35. To minimize expenses to the estate, the Debtor seeks authorization to continue using checks substantially in the form existing immediately prior to the Petition Date, but will add a reference to the Debtor's status as a debtor in possession and case number. The Debtor also seeks authority to use all correspondence and other business forms (including, without limitation, letterhead, purchase orders, and invoices) without reference to the Debtor's status as a debtor in possession.[8]

36. Changing the Debtor's correspondence and other business forms would be expensive, unnecessary, and burdensome to the Debtor's estate. Further, such changes would disrupt the Debtor's business operations and would not confer any benefit upon parties that deal with the Debtor, particularly as all of Debtor's lenders, vendors and residents, as well as other parties in interest will receive notice of Debtor's bankruptcy case. For these reasons, the Debtor requests that it be

---

[8] Although the operating guidelines established for a debtor in possession by the U.S. Trustee would require the Debtor to obtain and use new checks bearing the "Debtor in Possession" designation, the Debtor does not believe that such guidelines impose any limitation on the Debtor's other correspondence and business forms. Nevertheless, out of an abundance of caution, the Debtor seeks explicit authority to continue using existing correspondence and business forms without reference to the Debtor's status as a debtor in possession.

authorized to use existing correspondence and other business forms without being required to place the label "Debtor-in-Possession" on any of the foregoing.

**C.** **The Debtor Should Be Granted a Waiver of Certain Requirements of the U.S. Trustee**

37.     The Debtor further requests, pursuant to Bankruptcy Code sections 105(a) and 363, that this Court grant a waiver of certain bank account and related requirements of the U.S. Trustee to the extent that such requirements are inconsistent with (a) the Debtor's existing practices under the Cash Management System or (b) any action taken by the Debtor in accordance with any order granting this Motion or any other order entered in the Chapter 11 Case.  To supervise the administration of chapter 11 cases, the U.S. Trustee has established certain operating guidelines for debtors in possession.   These requirements (the "UST Requirements") require chapter 11 debtors to, among other things: (a) close all existing bank accounts and open new debtor in possession bank accounts; (b) establish one debtor-in-possession account for all estate monies required for the payment of taxes, including payroll taxes; (c) maintain a separate debtor in possession account for cash collateral; and (d) obtain checks for all debtor in possession accounts that bear (i) the designation "Debtor-In-Possession," (ii) the bankruptcy case number, and (iii) the type of account.  The UST Requirements are designed to clearly demarcate prepetition transactions and operations from postpetition transactions and operations, and to prevent the inadvertent postpetition payment of prepetition claims.  As set forth

above, the Debtor submits that (a) it is able to work with the Banks to ensure that this goal of separation between the prepetition and postpetition periods is observed and (b) enforcement of certain of these UST Requirements would disrupt the Debtor's operations and impose an unnecessary financial burden on the Debtor's estates.

38.     It would be onerous for the Debtor to meet the UST Requirements to close all existing accounts and open new debtor in possession accounts. Indeed, this requirement would unnecessarily inconvenience the Debtor and would likely severely harm the Debtor as it would disrupt the receipt of revenues from Residents, insurers, Medicare and Medicaid as the bank account changes were implemented and recognized by such payors. Further, it would be unnecessary and inefficient to require the Debtor to abide by the UST Requirements to establish specific debtor in possession accounts for tax payments (including payroll taxes) and to deposit to such accounts sufficient funds to pay any tax liability (when incurred) associated with the Debtor's payroll and other tax obligations. The Debtor can pay tax obligations most efficiently from the existing Bank Accounts in accordance with the existing practices (including funding payroll and other taxes) and the U.S. Trustee will have the ability to monitor the flow of funds into and out of such accounts via Debtor's monthly operating reports or specific requests for such information (which Debtor will

provide). The creation of new debtor in possession accounts designated solely for tax obligations would be unnecessarily burdensome.

39.     In addition, it is unnecessary to require the Debtor to abide by the UST Requirement to establish specific debtor in possession accounts for cash collateral. As set forth in the Debtor's cash collateral motion, the Debtor has provided significant safeguards to ensure that parties with interests in the Debtor's cash collateral are adequately protected, the Interim Cash Collateral Order is a negotiated stipulation between the Debtor and the Bond Trustee regarding the Debtor's use of cash collateral, and the Debtor has ensured that such other parties have been provided with notice of the proposed use of such cash collateral.

