## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

IN RE:                               Case No. 20-51066-MAR

HENRY FORD VILLAGE, INC.,        Chapter 11

       Debtor.                    Honorable Mark A. Randon

_____/

## DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER UNDER 11 U.S.C. §§ 327(A) AND 328 AUTHORIZING THE EMPLOYMENT AND RETENTION OF RBC CAPITAL MARKETS, LLC AS <u>INVESTMENT BANKER FOR THE DEBTOR</u>

Henry Ford Village, Inc. ("<u>HFV</u>" or the "<u>Debtor</u>") hereby makes application for entry of an order pursuant to sections 327(a) and 328 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), authorizing the employment and retention of RBC Capital Markets, LLC ("<u>RBCCM</u>") to serve as the investment banker to the Debtor as of the date of filing (the "<u>Application</u>"). In support of the Application, the Debtor respectfully states as follows:

### <u>JURISDICTION AND VENUE</u>

1.     This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.     Venue for purposes of considering this application is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

1

## BACKGROUND

3.  The Debtor is a not for profit, non-stock corporation established to operate a continuing care retirement community located at 15101 Ford Road, Dearborn, Michigan 48126. The Debtor provides senior living services comprised of 853 independent living units, 96 assisted living unites and 89 skilled nursing beds (the "Facility").

4.  On October 28, 2020 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). The Debtor remains in possession of its assets and continues to operate and manage its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5.  Additional factual background regarding the Debtor, including its business operations, capital and debt structure, and the events leading to the filing of the Chapter 11 Case is set forth in the *Declaration of Chief Restructuring Officer in Support of the Debtor's Chapter 11 Petition and First Day Pleadings* (the "First Day Declaration," ECF No. 21) and is incorporated herein by reference.

## RELIEF REQUESTED

6.  By this Application, the Debtor seeks to employ and retain RBCCM as its investment banker, pursuant to sections 327(a) and 328 of the Bankruptcy

Code, as modified by section 1107(b) of the Bankruptcy Code, to perform the services set forth more fully herein.

7. The Debtor seeks to retain RBCCM on the terms and conditions set forth in its engagement letter (attached hereto as <u>Exhibit A</u> to the Declaration attached hereto and defined hereafter as the "<u>Engagement Letter</u>") that generally provides RBCCM a fee calculated as a fixed percentage of (i) 1.50% of the Par Amount of performing current-pay Restructured Bonds; or (ii) 2.25% of the Gross Sale Proceeds[1] in a sale transaction.

## RETENTION OF RBCCM

8. Considering the size and complexity of this Chapter 11 Case, the Debtor requires qualified and experienced investment bankers with the resources, capabilities and experience of RBCCM to assist it in its restructuring and pursuing the sale of the HFV Facility. Such sale is crucial to the Debtor's success in this Chapter 11 Case. As stated in the Declaration of David B. Fields attached hereto, RBCCM is a leading international investment banking and financial advisory firm that is part of the Royal Bank of Canada. RBCCM's healthcare group is led by senior-level bankers that possess significant healthcare and capital markets experience and who have been retained in over thirty (30) distressed transactions involving senior living communities in the last five (5) years. In addition, RBCCM

---

[1] Capitalized terms not otherwise defined in this Application shall have the same meaning ascribed to them in the Engagement Letter.

employs more than twenty (20) bankers with extensive experience in all facets of the healthcare industry, with three (3) bankers specializing in senior living. The Debtor selected RBCCM as its investment banker based upon, among other things, the Debtor's need to retain an investment banking firm to assist in the design, structuring and negotiation of a comprehensive restructuring strategy that includes a sale process and RBCCM's extensive experience in providing restructuring and investment banking services in complex chapter 11 cases.

## SCOPE OF SERVICES

9.     The Engagement Letter with RBCCM is attached to the Declaration of David B. Fields, the terms of which shall govern the Debtor's retention of RBCCM except as explicitly set forth herein or in the proposed order (attached as **Exhibit 1**). By separate application, the Debtor seeks to employ under 11 U.S.C. § 363, FTI Consulting Inc. ("FTI") to provide the Debtor a Chief Restructuring Officer, Chad J. Shandler, and certain additional personnel to support Mr. Shandler in his work as the Chief Restructuring Officer of the Debtor. (ECF No. 20.) The Debtor believes that the services FTI and RBCCM will provide will be complementary; RBCCM will work together with FTI and the Debtor's other professionals to minimize and avoid duplication of services.

10. RBCCM will provide investment banking services as RBCCM and the Debtor shall deem appropriate and feasible in order to manage and advise the Debtor in the course of the Chapter 11 Case, including but not limited to:

(a) assist the Debtor with the preparation of offering, marketing or other transaction materials concerning the Debtor and a transaction for distribution to creditors, acquirors and/or investors (collectively, the "Investors");

(b) implementation of the marketing plan with respect to a transaction as reasonably necessary;

(c) identification and solicitation of, and the review of proposals received from, the Investors and other third parties;

(d) negotiation of any transaction with the Investors and other third parties as necessary;

(e) provide advice and assistance to the Debtor in developing and seeking approval of any such transaction, including a plan of reorganization or liquidation (as the same may be modified from time to time, a "Plan"), which may be a plan under Chapter 11 of the Bankruptcy Code;

(f) participation in the negotiation with the creditors, Investors and other parties in interest with respect to a transaction;

(g)    participation, including providing expert advice and testimony, in depositions and hearings before the Bankruptcy Court with respect to the matters upon with RBCCM has provided advice, including, as relevant, coordinating with the Debtor's legal counsel with respect to testimony in connection therewith; and

(h)    rendering such other assistance as the Debtor's management or counsel may deem necessary consistent with the role of an investment banker.

## RBCCM'S DISINTERESTEDNESS

11.    To the best of the Debtor's knowledge, information, and belief RBCCM: (i) except as described in the concurrently filed Declaration of David B. Fields, has no connection with the Debtor, its creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, or the Office of the United States Trustee for the Eastern District of Michigan or any person employed in the Office of the United States Trustee for the Eastern District of Michigan; (ii) does not hold any interest adverse to the Debtor's estate; and (iii) believes it is a "disinterested person" as defined by section 101(14) of the Bankruptcy Code.

12.    Accordingly, the Debtor believes that RBCCM is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code.

6

13.    If any new material facts or relationships are discovered or arise, RBCCM will provide the Court with a supplemental declaration.

## **TERMS OF RETENTION**

14.    Subject to approval by the Court, the Debtor proposes to employ and retain RBCCM to serve as the Debtor's investment banker on the terms and conditions set forth in the Engagement Letter and this Application.