40.     Courts have waived the investment and deposit requirements set forth in section 345 of the Bankruptcy Code and have authorized the debtors' continued use of investment and deposit guidelines that do not strictly comply with section 345 of the Bankruptcy Code. *See, e.g., Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1114 (5th Cir. 995) (finding that the cash management system allows the debtor "to administer more efficiently and effectively its financial operations and assets"); *Official Comm. of Unsecured Creditors of the Columbia Gas Transmission Corp. v. Columbia Gas Sys. Inc. (In re Columbia Gas Sys., Inc.)*, 997 F.2d 1039, 1061 (3d Cir. 1993) (finding that a requirement to maintain all accounts separately "would be a huge administrative burden and economically

inefficient"); *In re Fairview Ministries, Inc.*, No. 11-4386-SPS (Bankr. N.D. Ill. Feb. 8, 2011 [Dkt. 38]); *In re Erickson Retirement Cmtys., LLC*, No. 09-37010-SGJ (Bankr. N.D. Tex. Nov. 2, 2009 [Dkt. 239]). Similar authorization is appropriate in this Chapter 11 Case.

**D.      The Debtor Should Be Authorized to Continue Its Deposit Practices**

41.      As part of the Cash Management System, the Debtor routinely deposits funds into the Bank Accounts and the ML Accounts (the "Deposit Practices"). The Debtor requests (a) authorization to continue to deposit funds in accordance with existing practices under the Cash Management System, subject to any reasonable changes the Debtor may implement to the Cash Management System, with prior notice to the Bond Trustee and U.S. Trustee, and (ii) a waiver of the deposit requirements of Bankruptcy Code section 345(b), on an interim basis, to the extent that such requirements are inconsistent with the Deposit Practices. For the avoidance of doubt, to the extent any of the Bank Accounts or ML Accounts may be classified as investment accounts, or to the extent any of the Debtor's routine deposits into Bank Accounts or ML Accounts may be regarded as investment activity, the Debtor hereby seeks authorization to continue to deposit funds into such Bank Accounts or ML Accounts in accordance with existing practices, notwithstanding the requirements of Bankruptcy Code section 345(b).

26

## APPLICABLE AUTHORITY

**A.**     **The Bankruptcy Code Permits the Debtor to Continue to Use the Cash Management System and the Debtor's Accounts**

42.     Bankruptcy Code section 363(c)(1) authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) is to provide a debtor in possession "flexibility to engage in ordinary transactions" required to operate its business without unneeded oversight by its creditors or the court. *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets."); *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 796 (Bankr. D. Del. 2007). The authority granted by Bankruptcy Code section 363(c)(1) extends to a debtor in possession's continued use of its customary cash management system and, thus, supports the relief requested. *See, e.g., Charter Co. v. Prudential Ins. Co. Am. (In re Charter Co.),* 778 F.2d 617, 621 (11th Cir. 1985) (indicating that an order authorizing the debtor to employ a cash management system that was "usual and customary in the past" was "entirely consistent" with Bankruptcy Code section 363(c)(1)); *Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996) (included within the scope

27

of Bankruptcy Code section 363(c) is a debtor's ability to continue "routine transactions" necessitated by a debtor's cash management system).

43.     Moreover, Bankruptcy Code section 364(a) authorizes a debtor in possession to obtain unsecured credit and incur unsecured debt in the ordinary course of business without notice and a hearing, which further supports the relief requested and provides the Debtor with the ability, to the extent necessary, to obtain unsecured credit and incur unsecured debt in the ordinary operation of the Cash Management System, including payment of bank fees and expenses. *See* 11 U.S.C. § 364(a).

44.     Bankruptcy Code section 105(a) also authorizes this Court to permit the Debtor to continue to use the Cash Management System, including maintenance of the existing Bank Accounts and ML Accounts. The continuation of the Cash Management System, including the continued use of the Bank Accounts and ML Accounts, subject to the terms of conditions of the Interim Cash Collateral Order, is essential to the efficient administration of the Chapter 11 Case and to the Debtor's efforts to maximize estate value for all parties in interest. Therefore, the relief requested is appropriate under Bankruptcy Code section 105(a).

**B.     This Court Should Waive the UST Requirements to Permit the Debtor to Continue to Use the Cash Management System**

45.     The continuation of the Cash Management System, as requested in this Motion, is consistent with the Debtor's authority to use property of the estate in the ordinary course of business pursuant to Bankruptcy Code section 363(c)(1).