15.    In accordance with the terms of the Engagement Letter, among other things, RBCCM will receive a $25,000 monthly retainer and will be paid a success fee (the "Success Fee") calculated as a fixed percentage of (i) 1.50% of the Par Amount of performing current-pay Restructured Bonds; or (ii) 2.25% of the Gross Sale Proceeds in a sale transaction.  50% of the accrued monthly retainer amounts paid by the Debtor will be applied to the Success Fee.  Notwithstanding anything contained in the Engagement Letter to the contrary, RBCCM will provide ordinary course declarations and testimony to support the Transaction, but to the extent RBCCM professionals are required to provide testimony, prepare for and/or appear at a contested hearing relating to any services provided by RBCCM, beyond those supporting the Transaction, then RBCCM shall be entitled to be compensated on an hourly basis at $800.00 per hour as set forth in the Engagement Letter.

16.    In addition, RBCCM will seek reimbursement for the reasonable out-of-pocket expenses of RBCCM professionals incurred in connection with this

assignment, such as travel, lodging, third-party duplications, messenger, and other expenses. In addition, RBCCM will seek reimbursement for the reasonable fees and expenses of its counsel incurred in connection with the preparation and approval of this Application, and any fee applications. All fees and expenses due to RBCCM will be billed in accordance with any interim compensation orders entered by the Court, and the relevant sections of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules, and any other applicable procedures and orders of the Court.

17. <u>Indemnification</u>. As a material part of the consideration for which the RBCCM professionals have agreed to provide the services described herein, the Debtor has agreed to the indemnification provisions enumerated within the Engagement Letter, subject to the modifications in the proposed order (<u>Exhibit 1</u>). The Debtor believes such provisions are customary and reasonable for RBCCM's engagement. Unlike the market for other professionals that the Debtor may retain, such provisions are standard terms of the market for investment bankers. RBCCM and the Debtor believe that such provisions are comparable to those generally obtained by investment banking and financial advisory firms of similar stature to RBCCM and for comparable engagements, both in and out of court.

8

## FEES

18.      The Debtor understands that RBCCM intends to apply to the Court for allowance of compensation and reimbursement of expenses for its investment banking services in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, corresponding Local Rules, orders of the Court, and guidelines established by the U.S. Trustee regarding submission and approval of fee applications.

19.      Given the numerous issues that RBCCM may be required to address in the performance of their services, RBCCM's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services for engagements of this nature in an out-of-court context, as well as in chapter 11 cases, the Debtor submits that the fee arrangement set forth herein are reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

## BASIS FOR RELIEF

20.      The Debtor submits that the retention of RBCCM under the terms described herein is appropriate under sections 327(a), 328, and 1107(b) of the Bankruptcy Code.  Section 327(a) of the Bankruptcy Code empowers the trustee, with the Court's approval, to employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or

9

assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). Section 101(14) of the Bankruptcy Code defines a "disinterested person" as a person that:

    (a)    is not a creditor, an equity security holder, or an insider;

    (b)    is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

    (c)    does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason. 11 U.S.C. § 101(14).

21. Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person "on any reasonable terms and conditions of employment, including on a retainer . . ." 11 U.S.C. § 328(a). Debtor submits that the terms and conditions of RBCCM's retention as described herein, including the proposed compensation and indemnification terms, are reasonable and in keeping with the terms and conditions typical for engagements of this size and character. Since Debtor will require substantial assistance with the reorganization process, it is reasonable for Debtor to seek to employ and retain RBCCM to serve as its investment banker on the terms and conditions set forth herein.

10

22.    The Debtor submits that the Court's approval of the Debtor's retention of RBCCM in accordance with the terms and conditions of this Application is warranted.    First, the requirements of section 327 of the Bankruptcy Code are satisfied.    RBCCM has extensive experience and an excellent reputation in providing high-quality investment banking and financial advisory services with a specialty in continuing care retirement communities, both in and out of court.    The Debtor submits that RBCCM is well-qualified to provide its services to the Debtor in a cost-effective, efficient, and timely manner.

23.    Second, the Debtor believes that the fee structure is market-based, fair, and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.    The fee structure reflects RBCCM's commitment to the variable level of time and effort necessary to perform the services to be provided, its particular expertise, and the market prices for its services for engagements of this nature both out of court and in the chapter 11 context.    The ultimate benefit to the Debtor of RBCCM's services could not be measured merely by reference to the number of hours to be expended by RBCCM's professionals in the performance of such services.    Moreover, the fee structure takes into consideration RBCCM's anticipation that it will need to provide a substantial commitment of professional time and effort in order to perform its duties and because such commitment may foreclose other opportunities for RBCCM.    Further, the commitment required of

RBCCM and its professionals to render services to the Debtor may vary substantially from week to week or month to month, creating "peak load" issues for the firm.

24.     Thus, because of RBCCM's expertise, commitment of resources to this engagement to the exclusion of other possible employment, and the time that RBCCM has devoted and will continue to devote to this engagement, the Debtor requests that the Court approve the fee structure pursuant to section 328(a) of the Bankruptcy Code and that the Court evaluate RBCCM's final compensation and reimbursement of expenses in this Chapter 11 Case under the standards of section 328(a) of the Bankruptcy Code rather than under those of section 330 of the Bankruptcy Code, subject to RBCCM filing a fee application seeking approval of the payment of its fees and expenses.

25.     Also, it is not the general practice of investment banking firms— including RBCCM—to keep detailed time records similar to those customarily kept by attorneys.  RBCCM does not ordinarily maintain contemporaneous time records in tenth-of-an-hour increments or provide or conform to a schedule of hourly rates for its professionals.  The Debtor, therefore, respectfully requests that notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the U.S. Trustee Guidelines, the Local Rules, or other applicable orders of this Court, that RBCCM be permitted to present to the Court, in its monthly,

interim, and final fee applications, daily descriptions of the services provided on behalf of the Debtor, set forth for each individual who provided such services, kept in no more than three (3) hour increments with a reasonably detailed description of the services provided.

26.     RBCCM is discussing this Application and its supporting documentation with the United States Trustee for the Eastern District of Michigan. RBCCM intends to supplement this Application with additional information and disclosures on its related entities and connections thereto.   The filing of this Application is timely pursuant to Paragraph 15 of the *Interim Order (I) Authorizing the Debtor to Use Cash Collateral; (II) Granting Adequate Protection; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief* [ECF No. 40].