28

Accordingly, this Court should grant the Debtor a waiver of the UST Requirements to the extent that such requirements conflict with the Debtor's existing practices under its Cash Management System or any action taken by the Debtor in accordance with any order granting this Motion or any other order entered in the Chapter 11 Case.

46.     Moreover, compelling the Debtor to alter the current cash management practices and to modify the Cash Management System to comply with the UST Requirements would risk severe disruption to the Debtor's business and jeopardize the Debtor's ability to maximize value for all parties in interest. *Cf. In re Gaylord Container Corp*., 1993 WL 188671, at *3, 13 (E.D. La. 1993) (adopting the bankruptcy court's findings of fact and conclusions of law, which included a finding that the banking requirements of the Office of the United States Trustee for the District of Louisiana "represent a substantial burden on any debtor and, in this case, resulted in the incurrence of extraordinary unquantifiable costs by [the debtor] associated with the confusion engendered by the implementation of new policies and procedures to comply with such rules, and due to the substantial restrictions that such rules placed on the debtor's treasury functions"). This factor also justifies the relief that the Debtor is seeking. *See* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.").

**C.** **This Court Has the Authority to Permit the Debtor to Continue Deposit Practices**

47.     Bankruptcy Code section 345(a) authorizes a debtor in possession to make deposits of estate money in a manner "as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit." 11 U.S.C. § 345(a).  If a deposit is not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," Bankruptcy Code section 345(b) provides that the debtor must require that the entity with which the deposit is made obtain a bond in favor of the United States that is secured by the undertaking of an adequate corporate surety.  *See* 11 U.S.C. § 345(b).  This Court has discretion to waive the requirements of Bankruptcy Code section 345(b) "for cause." 11 U.S.C. § 345(b); *see also In re Service Merchandise Co., Inc.,* 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

48.     The Debtor respectfully requests that this Court (a) authorize the Debtor to continue to make deposits in accordance with the Deposit Practices; and (b) exercise discretion to waive the requirements of Bankruptcy Code section 345(b), to the extent that such requirements are inconsistent with the Debtor's deposit practices.  The Debtor submits that the circumstances of this Chapter 11 Case warrant such relief.

**D.** **Bankruptcy Rule 6003 Has Been Satisfied and Bankruptcy Rule 6004 Should Be Waived**

49.     Certain isolated aspects of the relief requested herein may, if granted, be subject to Bankruptcy Rule 6003.  Pursuant to Bankruptcy Rule 6003, a court may grant such relief if it is necessary to avoid immediate and irreparable harm.  The Debtor submits that facts set forth herein demonstrate that the relief requested is necessary to avoid immediate and irreparable harm to the Debtor and, thus, Bankruptcy Rule 6003 has been satisfied.

50.     Additionally, to the extent that any aspect of the relief sought herein constitutes a use of property under Bankruptcy Code section 363(b), the Debtor seeks a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h).  As described above, the relief that the Debtor seeks in this Motion is immediately necessary in order for the Debtor to be able to continue to operate its businesses and preserve the value of the estate.  The Debtor thus submits that the requested waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h) is appropriate.

## RESERVATION OF RIGHTS

51.     Nothing contained herein is intended or should be construed as an admission of the validity of any claim against the Debtor; a waiver of the Debtor's rights to dispute any claim; or an approval, assumption, or rejection of any agreement, contract, or lease under Bankruptcy Code section 365.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's

order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtor's rights to dispute such claim subsequently.

## NOTICE

52.     Notice of the Motion has been provided to: (a) the Office of the United States Trustee for the Eastern District of Michigan; (b) all secured creditors, including counsel to UMB Bank, as Bond Trustee; (c) the Debtor's twenty (20) largest unsecured creditors; (d) parties who have filed UCC-1 Financing Statements with respect to Debtor and its assets; (e) the Michigan Corporations, Securities and Commercial Licensing Bureau of the Department of Licensing and Regulatory Affairs; (f) the U.S. Department of Health and Human Services' Centers for Medicare and Medicaid Services ("CMS"); (g) the United States Attorney's Office for the Eastern District of Michigan (Attention: Civil Division); (h) the Michigan Department of Health and Human Services; (i) United States Small Business Administration; (j) the Banks, other financial institutions, and other parties in interest directly involved in the Debtors' Cash Management System as described in the Cash Management Motion; and (k) any party filing a notice of appearance in this Chapter 11 Case.  The Debtor submits that, in light of the nature of the relief requested, no further notice of this Motion is required.