WHEREFORE, the Debtor respectfully requests that the Court grant the relief requested herein and grant the Debtor such other and further relief as may be just and proper.

Dated:  November 9, 2020          **DYKEMA GOSSETT PLLC**

By: *_/s/ Sheryl L. Toby_____*
    Sheryl L. Toby (P39114)
    Jong-Ju Chang (P70584)
    39577 Woodward Avenue, Suite 300
    Bloomfield Hills, Michigan 48304
    (248) 203-0700 / Fax (248) 203-0763
    SToby@dykema.com
    JChang@dykema.com

    and

    Patrick L. Huffstickler
    Texas Bar No. 10199250
    Danielle N. Rushing
    Texas Bar No. 24086961
    112 East Pecan Street, Suite 1800
    San Antonio, Texas 78205
    (210) 554-5500 / Fax (210) 226-8395
    PHuffstickler@dykema.com
    DRushing@dykema.com

    *PROPOSED COUNSEL FOR DEBTOR*
    *AND DEBTOR-IN-POSSESSION*

IN RE:                                          Case No. 20-51066-MAR

HENRY FORD VILLAGE, INC.,                        Chapter 11

    Debtor.                    Honorable Mark A. Randon

_____/

**DECLARATION OF DAVID B. FIELDS IN SUPPORT OF
DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER UNDER
11 U.S.C. §§ 327(A) AND 328 AUTHORIZING THE EMPLOYMENT
AND RETENTION OF RBC CAPITAL MARKETS, LLC AS
INVESTMENT BANKER FOR THE DEBTOR**

Pursuant to FED. R. BANKR. P. 2014(a), David B. Fields declares:

1.      I am a Managing Director in the Conshohocken Municipal Finance office of RBC Capital Markets, LLC ("RBCCM"), an investment banking and financial advisory firm.  I maintain an office at 300 Four Falls Road Corporate Center, Suite 760, 300 Conshohocken State Road, in West Conshohocken, Pennsylvania 19428.

2.      I make this declaration ("Declaration") in support of the application ("Application") of Henry Ford Village, Inc. ("Debtor" or "HFV" or the "Company"), in the above-captioned chapter 11 proceeding ("Chapter 11 Case"), which seeks an order authorizing the retention of RBCCM as investment banker to the Debtor in compliance with sections 327 and 328 of title 11 of the United States

1

Code ("Bankruptcy Code"), and to provide the disclosures required under FED. R. BANKR P. 2014, also as set forth in the engagement letter dated November 6, 2020, between RBCCM and the Debtor attached hereto as **Exhibit A** ("Engagement Letter").

3.     Unless otherwise stated in this Declaration, I have personal knowledge of the facts hereinafter set forth.  To the extent that any information disclosed herein requires subsequent amendment or modification upon RBCCM's completion of further analysis, or as additional creditor information becomes available, one or more supplemental declarations will be submitted to this Court reflecting the same.

## Qualifications of Professional

4.     RBCCM is well qualified to serve as the Debtor's investment banker because of its experience providing restructuring services in reorganization proceedings involving senior living facilities, and its excellent reputation for the services it has rendered on behalf of borrowers, lenders and bondholders both in and out-of-court throughout the United accountant in this Chapter 11 Case.

5.     RBCCM is a leading international investment banking and financial advisory firm that is part of the Royal Bank of Canada.  RBCCM's healthcare group is led by senior-level bankers that possess significant healthcare and capital markets experience and who have been retained in over thirty (30) distressed

transactions involving senior living communities in the last five (5) years. RBCCM maintains seventy (70) offices in fifteen (15) countries. In addition, RBCCM employs more than twenty (20) bankers with extensive experience in all facets of the healthcare industry, with three (3) bankers specializing in senior living.

6.    I will be the leading the engagement.  I am a Managing Director at RBCCM and responsible for the senior living sector.  My banking experience in the senior living industry spans over twenty (25) years and encompasses over 120 financings providing over $5.0 billion to senior living projects, including start up and existing continuing care retirement communities, nursing homes and assisted living facilities.  In addition to financing transactions, I have been involved in the restructuring of over thirty (30) distressed continuing care retirement communities and long term care facilities across the United States, similar to the Debtor.  These engagements included serving as investment banker or financial advisor to borrowers, sponsors, debtors, bondholders, banks and trustees totaling over $2.0 billion of debt.

### Services to be Rendered

7.    I anticipate that RBCCM may render the following services in this case and with respect to facilitating either a sale, disposition, affiliation of the Facility or, if deemed necessary, a restructuring of HFV's debt obligations,

including the Series 2008 Bonds and the Series 2017 Bonds, issued through The Economic Development Corporation of the City of Dearborn, Limited Obligation Revenue Bonds (collectively, the "Transaction"):

(a)    Conduct the Process[2] to facilitate the Transaction;

(b)    Conduct a site-visit of the Facility and determine what further information and diligence items are needed to support the Process, including evaluating the operation of HFV;

(c)    Work within a timeline that will be agreeable to HFV;

(d)    Interface with the Bond Trustee and Investors of the Bonds;

(e)    Interface with the professionals retained by the Unsecured Creditor Committee;

(f)    Work with HFV (including the Executive Director) and HFV professionals (including the Chief Restructuring Officer) to develop a financial forecast, which, may be circulated to the Senior Secured Creditors and interested third parties;

(g)    Assemble and distribute marketing materials to generate awareness and interest in a potential Transaction but only to the extent such materials are approved in advance by the Company,

---

[2] Pursuant to the Engagement Letter, HFV wishes for RBCCM to conduct, as directed by HFV, an external solicitation of offers to support the Transaction (the solicitation of offers, collectively, the "Process").

with potential third parties receiving any such materials containing confidential information only if they express preliminary interest in the Transaction and sign a confidentiality agreement in form and substance satisfactory to the Company (each, an "<u>NDA</u>");

(h)     Assemble, distribute, solicit and market the sale or affiliation of the Facility to a broad audience through and including: (i) Development of a Sales Memorandum and Virtual Data Room the following, but only to the extent such materials are approved in advance by the Company, with potential third parties acquirors receiving any such materials containing confidential information only if they express preliminary interest in the Transaction and sign an NDA; (ii) Interact with interested parties to generate bids; (iii) Facilitate a negotiation process to select a 'stalking horse' for an auction (if required); (iv) Negotiate an asset purchase agreement / affiliation agreement / debt restructuring; (v) Facilitate and conduct an auction (if required); and (vi) Close and consummate the sale / affiliation;

(i) Advise HFV of current conditions in the local and national relevant skilled nursing and/or senior living market, and other general information and economic data;

(j) Coordinate with HFV and other interested parties as necessary and interface with counsel, other outside professionals and representatives of HFV;

(k) Attend meetings and participate in conference calls with HFV and its working groups as needed;

(l) Advise the Company as to strategy and tactics for negotiations related to the Transaction and, if requested by the Company, participate in such negotiations;

(m) Render such other investment banking and related services which are customary in engagements of this type or which may from time to time be agreed upon by RBCCM and the Company; and

(n) Participate in Court related proceedings as may be requested by HFV professionals or as otherwise may be required in connection with the Transaction.