## <u>NO PRIOR REQUEST</u>

53.    No prior request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtor respectfully requests entry of an Interim Order, substantially in the form attached hereto as **Exhibit C,** and thereafter a Final Order on this Motion granting the relief requested herein and granting such other relief as is just and proper.

Dated: October 28, 2020
      Detroit, Michigan

**DYKEMA GOSSETT PLLC**

By: */s/ Sheryl L.  Toby*
    Sheryl L. Toby (P39114)
    Jong-Ju Chang (P70584)
    39577 Woodward Avenue, Suite 300
    Bloomfield Hills, Michigan 48304
    (248) 203-0700 / Fax (248) 203-0763
    SToby@dykema.com
    JChang@dykema.com

    and

    Patrick L. Huffstickler
    Texas Bar No. 10199250
    Danielle N. Rushing
    Texas Bar No. 24086961
    112 East Pecan Street, Suite 1800
    San Antonio, Texas 78205
    (210) 554-5500 / Fax (210) 226-8395
    PHuffstickler@dykema.com
    DRushing@dykema.com

    ***PROPOSED COUNSEL FOR DEBTOR AND DEBTOR-IN-POSSESSION***

# Exhibit A

## DESCRIPTION OF BANK ACCOUNTS

| Bank Name and Address | Account Number (Last Four Digits) | Account Type |
|---|---|---|
| Comerica Bank PO Box 75000, Detroit, MI 48275-8163 | 0518 | Operating Account |
| Comerica Bank PO Box 75000, Detroit, MI 48275-8163 | 1218 | Payroll Account (Zero Balance Account) |
| Comerica Bank PO Box 75000, Detroit, MI 48275-8163 | 6701 | Credit Card Collateral Account (a Money Market Account) |
| Comerica Bank PO Box 75000, Detroit, MI 48275-8163 | 1028 | Resident Clubs Account |
| Comerica Bank PO Box 75000, Detroit, MI 48275-8163 | 1135 | Benevolent Care, Scholarship and Quality of Life Donations Account |
| Comerica Bank PO Box 75000, Detroit, MI 48275-8163 | 8738 | Lease Security Deposit Account |
| Comerica Bank PO Box 75000, Detroit, MI 48275-8163 | 1010 | Pre-Occupancy Deposit Account |
| Comerica Bank PO Box 75000, Detroit, MI 48275-8163 | 9459 | Entrance Fee Escrow Account |

| | | |
|---|---|---|
| Merrill Lynch 2600 W. Big Beaver Road 5th Floor, Troy, MI 48084 | 2175 | Marketable Securities Account (Inactive) |
| Merrill Lynch 2600 W. Big Beaver Road 5th Floor, Troy, MI 48084 | 2157 | Marketable Securities Account/Money Market |
| Merrill Lynch 2600 W. Big Beaver Road 5th Floor, Troy, MI 48084 | 2119 | Charitable Gift Annuities Account (CGA) |
| Merrill Lynch 2600 W. Big Beaver Road 5th Floor, Troy, MI 48084 | 2117 | Endowed Scholarship Account |

Exhibit B
Cash Management
System

Operating Disbursements, Payroll Taxes and Employee Deductions and Benefits
Patient (including Government, Insurance, and Self-Pay) Receipts, Earned Portion of Entrance Fees
Comerica Bank (Credit Card Collateral Account – Money Market Account) Acct No. 6701
Comerica Bank (Operating Account) Acct No. - 0518
Comerica Bank (Payroll Account – Zero Balance Account) Acct No. – 1218
Comerica Bank (Benevolent Care, Scholarship and Quality of Resident Life Donations Account) Acct No. – 1135 (Restricted)
Comerica Bank (Resident Clubs' Account) Acct No. – 1028 (Resident Restricted)
Comerica Bank (Lease Security Deposit Account) Acct No. - 8738
Charitable giving and reimbursements to Debtor for expenses made on its behalf
Donations from resident or families of residents
Security deposits from renters



**Exhibit C**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

IN RE:                                Case No. 20-51066-MAR

HENRY FORD VILLAGE, INC.,              Chapter 11

      Debtor.                          Honorable Mark A. Randon

_____

## INTERIM ORDER AUTHORIZING (I) CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, (II) MAINTENANCE OF EXISTING BANK ACCOUNTS, (III) CONTINUED USE OF EXISTING BUSINESS FORMS, AND (IV) MAINTENANCE OF EXISTING DEPOSIT PRACTICES