## Professional Compensation

8.      Subject to allowance and approval by the Court in accordance with sections 330(a) and 331 of the Bankruptcy Code, in exchange for the aforementioned services, RBCCM's requested compensation for professional services rendered to the Debtor will be based upon an agreement between RBCCM and the Debtor, outlined in the Engagement Letter, which provides for the following:

a)      A Success Fee based on the mode of transaction of either 2.25% of the Gross Sales Proceeds[3]; or 1.50% of the Par Amount of performing current-pay Restructured Bonds, depending on the type of transaction that is consummated; and

b)      Reimbursement for all necessary expenses incurred, which shall include, but not be limited to travel and other out-of-pocket expenses incurred in providing professional services.

9.      RBCCM agrees that it will submit an invoice for all aforementioned fees, and the Debtor will render the amount owed to RBCCM at closing from the proceeds of the asset sale of the Facility or on the effective date of an affiliation or debt restructuring.

---

[3] The Engagement Letter defines "Gross Sale Proceeds" as either: (1) the cash purchase price from the Buyer/Purchaser at closing in connection with the acquisition of the Facility. Gross Sales Proceeds excludes any adjustments at closing such as A/R, A/P pro-rations, cure amounts or credits at closing or any designated allocations or deductions for capital expenditures as part of the offer to purchase HFV and any assumption of the existing residency agreements is excluded from Gross Sales Proceeds or (2) the Par Amount of Restructured Bonds or Financing secured by Affiliate Party and/or HFV.

10.     At any time after the expiration or termination of the agreement reached in the Engagement Letter, in the event RBCCM is required to testify, prepare for and/or appear at a deposition or produce documents at any administrative or judicial proceeding relating to the services it rendered pursuant to the terms of the agreement, RBCCM is entitled to compensation by the Debtor for its time at an hourly rate of $800 and for reimbursement of its reasonable out-of-pocket expenses, including attorneys' fees.

11.     RBCCM intends to apply for compensation for professional services to be rendered in connection with the Debtor's Chapter 11 Case and for reimbursement of expenses incurred, in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules of the United States Bankruptcy Court for the Eastern District of Michigan, and the United States Trustee Guidelines.  RBCCM has agreed to accept as compensation such sums as may be allowed by the Court.  RBCCM understands that interim and final fee awards are subject to approval by this Court.

12.     Further, consistent with its ordinary practice and the practice of financial advisors and investment bankers in other chapter 11 cases whose fee arrangements are typically not hours-based, RBCCM does not ordinarily maintain contemporaneous time records or provide or conform to a schedule of hourly rates for its professionals.  As RBCCM's compensation will be calculated and paid

based on certain transaction fees, RBCCM respectfully requests that it not be required to file time records in accordance with the United States Trustee Guidelines, but be allowed to present in its monthly, interim, and final fee applications, daily descriptions of those services provided on behalf of the Debtor, set forth for each individual who provided such services, kept in no more than three (3) hour increments with a reasonably detailed description of the services provided.

13.    RBCCM has received no promises regarding compensation in the Debtor's Chapter 11 Case other than in accordance with the Bankruptcy Code and as set forth in this Declaration.  With respect to the services to be provided to the Debtor, RBCCM has no agreement with any non-affiliated entity to share any revenues earned in the Debtor's Chapter 11 Case.

## Professionals' Connection with the Debtor and Other Parties

14.    Except as set forth herein, and in the attachments hereto, to the best of my information, knowledge and belief: (1) RBCCM does not hold any interest adverse to the Debtor with respect to the matters on which RBCCM is to be retained in this Chapter 11 Case; and (2) RBCCM has no relationship to the Debtor, its significant creditors, certain other parties-in-interest herein, or to the attorneys that are known to be assisting the Debtor in its Chapter 11 Case, except

9

as stated herein or on any attachment hereto submitted with the Application and any attachment thereto.

15.     In connection with its proposed retention by the Debtor in the Chapter 11 Case, RBCCM has undertaken a search to determine and to disclose whether it has any relationships with the following entities whose specific names were provided to RBCCM by the Debtor:

- The Debtor;

- The Debtor's Board of Directors;

- The 20 largest unsecured creditors of the Debtor;

- The Secured Creditor(s);

- The Unsecured Creditors Committee;

- The attorneys that the Debtor has sought authority to employ, pursuant to applications filed through the date hereof;

- Other retained professional services firms; and

- Other significant parties-in-interest.

16.     If RBCCM discovers additional information that it determines requires disclosure, it will file a supplemental disclosure with the Court promptly.

17.     RBCCM has relationships with many parties, including the parties enumerated in **Exhibit B**, some of which may be unsecured creditors of the Debtor or other parties-in-interest involved in this Chapter 11 Case.     Accordingly, RBCCM from time to time had, has, or may have, banking or other relationships with or have provided professional services to, or may currently provide

10

professional services to, and may in the future be engaged to provide professional services, in matters unrelated to the Chapter 11 Case, to entities that are the Debtor's unsecured creditors or other parties-in-interest in the Chapter 11 Case or to their respective affiliates. RBCCM believes that these connections have no bearing on the services for which RBCCM's retention is being sought in the Chapter 11 Case and do not impair RBCCM's disinterestedness to the Debtor nor does RBCCM represent an adverse interest in connection with the Chapter 11 Case.

18. The following supplemental disclosures are made with reference to RBCCM's disinterestedness. References to RBCCM include all members and employees of RBCCM who are expected to render services in this Chapter 11 Case:

a) RBCCM is affiliated with the Royal Bank of Canada. To the best of RBCCM knowledge, RBCCM is not aware of any other Royal Bank of Canada affiliate entities that have an interest in the Debtor.

b) RBCCM is not and was not a creditor, an equity security holder or insider of the Debtor;

c) RBCCM is not and was not, within three (3) years before the Petition Date, an investment banker for the sale of a security of the Debtor, or a financial advisor for such an investment banker in connection with the offer, sale or issuance of any security of the Debtor;

d) RBCCM is not and was not, within two (2) years before the Petition Date, a director, officer or employee of the Debtor or of any investment banker for any security of the Debtor;

11

e)     Subject to the disclosures contained in this Declaration, RBCCM holds no interest materially adverse to the interests of the Debtor's estate or to any class of creditors or equity security holders, either by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or an investment banker for any security of the Debtor, or for any other reason.

f)     Neither RBCCM nor I have any connection to the United States Bankruptcy Judge presiding in this Chapter 11 Case, the United States Trustee for the Eastern District of Michigan, and the attorneys assigned to the Chapter 11 Case.