Upon the motion (the "Motion")[1] of the Debtor for entry of an Interim Order (this "Order") and a Final Order (i) authorizing, but not directing, the Debtor to continue to maintain and use the existing Cash Management System, including maintenance of existing bank accounts, checks, and business forms; (ii) granting the Debtor a waiver of certain bank account and related requirements of the U.S. Trustee to the extent that such requirements are inconsistent with the Debtor's practices under Debtor's existing Cash Management System or other actions described in the Motion or this Interim Order; and (iii) authorizing, but not directing, the Debtor to continue to maintain and use the existing deposit practices notwithstanding the provisions of Bankruptcy Code section 345(b); the Court having reviewed the

_____

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

120951.000001 4830-4861-1278.3             1

Motion and the First Day Declaration; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. 157 and §§ 1334(b); and the Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court has the constitutional authority to enter interim and final orders on the Motion; and the Court having found that venue of this case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtor, the estate, creditors, and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefore, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.     The Motion is GRANTED on an interim basis, as set forth herein.

2.     The Debtor is authorized to continue to use Debtor's existing Cash Management System.  In connection with the ongoing use of the Cash Management System, the Debtor shall continue to maintain records with respect to all transfers of funds so that all of Debtor's transactions may be readily ascertained, traced, and recorded properly and so that the Debtor shall be readily able to distinguish between prepetition and postpetition transactions.

3. The Debtor is authorized to (a) continue to use any and all of the Debtor's Bank Accounts in existence as of the Petition Date, including, but not limited to, the Bank Accounts and other financial accounts identified on Exhibit A to the Motion, in the same manner and with the same account numbers, styles, and document forms as are currently employed; (b) deposit funds in and withdraw funds from the Bank Accounts in the ordinary course by all usual means, including checks, wire transfers, drafts, and electronic fund transfers or other items presented, issued, or drawn on the Bank Accounts; (c) pay ordinary course bank fees in connection with the Bank Accounts, including any fees arising prior to the Petition Date; (d) perform the obligations under the documents and agreements governing the Bank Accounts; and (e) for all purposes, treat the Bank Accounts as accounts of the Debtor in its capacity as debtor in possession.

4. As Comerica Bank, where the Debtor holds the Bank Accounts, is a party to a Uniform Depository Agreement with the U.S. Trustee, within fifteen (15) days of entry of this Interim Order, the Debtor shall (a) contact Comerica, (b) provide Comerica with the Debtor's employer identification number, and (c) identify each of its bank accounts held at Comerica as being held by a debtor in possession in a bankruptcy case. To the extent that Debtor holds an account at a financial institution that is not a party to a Uniform Depository Agreement with the U.S. Trustee, the Debtor shall use good faith efforts to cause the banks to execute a Uniform

Depository Agreement in a form prescribed by the U.S. Trustee within forty-five (45) days of the date of this Interim Order. The U.S. Trustee's rights to seek further relief from this Court on notice in the event that an aforementioned institution is unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

5.     The Debtor is authorized to (a) continue to use any and all of the Debtor's ML Accounts in existence as of the Petition Date, including, but not limited to, the ML Accounts identified on Exhibit A to the Motion, in the same manner and with the same account numbers, styles, and document forms as are currently employed; (b) deposit funds in and withdraw funds from the ML Accounts in the ordinary course by all usual means, including checks, wire transfers, drafts, and electronic fund transfers or other items presented, issued, or drawn on the ML Accounts; (c) pay ordinary course account fees in connection with the ML Accounts, including any fees arising prior to the Petition Date; (d) perform the obligations under the documents and agreements governing the ML Accounts; and (e) for all purposes, treat the ML Accounts as accounts of the Debtor in its capacity as debtor in possession. Debtor is authorized and shall continue to maintain and use the funds in the ML Accounts for the purposes for which such ML Accounts were established, consistent with the existing, customary and ordinary use of such funds for such purposes, in the ordinary course of business.

6.     The Debtor is authorized to continue to use existing correspondence and other business forms without alteration or change and without the designation "Debtor in Possession" or a bankruptcy case number imprinted upon them. Notwithstanding the foregoing, the Debtor shall, when printing checks, require the designation "Debtor in Possession" and the corresponding bankruptcy case number to be imprinted on all post-petition checks starting no later than fifteen (15) business days of the date of entry of this Interim Order.