19.     It is currently anticipated that I will be primarily responsible for rendering services on RBCCM's behalf.

20.     RBCCM intends to supplement the Application with additional information and disclosures on its related entities and connections thereto. RBCCM is in the process of discussing the Application with the United States Trustee for the Eastern District of Michigan.

21.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

November 9, 2020

_David Fields_ (signature)

_____

David Fields

**EXHIBIT A**



**RBC Capital Markets®**

300 Four Falls Corporate Center, Suite 760
300 Conshohocken State Road
W. Conshohocken, PA 19428

**RBC CAPITAL MARKETS, LLC**
Municipal Finance
Municipal Markets

**David B. Fields, Managing Director**

Tel: 610-729-3658
Fax: 610-729-3708
david.fields@rbccm.com

<u>**CONFIDENTIAL AND PRIVILEGED**</u>

November 6, 2020

**John Byrne, Chairman of the Board**
Henry Ford Village, Inc.
15101 Ford Road
Dearborn, MI 48126

> RE: Investment Banking Agreement relating to Henry Ford Village, Inc. (the "Company" and "HFV"), a Michigan not-for-profit, non-stock corporation organized in 1992 owns and operates a continuing care retirement community known as Henry Ford Village (the "Facility") located in Dearborn, Michigan.

Dear Mr. Bryne,

1.     **Retention of RBC Capital Market, LLC.** RBC Capital Markets, LLC ("RBCCM") understands that Henry Ford Village, Inc. has filed with the United States Bankruptcy Court, Eastern District of Michigan, Southern Division (the "Court") a Chapter 11 Petition for protection from creditors; Case No. Case No. 20-51066-MAR . Further, RBCCM understands that, subject to the Court's approval, Henry Ford Village, Inc. wishes to retain RBCCM to act as Investment Banker, to facilitate either a sale, disposition, affiliation of the Facility or, if deemed necessary, a Restructuring of HFV's debt obligations, including the Series 2008 Bonds and the Series 2017 Bonds, issued through The Economic Development Corporation of the City of Dearborn, Limited Obligation Revenue Bonds (collectively. the "Transaction"). Further, HFV wishes for RBCCM to conduct, as directed by HFV, an external solicitation of offers to support the Transaction (the solicitation of offers, collectively, the "<u>Process</u>"). Additionally, RBCCM will also engage with other qualified not-for-profit organizations who can become the Sponsoring Member of HFV and recapitalize the Company. This Agreement shall apply only to the activities related to HFV and the Transaction exclusively during the period in which this Agreement is effective.

2.     **Scope of Services.** As Investment Banker, RBCCM agrees to perform the following services, to be performed in conjunction with HFV and its other professionals.

    a)   Conduct the Process to facilitate the Transaction;

    b)   Conduct a site-visit of the Facility and determine what further information and diligence items are needed to support the Process, including evaluating the operation of HFV;

c)   Work within a timeline that will be agreeable to HFV;

d)   Interface with the Bond Trustee and Investors of the Bonds ;

e)   Interface with the professionals retained by the Unsecured Creditor Committee;

f)   Work with HFV, (including the Executive Director), and HFV professionals (including the Chief Restructuring Officer), , to develop a financial forecast, which, may be circulated to the Senior Secured Creditors and interested 3rd parties;

g)   Assemble and distribute marketing materials to generate awareness and interest in a potential Transaction but only to the extent such materials are approved in advance by the Company, with potential third parties receiving any such materials containing confidential information only if they express preliminary interest in the Transaction and sign a confidentiality agreement in form and substance satisfactory to the Company (each an "NDA");

h)   Assemble, distribute, solicit and market the sale or affiliation of the Facility to a broad audience through and including:

   i. Development of a Sales Memorandum and Virtual Data Room the following, but only to the extent such materials are approved in advance by the Company, with potential third parties acquirors receiving any such materials containing confidential information only if they express preliminary interest in the Transaction and sign an NDA;
   ii. Interact with interested parties to generate bids;
   iii. Facilitate a negotiation process to select a 'stalking horse' for an auction (if required);
   iv. Negotiate an asset purchase agreement / affiliation agreement / debt restructuring;
   v. Facilitate and conduct an auction (if required); and
   vi. Close and consummate the sale / affiliation.

i)   Advise HFV of current conditions in the local and national relevant skilled nursing and/or senior living market, and other general information and economic data;

j)   Coordinate with HFV and other interested parties as necessary and interface with counsel, other outside professionals and representatives of HFV; and

k)   Attend meetings and participate in conference calls with HFV and its working groups as needed;

l)   Advise the Company as to strategy and tactics for negotiations related to the Transaction and, if requested by the Company, participate in such negotiations;

m)   Render such other investment banking and related services which are customary in engagements of this type or which may from time to time be agreed upon by RBCCM and the Company; and

n)   participate in Court related proceedings as may be requested by HFV professionals or as otherwise may be required in connection with the Transaction.

HFV also acknowledges that it has retained RBCCM solely to provide the services set forth in this Agreement, and this Agreement is not intended to confer any rights upon any person (including any

employee, creditor or other stakeholder of HFV) against RBCCM or its affiliates, or their directors, officers, employees or agents. In rendering such services, RBCCM will act as an independent contractor, and RBCCM owes its duties arising out of this engagement solely to HFV and to no other person. HFV acknowledges that nothing in this Agreement is intended to create duties to HFV beyond those expressly provided for in this Agreement, and RBCCM and HFV specifically disclaim the creation of any fiduciary relationship between, or the imposition of any fiduciary duties on, either party. It is specifically understood that HFV's board of directors and management will not base their decisions regarding whether and how to pursue any Transaction solely on RBCCM's advice, but will also consider the advice of HFV's legal, tax and other business advisors and such other factors which they deem appropriate.

The undersigned, David B. Fields, will be primarily responsible for providing RBCCM's services under this Agreement.