7.     The Debtor is authorized to continue to utilize all third-party providers necessary for the administration of the Cash Management System.  In addition, the Debtor is authorized, but not directed, to pay all prepetition or postpetition amounts due to such third-party providers.

8.     Subject to the terms of this Interim Order, all Banks at which the Bank Accounts are maintained are authorized and directed to continue to administer, service, and maintain the Debtor's Bank Accounts as such accounts were administered, serviced, and maintained prepetition, without interruption and in the ordinary course (including making deductions for bank fees and expenses), and, when requested by the Debtor in its sole discretion, to honor any and all checks, drafts, wires, electronic fund transfers, or other items presented, issued, or drawn on the Debtor's Bank Accounts on account of a claim against the Debtor arising on or after the Petition Date; provided, however, that unless otherwise ordered by the

Court, no checks, drafts, electronic funds transfers (excluding any electronic funds transfer that the Banks are obligated to settle), or other items presented, issued, or drawn on the Bank Accounts on account of a claim against the Debtor arising prior to the Petition Date shall be honored.

9.    Notwithstanding anything to the contrary contained within this Interim Order, Debtor is specifically authorized to continue to use the Restricted Accounts and the Restricted Funds therein in the ordinary and customary course for the purposes for which the Restricted Accounts were established and the Restricted Funds held.  Debtor is specifically authorized in this regard to continue to operate the Restricted Accounts in the ordinary course of business such that any checks or other disbursements from the Restricted Accounts prepetition may and shall be honored and cleared postpetition by the Banks maintaining such Restricted Accounts.

10.    Each Bank shall implement reasonable handling procedures designed to effectuate the terms of this Interim Order.  No Bank that implements such handling procedures and then honors a prepetition check or item drawn on any account that is the subject of this Interim Order (a) at the direction of the Debtor to honor such prepetition check or item, (b) in the good faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as a result of a good faith error made despite implementation of such handling procedures, shall be deemed to be

liable to the Debtor or the estate on account of such prepetition check or item being honored postpetition or otherwise in violation of this Interim Order.

11.     The Debtor is authorized to implement such reasonable changes, consistent with this Interim Order, to the Cash Management System as the Debtor may deem necessary or appropriate, including, without limitation, closing any of the Bank Accounts or opening any additional bank accounts following the Petition Date (the "New Accounts") wherever the Debtor deems that such accounts are needed or appropriate with five (5) business days prior notice to the Bond Trustee, the U.S. Trustee, and counsel for any official committee of unsecured creditors appointed in this Chapter 11 case ("Committee Counsel").  Notwithstanding the foregoing, the Debtor shall open such New Account(s) at banks that have executed a Uniform Depository Agreement with the U.S. Trustee, or at such banks that are willing to immediately execute such an agreement, and any New Account that the Debtor opens in the United States shall be (a) at one of the existing Banks or with a bank that is organized under the laws of the United States of America or any state therein, and that is insured by the FDIC and (b) designated a "Debtor in Possession" account by the relevant bank.  The New Accounts are deemed to be Bank Accounts and are similarly subject to the rights, obligations, and relief granted in this Interim Order. Debtor's banks are authorized to honor the Debtor's requests to open or close (as the case may be) such Bank Account(s) or New Account(s).  In the event that the Debtor

opens or closes any Bank Accounts(s) or New Account(s), such opening or closing shall be timely indicated on the Debtor's monthly operating reports. Notice of such opening or closing shall be provided to the U.S. Trustee, Bond Trustee's counsel and Committee Counsel within five (5) business days after the opening or closing of the account in question.

12.     The Debtor is authorized to deposit funds in accordance with existing practices under the Cash Management System as in effect as of the Petition Date, subject to any reasonable changes to the Cash Management System that the Debtor may implement, upon prior notice to the Bond Trustee, the U.S. Trustee, and Committee Counsel, if any, consistent with this Interim Order, and, to the extent such practices are inconsistent with the requirements of Bankruptcy Code section 345(b), such requirements are waived on an interim basis. The Debtor shall have forty-five (45) days (or such additional time as the U.S. Trustee may agree to) from the Petition Date (the "Extension Period") within which to either come into compliance with Bankruptcy Code section 345(b) or to make such other arrangements as agreed with the U.S. Trustee, or ordered by the Court. Such extension is without prejudice to the Debtor's rights to request a further extension of the Extension Period or a final waiver of the requirements under Bankruptcy Code section 345(b).