3. **Limitation of Duties.** HFV acknowledges and agrees that RBCCM is not making a commitment to extend credit, make a loan or otherwise fund the Transaction. HFV acknowledges that advice and recommendations involve professional judgment on RBCCM's part and that results cannot be, and are not, guaranteed. HFV further acknowledges and agrees that: (i) the engagement contemplated by this Agreement is an arm's length commercial transaction between HFV and RBCCM, in which RBCCM is not acting as a municipal advisor, financial advisor, or fiduciary to HFV; (ii) RBCCM has not assumed any fiduciary responsibility to HFV with respect to the engagement contemplated hereby and/or the discussions, undertakings and procedures leading thereto (irrespective of whether RBCCM has provided other services or is currently providing other services to HFV on other matters); (iii) the only obligations RBCCM has to HFV with respect to the engagement contemplated hereby are expressly set forth in this Agreement; and (iv) HFV has consulted its own legal, accounting, tax, financial and other advisors, as applicable, to the extent it has deemed appropriate.

4. **Information to be Provided to RBCCM.** HFV agrees (upon the written request of RBCCM) to use reasonable efforts to provide or cause to be provided to RBCCM information relating to HFV, the Transaction and the Bonds and other matters that RBCCM considers appropriate, both written and verbal, to enable RBCCM to perform its engagement under this Agreement (the "Information"). HFV acknowledges that RBCCM is entitled to rely on the accuracy of the Information; provided, however, that RBCCM will advise HFV if any Information provided is demonstrably incomplete or insufficient and provided further that HFV makes no representations or warranties to any third parties with respect to the accuracy or completeness of the Information except as may be otherwise provided in a final written definitive agreement related to the Transaction. HFV agrees to have all prior confidentiality agreements and/or prior letters of intent or indications of interest provided to RBCCM. All requests for Information will be made by RBCCM through HFV or with the express written approval of HFV.

5. **Fees and Expenses.** RBCCM's fees for this engagement are as shown on the "Fee Schedule" attached hereto. RBCCM's fees do not include, and RBCCM will be entitled to reimbursement for, any actual and reasonable "out-of-pocket" expenses incurred in connection with the provision of RBCCM's services, including reasonable travel expenses or any other expenses incurred on behalf of HFV, provided, however, that such reimbursement of "out-of-pocket" expenses shall not exceed $20,000 in the aggregate without the prior written approval of the Company.

6. **Indemnity.** RBCCM is providing advice and services to HFV, for the purposes set forth herein. HFV shall indemnify and hold harmless RBCCM from and against any and all losses, claims,

3

damages, liabilities, penalties, judgments, awards, costs, reasonable fees, expenses and disbursements, including without limitation, the costs, fees, expenses and disbursements, as and when incurred, from the first dollar, of investigating, preparing or defending any action, suit, proceeding or investigation (whether or not in connection with proceedings or litigation in which RBCCM is a party), directly or indirectly caused by, relating to, based upon, arising out of or in connection with this engagement of RBCCM by HFV or the performance by RBCCM of any services rendered pursuant to such engagement, unless there is a final non-appealable order of a court of competent jurisdiction, at the trial level, finding RBCCM directly liable for bad faith, gross negligence or willful misconduct, provided that all such reimbursements shall be promptly paid back to the Company if there is a finally non-appealable order of a court of competent jurisdiction that such reimbursements related primarily to RBCCM's bad faith, gross negligence or willful misconduct (other than an action or failure to act undertaken at the written request or with the written consent of the Company). This provision shall survive any termination, expiration or completion of this Agreement or RBCCM's engagement hereunder.

7.    **Confidentiality.** The Information to be provided to RBCCM is confidential. The Information will be kept confidential and shall not, without the prior consent of HFV, be disclosed by RBCCM in any manner whatsoever, in whole or in part, to any person other than RBCCM's directors and employees, and shall not be used by RBCCM or RBCCM's directors or employees other than, in connection with the engagement described herein; provided, however, the Information may be disclosed to (a) parties who have, with the prior written consent of HFV, executed an NDA in connection with their possible participation in the Transaction or (b) as otherwise permitted by the prior written consent of. Moreover, RBCCM agrees not to use the Information (x) except for purposes of performing its services under this Agreement, or (y) to RBCCM's commercial advantage. RBCCM agrees to reveal the Information only to RBCCM's directors and employees who need to know the Information for the purpose of the engagement identified above, who are informed by RBCCM of the confidential nature of the Information and agree in writing to be bound by the confidentiality terms and conditions of this Agreement.

Additionally, all work product that may be developed by RBCCM related to this engagement will also be considered confidential and for use only by HFV and shall not be distributed to any other party without the consent of HFV. As a consequence, RBCCM agrees to deliver its work only to HFV and to make any other distributions only with additional authorization from HFV, labeling certain written deliverables as privileged and confidential if applicable.

RBCCM may distribute Information and/or RBCCM work product to the Bond Trustee and its professionals or professionals retained by the Unsecured Creditor Committee.

8.    **Term of Agreement.** This Agreement shall be for a period of twenty four (24) months (the "Term") from its date; however, this Agreement may be terminated at any time by either party upon seven (7) days written notice. Paragraphs 5, 6 and 7 (insofar as they concern reimbursable expenses, indemnification and confidentiality) will survive any termination of this Agreement. HFV acknowledges it will be responsible for payment of a Success Fee to RBCCM per the Fee Schedule to the extent that, within a period of eighteen (18) months, following termination of RBCCM as Investment Banker, a Transaction is completed in connection with the Process with a party that was (a) introduced to HFV by RBCCM in the Process prior to any such termination for purposes of considering a Transaction with HFV, and (b) listed as such in a complete written list of identified parties provided to HFV by RBCCM within 20 days after such termination.

4

9. **Privilege.** RBCCM understands that its reports, analyses and recommendations generated pursuant to this Agreement (including any drafts or preliminary versions thereof) are intended to be provided to HFV's counsel for the purpose of development of legal strategy to accomplish a possible asset sale or affiliation/debt restructuring. RBCCM understands that HFV intends that all such reports, analyses and recommendations, and all communications between RBCCM and HFV be and constitute confidential and privileged communications and that HFV is entering into this Agreement with the intention of establishing and preserving all applicable privileges and immunities.

10. **Payments.** RBCCM agrees that the payment of any of its fees, the reimbursement of any costs or expenses incurred by it, and any other amounts due and owing to RBCCM under this Agreement (including, without limitation, amounts in respect of indemnification obligations), shall be payable by HFV from operations or from proceeds resulting from a successful Transaction in accordance with Court approvals .