13.    As part of the Cash Management System approved herein, Debtor is specifically authorized to maintain and continue to use its Procurement Cards with Comerica Bank under the *Commercial Card Program* agreements between Debtor and Comerica Bank (which allows Debtor's employees to purchase necessary goods and services with such Comerica Procurement Cards) and to maintain the Money Market and Credit Card Collateral Account (Acct. No. 6701) at Comerica Bank related to such program.

14.    As part of the Cash Management System approved herein, Debtor is specifically authorized and shall continue to operate its business with respect to deposits of prospective residents and Resident's Entrance Fees pursuant to the Resident Entrance Fee Escrow Order.  In that regarding, the Debtor, the Escrow Agent and the Department are authorized to continue to operate under the Escrow Agreement (including maintaining the Escrow Account) in the normal, ordinary and customary manner, including payment of the Escrow Agent's fees and reimbursement of expenses as provided for in the Escrow Agreement.  Debtor is also authorized to continue to maintain and make deposits to and withdrawals from its Lease Security Deposit Account (Acct. #8738) in the existing, customary and ordinary course of business.

15.    Neither the provisions contained herein, nor any actions or payments made by the Debtor pursuant to this Interim Order, shall be deemed an admission as

to the validity of the underlying obligation or a waiver of any rights the Debtor may have to dispute such obligation on any ground that applicable law permits.

16.     Notwithstanding any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or any Local Rule that might otherwise delay the effectiveness of this Interim Order, the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

17.     Notwithstanding anything to the contrary contained herein, any payment made or to be made under this Interim Order, except with respect to the Restricted Accounts and Restricted Funds, and any authorization contained in this Interim Order shall be in compliance with and subject to the terms and conditions of the Interim Cash Collateral Order.

18.     The final hearing (the "<u>Final Hearing</u>") to consider the entry of a final order granting the relief requested in the Motion shall be held on _____, 2020, at __:__ _.m. Prevailing Eastern Time. The Debtor will provide notice of this Interim Order and of the Final Hearing by first class mail to (a) the Office of the United States Trustee for the Eastern District of Michigan; (b) all secured creditors, including counsel to UMB Bank, as Bond Trustee; (c) the Debtor's twenty (20) largest unsecured creditors; (d) parties who have filed UCC-1 Financing Statements with respect to Debtor and its assets; (e) the Michigan Corporations, Securities and Commercial Licensing Bureau of the Department of Licensing and Regulatory

Affairs; (f) the U.S. Department of Health and Human Services' Centers for Medicare and Medicaid Services ("CMS"); (g) the United States Attorney's Office for the Eastern District of Michigan (Attention: Civil Division); (h) the Michigan Department of Health and Human Services; (i) United States Small Business Administration; (j) the Banks, other financial institutions, and other parties in interest directly involved in the Debtors' Cash Management System as described in the Cash Management Motion; and (k) any party filing a notice of appearance in this Chapter 11 Case.  Any party wishing to object to the relief requested in the Motion on a final basis shall file such objection with the Court, together with proof of service thereof, and serve such objection upon: (a) counsel for the Debtor; (b) counsel for the Bond Trustee; and (c) the Office of the United States Trustee, so as to be received no later than ___, 2020 at ___ p.m. Prevailing Eastern Time (the "Objection Deadline").  If no objections are filed and served on or before the Objection Deadline, at the Final Hearing, the Court may enter a final order permitting use of the Debtor's Cash Management System as proposed by the Debtor in the Motion on a final basis.

19.    Nothing in the Motion or this Interim Order, or the Debtor's payment of any amount pursuant to this Interim Order, shall be deemed or construed as: (a) an admission as to the validity of any claim or lien against the Debtor or the estate; (b) a waiver of the Debtor's rights to dispute any claim or lien; (c) an approval or

assumption of any agreement, contract, or lease pursuant to Bankruptcy Code section 365; (d) an admission of the priority status of any claim, whether under Bankruptcy Code section 503(b)(9) or otherwise; or (e) a modification of the Debtor's rights to seek relief under any section of the Bankruptcy Code on account of any amounts owed or paid to any third party.

20.     The Debtor is hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Interim Order.

21.     This Court shall retain jurisdiction over any and all matters arising from the interpretation, implementation, or enforcement of this Interim Order.