11. **Damages.** Under no circumstances shall any party to this Agreement be liable to the other party for any consequential, special, punitive or other damages, other than for actual damages incurred.

12. **Miscellaneous Provisions.** This Agreement is submitted in duplicate originals. HFV's acceptance of this Agreement will occur upon the return of one original executed by an authorized representative, and HFV hereby represents that the signatory below is so authorized to the extent and as set forth herein. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of the Agreement, which shall remain in full force and effect. This Agreement shall be governed by the laws of the State of Michigan. Any disputes arising in connection with or under this Agreement shall be litigated will be in the Court in which HFV proceedings are pending. This Agreement constitutes the entire agreement and understanding between the parties as to the subject matter thereof and supersedes any prior understandings or representations. This Agreement may be amended or modified only by a writing signed by both parties. This Agreement is solely for the benefit of HFV and no other person. RBCCM may not assign this Agreement without HFV's prior written consent.

Respectfully submitted,

RBC CAPITAL MARKETS, LLC.

By: _____
Name:       David B. Fields
Title:      Managing Director
Dated:      As of November 6, 2020


**ACCEPTANCE**

ACCEPTED as of November ___, 2020

HENRY FORD VILLAGE, INC.



By: _____
Name:       John Byrne
Title:      Chairman of the Board
Date:       As of November _8_, 2020

**FEE SCHEDULE**

In consideration for the services rendered by RBCCM, HFV agrees that RBCCM's fee will be as follows assuming a sale within a Chapter 11 Bankruptcy Process under Section 363 within the Eastern District of Michigan, Southern Division; Case No. 20-51066-MAR to discharge the outstanding secured obligations:

| | |
|---|---|
| Upfront Retainer: | None; and |
| Monthly Retainer: | $25,000*; and |
| Base Fee: | $250,000.00; (credited against success fee) |

Success Fee:

| | |
|---|---|
| Completed Bond Restructuring: | 1.50% of Par Amount of performing current-pay Restructured Bonds; or |
| Completed Sale/Disposition/Affiliation: | 2.25% of Gross Sales Proceeds (as defined below) |

| | |
|---|---|
| Expenses: | Reimbursed at Cost. |

*Note: A 50% credit of the accrued Monthly Retainers will be applied against the Success Fee*

RBCCM will submit an invoice for all fees due, as well as for any out-of–pocket expenses incurred at the closing of the Transaction. HFV agrees to fully compensate RBCCM at the time of closing of the Transaction.

"*Gross Sales Proceeds*" is defined as either (1) the cash purchase price from the Buyer/Purchaser at closing in connection with the acquisition of the Facility. Gross Sales Proceeds excludes any adjustments at closing such as A/R, A/P pro-rations, cure amounts or credits at closing or any designated allocations or deductions for capital expenditures as part of the offer to purchase HFV and any assumption of the existing residency agreements is excluded from Gross Sales Proceeds or (2) the Par Amount of Restructured Bonds or Financing secured by Affiliate Party and/or HFV.

If RBCCM is required to testify, prepare for and/or appear at a deposition or produce documents at any time after the expiration or termination of this Agreement at any administrative or judicial proceeding relating to any services provided by RBCCM hereunder, then RBCCM shall be entitled to be compensated by HFV for RBCCM's time charges for actual time required in addition to RBCCM's other services to be provided under this Agreement (David B. Fields, at the rate of $800 per hour; others, at their standard hourly billing rates) and to be reimbursed for reasonable out-of-pocket expenses, including counsel fees.

7

# EXHIBIT B

Other than as set forth in the Declaration, RBCCM is currently providing or has provided investment banking and financial advisory services to the following parties in interest in corporate, litigation, creditors' rights and other matters unrelated to the Debtor:

| INTERESTED PARTY | RELATIONSHIP TO DEBTOR |
|---|---|
| UMB Bank, N.A. | Bond Trustee/Senior Secured Creditor |
| Mintz, Levin P.C. | Counsel to the Bond Trustee |
| FTI | Chief Restructuring Officer |
| Life Care Services | Third Party Manager |
| Invesco LTD | Bond Holder |
| Capital Group Companies | Bond Holder |
| Waddell & Reed Financial (Ivy) | Bond Holder |
| Deutsche Bank AG (DWS) | Bond Holder |
| Van Eck Associates Corp | Bond Holder |
| Glenmede Trust Company | Bond Holder |
| Huntington Bank | UCC |

# EXHIBIT 1

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

IN RE:                                        Case No. 20-51066-MAR

HENRY FORD VILLAGE, INC.,              Chapter 11

    Debtor.                                 Honorable Mark A. Randon

_____/

**ORDER AUTHORIZING THE DEBTOR TO EMPLOY**
**AND RETAIN RBC CAPITAL MARKETS, LLC AS**
**INVESTMENT BANKER FOR THE DEBTOR**

This matter coming before the Court on the *Debtor's Application for Entry*
*of an Order Under 11 U.S.C. §§ 327(a) and 328 Authorizing the Employment and*
*Retention of RBC Capital Markets, LLC as Investment Banker for the Debtor (*the
"Application"), filed by the above-captioned debtor and debtor-in-possession (the
"Debtor" or "HFV"); and the Court having reviewed the Application and the
Declaration of David B. Fields ("Fields Declaration"); the Court finding that:
(a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and
157; (b) this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b);
(c) venue of this Chapter 11 Case and the Application is proper under 28 U.S.C.
§§ 1408 and 1409; (d) service and notice of the Application was sufficient under
the circumstances; and (e) the legal and factual bases set forth in the Application
establish just cause for the relief granted herein:

1

**IT IS HEREBY ORDERED THAT:**

1.     The Application shall be, and hereby is, GRANTED as set forth in this Order.

2.     The Debtor is authorized, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, effective as of the filing date of the Application, November 9, 2020, to employ and retain RBCCM as its investment banker, under the terms and conditions set forth in the Application and the Engagement Letter dated November 6, 2020 (Exhibit A to Fields Declaration).

3.     RBCCM shall be compensated and reimbursed pursuant to Section 328(a) of the Bankruptcy Code in accordance with the terms of the Engagement Letter and this Order.   RBCCM shall file monthly, interim, and final fee application for the allowance of compensation for services rendered and reimbursement of expenses incurred pursuant to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the local rules, and any other applicable orders of this Court; provided that RBCCM shall be compensated and reimbursed pursuant to section 328(a) of the Bankruptcy Code, and RBCCM's fees and expenses shall not be subject to review under the standard set forth in section 330 of the Bankruptcy Code.

4.     Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or any order of this Court, RBCCM and its

professionals shall be excused from the requirement to maintain or provide detailed time records for services rendered post-petition. Instead, RBCCM shall present to the Court, in its monthly, interim, and final fee applications, daily descriptions of those services provided on behalf of the Debtor, set forth for each individual who provided such services, kept in no more than three (3) hour increments with a reasonably detailed description of the services provided.

5.     If RBCCM seeks reimbursement for attorney's fees pursuant to the terms of the Engagement Letter, the invoices and supporting time records from such attorneys shall be included in RBCCM's own application and such invoices and time records shall be subject to (i) the guidelines promulgated by the U.S. Trustee for compensation and reimbursement of expenses and (ii) approval by the Bankruptcy Court under sections 330 and 331 of the Bankruptcy Code. Notwithstanding the foregoing, RBCCM shall only be reimbursed for any legal fees incurred in connection with the Debtor's Chapter 11 case to the extent permitted under applicable law and the decisions in this District.

6.     The indemnification provisions of the Engagement Letter are approved, subject to the following modifications:

(a)     RBCCM shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter for services, unless such other services and the indemnification,

3

contribution or reimbursement therefore are approved by the Court;

(b)     The Debtor shall have no obligation to indemnify RBCCM or provide contribution or reimbursement to RBCCM, for any claim or expense that is either : (i) judicially determined (the determination have become final) to have arisen solely from RBCCM's gross negligence, willful misconduct, breach of fiduciary duty, if any, bad faith or self-dealing; or (ii) settled prior to a judicial determination as to RBCCM's gross negligence, willful misconduct, breach of fiduciary duty, or bad faith or self-dealing but determined by this Court, after notice and a hearing to be a claim or expense for which RBCCM should not receive indemnity, contribution or reimbursement under the terms of the Engagement Letter as modified by this Order; and

(c)     If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in this Chapter 11 case (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing this Chapter 11 case, RBCCM believes that it is entitled to the payment of any amounts by the

Debtor on account of the Debtor's indemnification, contribution and/or reimbursement obligations under the Engagement Letter (as modified by this Order), including without limitation the advancement of defense costs, RBCCM must file an application therefore in the Court, and the Debtor may not pay any such amounts to RBCCM before the entry of an order by this Court approving the payment. The subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by RBCCM for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify RBCCM. Notwithstanding this subparagraph, the U.S. Trustee shall retain the right to object to any demand by RBCCM for indemnification, contribution or reimbursement.

7. The terms and conditions of this Order are immediately effective and enforceable upon its entry.

8. The relief granted herein shall be binding upon any trustee or other successor of the Debtor. The relief granted herein shall also be binding in the event the bankruptcy case is dismissed.

9. To the extent that there may be any inconsistency between the terms of the Application, the Engagement Letter, and this Order, the terms of this Order shall govern.

10. The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order.

# EXHIBIT 2

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

IN RE:                                            Case No. 20-51066-MAR

HENRY FORD VILLAGE, INC.,            Chapter 11

      Debtor.                                  Honorable Mark A. Randon

_____/

**NOTICE OF DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER
UNDER 11 U.S.C. §§ 327(A) AND 328 AUTHORIZING THE
EMPLOYMENT AND RETENTION OF RBC CAPITAL MARKETS, LLC
AS INVESTMENT BANKER FOR THE DEBTOR
AND OPPORTUNITY TO RESPOND**

Please take notice that Henry Ford Village, Inc. ("HFV" or the "Debtor"), has filed an *Application For Entry Of An Order Under 11 U.S.C. §§ 327(A) And 328 Authorizing The Employment And Retention Of RBC Capital Markets, LLC As Investment Banker For The Debtor* ("the "Application").

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the court to Motion, or if you want the court to consider your views on the Motion, within 14 days, you or your attorney must:

1.      File with the court a written response or an answer, explaining your position at:

> **United States Bankruptcy Court**
> Eastern District of Michigan
> 211 W Fort Street, Suite 2100
> Detroit, MI 48226

If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above. All attorneys are required to file pleadings electronically.

You must also send a copy to:

> Sheryl L. Toby
> 39577 Woodward Avenue, Suite 300
> Bloomfield Hills, Michigan 48304
> SToby@dykema.com

2.       If a response or answer is timely filed and served, the clerk will schedule a hearing on the Application and you will be served with a notice of the date, time and location of the hearing.

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

Dated:  November 9, 2020

**DYKEMA GOSSETT PLLC**

By: */s/ Sheryl L. Toby*
    Sheryl L. Toby (P39114)
    Jong-Ju Chang (P70584)
    39577 Woodward Avenue, Suite 300
    Bloomfield Hills, Michigan 48304
    (248) 203-0700 / Fax (248) 203-0763
    SToby@dykema.com
    JChang@dykema.com

    and

    Patrick L. Huffstickler
    Texas Bar No. 10199250
    Danielle N. Rushing
    Texas Bar No. 24086961
    112 East Pecan Street, Suite 1800
    San Antonio, Texas 78205
    (210) 554-5500 / Fax (210) 226-8395
    PHuffstickler@dykema.com
    DRushing@dykema.com

    *PROPOSED COUNSEL FOR*
    *DEBTOR AND DEBTOR-IN-*
    *POSSESSION*

# EXHIBIT 4

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

IN RE:                                    Case No.  20-51066-mar

HENRY FORD VILLAGE, INC.,                 Chapter 11

    Debtor.                              Honorable Mark A. Randon

_____

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 9th day of November, 2020, a true and correct copy of the foregoing document was served via CM/ECF on all parties registered to receive notice and via facsimile, email, and/or first-class U.S. mail on this Chapter 11 Case's Special Service List.

Dated: November 9, 2020

DYKEMA GOSSETT PLLC

By: */s/ Sheryl L. Toby*
    Sheryl L. Toby (P39114)
    Jong-Ju Chang (P70584)
    39577 Woodward Avenue, Suite 300
    Bloomfield Hills, Michigan 48304
    (248) 203-0700 / Fax (248) 203-0763
    SToby@dykema.com
    JChang@dykema.com

    and

    Patrick L. Huffstickler
    Texas Bar No. 10199250
    Danielle N. Rushing
    Texas Bar No. 24086961
    112 East Pecan Street, Suite 1800
    San Antonio, Texas 78205
    (210) 554-5500 / Fax (210) 226-8395
    PHuffstickler@dykema.com
    DRushing@dykema.com

    ***PROPOSED COUNSEL FOR DEBTOR AND DEBTOR-IN-POSSESSION***