# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN

In re:                                          Chapter 11

HENRY FORD VILLAGE, INC.,                        Case No. 20-51066-MAR

             Debtor.                    Hon. Mark A. Randon

_____/

## COVER SHEET FOR MOTION TO APPROVE SALE PROCEDURES

The debtor has filed a motion for approval of procedures for the sale of assets, which is attached to this cover sheet. Pursuant to E.D. Mich. L.B.R. 6004-1, the debtor has identified below, by page and paragraph number, the location in the proposed order accompanying the motion of each of the following provisions:

| PROVISION | Contained in proposed order | Location in proposed order |
|---|---|---|
| (1) Provisions concerning the qualifications of the bidding parties. | X Yes _____ No | Exhibit A to Proposed Order (Exhibit 1) Pages 4-6 |
| (2) Provisions concerning the criteria for a qualifying bid and any deadlines for (i) submitting such a bid, and (ii) notification of whether the bid made constitutes a qualifying bid. | X Yes _____ No | Exhibit A to Proposed Order (Exhibit 1) Page 6 |
| (3) Provisions that require qualified bids to identify points of variation from the stalking horse bid (including price and other terms). | X Yes _____ No | Exhibit A to Proposed Order (Exhibit 1) Pages 4-6 |

| | | |
|---|---|---|
| (4) Provisions pertaining to the conditions to the qualified bidders' obligation to consummate the purchase (including the time period within which the purchaser must close the transaction). | <u>X</u> Yes<br><br>_____ No | Exhibit A to Proposed Order (Exhibit 1) Pages 9-10 |
| (5) Provisions pertaining to the amount required for a good faith deposit. | <u>X</u> Yes<br><br>_____ No | Exhibit A to Proposed Order (Exhibit 1) Page 4 |
| (6) Provisions that relate to a "Back-Up Buyer" should the first winning bidder fail to close the transaction within a specified period of time. | <u>X</u> Yes<br><br>_____ No | Exhibit A to Proposed Order (Exhibit 1) Page 10 |
| (7) No-shop or No-Solicitation provisions including the justification for such provision. | _____ Yes<br><br><u>X</u> No | Page ___, ¶ ___ |
| (8) Provisions relating to Break-Up fees, Topping fees, and/or Expense Reimbursement (including the waiver of such fees due to rebidding). | <u>X</u> Yes<br><br>_____ No | Exhibit A to Proposed Order (Exhibit 1) Pages 2-3 |
| (9) Provisions specifying the bidding increments. | <u>X</u> Yes<br><br>_____ No | Exhibit A to Proposed Order (Exhibit 1) Pages 7-8 |
| (10) Provisions relating to auction procedures including manner in which auction is to be conducted and when the auction will be open and when it will close. | <u>X</u> Yes<br><br>_____ No | Exhibit A to Proposed Order (Exhibit 1) Pages 6-10 |
| (11) Provisions relating to whether the auction will occur and the termination of the auction process and/or sale. | <u>X</u> Yes<br><br>_____ No | Exhibit A to Proposed Order (Exhibit 1) Pages 6-10 |
| (12) Provision whether 14 day stay of F.R.Bankr.P. 6004(h) and 6006(d) is waived. | _____Yes<br><br><u>X</u> No | Page ___, ¶ ___ |

| (13) Provisions regarding timing for notice, submission of bids, objections to sale and other key events. | X Yes<br><br>_____ No | Exhibit A to Proposed Order (Exhibit 1) Pages 1-2 |
| --- | --- | --- |

Dated: December 2, 2020                    Respectfully submitted,

**DYKEMA GOSSETT PLLC**

By: */s/ Sheryl L. Toby*
    Sheryl L. Toby (P39114)
    Jong-Ju Chang (P70584)
    39577 Woodward Avenue, Suite 300
    Bloomfield Hills, Michigan 48304
    (248) 203-0700 / Fax (248) 203-0763
    SToby@dykema.com
    JChang@dykema.com

    and

    Patrick L. Huffstickler
    Texas Bar No. 10199250
    Danielle N. Rushing
    Texas Bar No. 24086961
    112 East Pecan Street, Suite 1800
    San Antonio, Texas 78205
    (210) 554-5500 / Fax (210) 226-8395
    PHuffstickler@dykema.com
    DRushing@dykema.com

    **COUNSEL FOR DEBTOR**
    **AND DEBTOR-IN-POSSESSION**

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

IN RE:                                 Case No. 20-51066-MAR

HENRY FORD VILLAGE, INC.,       Chapter 11

      Debtor.                     Honorable Mark A. Randon

_____/

## DEBTOR'S MOTION FOR ENTRY OF (I) AN ORDER (A) APPROVING BIDDING PROCEDURES AND PROTECTIONS IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (B) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (C) SCHEDULING AN AUCTION AND SALE HEARING, (D) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS, AND (E) GRANTING RELATED RELIEF; AND (II) AN ORDER (A) APPROVING THE ASSET PURCHASE AGREEMENT BETWEEN THE DEBTOR AND THE SUCCESSFUL BIDDER, (B) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (C) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS, AND <u>(D) GRANTING RELATED RELIEF</u>

Henry Ford Village, Inc. ("<u>HFV</u>" or the "<u>Debtor</u>"), hereby moves (this "<u>Motion</u>") for entry of (i) an order approving the bid procedures, substantially in the form of **<u>Exhibit 1</u>** attached hereto (the "<u>Bid Procedures Order</u>"), including (a) approving the proposed auction and bid procedures, attached as <u>Exhibit A</u> thereto (the "<u>Bid Procedures</u>")[1] for the proposed sale of substantially all the Debtor's assets

_____

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bid Procedures and/or the Bid Procedures Order, as

(the "<u>Sale</u>"), (b) scheduling an auction (the "<u>Auction</u>") if the Debtor receives two or more Qualified Bids (as defined below), (c) scheduling a hearing to consider approval of the Sale (the "<u>Sale Hearing</u>"), (d) approving the form and manner of notice thereof, and (e) establishing procedures (the "<u>Assumption Procedures</u>") for the assumption and assignment of executory contracts and unexpired leases (collectively, the "<u>Contracts</u>"), including notice of proposed cure amounts; and, (ii) an order approving the sale of substantially all of the Debtor's assets (the "<u>Sale Order</u>"), including (w) approving the transaction documents between the Debtor and the Successful Bidder (as defined below), (x) authorizing the Sale (after the Auction, if necessary) to the Successful Bidder or the Backup Bidder, if applicable, free and clear of liens, claims, interests, and encumbrances, (y) authorizing the assumption and assignment of the Contracts, and (z) granting related relief, pursuant to sections 105(a), 363, 364, 365, and 503 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), and Rules 2002, 6004, 6006, 9006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").   In support of the Motion, the Debtor relies upon the *Declaration of Chief Restructuring Officer in Support of the Debtor's Chapter 11 Petition and First Day Pleadings* (the "<u>First Day Declaration</u>")

---

applicable.  Intentionally, some of the capitalized terms are repeat definitions in multiple locations throughout these interrelated documents.

(ECF No. 21) previously filed with the Court.  In further support of the Motion, the Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

2.      Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a), 363, 364, 365, and 503 and Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, and 9014.

## BACKGROUND

4.      On October 28, 2020 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").

5.      The factual background regarding the Debtor, including business operations, capital and debt structure, and the events leading to the filing of the Chapter 11 Case is set forth in the First Day Declaration (ECF No. 21) and incorporated herein by reference.

6.      The Debtor continues to operate and manage its business as a debtor in possession pursuant to Bankruptcy Code sections 1107 and 1108.

7. The Committee of Unsecured Creditors (the "<u>Committee</u>") was appointed by the Office of the United States Trustee for the Eastern District of Michigan in this Chapter 11 Case on November 3, 2020. *See* ECF No. 50.

8. The Debtor is a not for profit,[2] non-stock corporation established to operate a continuing care retirement community located at 15101 Ford Road, Dearborn, Michigan 48126. The Debtor provides senior living services comprised of 853 independent living units, 96 assisted living unites and 89 skilled nursing beds (the "<u>Facility</u>"). The Debtor is governed by an independent Board of Directors and is advised by a Resident Council elected by the residents of the Debtor.[3]

9. The Debtor believes that it has sufficient cash collateral to continue operations during a potential sale process over the next thirteen weeks, but requires additional liquidity to complete a full sale process and has approached the Bond Trustee with respect to advancing additional liquidity sufficient to meet the Bid Procedures timeline outlined herein. Unfortunately, the Debtor did not have sufficient time to conduct a prepetition sale and marketing process to select a stalking

---

[2] According to HFV's Articles of Incorporation, the corporation is organized to: promote the health of the elderly through the ownership and or operation of one or more residential communities offering various levels of care services for elderly persons; carry on educational activities related to the promotion of health of the residential community; promote and carry on scientific research related to the promotion of health of the residential community; perform other activities permitted by nonprofit corporations under the laws of the State of Michigan.

[3] The Board of Directors is an active volunteer board predominantly comprised of current residents and family members of current or former residents.

horse bidder and then market the stalking horse bid pursuant to court-approved bid procedures. Accordingly, the Debtor seeks to run a marketing process in this Chapter 11 Case to find a strategic or financial acquirer or sponsor.

10. On November 9, 2020, the Debtor filed an application to employ and retain RBC Capital Markets, LLC ("RBC") (ECF No. 65)[4] as its investment banker, in order to, among other things, assist the Debtor in marketing and sale process for substantially all of the Debtor's assets (the "Assets").

**RELIEF REQUESTED**

11. By this Motion, the Debtor seeks entry of the Bid Procedures Order, substantially in the form attached hereto as **Exhibit 1**:

    (a)    authorizing and approving the Bid Procedures, in substantially the form attached to the Bid Procedures Order as Exhibit A, in connection with the Sale of substantially all of the Debtor's Assets;

    (b)    authorizing the Debtor to grant the bid protections set forth in the Bid Procedures (the "Bid Protections") to a Stalking Horse Bidder and expense reimbursements to one or more Potential Purchasers as well as the Stalking Horse Bidder;

    (c)    approving the form and manner of notice, in substantially the form attached hereto as **Exhibit 6A** (the "Sale Notice"), of the Auction and Sale Hearing for the Sale;

    (d)    scheduling the Auction and Sale Hearing;

---

[4] The Debtor plans to file an amended application to employ RBC that includes additional information and disclosures requested by the Office of the United States Trustee for the Eastern District of Michigan.

(e) approving the Assumption Procedures for the Contracts in connection with the Sale; and

(f) granting related relief.

12. The Debtor and its professionals will market the Assets prior to the Auction in the manner set forth in the Bid Procedures Order. During this marketing process, the Debtor reserves the right, subject to the terms of the Bid Procedures, to enter into a stalking horse agreement (the "Stalking Horse Agreement") with a bidder if the Debtor believes that such an agreement will further the purposes of the Auction by, among other things, attracting value-maximizing bids. The Debtor will make a determination regarding whether to enter into a Stalking Horse Agreement by March 26, 2021. As described in detail below, by this Motion Debtor seeks approval for the ability to provide Stalking Horse Bid Protections to the Stalking Horse Bidder and expense reimbursement to the Stalking Horse Bidder or other potential bidders up to an Aggregate Expense Reimbursement Cap all as defined and described below.

13. Furthermore, the Debtor will seek entry of the Sale Order at the Sale Hearing:

(a) authorizing and approving the Sale of all or substantially all of the Assets to the Successful Bidder (as defined in the Bid Procedures) on the terms substantially set forth in the Successful Bid;

(b) authorizing and approving the Sale of all or substantially all of the Assets free and clear of liens, claims, encumbrances, and other interests, all in accordance with the Successful Bid;

(c)  authorizing the assumption and assignment of the Contracts; and

(d)  granting any related relief.[5]

As part of the proposed sale process, the Debtor and RBC will engage in a robust marketing effort for the Debtor's Assets, contacting both financial and strategic investors regarding a potential sale process. The Debtor, in consultation with RBC, has developed a list of parties who the Debtor believes may be interested in consummating a Sale, which list includes both strategic and financial parties (each, individually, a "Contact Party", and collectively, the "Contact Parties"). RBC has or will contact each Contact Party to explore its interest in acquiring the Assets. The Debtor may supplement the list of Contact Parties throughout the marketing process. The Debtor shall distribute to, or make available in the data room for, each Contact Party an "Information Package" that is comprised of: (i) a cover letter; (ii) a copy of these Bid Procedures; and (iii) copy of a confidentiality agreement (the "Confidentiality Agreement"). To participate in the Bidding Process and to receive access to any confidential materials relating to the Assets (the "Diligence Materials"), each Contact Party must submit to the Debtor, through RBC, an executed Confidentiality Agreement, signed and transmitted by the person or entity

---

[5] The Debtor reserves the right to file and serve any supplemental pleading or declaration that the Debtor deems appropriate or necessary in its reasonable business judgment, including any pleading summarizing the competitive bid and sale process and the results thereof, in support of its request for entry of the Sale Order before the Sale Hearing.

wishing to have access to the Diligence Materials. Each Contact Party who qualifies for access to the Diligence Materials shall be a "<u>Preliminary Potential Purchaser</u>." All Diligence Material requests must be directed to RBC. Except as specifically noted in the paragraph immediately below, the same access and information will be made available to all Preliminary Potential Purchasers. For any Preliminary Potential Purchaser who is a competitor of the Debtor or is affiliated with any competitor of the Debtor, the Debtor reserves the right to withhold certain Diligence Materials if the Debtor reasonably believes, in consultation with the Consultation Parties, that (a) such disclosure would be detrimental to the interests of the Debtor or (b) the Preliminary Potential Purchaser does not have the capacity to consummate a Bid.

## The Proposed Sale

14.     The Debtor believes a prompt sale of the Assets represents the best option available for all stakeholders in the Chapter 11 Case. Moreover, it is critical for the Debtor to execute on a sale transaction within the constraints of the Debtor's liquidity. Specifically, the Debtor has agreed to comply with certain pre-sale milestones in exchange for consent to use cash collateral pursuant to the *First Day Emergency Motion of Debtor for Entry of Interim and Final Orders (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Setting a Final Hearing, and Granting Related Relief* (the

"Cash Collateral Motion," ECF No. 13) and the *Interim Order (I) Authorizing the Debtor to Use Cash Collateral; (II) Granting Adequate Protection; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief* (ECF No. 40) and the final order (ECF No. 92) entered in relation thereto (collectively, the "Cash Collateral Order"). It is also anticipated that in order to effectuate a sale on the timeframe proposed by the Debtor, the Debtor will likely require debtor in possession financing that will incorporate the process and deadlines set forth herein.

15. By this Motion, the Debtor requests that the Court approve the following timeline which may be subject to further revision pursuant to the terms of the Bid Procedures:

(a) January 25, 2021: Deadline to submit a letter of interest (a "LOI").

(b) March 26, 2021: Not later than such date, the Debtor, with the consent of the Bond Trustee and after consulting with the Committee, may select a potential purchaser's Bid to be designated as the stalking horse bid (the "Stalking Horse Bid" and such potential purchaser, the "Stalking Horse Bidder") which, subject to the terms of the Bid Procedures Order, may be entitled to the Stalking Horse Bid Protections. The Debtor reserves the right, with the consent of the Bond Trustee and after consultation with the Committee, to provide expense reimbursement to potential purchasers, inclusive of any Stalking Horse Bidder, in an aggregate amount not to exceed $400,000 (the "Aggregate Expense Reimbursement Cap").

(c) Within Two (2) Business Day after Designation of Stalking Horse Bid, if any: Deadline for the Debtor to file and serve the Notice of Stalking Horse, if any, to All Parties in Interest.

(d)  Deadline to file objections to the Cure and Possible Assumption and Assignment Notice: 14 days from notice of cure amounts.

(e)  April 30, 2021: Bid Deadline.

(f)  May 4, 2021: Auction date.

(g)  Within Two (2) Business Days after Conclusion of Auction: Deadline for the Debtor to file a notice regarding the results of the Auction, including the selection of the Successful Bidder and the Backup Bidder, and the basic terms of their respective agreements (the "Notice of Successful Bidder and Backup Bidder").

(h)  May 21, 2021 at 4:00 p.m. Eastern time: Deadline to serve objections to the Sale.

(i)  May 24, 2021 at 10:00 a.m. Eastern time: Sale Hearing.

16.  The Debtor believes that this timeline maximizes the prospect of accomplishing a sale of the Debtor's assets.  The Debtor believes that the timeline for consummating the sale process established pursuant to the Bid Procedures is in the best interest of its estate and all parties in interest and should be approved.

## The Bid Procedures Order

### I.  The Bid Procedures

17.  To optimally and expeditiously solicit, receive, and evaluate bids in a fair and accessible manner, the Debtor has developed and proposed the Bid Procedures, attached as Exhibit A to the Bid Procedures Order.  The Bid Procedures were designed to permit an expedited sale process, to promote participation and active bidding, and to ensure that the Debtor receives the highest or otherwise best offer for the Assets.

18.     The Bid Procedures describe, among other things, the requirements for prospective purchasers to participate in the bid process, the availability and conduct of due diligence, the deadline for submitting a competing bid, the method and factors for determining Qualified Bids, and the criteria for selecting a Successful Bidder.

19.     The following summary describes the salient points of the Bid Procedures, which are subject to further revision pursuant to the stated terms of the Bid Procedures:

(a)     The Debtor, in consultation with RBC, has developed a list of parties who the Debtor believes may be interested in consummating a Sale, which list includes both strategic and financial parties (each, individually, a "Contact Party", and collectively, the "Contact Parties"). RBC has or will contact each Contact Party to explore its interest in acquiring the Assets. The Debtor may supplement the list of Contact Parties throughout the marketing process.

(b)     The Debtor shall distribute to, or make available in the data room for, each Contact Party an "Information Package" that is comprised of:

(i)     a cover letter;

(ii)     a copy of the Bid Procedures; and

(iii)     a copy of a confidentiality agreement (the "Confidentiality Agreement").

(c)     To participate in the Bidding Process and to receive access to any confidential materials relating to the Assets (the "Diligence Materials"), each Contact Party must submit to the Debtor, through RBC, an executed Confidentiality Agreement, signed and transmitted by the person or entity wishing to have access to the Diligence Materials. Each Contact Party who qualifies for access to the Diligence Materials shall be a "Preliminary

Potential Purchaser." All Diligence Material requests must be directed to RBC. Except as specifically noted in the paragraph immediately below, the same access and information will be made available to all Preliminary Potential Purchasers.

(d)    For any Preliminary Potential Purchaser who is a competitor of the Debtor or is affiliated with any competitor of the Debtor, the Debtor reserves the right to withhold certain Diligence Materials if the Debtor reasonably believes, in consultation with the Consultation Parties, that (a) such disclosure would be detrimental to the interests of the Debtor or (b) the Preliminary Potential Purchaser does not have the capacity to consummate a Bid.

(e)    <u>Stalking Horse Bid Protections</u>: Subject to the terms of the Bid Procedures Order and the Stalking Horse Bidder executing a definitive asset purchase agreement (the "<u>Stalking Horse Agreement</u>"), as a component of the Stalking Horse Agreement, the Debtor, with the consent of the Bond Trustee, may provide a break-up fee of up to 3% of the cash purchase price and an expense reimbursement which combined with the Expense Reimbursement for other Preliminary Potential Purchasers shall not exceed the Aggregate Expense Reimbursement Cap, payable from the proceeds of a closing of a Sale with an alternative purchaser in accordance with these Bid Procedures (collectively, the "<u>Stalking Horse Bid Protections</u>").

(f)    It shall be in the Debtor's discretion, with the consent of the Bond Trustee and after consulting with the Committee, as to whether to enter into a Stalking Horse Agreement or to conduct an Auction without a Stalking Horse Bidder. In the event that the Debtor enters into a Stalking Horse Agreement, the Debtor shall file with the Bankruptcy Court, within two (2) business days after execution of such Stalking Horse Agreement, a copy of the Stalking Horse Agreement, and serve (i) all parties that have requested notice in this Bankruptcy Case as of the date of the Bid Procedures Order; (ii) all persons identified by the Debtor's professionals as potential purchasers of the Assets who have been or who are expected to be active in the marketing process; (iii) all Contract Counterparties; (iv) the Bond Trustee; (v) all other creditors of the Debtor; (vi) the Committee; (vii) the

Centers For Medicare & Medicaid Services legal department; (viii) each other governmental agency that is an interested party with respect to the Sale; and (ix) the Office of the United States Trustee (collectively, "All Parties in Interest") with a notice (the "Notice of Stalking Horse") that includes: (a) the identity of the Stalking Horse Bidder; (b) the purchase price to be paid by the Stalking Horse Bidder; (c) the deposit paid by the Stalking Horse Bidder; (d) the amount and nature of the Stalking Horse Bid Protections; (e) the anticipated treatment of prepetition entrance fee refund obligations; (f) the anticipated management of the facility and (g) the anticipated treatment of Contracts including Contracts of all persons that are or were residents on the Petition Date (the "Resident Agreements").

(g)     To be eligible to participate in the Auction, each initial Bid, and each party other than the Stalking Horse Bidder submitting such a Bid (each, a "Bidder"), must be determined by the Debtor, in consultation with the Consultation Parties, to satisfy each of the following conditions and, if so met, such Bid shall constitute a "Qualified Bid," and such Bidder shall constitute a "Qualified Bidder":

    (i)     Minimum Bid if Stalking Horse Bidder Designated: Each initial Bid must be in an amount that exceeds by $250,000 a combination of (a) the purchase price agreed to by the Stalking Horse Bidder; plus (b) the Stalking Horse Bid Protections.

    (ii)     Good Faith Deposit: Each initial Bid must be accompanied by a deposit in an amount of ten percent (10%) of the Bidder's proposed cash purchase price to an interest bearing escrow account to be identified and established by or on behalf of the Debtor (the "Good Faith Deposit").

    (iii)     Terms of Bid: Each Bid must include:

        *i.*     Transaction Documents. All executed transaction documents pursuant to which the Bidder proposes to effectuate the Sale, including (a) an executed asset purchase agreement (the "Bidder APA"), in word and pdf formats, and a version of such Bidder

APA marked against (1) the Stalking Horse Agreement, if any, or (2) the Form APA, if no Stalking Horse Agreement exists; (b) related agreements and disclosures; and (c) a copy of the draft Sale Order marked to reflect the amendments and modifications compared to the form of draft Sale Order posted in the Debtor's data room (collectively, the "Transaction Documents"). Each Bid may provide for either a for-profit or not-for-profit entity as the owner and/or operator of the Debtor's facilities.

ii.     Going Concern Information. The Bidder APA shall also (a) identify any Contract Counterparty agreements that the Bidder wishes to have assumed and assigned to it pursuant to the Sale; (b) provide detail regarding the treatment of prepetition entrance fee refund obligations; (c) provide detail regarding the treatment of Resident Agreements; (d) provide detail regarding the post-purchase operation and management of the Assets; and (e) provide information pertinent to the ability to obtain regulatory approvals to purchase and operate the Assets.

iii.    Corporate Authority. Each Bid must disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid, and the complete terms of any such participation, and provide written evidence, reasonably acceptable to the Debtor, demonstrating appropriate corporate authorization to consummate the Sale.

iv.     Proof of Financial Ability to Perform. Each Bid must include written evidence sufficient for the Debtor to reasonably conclude, after consultation with the Consultation Parties, that the Bidder has or will have the necessary financial ability to consummate the Sale and provide adequate assurance of future performance under all Contract Counterparty agreements to be assumed and

assigned in accordance therewith. Such information should include, *inter alia*, the following:

    1)    contact names and numbers for verification of financing sources;

    2)    evidence of the Bidder's internal resources and proof of any outside funding sources that are needed to close the Sale; and

    3)    the Bidder's current financial statements and any such other form, financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor demonstrating that such Bidder has or will have the ability to close the Sale.

v.    <u>Contingencies</u>. Each Bid must include a statement that there are no conditions precedent to the Bidder's ability to close the Sale, including that there are no due diligence or financing contingencies to the Bid, and that all necessary internal and shareholder approvals have been obtained prior to the Bid; each Bid may be subject to the satisfaction of the conditions precedent to the Sale, as set forth in the Bidder APA.

vi.    <u>Irrevocable</u>. Each Bid must be irrevocable through the entry of the Sale Order; provided, however, that a Bid accepted as the Successful Bid or the Backup Bid shall remain irrevocable as set forth below, subject to the terms and conditions of the Bid Procedures.

vii.    <u>Bid Deadline</u>: Regardless of when a party qualifies as a Preliminary Potential Purchaser, the Debtor must receive each Bid, in writing, on or before April 30, 2021, or such later date as may be agreed to by the Debtor (the "<u>Bid Deadline</u>"). Each Bid must be

sent by the Bid Deadline to each of the following by email: (a) counsel for the Debtor, Dykema Gossett PLLC, Sheryl Toby, stoby@dykema.com and Danielle N. Rushing, drushing@dykema.com; (b) RBC, David Fields, david.fields@rbccm.com; (c) counsel for the Bond Trustee: Mintz Levin, Daniel Bleck, dsbleck@mintz.com and Eric Blythe, ERBlythe@mintz.com; and (d) counsel for the Committee: Perkins Coie LLP, Eric Walker, EWalker@perkinscoie.com. and Kathleen Allare, KAllare@perkinscoie.com (collectively, the "Notice Parties").

viii. Credit Bid: The Bond Trustee reserves its right to submit a credit bid for the Assets and is a Qualified Bidder, enabling it to participate at the Auction. If no Qualified Bids are received by the Bid Deadline (other than a Stalking Horse Bid), the Bond Trustee's deadline to submit a credit bid shall be two (2) business days prior to the date of the Auction. If at least one Qualified Bid is received by the Bid Deadline (other than the Stalking Horse Bid), the Bond Trustee's deadline to submit a credit bid shall be the close of the Auction. For the avoidance of doubt, the Bond Trustee shall not be required to post a Good Faith Deposit.

20. Importantly, the Bid Procedures recognize the Debtor's goals of not impairing the Debtor's ability to consider all Qualified Bids. Additionally, with some limitations of consent by the Debtor's secured creditor, the Bid Procedures preserve the Debtor's right to modify the Bid Procedures as necessary or appropriate.

## II. The Auction and Sale.

21. If any Bid (other than the Stalking Horse Bid) received by the Bid Deadline is determined to be a Qualified Bid, the Debtor will conduct the Auction

to determine the highest or best Qualified Bid. This determination shall take into account any factors the Debtor, upon consultation with the Consultation Parties, reasonably deems relevant to the value of the Qualified Bid to the estate. The Stalking Horse Bidder, if any, and Qualified Bidders will be notified no later than twenty-four (24) hours prior to the Auction, if any Qualified Bids have been received. If no other Qualified Bid is received and the Bond Trustee has not provided notice of its intent to exercise its credit bid rights, the Debtor will not hold an Auction and the Stalking Horse Bidder will be named the Successful Bidder. The Auction, if necessary, shall take place virtually on May 4, 2021. Unless otherwise agreed to by the Debtor, only Qualified Bidders, members of the Committee, the Bond Trustee, representatives of holders of the Bonds, and each of their respective legal or financial professionals are eligible to attend or participate at the Auction. The Auction shall be recorded, transcribed or videotaped, and shall be conducted according to the following procedures, which may be modified by the Debtor in consultation with the Consultation Parties.

**III.    Summary of the Assumption Procedures for Contracts other than Resident Contracts.**

22.    After entry of the Bidding Procedures Order, the Debtor will file with the Bankruptcy Court and serve a notice to the Debtor's contract counterparties other than residents (as of the Debtor's Petition Date) party to a Resident Agreement (each, a "Non-Resident Contract Counterparty"), setting forth the Debtor's calculation of

each Non-Resident Contract Counterparty's cure amount, if any, that would be owing to such Non-Resident Contract Counterparty if the Debtor decided to assume or assume and assign such executory contract or unexpired lease, and alerting such Non-Resident Contract Counterparty that its agreement may be assumed and assigned to the Successful Bidder (the "Cure and Possible Assumption and Assignment Notice"), a copy of which is attached hereto as **Exhibit 6B**.[6] Any Non-Resident Contract Counterparty that objects to the cure amount set forth in the Cure and Possible Assumption and Assignment Notice, must file an objection (a "Cure Objection") within 14 days of such notice, which Cure Objection must be served on the Notice Parties.

23.     If a Non-Resident Contract Counterparty does not timely file and serve a Cure Objection, that party will be forever barred from objecting to the Debtor's proposed cure amount. Where a Non-Resident Contract Counterparty files a timely Cure Objection asserting a higher cure amount than the amount listed in the Cure and Possible Assumption and Assignment Notice, or an objection to the possible assignment of that Non-Resident Contract Counterparty's agreement, and the Non-Resident Contract Counterparty and the Debtor are unable to consensually resolve the dispute, the amount to be paid under Bankruptcy Code section 365 (if any) or, as

---

[6] For the avoidance of doubt, "**Non-Resident Contract Counterparty**" shall not include any resident, former resident, or other party asserting claims arising under the Resident Agreements.

the case may be, the Debtor's ability to assign the agreement to the Successful Bidder, will be determined at the Sale Hearing.

24.     After the conclusion of the Auction, the Debtor shall file with the Court and serve on the Non-Resident Contract Counterparties a further notice substantially in the form attached hereto as **Exhibit 6C** (the "Assumption Notice") identifying the Successful Bidder, stating which Contracts may be assumed and assigned to the Successful Bidder, and providing such Non-Resident Contract Counterparties with the Successful Bidder's assurance of future performance.  Any Non-Resident Contract Counterparty that objects to the adequacy of the assurance or assumption and/or assignment of its Contract set forth in the Assumption Notice must file an objection with the Bankruptcy Court (a "Contract Objection") and serve the Contract Objection on the Notice Parties prior to the Sale Hearing.  If a Non-Resident Contract Counterparty does not file a Contract Objection prior to the Sale Hearing, such party will be forever barred from objecting to the adequacy of the assurance or assumption and/or assignment of its Contract to be provided by the Successful Bidder.  Where a Non-Resident Contract Counterparty files a Contract Objection prior to the Sale Hearing, and the parties are unable to consensually resolve the dispute, the adequacy of the assurance provided by the Successful Bidder will be determined at the Sale Hearing.

25.     Because the Bid Procedures Order sets forth the Assumption Procedures in detail, they are not restated here.  Generally, however, the Assumption Procedures: (a) outline the process by which the Debtor will serve notice to all Non-Resident Contract Counterparties regarding the proposed assumption and assignment and related cure amounts, if any, informing such parties of their right, and the procedures, to object; and (b) establish objection and other relevant deadlines and the manner for resolving disputes relating to the assumption and assignment of the Contracts to the extent necessary.

## IV.    Resident Contracts

26.     The Notice of Successful Bidder and Backup Bidder shall provide detail regarding the treatment of the <u>Resident Contracts</u>with respect to the Successful Bidder and Backup Bidder.  Resident Contract holders that do not object to the assumption and assignment of their Contracts by the deadline to object to the Sale are subject to having their Contracts assumed and assigned.

## V.     Return of Good Faith Deposits

27.     The Good Faith Deposits of all Qualified Bidders shall be held in one or more interest-bearing escrow accounts by the Debtor, but shall not become property of the Debtor's estate absent further order of the Court.  The Good Faith Deposits of any Qualified Bidder that is neither the Successful Bidder nor the Backup Bidder shall be returned to such Qualified Bidder not later than two (2)

business days after entry of the Sale Order.  The Good Faith Deposit of the Backup Bidder shall be returned to the Backup Bidder on the date that is the earlier of one (1) business day after the closing of the Sale with the Successful Bidder, and the Outside Backup Date, unless such Backup Bidder is determined to become the Successful Bidder.  Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon.  If the Successful Bidder or the Backup Bidder timely closes the Sale, its Good Faith Deposit shall be credited towards its purchase price.

## BASIS FOR RELIEF

**VI.    The Relief Sought in the Bid Procedures Order Is in the Best Interests of the Debtor's Estate and Should Be Approved.**

**A.    The Proposed Notice of the Bid Procedures and the Sale Process Is Appropriate.**

28.    The Debtor seeks to sell the Assets through an Auction and asset sale. The Debtor and its advisors will conduct an extensive marketing process.  The Debtor, with the help of RBC and the Consultation Parties, will developed a list of "Contact Parties" that will be targeted to receive a copy of the "Information Package" (both as defined in the Bid Procedures).  The list of Contact Parties will encompass those parties whom the Debtor believes may potentially be interested in pursuing a Sale and whom the Debtor reasonably believes may have the financial resources to consummate such a transaction and otherwise meet Debtors goals.

29.     Under Bankruptcy Rule 2002(a) and (c), the Debtor is required to notify creditors of the proposed sale of the Assets, including a disclosure of the time and place of any auction, the terms and conditions of a sale, and the deadline for filing any objections.  The Debtor respectfully submits that the Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including: (a) the date, time, and place of the Auction (if one will be held); (b) the Bid Procedures; (c) the deadline for filing objections to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing; (d) a reasonably specific identification of the Assets; (e) a description of the Sale as being free and clear of liens, claims, interests, and other encumbrances, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the Sale proceeds; and (f) notice of the proposed assumption and assignment of the Contracts to the Successful Bidder.

30.     The Debtor further submits that notice of this Motion and the related hearing to consider entry of the Bid Procedures Order, coupled with service of the Sale Notice, the Cure and Possible Assumption and Assignment Notice, and the Assumption Notice, as provided for herein, constitutes good and adequate notice of the Sale and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002.  The Debtor further submits that the proposed notice procedures are designed to maximize the

chance of obtaining the broadest possible participation in the Debtor's marketing process, while minimizing costs to the estate. Accordingly, the Debtor respectfully requests that the Court find that the proposed notice procedures set forth in this Motion are sufficient, and that no other or further notice of the Bid Procedures, Auction, Sale, or Sale Hearing is required.

**B.** *The Bid Procedures Are Appropriate and Will Maximize Value.*

31.     Bidding procedures should be approved when they provide a benefit to the debtor's estate by maximizing the value of the debtor's assets. *See In re Edwards*, 228 B.R. 552, 361 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate."); *see also In re Bidermann Indus. U.S.A., Inc.*, 203 B.R. 547, 551 (Bankr. S.D.N.Y. 1997). Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling an estate's assets. *See In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) (noting "[u]nder Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification'"); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (same); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (same); *see also In re Integrated Resources, Inc.*, 147 B.R. 650, 656–57 (S.D.N.Y. 1992) (noting that bidding procedures that have been negotiated by a trustee are to be reviewed in accordance with the deferential "business judgment"

standard, under which such procedures and arrangements are "presumptively valid").

32.      Generally, a paramount goal in proposed sales of property of the estate is to maximize the proceeds received by the estate.  *See Mushroom Transp. Co., Inc.*, 382 F.3d 325, 339 (3d Cir. 2004); *Official Comm. of Unsecured Creditors of Cybergenics, Corp. v. Chinery*, 330 F.3d 548, 573 (3d Cir. 2003); *see also In re Food Barn Stores, Inc.*, 101 F.3d 558, 564–65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated Resources*, 147 B.R. at 659 ("[I]t is a well-established principle of bankruptcy law that the objective of the bankruptcy rules and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate."); *Edwards*, 228 B.R. at 561.

33.      To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore appropriate in the context of bankruptcy transactions.  *See In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 537 (3d Cir. 1999); *Integrated Resources*, 147 B.R. at 659 (stating that bidding procedures "are important tools to encourage bidding and to maximize the value of the Debtors' assets"); *In re Fin. News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) (providing "court-imposed rules for the disposition of assets . . . [should] provide an

adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").

34. The Debtor believes that the Bid Procedures will establish the parameters under which the value of the Sale may be tested at the Auction. The Bid Procedures will increase the likelihood that the Debtor will receive the best consideration because they will ensure a competitive and fair bidding process.

35. The Debtor believes that the proposed Bid Procedures will promote active bidding from seriously interested parties and will elicit the highest or otherwise best offers available for the Assets. The proposed Bid Procedures will enable the Debtor to conduct the Sale in a controlled, fair, and open fashion that will encourage participation by financially capable bidders capable of operating a facility like the one at issue here and who will offer the best package for the Assets and who can demonstrate the ability to close the transaction.

36. Specifically, the Bid Procedures contemplate an auction process with minimum barriers to entry and provide potential bidding parties with sufficient time to perform due diligence and acquire the information necessary to submit a timely and well-informed Bid. At the same time, the Bid Procedures provide the Debtor with a robust opportunity to consider competing Bids and select the highest or otherwise best offer for the completion of the Sale.

37.     Indeed here, the Debtor after consultation with the Consultation Parties and their professionals, including multiple investment bankers, has developed a procedure for incentivizing multiple parties to submit proposed purchase agreements thereby further fostering a competitive bidding environment.

38.     Additionally, if the Debtor selects a Stalking Horse Bid, the Debtor's entry into the Stalking Horse Agreement with the Stalking Horse Bidder will ensure that the Debtor obtains fair market value for the Assets by setting a minimum purchase price that will be tested in the marketplace. As such, creditors of the Debtor's estate can be assured that the consideration obtained will be fair and reasonable and at or above the market value.

39.     The Bid Protections and associated expense reimbursements, if any, contained within the Bid Procedures will also assist the Debtor in fostering a competitive bidding environment. The Bid Protections and expense reimbursements are an essential part of the Bid Procedures because the Bid Protections and expense reimbursements enable the Debtor to negotiate efficiently and effectively with prospective bidders and incentivize the same to move forward with proposing an asset purchase agreement. The prospect of Bid Protections should also encourage parties to serve as the Stalking Horse by providing reimbursement for expenditures during the due diligence process. In turn, the Stalking Horse sets the minimum price and provides a basis for comparison to potential bidders. Bankruptcy courts

consistently and regularly recognize the benefits of bid protections as an important tool for obtaining a stalking horse, which in turn ensures that the debtor's estate is paid, at a minimum, the reasonable value of the assets. *See, e.g.*, *In re Friendship Village of Mill Creek, d/b/a Greenfields of Geneva*, No. 17-12470 (Bankr. N.D. Ill. May 19, 2017) (Order Approving (A) Bidding Procedures and Overbid Protections; and (B) Approving the Form and Manner of Notice) (ECF No. 66). The proposed Stalking Horse Bid Protections are comparable to the terms of other bid protections routinely approved by bankruptcy courts. *E.g.*, *id.*

40. Bid Protections such as those included in any contemplated bid procedures are "an incentive payment to a prospective purchaser with which a company fails to consummate a transaction." *In re S.N.A. Nut Co.*, 186 B.R. 98, 101 (Bankr. N.D. Ill. 1995). "Agreements to provide breakup fees or reimbursement of fees and expenses are meant to compensate the potential acquirer who serves as a catalyst or 'stalking horse' which attracts more favorable offers."' *Id.*; *see also In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1992) (stating bidding incentives may "be legitimately necessary to convince a white knight to enter the bidding by providing some form of compensation for the risks it is undertaking").

41. The Debtor submits that the proposed Bid Procedures will encourage competitive bidding, are appropriate under the relevant standards governing auction

proceedings and bidding incentives in bankruptcy proceedings, and are consistent with other procedures previously approved by courts in similar circumstances. *See, e.g.*, *In re Friendship Village of Mill Creek, d/b/a Greenfields of Geneva*, No. 17-12470 (Bankr. N.D. Ill. May 9, 2017) (ECF No. 66); *In re The Clare at Water Tower*, No. 11-46151 (Bankr. N.D. Ill. Dec. 7, 2011).

42.     Thus, the Bid Procedures are reasonable, appropriate and within the Debtor's sound business judgment under the circumstances because the Bid Procedures are designed to maximize the value to be received by the Debtor's estate.

### C.     *The Proposed Notice Procedures for the Assigned Contracts and the Identification of Related Cure Amounts Are Appropriate.*

43.     As set forth above, the Sale contemplates the potential assumption and assignment of the Contracts to the Successful Bidder arising from the Auction, if any. In connection with this process, the Debtor believes it is necessary to establish a process by which: (a) the Debtor and the Contract Counterparties can reconcile cure obligations, if any, in accordance with Bankruptcy Code sections 105(a) and 365; and (b) such counterparties can object to the potential Assumption Procedures.

44.     The Bid Procedures specify the process by which the Debtor will serve Cure and Possible Assumption and Assignment Notice and the procedures and deadline for Non-Resident Contract Counterparties to Contracts that are subject to being assumed and/or assigned by the Successful Bidder (the "Assigned Contracts") to file and serve Cure Objections.

45.     Except as may otherwise be agreed to in the Successful Bid or by the parties to an Assigned Contract, at the closing of the Sale, the Successful Bidder shall cure those defaults under the Assigned Contracts that need to be cured in accordance with Bankruptcy Code section 365(b) by (a) payment of the undisputed cure amount (the "Cure Amount") and/or (b) reserving amounts with respect to any disputed cure amounts.

46.     As set forth in the Bid Procedures Order, the Debtor also requests that any party that fails to object to the proposed assumption and assignment of any Contract be deemed to consent to the assumption and assignment of the applicable Contract pursuant to Bankruptcy Code section 365 on the terms set forth in the Sale Order, along with the cure amount(s) identified in the Cure and Possible Assumption and Assignment Notice.  *See, e.g.*, *In re Tabone, Inc.*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (holding that by not objecting to the [m]otion, a creditor is deemed to consent); *Pelican Homestead v. Wooten (In re Gabel)*, 61 B.R. 661, 667 (Bankr. W.D. La. 1985) (same).

47.     The Debtor believes that the assumption procedures are fair and reasonable, provide sufficient notice to the Contract Counterparties of the potential assumption and assignment of their Contracts, and provide certainty to all parties in interest regarding their obligations and rights with respect thereof.  Accordingly, the

Debtor requests that the Court approve the assumption procedures set forth in the Bid Procedures Order.

## VII. Approval of the Proposed Sale Is Appropriate and in the Best Interests of the Estate.

### A. *The Asset Sale Should Be Authorized Pursuant to Bankruptcy Code Section 363 as a Sound Exercise of the Debtor's Business Judgment.*

48.     Bankruptcy Code section 363(b)(1) provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  A sale of the debtor's assets should be authorized pursuant to Bankruptcy Code section 363 if a sound business purpose exists for the proposed transaction.  *See, e.g.*, *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) ("Under Section 363, the debtor-in-possession can sell property of the estate . . . if he has an 'articulated business justification' . . . ."); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 174 (Bankr. D. Del. 1991); *see also In re Schipper*, 933 F.2d at 515 (same); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Telesphere Commc'ns, Inc.*, 179 B.R. 544, 552 (Bankr. N.D. Ill. 1999).  A sound business purpose for the sale of a debtor's assets outside the ordinary course of business may be found where such a sale is necessary to preserve the value of assets for the estate, its creditors, or

interest holders.  *See, e.g.*, *In re Abbotts Dairies of Pa, Inc.*, 788 F.2d 143 (3d Cir. 1986.

49.    Courts typically consider the following factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was given to interested parties; (c) whether the sale will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith.  *See Del.& Hudson Ry.*, 124 B.R. at 176; *In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987).

50.    "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  There is a presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *In re Integrated Res.*, 147 B.R. at 656 (internal citation omitted); *see also In re S.N.A. Nut Co.*, 186 B.R. 98, 102 (Bankr. N.D. Ill. 1995) ("The business judgment rule 'is a presumption that in making the business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that

the action was in the best interests of the company."); *In re Filene's Basement, LLC*, No. 11-13511 (KJC), 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) ("If a valid business justification exists, then a strong presumption follows that the agreement at issue was negotiated in good faith and is in the best interests of the estate."). Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under Bankruptcy Code section 363(b)(1). Indeed, when applying the business judgment standard, courts show great deference to a debtor's business decisions. *See Pitt v. First Wellington Canyon Assocs. (In re First Wellington Canyon Assocs.)*, No. 89 C 593, 1989 WL 106838, at *3 (N.D. Ill. Sept. 8, 1989) ("Under this test, the debtor's business judgment . . . must be accorded deference unless shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's retained discretion.").

51.     As set forth above, the Debtor has a sound business justification for selling the Assets. First, the Debtor believes that the Sale will maximize the Assets' value. The sale process developed here is designed to attract purchasers with knowledge and capability to own and operate the Debtor's regulated facility. Moreover, to the extent that the Successful Bidder assumes certain of the Contracts, it will result in payment in full for a number of the Debtor's creditors.

52.     Second, the sale of the Assets will be subject to competing bids, enhancing the Debtor's ability to receive the highest or otherwise best value for the

Assets. The value of the Assets will be tested through the Auction conducted pursuant to and according to the Bid Procedures. Ultimately, the Successful Bid, after being subject to a "market check" in the form of the Auction and accepted by the Debtor in the exercise of its reasonable business judgment, will constitute the highest or otherwise best offer for the Assets. *See, e.g.*, *In re Trans World Airlines, Inc.*, No. 01-00056, 2001 WL 1820326, at *4 (Bankr. D. Del. Apr. 2, 2001) (stating while a "section 363(b) sale transaction does not require an auction procedure . . . the auction procedure has developed over the years as an effective means for producing an arm's-length fair value transaction"). Consequently, the fairness and reasonableness of the consideration to be paid by the Successful Bidder ultimately will be demonstrated by adequate "market exposure" and an open and fair auction process—the best means for establishing whether a fair and reasonable price is being paid.

53. Thus, the Debtor submits that the Successful Bidder's purchase agreement will constitute the highest or otherwise best offer for the Assets and will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative. As such, the Debtor's determination to sell the Assets through an Auction process and subsequently to enter into the purchase agreement with the Successful Bidder will be a valid and sound exercise of the Debtor's business judgment. The Debtor will submit evidence at the Sale Hearing to support

these conclusions. Therefore, the Debtor requests that the Court make a finding that the proposed sale of the Assets is a proper exercise of the Debtor's business judgment and is rightly authorized.

### B. *Adequate and Reasonable Notice of the Sale Will Be Provided.*

54. As described above, the Sale Notice: (a) will be served in a manner that provides at least 21-days' notice of the date, time, and location of the Sale Hearing; (b) informs parties in interest of the deadlines for objecting to the Sale or the assumption and assignment of the Contracts; and (c) otherwise includes, in combination with the Notice of Successful Bidder and Backup Bidder, all information relevant to parties interested in or affected by the Sale. Significantly, the form and manner of the Sale Notice will have been approved by this Court pursuant to the Bid Procedures Order, after notice and a hearing, before it is served on parties in interest.

### C. *The Sale and Purchase Price Will Reflect a Fair-Value Transaction.*

55. Where there is a court-approved auction process, a full and fair price is presumed to have been obtained for the assets sold, as the best way to determine value is exposure to the market. *See Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 457 (1999). The Debtor will continue to market the Assets and solicit offers consistent with the Bid Procedures, including, without limitation, by providing acceptable Bidders with access to due diligence and

requested information. In this way, the number of Bidders that are eligible to participate in the competitive Auction process will be maximized. On the other hand, if the Debtor enters into a Stalking Horse Agreement and no Auction is held because no Auction is necessary, the Stalking Horse Agreement's purchase price conclusively will have been demonstrated to be fair value.

**D.** ***The Sale of the Assets Should Be Free and Clear of Interests Pursuant to Bankruptcy Code Section 363(f).***

56. The Debtor submits that it is appropriate to sell the Assets free and clear of all liens, claims, encumbrances, and interests (collectively, the "Claims and Interests") pursuant to Bankruptcy Code section 363(f), with any such Claims and Interests attaching to the net sale proceeds of the Assets, as and to the extent applicable.[7]

57. Section 363(f) permits a debtor to sell property free and clear of another party's interest in the property if (a) applicable non-bankruptcy law permits such a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is the subject of a *bona fide* dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest. *See* 11 U.S.C. § 363(f).

---

[7] As set forth above, the Resident Agreements will be addressed as detailed in the Notice of Successful Bidder and Backup Bidder.

58.     Section 363(f) is drafted in the disjunctive.  Thus, satisfaction of any of the requirements enumerated therein will suffice to permit the Debtor's sale of the Assets free and clear of all Claims and Interests (*i.e.*, all liens, claims, rights, interests, charges, or encumbrances), except with respect to any interests that may be assumed liabilities under the applicable purchase agreement.  *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("[I]f any of five conditions are met, the Debtors have the authority to conduct the sale free and clear of all liens."); *see also In re Dundee Equity Corp.*, 1992 Bankr. LEXIS 436, at *12 (Bankr. S.D.N.Y. Mar. 6, 1992) (noting that "[s]ection 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met"); *Citcorp Homeowners Servs., Inc. v. Eliot (In re Eliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (same); *Mich. Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that section 363(f) of the Bankruptcy Code is written in the disjunctive; holding that the court may approve the sale "free and clear" provided that at least one of the subsections of section 363(f) has been satisfied).

59.     The Debtor submits that the Assets may be sold free and clear of Claims and Interests—all in accordance with at least one of the five conditions of Bankruptcy Code section 363(f).  Consistent with Bankruptcy Code section 363(f)(2), each of the parties holding liens on the Assets, if any, will consent, or

absent any objection to this Motion, will be deemed to have consented to, the Sale and transfer of the Assets. Furthermore, any party holding a valid lien against the Assets will be adequately protected by having its liens, if any, attach to the sale proceeds received by the Debtor from the Sale of the Assets to the Successful Bidder, in the same order of priority, with the same validity, force and effect that such creditor had prior to such sale, subject to any claims and defenses the Debtor and its estate may possess. Accordingly, Bankruptcy Code section 363(f) authorizes the sale and transfer of the Assets free and clear of any such Interests.

E. ***The Assets and the Assigned Contracts Should Be Sold Free and Clear of Successor Liability.***

60. The Sale Order will provide that the Successful Bidder shall not have any successor liability related to Seller or the Assets to the maximum extent permitted by law. Extensive case law establishes that claims against a winning bidder may be directed to the proceeds of a free and clear sale of property, and may not subsequently be asserted against that buyer.

61. Although Bankruptcy Code section 363(f) provides for the sale of assets "free and clear of any interests," the term "any interest" is not defined anywhere in the Bankruptcy Code. *Folger Adam Security v. DeMatteis/MacGregor JV*, 209 F.3d 252, 257 (3d Cir. 2000). In the case of *In re Trans World Airlines, Inc.*, 322 F.3d 283, 288–89 (3d Cir. 2003), the Third Circuit specifically addressed the scope of the term "any interest." The Third Circuit observed that while some courts

have "narrowly interpreted that phrase to mean only in rem interests in property," the trend in modern cases is towards "a more expansive reading of 'interests in property' which 'encompasses other obligations that may flow from ownership of the property.'" *Id.* at 289. As determined by the Fourth Circuit in *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 581–82 (4th Cir. 1996), a case cited approvingly and extensively by the Third Circuit in *Folger*, the scope of Bankruptcy Code section 363(f) is not limited to in rem interests. Thus, the Third Circuit in *Folger* cited *Leckie* for the proposition that the debtors "could sell their assets under § 363(f) free and clear of successor liability that otherwise would have arisen under federal statute." *Folger*, 209 F.3d at 258.

62.     Courts have consistently held that a buyer of a debtor's assets pursuant to a section 363 sale takes free from successor liability resulting from pre-existing claims. *See In re Ormet*, 2014 WL 3542133 at *4 (Bankr. D. Del. July 17, 2014); *The Ninth Ave. Remedial Grp. v. Allis-Chalmers Corp.*, 195 B.R. 716, 732 (Bankr. N.D. Ind. 1996) (stating that a bankruptcy court has the power to sell assets free and clear of any interest that could be brought against the bankruptcy estate during the bankruptcy); *MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 837 F.2d 89, 93–94 (2d Cir. 1988) (channeling of claims to proceeds consistent with intent of sale free and clear under section 363(f) of the Bankruptcy Code); *In re New England Fish Co.*, 19 B.R. 323, 329 (Bankr. W.D. Wash. 1982) (finding transfer of

property in free and clear sale was free and clear of Title VII employment discrimination and civil rights claims of Debtors' employees); *In re Hoffman*, 53 B.R. 874, 876 (Bankr. D.R.I. 1985) (finding transfer of liquor license free and clear of any interest permissible even though the estate had unpaid taxes); *Am. Living Sys. v. Bonapfel (In re All Am. of Ashburn, Inc.)*, 56 B.R. 186, 190 (Bankr. N.D. Ga. 1986) (holding product liability claims precluded from being asserted against his successor in a sale of assets free and clear); *WBQ P'ship v. Va. Dept. of Med. Assistance Servs. (In re WBQ P'ship)*, 189 B.R. 97, 104–05 (Bankr E D. Va. 1995) (stating Commonwealth of Virginia's right to recapture depreciation was an "interest" as used in section 363(f)).

63.     The purpose and value of an order authorizing the transfer of the Assets would be frustrated if claimants thereafter could use the transfer as a basis to assert claims against the Successful Bidder.  Under Bankruptcy Code section 363(f), the Successful Bidder is entitled to know that the Assets are not tainted by latent claims that could be asserted against the Successful Bidder after the proposed transaction is completed.    Absent that ruling, the value of the Assets could be severely compromised.

64.     Accordingly, there is substantial authority for any order approving the Sale of the Assets to include a finding that the Successful Bidder is not liable as a

successor under any theory of successor liability, for Claims and Interests that encumber or relate to the Assets.

**F.** **The Sale Has Been Proposed in Good Faith and Without Collusion, the Successful Bidder Will Be a "Good-Faith Purchaser" Entitled to the Full Protection of Bankruptcy Code Section 363(m), and the Sale of the Assets Does Not Violate Bankruptcy Code Section 363(n).**

65. The Debtor requests that the Court find that the Successful Bidder is entitled to the benefits and protections provided by Bankruptcy Code section 363(m) in connection with the sale of the Assets.

66. Section 363(m) provides, in pertinent part:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

67. Section 363(m) thus protects the purchaser of assets sold pursuant to section 363 from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal, as long as such purchaser purchased the assets in "good faith." While the Bankruptcy Code does not define "good faith," courts have held that a purchaser shows its good faith through the integrity of its conduct during the course of the sale proceedings, finding that, where there is a lack of such integrity, a good-faith finding may not be made. *See, e.g., Abbotts Dairies*

*of Pa.*, 788 F.2d at 147 ("Typically, the misconduct that would destroy a [buyer's] good faith status at a judicial sale involves fraud, collusion between the [proposed buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.").

68.    The Debtor submits that the Stalking Horse Bidder, if any, or any other Successful Bidder arising from the Auction would be a "good faith purchaser" within the meaning of Bankruptcy Code section 363(m), and the resulting purchase agreement would be a good-faith agreement on arm's-length terms entitled to the protections of section 363(m).[8] First, as set forth in more detail above, the consideration to be received by the Debtor pursuant to the Sale will be subject to a market process by virtue of the Debtor's marketing efforts, with the assistance of its professionals, and the Auction will be substantial, fair, and reasonable. Second, the purchase agreement entered into by the Debtor and the Successful Bidder will be the result of extensive arm's-length negotiations, during which all parties will have the opportunity to be, and the Debtor will be, represented by competent counsel, and

---

[8] The Debtor believes that a finding of good faith within the meaning of Bankruptcy Code section 363(m) will be appropriate for any Successful Bidder arising from the Auction, if any, and the Bid Procedures. Pursuant to the Bid Procedures, any Successful Bidder will have had to present a proposal in accordance with the Bid Procedures. In addition, the Debtor will not choose as the Successful Bidder or the Backup Bidder (as defined in the Bid Procedures) any entity whose good faith under section 363(m) can reasonably be doubted and will be prepared to present the Court with sufficient evidence to allow the Court to find that the "good faith" standard of section 363(m) has been satisfied.

any purchase agreement with a Successful Bidder will be the culmination of the Debtor's competitive market process and, if necessary, the Auction, in which all negotiations will be conducted on an arm's-length, good-faith basis. Third, where—as the Debtor anticipates will be the case here—there is no indication of any "fraud or collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders" or similar conduct, there is no cause that would permit the Sale to be avoided pursuant to Bankruptcy Code section 363(n). Moreover, with respect to potential Bidders, the Bid Procedures are designed to ensure that no party is able to exert undue influence over the process. Finally, the Successful Bidder's offer will be evaluated and approved by the Debtor in consultation with its advisors and the Consultation Parties. Accordingly, the Debtor believes that the Successful Bidder and the resulting purchase agreement should be entitled to the full protections of Bankruptcy Code section 363(m).

69.     Moreover, because there will be no fraud or improper insider dealing of any kind, the Sale will not constitute an avoidable transaction pursuant to Bankruptcy Code section 363(n), and, as a result, the Successful Bidder should receive the protections afforded good faith purchasers by Bankruptcy Code section 363(m). Accordingly, the Debtor requests that the Court make a finding at the Sale Hearing that the agreement reached with the Successful Bidder was at arm's length

and is entitled to the full protections of Bankruptcy Code section 363(m). The Debtor will submit evidence at the Sale Hearing to support these conclusions.

## VIII. The Assumption and Assignment of the Contracts Should Be Approved.

### A. *The Assumption and Assignment of the Contracts Reflects the Debtor's Reasonable Business Judgment.*

70.     To facilitate and effectuate the sale of the Assets, the Debtor is seeking authority to assign the Assigned Contracts to the Successful Bidder to the extent required by such Successful Bidder.

71.     Bankruptcy Code section 365 authorizes a debtor to assume and/or assign its executory contracts and unexpired leases, subject to the approval of the court, provided that the defaults under such contracts and leases are cured and adequate assurance of future performance is provided. *See* 11 U.S.C. § 365(b)(1). The standard in determining whether an executory contract or unexpired lease should be assumed is the "business judgment" test, which requires a debtor to determine that the requested assumption or rejection would be beneficial to its estate. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (describing business judgment test as "traditional") (superseded in part by 11 U.S.C. § 1113).

72.     Courts generally will not second-guess a debtor's business judgment concerning the assumption of an executory contract. *See In re Decora Indus., Inc.*, 2002 WL 32332749, at *8 (D. Del. May 20, 2002); *Official Comm. for Unsecured Creditors v. Aust (In re Network Access Solutions, Corp.)*, 330 B.R. 67, 75 (Bankr.

D. Del. 2005) ("The standard for approving the assumption of an executory contract is the business judgment rule"); *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006) ("The propriety of a decision to reject an executory contract is governed by the business judgment standard"); *see also Phar Mor, Inc. v. Strouss Bldg. Assocs.*, 204 B.R. 948, 952 (N.D. Ohio 1997) ("Courts should generally defer to a Debtors' decision whether to reject an executory contract."). A debtor's decision to assume or reject an executory contract or unexpired lease will not be subject to review unless such decision is clearly an unreasonable exercise of such judgment. *See, e.g.*, *Grp. of Institutional Inv'rs v. Chicago, Milwaukee, St. Paul & Pac. Ry. Co.*, 318 U.S. 523, 549–50 (1943) (applying Bankruptcy Act section 77(b), predecessor to section 365, and rejecting a test of whether an executory contract was burdensome in favor of determining whether rejection is within the debtor's business judgment); *see also Sharon Steel*, 872 F.2d at 40 (describing deference to a debtor's business judgment as "breathing space afforded [to] the debtor to consider whether to reject or assume executory contracts under the Code"); *Network Access Sols.*, 330 B.R. at 75; *Exide Techs.*, 340 B.R. at 239.

73.    The Court should approve the decision to assume and assign the Assigned Contracts in connection with the Sale as a sound exercise of the Debtor's business judgment. First, the Assigned Contracts are necessary to operate the Assets and, as such, they are essential to inducing the best offer for the Assets. Second, it

is unlikely that any purchaser would want to acquire the Assets unless a significant number of the Contracts needed to manage the day-to-day operations were included in the transaction. Third, the Assigned Contracts will be assumed and assigned as part of a process approved by the Court pursuant to the Bid Procedures Order and, thus, will be reviewed by key constituents in this Chapter 11 Case. Accordingly, the Debtor submits that the assumption and assignment of the Assigned Contracts, if required by the Successful Bidder, should be approved as a sound exercise of the Debtor's business judgment.

74. A debtor-in-possession may assign an executory contract or an unexpired lease of the debtor if it assumes the agreement in accordance with Bankruptcy Code section 365(a), and provides adequate assurance of future performance by the assignee, whether or not there has been a default under the agreement. *See* 11 U.S.C. § 365(f)(2). Significantly, among other things, adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See, e.g.*, *In re Bygaph, Inc.*, 56 B.R. 596, 605–06 (Bankr. S.D.N.Y. 1986) (stating that adequate assurance of future performance is present when the prospective assignee of a lease from the debtors has financial resources and has expressed willingness to devote sufficient funding to the business in order to give it a strong likelihood of succeeding).

75.     The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *EBG Midtown S. Corp. v. McLaren/Hart Envtl. Eng'g Corp. (In re Sanshoe Worldwide Corp.)*, 139 B.R. 585, 592 (S.D.N.Y. 1992), *aff'd*, 993 F.2d 300 (2d Cir. 1993); *Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1988).

76.     Contract Counterparties will have the opportunity to request additional adequate assurance information by responding to the Cure and Possible Assumption and Assignment Notice.  Accordingly, the Debtor submits that the assumption and assignment of the Assigned Contracts as set forth herein should be approved.

77.     To assist in the assumption, assignment and sale of the Assigned Contracts, the Debtor also requests that the Sale Order approving the Sale of the Assets provide that anti-assignment provisions in the Assigned Contracts shall not restrict, limit, or prohibit the assumption, assignment and sale of the Assigned Contracts and are deemed and found to be unenforceable anti-assignment provisions within the meaning of Bankruptcy Code section 365(f).

78.     Section 365(f)(1) permits a debtor to assign unexpired leases and executory contracts free from such anti-assignment restrictions, providing, in pertinent part, that:

> [N]otwithstanding a provision in an executory contract or
> unexpired lease of the debtor, or in applicable law, that

prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection . . . .

11 U.S.C. § 365(f)(1).

79.     Section 365(f)(1), by operation of law, invalidates provisions that prohibit, restrict, or condition assignment of an executory contract or unexpired lease. *See, e.g.*, *Coleman Oil Co., Inc. v. The Circle K Corp. (In re The Circle K Corp.)*, 127 F. 3d 904, 910–11 (9th Cir. 1997) (providing "no principle of bankruptcy or contract law precludes us from permitting the Debtors here to extend their leases in a manner contrary to the leases' terms, when to do so will effectuate the purposes of section 365"), *cert. denied*, 522 U.S. 1148 (1998).

80.     Other courts have recognized that provisions that have the effect of restricting assignments cannot be enforced. *See In re Rickel Home Ctrs., Inc.*, 240 B.R. 826, 831 (D. Del. 1998) ("In interpreting Section 365(f) [*sic*], courts and commentators alike have construed the terms to not only render unenforceable lease provisions which prohibit assignment outright, but also lease provisions that are so restrictive that they constitute de facto anti-assignment provisions."). Similarly, in *In re Mr. Grocer., Inc.*, the court noted that:

> [the] case law interpreting § 365(f)(1) of the Bankruptcy Code establishes that the court does retain some discretion in determining that lease provisions, which are not themselves ipso facto anti-assignment clauses, may still be refused enforcement in a bankruptcy context in which there is no substantial economic detriment to the landlord

> shown, and in which enforcement would preclude the
> bankruptcy estate from realizing the intrinsic value of its
> assets.

77 B.R. 349, 354 (Bankr. D.N.H. 1987). Thus, the Debtor requests that any anti-assignment provisions be deemed not to restrict, limit or prohibit the assumption, assignment and sale of the Assigned Contracts, and be deemed and found to be unenforceable anti-assignment provisions within the meaning of Bankruptcy Code section 365(f).

## **NO PRIOR REQUEST**

81. No previous request for the relief sought herein has been made to this Court or any other court.

**WHEREFORE**, the Debtor respectfully requests that the Court enter the proposed order substantially in the form attached hereto as **Exhibit 1** granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated:  December 2, 2020

Respectfully submitted,

**DYKEMA GOSSETT PLLC**

By: */s/ Sheryl L. Toby*
      Sheryl L. Toby (P39114)
      Jong-Ju Chang (P70584)
      39577 Woodward Avenue, Suite 300
      Bloomfield Hills, Michigan 48304
      (248) 203-0700 / Fax (248) 203-0763
      SToby@dykema.com
      JChang@dykema.com

      and

      Patrick L. Huffstickler
      Texas Bar No. 10199250
      Danielle N. Rushing
      Texas Bar No. 24086961
      112 East Pecan Street, Suite 1800
      San Antonio, Texas 78205
      (210) 554-5500 / Fax (210) 226-8395
      PHuffstickler@dykema.com
      DRushing@dykema.com

      *COUNSEL FOR DEBTOR*
      *AND DEBTOR-IN-POSSESSION*

# INDEX OF EXHIBITS

| | |
|---|---|
| **Exhibit 1** | Bidding Procedures Order |
| **Exhibit 2** | Notice And Opportunity To Respond |
| **Exhibit 3** | N/A |
| **Exhibit 4** | Certificate Of Service |
| **Exhibit 5** | N/A |
| **Exhibit 6A** | Sale Notice |
| **Exhibit 6B** | Cure and Possible Assumption and Assignment Notice |
| **Exhibit 6C** | Assumption Notice |

# EXHIBIT 1

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

IN RE:                         Case No. 20-51066-MAR

HENRY FORD VILLAGE, INC.,       Chapter 11

      Debtor.                  Honorable Mark A. Randon

_____/

## ORDER (A) APPROVING BIDDING PROCEDURES AND PROTECTIONS IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (B) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (C) SCHEDULING AN AUCTION AND A SALE HEARING, (D) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS, AND (E) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[1] of the above-captioned debtor and debtor-in-possession (the "**Debtor**") for entry of an order (this "**Order**") (a) authorizing and approving the bidding procedures attached hereto as **Exhibit A** (the "**Bid Procedures**") in connection with the sale of substantially all of the Debtor's assets (the "**Assets**"), (b) approving the form and manner of notice in substantially the form attached to the Motion as Exhibit 6A (the "**Sale Notice**") of an auction (the "**Auction**") and sale hearing (the "**Sale Hearing**") with respect to the sale of the Assets free and clear of liens, claims, encumbrances, and other interests (the "**Sale**"),

_____

[1] Capitalized terms used but not otherwise defined shall have the meanings ascribed to them in the Bid Procedures. In the event there is a conflict between this Order and the Motion, this Order shall control and govern.

(c) scheduling the Sale Hearing, and (d) approving procedures for the possible assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale (collectively, the "**Contracts**"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. § 1408; and this Court having found that the relief requested in the Motion is in the best interest of the Debtor's estate, its creditors, and other parties in interest; and this Court having found that notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

THE COURT FINDS THAT:

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that

any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.     The Debtor has articulated good and sufficient reasons for this Court to (a) approve the Bid Procedures; (b) schedule the Auction and Sale Hearing and approve the manner of notice of the Auction and Sale Hearing; and (c) approve procedures for the assumption and assignment of the Contracts, including notice of the proposed cure amounts.

C.     The Bid Procedures are reasonable and appropriate and represent the best method for maximizing the value of the Assets for the benefit of the Debtor and its estate.

D.     Assumption and Assignment Procedures. The Motion, this Order, and the assumption and assignment procedures (the "**Assignment Procedures**") are reasonably calculated to provide counterparties to any Contracts to be assumed by the Debtor and assigned to the Successful Bidder with proper notice of the intended assumption and assignment of their Contracts, the procedures in connection therewith, and any cure amounts relating thereto.

E.     Sale Notice. The Sale Notice is reasonably calculated to provide interested parties with timely and proper notice of the proposed Sale, including, without limitation: (a) the date, time, and place of the Auction (if one is held); (b) the

Bidding Procedures; (c) the deadline for filing objections to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing; (d) reasonably specific identification of the Assets to be sold; (e) a description of the Sale as being free and clear of liens, claims, encumbrances, and other interests (collectively, "**Claims and Interests**"), with all such Interests attaching with the same validity and priority to the Sale proceeds; and (f) notice of the proposed assumption and assignment of Contracts to the Successful Bidder. No other or further notice of the Sale shall be required.

IT IS HEREBY ORDERED THAT:

1. The Motion is granted as set forth herein.

2. All objections to the relief requested in the Motion with respect to the Bid Procedures that have not been withdrawn, waived, or settled as announced to the Court at the Hearing or by stipulation filed with the Court, are overruled.

3. The Bid Procedures, substantially in the form attached hereto and incorporated herein as **Exhibit A**, are approved in their entirety, and the Bid Procedures shall govern the submission, receipt, and analysis of all Bids relating to the proposed sale of the Assets. Any party desiring to bid on the Assets shall comply with the Bid Procedures and this Order. The Debtor is authorized to take any and all actions necessary to implement the Bid Procedures.

## I.  The Auction

4.  As further described in the Bid Procedures, if at least two Qualified Bids are received by the Bid Deadline, the Debtor will conduct the virtual Auction on May 4, 2021 or such later date, time, and location as the Debtor shall notify all Qualified Bidders who have submitted Qualified Bids that are timely received.

5.  If the Debtor does not receive at least two Qualified Bids or otherwise determines appropriate: (a) the Debtor may, in consultation with the Consultation Parties, cancel the Auction; (b) the only Qualified Bid may be deemed by the Debtor to be the Successful Bid for the Assets; and (c) the Debtor shall be authorized to seek approval of the Successful Bid at the Sale Hearing.

6.  If the Debtor receives at least two Qualified Bids, then the Debtor shall conduct the Auction in accordance with the Bid Procedures.

7.  The Stalking Horse Bidder, if any, shall have the right (including as part of any Overbid) to credit bid all or a portion of its Bid Protections (if any) pursuant to Bankruptcy Code section 363(k).

8.  In the event of a competing Qualified Bid, all Qualified Bidders will be entitled, but not obligated, to submit Overbids.

9.  The Debtor, in consultation with the Consultation Parties, may (a) determine which Qualified Bid is the highest or otherwise best offer; (b) reject at any time before the entry of the Sale Order any Bid that, in the discretion of the

Debtor, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bid Procedures, or (iii) contrary to the best interest of the Debtor's estate and its creditors; (c) at or before the conclusion of the Auction may impose such other terms and conditions upon Qualified Bidders as the Debtor determines to be in the best interest of the Debtor's estate; and (d) prior to the entry of the Sale Order, may re-open the Auction, on notice to all participants, to consider further Bids, in its reasonable business judgment.

10.     The ability of the Debtor to provide the Bid Protections and the expense reimbursements, each pursuant to the terms of the Bid Procedures (inclusive of the consent of the Bond Trustee), is hereby approved.

11.     No person or entity, other than as set forth in paragraph 10 herein, shall be entitled to any expense reimbursement, breakup fee, topping or termination fee, or other similar fee or payment, and by submitting a Bid, such person or entity is deemed to have waived its right to request or file with this Court any request for expense reimbursement or any other fee of any nature in connection with the Auction and the Sale, whether by virtue of Bankruptcy Code section 503(b) or otherwise.

## II.     Assumption and Assignment Notices & Procedures

12.     After entry of the Bidding Procedures Order, the Debtor will file with the Bankruptcy Court and serve a notice to the Debtor's contract counterparties other than residents (as of the Debtor's Petition Date) party to a Resident Agreement (each,

a "**Non-Resident Contract Counterparty**"), setting forth the Debtor's calculation of each Non-Resident Contract Counterparty's cure amount, if any, that would be owing to such Non-Resident Contract Counterparty if the Debtor decided to assume or assume and assign such executory contract or unexpired lease, and alerting such Non-Resident Contract Counterparty that its agreement may be assumed and assigned to the Successful Bidder (the "**Cure and Possible Assumption and Assignment Notice**"), substantially in the form attached to the Motion as <u>Exhibit 6B</u>.[2] Any Non-Resident Contract Counterparty that objects to the cure amount set forth in the Cure and Possible Assumption and Assignment Notice must file an objection (a "**Cure Objection**") within 14 days of such notice, which Cure Objection must be served on the Notice Parties.

13.    The presence of a Contract on the Cure and Possible Assumption and Assignment Notice does not constitute an admission that such Contract is an executory contract or unexpired lease, and the presence of a Contract on any notice shall not prevent the Debtor from subsequently withdrawing such request for assuming or rejecting such Contract any time before such Contract is actually assumed and assigned pursuant to the Sale Order.

---

[2] For the avoidance of doubt, "**Non-Resident Contract Counterparty**" shall not include any resident, former resident, or other party asserting claims arising under the Resident Agreements.

14.     If a Non-Resident Contract Counterparty does not timely file and serve a Cure Objection on the Notice Parties, that party will be forever barred from objecting to the Debtor's proposed cure amount.  Where a Non-Resident Contract Counterparty files a timely Cure Objection asserting a higher cure amount than the amount listed in the Cure and Possible Assumption and Assignment Notice and the Non-Resident Contract Counterparty and the Debtor are unable to consensually resolve the dispute, the amount to be paid under Bankruptcy Code section 365 (if any) or, as the case may be, the Debtor's ability to assign the agreement to the Successful Bidder, will be determined at the Sale Hearing.

15.     After the conclusion of the Auction, the Debtor shall file with the Court and serve on the Contract Counterparties who are parties to an Assigned Contract a further notice substantially in the form attached to the Motion as Exhibit 6C (the "**Assumption Notice**") identifying the Successful Bidder, stating which Contracts may be assumed and assigned to the Successful Bidder, and providing such Contract Counterparties with the Successful Bidder's assurance of future performance.

16.     Any Contract Counterparty that objects to the adequacy of the assurance or assumption and/or assignment of its Contract set forth in the Assumption Notice must file an objection (a "**Contract Objection**") with the Bankruptcy Court prior to the Sale Hearing and serve the Contract Objection on the Notice Parties.

17.     If a Contract Counterparty does not file a Contract Objection prior to the Sale Hearing, such party will be forever barred from objecting to the adequacy of the assurance to be provided by the Successful Bidder and shall be forever barred from objecting to the assumption and assignment of its Contract.  Where a Contract Counterparty files a Contract Objection prior to the Sale Hearing, and the parties are unable to consensually resolve the dispute, the adequacy of the assurance provided by the Successful Bidder will be determined at the Sale Hearing.

## III.    Notice of the Sale Process

18.     The Sale Notice, the Cure and Possible Assumption and Assignment Notice, and the Assumption Notice, in substantially the forms attached to the Motion as Exhibit 6A, Exhibit 6B, and Exhibit 6C are approved.

19.     Within two (2) business days after the entry of this Order, the Debtor (or its agents) shall serve the Sale Notice by first-class mail and/or email upon: (a) the U.S. Trustee; (b) counsel to the Bond Trustee; (c) counsel to the Committee; (d) the Non-Resident Contract Counterparties; (e) all parties who have expressed a written interest in the Assets; (f) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or interest in the Assets; (g) all applicable state and local taxing authorities; (h) all the Debtor's other creditors; (i) each governmental agency that is an interested party with respect to the Sale and transactions proposed thereunder; (j) all the Debtor's residents as of

the Petition Date; and (k) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").

20.    Within two (2) business days after the conclusion of the Auction, the Debtor (or its agents) shall serve the Notice of Successful Bidder and Backup Bidder by first-class mail and/or email upon Notice Parties.

## IV.    The Sale Hearing

21.    The Sale Hearing will be conducted on **May 24, 2021 at 10:00 a.m. (prevailing Eastern Time)**.  The Debtor will seek entry of an order of the Court at the Sale Hearing approving and authorizing the Sale of the Assets to the Successful Bidder.  Upon entry of this Order, the Debtor is authorized to perform any obligation intended to be performed prior to the Sale Hearing or entry of the Sale Order with respect thereto.  The Sale Hearing may be continued from time to time without further notice other than such announcement being made in open court or a notice of adjournment being filed with the Court and served on the Sale Notice Parties.

## V.    Objections to the Sale

22.    Objections, if any, to the relief requested in the Motion relating to the Sale must be in writing, filed with the Court, and be served so that it is actually received no later than **May 21, 2021 at 4:00 p.m. (prevailing Eastern time)**. Objections shall be served on (a) counsel for the Debtor, Dykema Gossett PLLC, Attn: Sheryl L. Toby, 39577 Woodward Avenue, Suite 300, Bloomfield Hills,

Michigan 48304, stoby@dykema.com and Danielle Rushing, drushing@dykema.com; (b) counsel for the Bond Trustee, Mintz Levin, Attn: Daniel Bleck, dsbleck@mintz.com and Eric Blythe, erblythe@mintz.com; (c) the Office of the United States Trustee for the Eastern District of Michigan, Attn: Leslie Berg, leslie.k.berg@usdoj.gov; and (d) counsel to the Committee (i) Perkins Coie, Attn: Eric E. Walker, ewalker@perkinscoie.com and Kathleen Allare, kallare@perkinscoie.com, and (ii) Howard & Howard, Attn: Lisa S. Gretchko, lgretchko@howardandhoward.com.

23.     A party's failure to timely file and serve an objection in accordance with this Order shall forever bar the assertion of any objection to the Sale, entry of the Sale Order, and/or consummation of the Sale with the Successful Bidder pursuant to the applicable purchase agreement, including, without limitation, the assumption and assignment of the Contracts to the Successful Bidder pursuant to the applicable purchase agreement, and shall be deemed to constitute such party's consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto, including, without limitation assumption and assignment of Contracts.

## VI.   Other Relief Granted

24.     Nothing in this Order, the Stalking Horse Agreement (if any), or the Motion shall be deemed to or constitute the assumption or assignment of a Contract.

25.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry, notwithstanding any provision in the Bankruptcy Rules or the Local Rules to the contrary, and the Debtor may, in its discretion and without further delay, take any action and perform any act authorized by this Order.

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

IN RE:                                    Case No.  20-51066-mar

HENRY FORD VILLAGE, INC.,                 Chapter 11

     Debtor.                              Honorable Mark A. Randon

_____

## BIDDING PROCEDURES

Henry Ford Village, Inc. (the "**Debtor**") proposes to conduct an auction (the "**Auction**") for the sale (the "**Sale**") of substantially all of its assets and operations (the "**Assets**") and will proceed in accordance with the following bid procedures (the "**Bid Procedures**") which have been approved pursuant to an Order entered by the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division (the "**Bankruptcy Court**") (the "**Bid Procedures Order**") in the Chapter 11 case styled *In re Henry Ford Village, Inc.*, Case No. 20-51066-MAR (the "**Bankruptcy Case**").

The form of asset purchase agreement for the Sale is posted in the Debtor's on-line data room (the "**Form APA**").  As provided for below, the Debtor is soliciting bids ("**Bids**") for the proposed acquisition of the Assets, in accordance with the procedures below (the "**Bidding Process**"), which require, among other things, that potential purchasers submit an executed asset purchase agreement, along with a marked version evidencing any changes to the Form APA or if applicable, the Stalking Horse Agreement.  The Debtor will consider all Bids which comply with the terms of these Bidding Procedures.

### Important Dates (All times are prevailing Eastern District Time)[1]

**January 25, 2021:** Deadline to submit a letter of interest (a "**LOI**").

_____

[1] Note: all dates are subject to change in the Debtor's discretion after consultation with the Bond Trustee and Unsecured Creditors' Committee (the "**Committee**" and together with the Bond Trustee, the "**Consultation Parties**").

**March 26, 2021:** Not later than such date, the Debtor, with the consent of the Bond Trustee and after consulting with the Committee, may select a potential purchaser's Bid to be designated as the stalking horse bid (the "**Stalking Horse Bid**" and such potential purchaser, the "**Stalking Horse Bidder**") which, subject to the terms of the Bid Procedures Order, may be entitled to the Stalking Horse Bid Protections. The Debtor reserves the right, with the consent of the Bond Trustee and after consultation with the Committee, to provide expense reimbursement to potential purchasers, inclusive of any Stalking Horse Bidder, in an aggregate amount not to exceed $400,000 (the "**Aggregate Expense Reimbursement Cap**").

**Within Two (2) Business Day after Designation of Stalking Horse Bid, if any:** Deadline for the Debtor to file and serve the Notice of Stalking Horse (as defined below), if any, to All Parties in Interest (as defined below).

**Deadline to file objections to the Cure and Possible Assumption and Assignment Notice** (as defined below): 14 days from notice of cure amounts.

**April 30, 2021:** Bid Deadline (as defined below).

**May 4, 2021:** Auction date.

**Within Two (2) Business Days after Conclusion of Auction:** Deadline for the Debtor to file a notice regarding the results of the Auction, including the selection of the Successful Bidder and the Backup Bidder (as each are defined below).

**May 21, 2021 at 4:00 p.m. Eastern time:** Deadline to serve objections to the Sale.

**May 24, 2021 at 10:00 a.m. Eastern time:** Sale Hearing.

<u>**Marketing Process**</u>

The Debtor, in consultation with RBC Capital Markets, LLC ("**RBC**"), has developed a list of parties who the Debtor believes may be interested in consummating a Sale, which list includes both strategic and financial parties (each, individually, a "**Contact Party**", and collectively, the "**Contact Parties**"). RBC has or will contact each Contact Party to explore its interest in acquiring the Assets. The Debtor may supplement the list of Contact Parties throughout the marketing process.

The Debtor shall distribute to, or make available in the data room for, each Contact Party an "**Information Package**" that is comprised of:

- a cover letter;

- a copy of these Bid Procedures; and

- a copy of a confidentiality agreement (the "**Confidentiality Agreement**").

To participate in the Bidding Process and to receive access to any confidential materials relating to the Assets (the "**Diligence Materials**"), each Contact Party must submit to the Debtor, through RBC, an executed Confidentiality Agreement, signed and transmitted by the person or entity wishing to have access to the Diligence Materials. Each Contact Party who qualifies for access to the Diligence Materials shall be a "**Preliminary Potential Purchaser**." All Diligence Material requests must be directed to RBC. Except as specifically noted in the paragraph immediately below, the same access and information will be made available to all Preliminary Potential Purchasers.

For any Preliminary Potential Purchaser who is a competitor of the Debtor or is affiliated with any competitor of the Debtor, the Debtor reserves the right to withhold certain Diligence Materials if the Debtor reasonably believes, in consultation with the Consultation Parties, that (a) such disclosure would be detrimental to the interests of the Debtor or (b) the Preliminary Potential Purchaser does not have the capacity to consummate a Bid.

## Bid Protections

Stalking Horse Bid Protections: Subject to the terms of the Bid Procedures Order and the Stalking Horse Bidder executing a definitive asset purchase agreement (the "**Stalking Horse Agreement**"), as a component of the Stalking Horse Agreement, the Debtor, with the consent of the Bond Trustee, may provide a break-up fee of up to 3% of the cash purchase price and an expense reimbursement which combined with the Expense Reimbursement for other Preliminary Potential Purchasers shall not exceed the Aggregate Expense Reimbursement Cap, payable from the proceeds of a closing of a Sale with an alternative purchaser in accordance with these Bid Procedures (collectively, the "**Stalking Horse Bid Protections**").

## Notice of Stalking Horse

It shall be in the Debtor's discretion, with the consent of the Bond Trustee and after consulting with the Committee, as to whether to enter into a Stalking Horse Agreement or to conduct an Auction without a Stalking Horse Bidder. In the event that the Debtor enters into a Stalking Horse Agreement, the Debtor shall file with the Bankruptcy Court, within two (2) business days after execution of such Stalking

Horse Agreement, a copy of the Stalking Horse Agreement, and serve (i) all parties that have requested notice in this Bankruptcy Case as of the date of the Bid Procedures Order; (ii) all persons identified by the Debtor's professionals as potential purchasers of the Assets who have been or who are expected to be active in the marketing process; (iii) all Contract Counterparties (as defined below); (iv) the Bond Trustee; (v) all other creditors of the Debtor; (vi) the Committee; (vii) the Centers For Medicare & Medicaid Services legal department; (viii) each other governmental agency that is an interested party with respect to the Sale; and (ix) the Office of the United States Trustee (collectively, "**All Parties in Interest**") with a notice (the "**Notice of Stalking Horse**") that includes: (a) the identity of the Stalking Horse Bidder; (b) the purchase price to be paid by the Stalking Horse Bidder; (c) the deposit paid by the Stalking Horse Bidder; (d) the amount and nature of the Stalking Horse Bid Protections; (e) the anticipated treatment of prepetition entrance fee refund obligations; (f) the anticipated management of the facility and (g) the anticipated treatment of contracts of all persons that are or were residents on the Petition Date (the "**Resident Agreements**").

## Qualifying Bid Process

To be eligible to participate in the Auction, each initial Bid, and each party other than the Stalking Horse Bidder submitting such a Bid (each, a "**Bidder**"), must be determined by the Debtor, in consultation with the Consultation Parties, to satisfy each of the following conditions and, if so met, such Bid shall constitute a "**Qualified Bid**," and such Bidder shall constitute a "**Qualified Bidder**":

1. <u>Minimum Bid if Stalking Horse Bidder Designated</u>: Each initial Bid must be in an amount that exceeds by $250,000 a combination of (a) the purchase price agreed to by the Stalking Horse Bidder; plus (b) the Stalking Horse Bid Protections.

2. <u>Good Faith Deposit</u>: Each initial Bid must be accompanied by a deposit in an amount of ten percent (10%) of the Bidder's proposed cash purchase price to an interest bearing escrow account to be identified and established by or on behalf of the Debtor (the "**Good Faith Deposit**").

3. <u>Terms of Bid</u>: Each Bid must include:

   • <u>Transaction Documents</u>. All executed transaction documents pursuant to which the Bidder proposes to effectuate the Sale, including (a) an executed asset purchase agreement (the "**Bidder APA**"), in word and pdf formats, and a version of such Bidder APA marked against (1) the Stalking Horse Agreement,

if any, or (2) the Form APA, if no Stalking Horse Agreement exists; (b) related agreements and disclosures; and (c) a copy of the draft Sale Order marked to reflect the amendments and modifications compared to the form of draft Sale Order posted in the Debtor's data room (collectively the "**Transaction Documents**"). Each Bid may provide for either a for-profit or not-for-profit entity as the owner and/or operator of the Debtor's facilities.

   &bull; <u>Going Concern Information</u>. The Bidder APA shall also (a) identify any Contract Counterparty agreements that the Bidder wishes to have assumed and assigned to it pursuant to the Sale; (b) provide detail regarding the treatment of prepetition entrance fee refund obligations; (c) provide detail regarding the treatment of Resident Agreements; (d) provide detail regarding the post-purchase operation and management of the Assets; and (e) provide information pertinent to the ability to obtain regulatory approvals to purchase and operate the Assets.

   &bull; <u>Corporate Authority</u>. Each Bid must disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid, and the complete terms of any such participation, and provide written evidence, reasonably acceptable to the Debtor, demonstrating appropriate corporate authorization to consummate the Sale.

   &bull; <u>Proof of Financial Ability to Perform</u>. Each Bid must include written evidence sufficient for the Debtor to reasonably conclude, after consultation with the Consultation Parties, that the Bidder has or will have the necessary financial ability to consummate the Sale and provide adequate assurance of future performance under all Contract Counterparty agreements to be assumed and assigned in accordance therewith. Such information should include, *inter alia*, the following:

     &bull; contact names and numbers for verification of financing sources;

     &bull; evidence of the Bidder's internal resources and proof of any outside funding sources that are needed to close the Sale;

     &bull; the Bidder's current financial statements and any such other form, financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor demonstrating that such Bidder has or will have the ability to close the Sale.

- <u>Contingencies</u>. Each Bid must include a statement that there are no conditions precedent to the Bidder's ability to close the Sale, including that there are no due diligence or financing contingencies to the Bid, and that all necessary internal and shareholder approvals have been obtained prior to the Bid; each Bid may be subject to the satisfaction of the conditions precedent to the Sale, as set forth in the Bidder APA.

4.      <u>Irrevocable</u>: Each Bid must be irrevocable through the entry of the Sale Order; provided, however, that a Bid accepted as the Successful Bid or the Backup Bid (as each are defined below) shall remain irrevocable as set forth below, subject to the terms and conditions of the Bid Procedures.

5.      <u>Bid Deadline</u>: Regardless of when a party qualifies as a Preliminary Potential Purchaser, the Debtor must receive each Bid, in writing, on or before April 30, 2021, or such later date as may be agreed to by the Debtor (the "**Bid Deadline**"). Each Bid must be sent by the Bid Deadline to each of the following by email: (a) counsel for the Debtor, Dykema Gossett PLLC, Sheryl Toby, stoby@dykema.com and Danielle Rushing, drushing@dykema.com; (b) RBC, David Fields, david.fields@rbccm.com; (c) counsel for the Bond Trustee: Mintz Levin, Daniel Bleck, dsbleck@mintz.com and Eric Blythe, ERBlythe@mintz.com; and (d) counsel for the Committee:  Perkins Coie LLP, Eric Walker, EWalker@perkinscoie.com. and Kathleen Allare, KAllare@perkinscoie.com (collectively, the "**Notice Parties**").

6.      <u>Credit Bid</u>: The Bond Trustee reserves its right to submit a credit bid for the Assets and is a Qualified Bidder, enabling it to participate at the Auction.  If no Qualified Bids are received by the Bid Deadline (other than a Stalking Horse Bid), the Bond Trustee's deadline to submit a credit bid shall be two (2) business days prior to the date of the Auction.  If at least one Qualified Bid is received by the Bid Deadline (other than the Stalking Horse Bid), the Bond Trustee's deadline to submit a credit bid shall be the close of the Auction.  For the avoidance of doubt, the Bond Trustee shall not be required to post a Good Faith Deposit.

## **<u>Auction</u>**

If any Bid (other than the Stalking Horse Bid) received by the Bid Deadline is determined to be a Qualified Bid, the Debtor will conduct the Auction to determine the highest or best Qualified Bid.  This determination shall take into account any factors the Debtor, upon consultation with the Consultation Parties, reasonably deems relevant to the value of the Qualified Bid to the estate.  The Stalking Horse

Bidder, if any, and Qualified Bidders will be notified no later than twenty-four (24) hours prior to the Auction, if any Qualified Bids have been received. If no other Qualified Bid is received and the Bond Trustee has not provided notice of its intent to exercise its credit bid rights, the Debtor will not hold an Auction and the Stalking Horse Bidder will be named the Successful Bidder. The Auction, if necessary, shall take place virtually on May 4, 2021. Unless otherwise agreed to by the Debtor, only Qualified Bidders, members of the Committee, the Bond Trustee, representatives of holders of the Bonds, and each of their respective legal or financial professionals are eligible to attend or participate at the Auction. The Auction shall be recorded, transcribed or videotaped, and shall be conducted according to the following procedures, which may be modified by the Debtor in consultation with the Consultation Parties:

### *The Debtor Shall Conduct the Auction.*

The Debtor and its professionals shall direct and preside over the Auction in consultation with the Consultation Parties in a manner that is consistent with these Bid Procedures. At the start of the Auction the Debtor shall describe the terms of the highest or best Qualified Bid(s) (the "**Auction Baseline Bid**").

All Bids made thereafter shall be Overbids (as defined below), and shall be made in a manner determined by the Debtor, in consultation with the Consultation Parties, and all material terms of each Overbid received shall be disclosed to all Bidders who have submitted Qualified Bids prior to any subsequent round of bidding. The Debtor shall maintain a transcript of all Bids made and announced at the Auction, including the Auction Baseline Bid and all Overbids.

### *Terms of Overbids.*

An "**Overbid**" is any Bid made at the Auction subsequent to the Debtor's announcement of the Auction Baseline Bid. To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

(1)     *Minimum Overbid Increment.*

In advance of the Auction and after a review of the Qualified Bids received and in consideration of any Stalking Horse Bid Protections, the Debtor, in consultation with the Consultation Parties, shall determine the increments of any Overbid after the Auction Baseline Bid (the "**Minimum Overbid Increment**"); provided, that the Debtor shall retain the right to modify the Minimum Overbid Increment at the

Auction in consultation with the Consultation Parties. A Stalking Horse Bidder shall be entitled to credit bid the amount of its Stalking Horse Bid Protections.

(2) ***Remaining Terms are the Same as for Qualified Bids.***

Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above; provided, however, that the Bid Deadline shall not apply. Upon the conclusion of the Auction, each Qualified Bidder's last Bid accepted by the Debtor, in consultation with the Consultation Parties, shall remain open and binding on each Qualified Bidder until the entry of the Sale Order.

To the extent not previously provided, a Qualified Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure, credit-quality support information or other enhancement reasonably acceptable to the Debtor in consultation with the Consultation Parties) demonstrating such Bidder's ability to close the Sale.

(3) ***Announcing Overbids.***

Each Overbid will be made by the Qualified Bidder in the main virtual auction room where the Auction proceedings are being transcribed such that all Qualified Bidders can hear and seek clarification from the Debtor on the terms of such Overbid. As requested, the Debtor may provide the basis for calculating the total consideration offered in each Overbid and the resulting benefit to the Debtor's estate.

(4) ***Consideration of Overbids.***

The Debtor reserves the right, in its reasonable business judgment in consultation with the Consultation Parties, to make one or more adjournments in the Auction to, among other things: (a) facilitate discussions among the Debtor, the Consultation Parties, and any Qualified Bidder to consider how they wish to proceed, (b) give Qualified Bidders the opportunity to provide the Debtor with such additional evidence as the Debtor in its reasonable business judgment, in consultation with the Consultation Parties, may require to evaluate that the Qualified Bidder's financial ability to consummate the Sale at the prevailing Overbid amount, or (c) address other reasonable concerns, including technical difficulties.

### <u>No Collusion; Good-Faith Bona Fide Offer</u>.

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (a) it has not engaged in any collusion with respect to the Sale or Bidding Process (including that it has no agreement with any other Bidder

or Qualified Bidder to control the price) and (b) its Qualified Bid is a good-faith *bona fide* offer and it intends to consummate the Sale if selected as the Successful Bidder or the Backup Bidder.

### *"As Is, Where Is" Sale*.

Except as explicitly set forth in the Form APA, any Sale of the Assets will be transferred on an "as is, where is" basis, with all faults, and without representations or warranties of any kind, nature or description by the Debtor, its agents or estate, whether written, verbal, express, implied, or by operation of law.

### *Consent to Jurisdiction as Condition to Bidding*.

All Qualified Bidders are deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to any Bids, the Bidding Procedures, the Transaction Documents or the Auction.

### *Closing the Auction*.

The Auction may be adjourned from time to time by the Debtor after consultation with the Consultation Parties. Other than reasonable adjournments, the Auction shall continue until there is only one Qualified Bid that the Debtor determines in its reasonable business judgment, after consultation with its financial and legal advisors and the Consultation Parties, is the highest or best Qualified Bid at the Auction (the "**Successful Bid**" and the Qualified Bidder submitting such Successful Bid, the "**Successful Bidder**"). The Auction shall not close unless and until all Qualified Bidders who have submitted Qualified Bids and remain active in the Auction by submitting Overbids as deemed necessary by the Debtor's Auction procedures announced at the Auction, have been given a reasonable opportunity to submit an Overbid at the Auction to the then-existing Overbid. Prior to the conclusion of the Auction, the Successful Bidder and Backup Bidder have submitted fully executed Transaction Documents memorializing the terms of the Successful Bid and Backup Bid and each of the Successful Bidder and the Backup Bidder shall have increased the amount of its Good Faith Deposit to 10% of the cash purchase price of the Successful Bid and the Backup Bid, respectively. Within two (2) business days of selection of the Successful Bidder and the Backup Bidder, the Debtor shall file with the Bankruptcy Court and serve on each resident, a notice identifying the Successful Bidder and the Backup Bidder and providing details relating to the Successful Bid and the Backup Bid, including the purchase price to be paid and the anticipated treatment of the Resident Agreements.

Notwithstanding anything in the Bid Procedures to the contrary, if an Auction is conducted, the party with the next highest or otherwise best Qualified Bid(s) at the conclusion of the Auction, as determined by the Debtor, in the exercise of its business judgment in consultation with the Consultation Parties, shall be required to serve as a backup bidder (the "**Backup Bidder**"). The Backup Bidder shall be required to keep its final Qualified Bid or last Overbid at Auction (the "**Backup Bid**") open and irrevocable until the earlier of one (1) business day after the closing of the Sale with the Successful Bidder, and forty-five (45) days from the entry of the Sale Order (the "**Outside Backup Date**") unless such Backup Bidder is determined to become the Successful Bidder. Following entry of the Sale Order, if the Successful Bidder fails to consummate the Sale, the Debtor may designate the Backup Bidder to be the new Successful Bidder, and the Debtor will be authorized, but not required, to consummate the Sale with the Backup Bidder without further order of the Bankruptcy Court. The closing date to consummate the Sale with the Backup Bidder shall be as soon as reasonably possible after the date that the Debtor provides notice to the Backup Bidder that the Successful Bidder failed to consummate the Sale and that the Debtor desires to consummate the transaction with the Backup Bidder subject to the terms of the Bidder APA executed by the Backup Bidder (the "**Backup Bidder APA**"). The Good Faith Deposit of the Backup Bidder shall be held by the Debtor until the earlier of one (1) business day after the closing of the Sale with the Successful Bidder, and the Outside Backup Date; provided, however, that in the event the Successful Bidder does not consummate the Sale as described above and the Debtor provides notice to the Backup Bidder that it has been chosen as the replacement Successful Bidder and the Backup Bidder's Good Faith Deposit shall be held until the closing of the Sale with the Backup Bidder as set forth in the Backup Bidder APA.

## Procedures for Determining Cure Amounts and Adequate Assurance for Contract Counterparties to Assigned Contracts

After entry of the Bidding Procedures Order, the Debtor will file with the Bankruptcy Court and serve a notice to the Debtor's contract counterparties other than residents (as of the Debtor's Petition Date) party to a Resident Agreement (each, a "**Non-Resident Contract Counterparty**"), setting forth the Debtor's calculation of each Non-Resident Contract Counterparty's cure amount, if any, that would be owing to such Non-Resident Contract Counterparty if the Debtor decided to assume or assume and assign such executory contract or unexpired lease, and alerting such Non-Resident Contract Counterparty that its agreement may be assumed and assigned to the Successful Bidder (the "**Cure and Possible Assumption and**

Assignment Notice")[2] Any Non-Resident Contract Counterparty that objects to the cure amount set forth in the Cure and Possible Assumption and Assignment Notice, must file an objection (a "**Cure Objection**") within 14 days of such notice, which Cure Objection must be served on the Notice Parties.

If a Non-Resident Contract Counterparty does not timely file and serve a Cure Objection, that party will be forever barred from objecting to the Debtor's proposed cure amount. Where a Non-Resident Contract Counterparty files a timely Cure Objection asserting a higher cure amount than the amount listed in the Cure and Possible Assumption and Assignment Notice, and the Non-Resident Contract Counterparty and the Debtor are unable to consensually resolve the dispute, the amount to be paid under Bankruptcy Code section 365 (if any) or, as the case may be, the Debtor's ability to assign the agreement to the Successful Bidder, will be determined at the Sale Hearing.

After the conclusion of the Auction, the Debtor shall file with the Bankruptcy Court and serve on the Contract Counterparties a further notice (the "**Assumption Notice**") identifying the Successful Bidder, stating which Contracts may be assumed and assigned to the Successful Bidder, and providing such Contract Counterparties with the Successful Bidder's assurance of future performance. Any Contract Counterparty that objects to the adequacy of the assurance or assumption and/or assignment of its Contract set forth in the Assumption Notice must file an objection with the Bankruptcy Court (a "**Contract Objection**") and serve the Contract Objection on the Notice Parties prior to the Sale Hearing. If a Contract Counterparty does not file a Contract Objection prior to the Sale Hearing, such party will be forever barred from objecting to the adequacy of the assurance to be provided by the Successful Bidder and assumption and assignment to the Successful Bidder. Where a Contract Counterparty files a Contract Objection prior to the Sale Hearing, and the parties are unable to consensually resolve the dispute, the adequacy of the assurance provided by the Successful Bidder or raised issues regarding the potential assumption and assignment will be determined at the Sale Hearing.

## Sale Hearing

The Bankruptcy Court has scheduled a hearing (the "**Sale Hearing**") on May 24, 2021 at 10:00 a.m. (prevailing Eastern Time), at which the Debtor will seek approval of the Sale to the Successful Bidder and if applicable, the Backup Bidder.

---

[2] For the avoidance of doubt, "**Non-Resident Contract Counterparty**" shall not include any resident, former resident, or other party asserting claims arising under the Resident Agreements.

Objections to the Sale of the Assets to the Successful Bidder or Back-Up Bidder must be filed and served so that they are actually received by the Debtor no later than 4:00 p.m. (ET) May 21, 2021, on the Notice Parties and the Office of the United States Trustee for the Eastern District of Michigan, Attn: Leslie Berg, Leslie.K.Berg@usdoj.gov@usdoj.gov.

## Return of Good Faith Deposits

The Good Faith Deposits of all Qualified Bidders shall be held in one or more interest-bearing escrow accounts by the Debtor, but shall not become property of the Debtor's estate absent further order of the Court. The Good Faith Deposits of any Qualified Bidder that is neither the Successful Bidder nor the Backup Bidder shall be returned to such Qualified Bidder not later than two (2) business days after entry of the Sale Order. The Good Faith Deposit of the Backup Bidder shall be returned to the Backup Bidder on the date that is the earlier of one (1) business day after the closing of the Sale with the Successful Bidder, and the Outside Backup Date, unless such Backup Bidder is determined to become the Successful Bidder. Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon. If the Successful Bidder or the Backup Bidder timely closes the Sale, its Good Faith Deposit shall be credited towards its purchase price.

## Reservation of Rights

THE DEBTOR RESERVES ITS RIGHTS TO MODIFY THESE BIDDING PROCEDURES IN ANY MANNER, IN CONSULTATION WITH CONSULTATION PARTIES (OTHER THAN WITH RESPECT TO CONSENT AND CREDIT BID RIGHTS FOR THE BOND TRUSTEE AS SET FORTH ABOVE FOR WHICH ITEMS THE BOND TRUSTEE MUST PROVIDE CONSENT TO ANY MODIFICATION), THAT WILL BEST PROMOTE THE GOALS OF THE BIDDING PROCESS AND TO IMPOSE, AT OR PRIOR TO THE AUCTION, ADDITIONAL OR DIFFERENT CUSTOMARY TERMS AND CONDITIONS ON THE SALE OF THE ASSETS, INCLUDING, WITHOUT LIMITATION, MODIFYING THE REQUIREMENTS FOR A QUALIFIED BID, EXTENDING THE DEADLINES SET FORTH IN THESE BIDDING PROCEDURES, ADJOURNING THE AUCTION AT OR PRIOR TO THE AUCTION AND/OR ADJOURNING THE SALE HEARING PRIOR TO SUCH HEARING OR IN OPEN COURT WITHOUT FURTHER NOTICE, AND REJECTING ANY OR ALL QUALIFIED BIDS IF, IN THE DEBTOR'S REASONABLE, GOOD-FAITH BUSINESS JUDGMENT DETERMINED THAT SUCH QUALIFIED BID IS (I) INADEQUATE OR INSUFFICIENT, (II) NOT IN CONFORMITY WITH THE REQUIREMENTS OF THE BANKRUPTCY CODE

OR ANY RELATED RULES OR THE TERMS SET FORTH HEREIN, OR (III) CONTRARY TO THE BEST INTERESTS OF THE DEBTOR. THE DEBTOR RESERVES THE RIGHT, AT ANY TIME, FOR ANY REASON AND IN ITS REASONABLE, GOOD-FAITH BUSINESS JUDGMENT IN CONSULTATION WITH THE CONSULTATION PARTIES, TO DECLINE TO PURSUE THE SALE AND TO WITHDRAW ANY MOTION FILED IN THE COURT SEEKING TO APPROVE THE SALE.

Dated:  December __, 2020

**DYKEMA GOSSETT PLLC**

By: *DRAFT*

    Sheryl L. Toby (P39114)
    Jong-Ju Chang (P70584)
    39577 Woodward Avenue, Suite 300
    Bloomfield Hills, Michigan 48304
    (248) 203-0700 / Fax (248) 203-0763
    SToby@dykema.com
    JChang@dykema.com

    and

    Patrick L. Huffstickler
    Texas Bar No. 10199250
    Danielle N. Rushing
    Texas Bar No. 24086961
    112 East Pecan Street, Suite 1800
    San Antonio, Texas 78205
    (210) 554-5500 / Fax (210) 226-8395
    PHuffstickler@dykema.com
    DRushing@dykema.com

    *COUNSEL FOR DEBTOR AND DEBTOR-IN-POSSESSION*

# EXHIBIT 2

In re:                                    Chapter 11

HENRY FORD VILLAGE, INC.,                 Case No. 20-51066-MAR

          Debtor.                         Hon. Mark A. Randon

_____/

## NOTICE AND OPPORTUNITY TO OBJECT REGARDING
## ENTRY OF SALE PROCEDURES ORDER

On December 2, 2020, Henry Ford Village, Inc. (the "**Debtor**") filed the *Debtor's Motion for Entry of (I) An Order (A) Approving Bidding Procedures and Protections in Connection With the Sale of Substantially All of the Debtor's Assets, (B) Approving the Form and Manner of Notice Thereof, (C) Scheduling an Auction and Sale Hearing, (D) Approving Procedures for the Assumption and Assignment of Contracts, and (E) Granting Related Relief; and (II) An Order (A) Approving the Asset Purchase Agreement Between the Debtor and the Successful Bidder, (B) Authorizing the Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (C) Authorizing the Assumption and Assignment of Contracts, and (D) Granting Related Relief* (the "**Sale Procedures Motion**").

By the Sale Procedures Motion, the Debtor seeks entry of two separate orders:

(I)     an order (a) approving certain bid procedures related to the proposed sale of substantially all of its assets, (b) scheduling an auction if the Debtor receives two or more qualified bids, (c) scheduling a hearing to consider approval of the proposed sale, (d) approving the form and manner of notice thereof, and (e) establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts (the "**Sale Procedures Order**"); and

(II)    an order (a) approving the sale of substantially all of the Debtor's assets, (b) authorizing the assumption and assignment of certain executory contracts and unexpired leases, and (c) granting related relief (the "**Sale Order**").

A copy of the Sale Procedures Motion can be obtained, free of charge, by: (i) accessing the Debtor's case information website, www.kccllc.net/HFV, and clicking on the "Sale Documents" tab on the left side of such website, or (ii) requesting a copy from Debtor's counsel, Dykema Gossett PLLC, at:

Dykema Gossett PLLC
Attn: Danielle N. Rushing
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
Phone: (210) 554-5500
Email: DRushing@dykema.com

For general inquiries, you may call the Debtor's claims and noticing agent at (866) 476-0898 (U.S./Canada) or (781) 575-2114 (International).

**Your rights may be affected.  You should read the Sale Procedures Motion carefully and discuss it with your attorney, if you have one in these bankruptcy cases.  (If you do not have an attorney, you may wish to consult one.)**

If you do not want the Court to enter the Sale Procedures Order, or if you want the Court to consider your views on the Sale Procedures Order, then on or before **December 16, 2020**, you or your attorney must:

1.      File with the Court a written response[1] explaining your position at:

United States Bankruptcy Court
Eastern District of Michigan
211 W. Fort Street, Suite 2100
Detroit, MI 48226

If you mail your response to the court for filing, you must mail it early enough so that the court will **receive** it on or before the date stated above.  All attorneys are required to file pleadings electronically.

---

[1] Your response or answer must comply with Rules 8(b), (c) and (e) of the Federal Rules of Bankruptcy Procedure.

2.    You must also send a copy to:

Sheryl L. Toby
39577 Woodward Avenue, Suite 300
Bloomfield Hills, Michigan 48304
SToby@dykema.com

If a response is timely filed and served, a hearing on the entry of the Sale Procedures Order will be held on **December 18, 2020 at 10:00 a.m. (Eastern).**

**If you or your attorney do not take these steps, the Court may decide that you do not oppose the entry of the Sale Procedures Order and may enter the Sale Procedures Order.**

This notice relates to the entry of the Sale Procedures Order only. A separate objection deadline and hearing date will be set with respect to the entry of the Sale Order. Separate notice will be provided with respect to such deadline and hearing date.

Dated: December 2, 2020

Respectfully submitted,

**DYKEMA GOSSETT PLLC**

By: */s/ Sheryl L. Toby*
    Sheryl L. Toby (P39114)
    Jong-Ju Chang (P70584)
    39577 Woodward Avenue, Suite 300
    Bloomfield Hills, Michigan 48304
    (248) 203-0700 / Fax (248) 203-0763
    SToby@dykema.com
    JChang@dykema.com

    and

    Patrick L. Huffstickler
    Texas Bar No. 10199250
    Danielle N. Rushing
    Texas Bar No. 24086961
    112 East Pecan Street, Suite 1800
    San Antonio, Texas 78205
    (210) 554-5500 / Fax (210) 226-8395
    PHuffstickler@dykema.com
    DRushing@dykema.com

    ***COUNSEL FOR DEBTOR***
    ***AND DEBTOR-IN-POSSESSION***

# EXHIBIT 4

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

IN RE:                                                     Case No.  20-51066-mar

HENRY FORD VILLAGE, INC.,              Chapter 11

       Debtor.                                        Honorable Mark A. Randon
_____

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 2nd day of December, 2020, a true and correct copy of the foregoing document was served via CM/ECF on all parties registered to receive notice and via email and/or first-class U.S. mail on the Chapter 11 Case's Special Service List.

Dated: December 2, 2020      **DYKEMA GOSSETT PLLC**

By: */s/ Sheryl L. Toby*
     Sheryl L. Toby (P39114)
     Jong-Ju Chang (P70584)
     39577 Woodward Avenue, Suite 300
     Bloomfield Hills, Michigan 48304
     (248) 203-0700 / Fax (248) 203-0763
     SToby@dykema.com
     JChang@dykema.com

     and

     Patrick L. Huffstickler
     Texas Bar No. 10199250
     Danielle N. Rushing
     Texas Bar No. 24086961
     112 East Pecan Street, Suite 1800
     San Antonio, Texas 78205
     (210) 554-5500 / Fax (210) 226-8395
     PHuffstickler@dykema.com
     DRushing@dykema.com

     ***COUNSEL FOR DEBTOR AND DEBTOR-IN-POSSESSION***

**EXHIBIT 6A**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

IN RE:                                            Case No. 20-51066-MAR

HENRY FORD VILLAGE, INC.,                         Chapter 11

       Debtor.                               Honorable Mark A. Randon

_____/

## NOTICE OF BID PROCEDURES, AUCTION, HEARING, AND DEADLINES RELATING TO THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE DEBTOR

**PLEASE TAKE NOTICE** that on December [\_\_], 2020, Henry Ford Village, Inc., as debtor and debtor-in-possession (the "**Debtor**") in the above-captioned chapter 11 case (the "**Bankruptcy Case**"), filed *Debtor's Motion for Entry of (I) an Order (A) Approving Bid Procedures and Protections in Connection with the Sale of Substantially All of the Debtor's Assets, (B) Approving the Form and Manner of Notice thereof, (C) Scheduling an Auction and Sale Hearing, (D) Approving Procedures for the Assumption and Assignment of Contracts, and (E) Granting Related Relief; and (II) an Order (A) Approving the Asset Purchase Agreement Between the Debtor and the Successful Bidder, (B) Authorizing the Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (C) Authorizing the Assumption and Assignment of Contracts, and (D) Granting Related Relief* [ECF No. \_\_] (the "**Bid Procedures and Sale Motion**").[1] The Debtor seeks to complete a sale (the "**Transaction**") of substantially all its assets (the "**Assets**") to a prevailing bidder or bidders (the "**Successful Bidder**") at an auction (the "**Auction**") free and clear of all liens, claims, encumbrances, and other interests pursuant to Bankruptcy Code section 363.

**PLEASE TAKE FURTHER NOTICE** that, on [_____], the Bankruptcy Court entered an order [ECF No.\_\_] (the "**Bid Procedures Order**") approving the bidding procedures set forth in the Bid Procedures and Sale Motion (the "**Bid Procedures**"), which set the key dates and times related to the sale

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Bid Procedures and Sale Motion.

of the Debtor's Assets under the asset purchase agreement with the Successful Bidder. **All interested bidders should carefully read the Bid Procedures**. To the extent that there are any inconsistencies between the Bid Procedures and the summary description of its terms and conditions contained in this notice, the terms of the Bid Procedures shall control.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bid Procedures, the Debtor must receive a Qualified Bid from interested bidders in writing, on or before April 30, 2021, or such later date as may be agreed to by the Debtor (the "**Bid Deadline**"). Each Bid must be sent by the Bid Deadline to each of the following by email: (a) counsel for the Debtor, Dykema Gossett PLLC, Sheryl Toby, stoby@dykema.com and Danielle Rushing, drushing@dykema.com; (b) RBC, David Fields, david.fields@rbccm.com; (c) counsel for the Bond Trustee: Mintz Levin, Daniel Bleck, dsbleck@mintz.com and Eric Blythe, ERBlythe@mintz.com; and (d) counsel for the Committee: Perkins Coie LLP, Eric Walker, EWalker@perkinscoie.com. and Kathleen Allare, KAllare@perkinscoie.com (collectively, the "**Notice Parties**").

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bid Procedures, if the Debtor receives one or more Qualified Bids by the Bid Deadline, the Auction will be conducted virtually on **May 4, 2021**, or at such other place, date, and time as may be designated by the Debtor.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bid Procedures, the Debtor will file with the Bankruptcy Court and serve a notice to the Debtor's contract counterparties other than residents (as of the Debtor's Petition Date) party to a Resident Agreement (each, a "**Non-Resident Contract Counterparty**"), setting forth the Debtor's calculation of each Non-Resident Contract Counterparty's cure amount, if any, that would be owing to such Non-Resident Contract Counterparty if the Debtor decided to assume or assume and assign such executory contract or unexpired lease, and alerting such Non-Resident Contract Counterparty that its agreement may be assumed and assigned to the Successful Bidder (the "**Cure and Possible Assumption and Assignment Notice**").[2] Any Non-Resident Contract Counterparty that objects to the cure amount set forth in the Cure and Possible Assumption and Assignment Notice or has any other objection to the possible assignment of its agreement, must file an objection (a

---

[2] For the avoidance of doubt, "**Non-Resident Contract Counterparty**" shall not include any resident, former resident, or other party asserting claims arising under the Resident Agreements.

"**Cure Objection**") within 14 days of such notice, which Cure Objection must be served on the Notice Parties.

PLEASE TAKE FURTHER NOTICE that, pursuant to the terms of the Bid Procedures, if a Non-Resident Contract Counterparty does not timely file and serve a Cure Objection, that party will be forever barred from objecting to (a) the Debtor's proposed cure amount. Where a Non-Resident Contract Counterparty files a timely Cure Objection asserting a higher cure amount than the amount listed in the Cure and Possible Assumption and Assignment Notice, or an objection to the possible assignment of that Non-Resident Contract Counterparty's agreement, and the Non-Resident Contract Counterparty and the Debtor are unable to consensually resolve the dispute, the amount to be paid under Bankruptcy Code section 365 (if any) or, as the case may be, the Debtor's ability to assign the agreement to the Successful Bidder, will be determined at the Sale Hearing.

PLEASE TAKE FURTHER NOTICE that, pursuant to the terms of the Bid Procedures, the Debtor shall file with the Bankruptcy Court and serve on the Non-Resident Contract Counterparties a further notice (the "**Assumption Notice**") identifying the Successful Bidder, stating which Contracts will be assumed and assigned to the Successful Bidder, and providing such Non-Resident Contract Counterparties with the Successful Bidder's assurance of future performance. Any Non-Resident Contract Counterparty that objects to the adequacy of the assurance or assumption and/or assignment of its Contract set forth in the Assumption Notice must file an objection with the Bankruptcy Court (a "**Contract Objection**") and serve the Contract Objection on the Notice Parties to the Sale Hearing. If a Non-Resident Contract Counterparty does not file a Contract Objection prior to the Sale Hearing, such party will be forever barred from objecting to the adequacy of the assurance to be provided by the Successful Bidder. Where a Non-Resident Contract Counterparty files a Contract Objection prior to the Sale Hearing, and the parties are unable to consensually resolve the dispute, the adequacy of the assurance provided by the Successful Bidder will be determined at the Sale Hearing.

PLEASE TAKE FURTHER NOTICE that a hearing will be held to approve the sale of the Assets to the Successful Bidder (the "**Sale Hearing**") before the Honorable Mark A. Randon in the U.S. Bankruptcy Court for the Eastern District of Michigan, or any judge sitting in his stead, on **May 24, 2021 at 10 a.m. (prevailing Eastern time)**, or at such time thereafter as counsel may be heard or at such other time as the Bankruptcy Court may determine. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the

Sale Hearing or on the agenda for such Sale Hearing. Objections to the sale of the Assets to the Successful Bidder must be filed and served on the Notice Parties and the Office of the United States Trustee for the Eastern District of Michigan, Attn: Leslie Berg, Leslie.K.Berg@usdoj.gov so that they are received no later than **May 21, 2021 at 4:00 p.m. (prevailing Eastern time)**.

**PLEASE TAKE FURTHER NOTICE** that the Debtor is seeking to waive the fourteen-day stay period under Bankruptcy Rules 6004(h) and 6006(d) in order for the Sale to close immediately upon entry of the Sale Order by this Court.

**PLEASE TAKE FURTHER NOTICE** that this notice is subject to the full terms and conditions of the Bid Procedures and Sale Motion, the Bid Procedures, and the Bid Procedures Order, which shall control in the event of any conflict, and the Debtor encourages parties in interest to review such documents in their entirety. A copy of the Bid Procedures and Sale Motion, the Bid Procedures, and the Bid Procedures Order may be obtained by visiting the website maintained in the Bankruptcy Case at http://www.kccllc.net/HFV or for a fee via PACER by visiting https://www.pacer.gov/.

Dated:  December __, 2020                    Respectfully submitted,

DYKEMA GOSSETT PLLC

By: _DRAFT_
    Sheryl L. Toby (P39114)
    Jong-Ju Chang (P70584)
    39577 Woodward Avenue, Suite 300
    Bloomfield Hills, Michigan 48304
    (248) 203-0700 / Fax (248) 203-0763
    SToby@dykema.com
    JChang@dykema.com

    and

    Patrick L. Huffstickler
    Texas Bar No. 10199250
    Danielle N. Rushing
    Texas Bar No. 24086961
    112 East Pecan Street, Suite 1800
    San Antonio, Texas 78205
    (210) 554-5500 / Fax (210) 226-8395
    PHuffstickler@dykema.com
    DRushing@dykema.com

    ***COUNSEL FOR DEBTOR AND DEBTOR-IN-POSSESSION***

**EXHIBIT 6B**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

IN RE:                              Case No. 20-51066-MAR

HENRY FORD VILLAGE, INC.,       Chapter 11

        Debtor.                   Honorable Mark A. Randon

_____/

## NOTICE TO COUNTERPARTIES TO POTENTIALLY ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES REGARDING CURE AMOUNTS AND POSSIBLE ASSIGNMENT TO SUCCESSFUL BIDDER AT AUCTION

**PLEASE TAKE NOTICE** that on December [__], 2020, Henry Ford Village, Inc., the above-captioned debtor and debtor-in-possession (the "**Debtor**"), filed a motion (the "**Bid Procedures and Sale Motion**") with the United States Bankruptcy Court for the Eastern District of Michigan (the "**Bankruptcy Court**").

**PLEASE TAKE FURTHER NOTICE** that on [_____], the Bankruptcy Court entered an order [ECF No. __] (the "**Bid Procedures Order**") approving Bid Procedures (the "**Bid Procedures**"), which set key dates, times, and procedures related to the sale of substantially of the Debtor's assets (the "**Assets**"). To the extent that there are any inconsistencies between the Bid Procedures and the summary description of the terms and conditions contained in this Notice, the terms of the Bid Procedures shall control.

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE LISTED BELOW WITH THE DEBTOR:**[1]

---

[1] This Notice is being sent to counterparties to Executory Contracts and Unexpired Leases and does not include any resident, former resident, or other party asserting claims arising under the Resident Agreements. This Notice is not an admission by the Debtor that such contract or lease is executory or unexpired.

| [Counterparty Name] | [Contract/Lease] | Cure Amount |

**Pursuant to the Bid Procedures, the Debtor may assume the Executory Contract(s) or Unexpired Lease(s) listed above to which you are a counterparty. Also pursuant to the Bid Procedures, the Debtor may assign the Executory Contract(s) or Unexpired Lease(s) to the successful bidder (the "Successful Bidder") at an auction of substantially all of the Debtor's assets currently scheduled for May 4, 2021.** The Debtor has conducted a review of its books and records and has determined that the cure amount for unpaid monetary obligations under such contract or lease is $[AMOUNT] (the "**Cure Amount**"). If you (a) object to the proposed assumption or disagree with the proposed Cure Amount, or (b) object to the possible assignment of such Executory Contract(s) or Unexpired Lease(s) to the Successful Bidder, **you must file an objection with the Bankruptcy Court no later than fourteen (14) days from the date of service of this Notice** (the "**Objection Deadline**") and serve such objection via email on the following parties:

| Counsel to the Debtor | Counsel to Bond Trustee |
|---|---|
| Dykema Gossett PLLC<br>Attn: Sheryl L. Toby<br>stoby@dykema.com<br>Danielle Rushing<br>drushing@dykema.com | Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.<br>Attn: Daniel Bleck<br>DSBleck@mintz.com<br>Eric Blythe<br>ERBlythe@mintz.com |
| **Counsel to the Committee** | **United States Trustee** |
| Perkins Coie LLP<br>Attn: Eric Walker<br>ewalker@perkinscoie.com<br>Kathleen Allare<br>kallare@perkinscoie.com | Office of the United States Trustee for the Eastern District of Michigan<br>Attn: Leslie K. Berg<br>Leslie.K.Berg@usdoj.gov |

If no objection to the Cure Amount or the assumption and/or assignment of your Executory Contract(s) or Unexpired Lease(s) to the Successful Bidder is filed by the Objection Deadline, **you will be deemed to have stipulated that the Cure Amount as determined by the Debtor and set forth above is correct and you**

**shall be forever barred, estopped, and enjoined from (a) asserting any additional cure amount under the above-listed Executory Contract(s) and Unexpired Lease(s) or (b) objecting to the assumption and/or assignment of the above-listed Executory Contract(s) and Unexpired Lease(s) to the Successful Bidder**.

Dated:  December __, 2020

Respectfully submitted,

**DYKEMA GOSSETT PLLC**

By: *DRAFT*

Sheryl L. Toby (P39114)
Jong-Ju Chang (P70584)
39577 Woodward Avenue, Suite 300
Bloomfield Hills, Michigan 48304
(248) 203-0700 / Fax (248) 203-0763
SToby@dykema.com
JChang@dykema.com

and

Patrick L. Huffstickler
Texas Bar No. 10199250
Danielle N. Rushing
Texas Bar No. 24086961
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
(210) 554-5500 / Fax (210) 226-8395
PHuffstickler@dykema.com
DRushing@dykema.com

***COUNSEL FOR DEBTOR***
***AND DEBTOR-IN-POSSESSION***

# EXHIBIT 6C

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE: | Case No. 20-51066-MAR |
| HENRY FORD VILLAGE, INC., | Chapter 11 |
| Debtor. | Honorable Mark A. Randon |

_____/

## NOTICE OF PROPOSED ASSIGNMENT
## OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**PLEASE TAKE NOTICE** that on October 28, 2020 (the "**Petition Date**"), the above-captioned debtor and debtor in possession (the "**Debtor**") filed a petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Eastern District of Michigan (the "**Bankruptcy Court**"). On December [__], 2020, the Debtor filed a motion (the "**Sale Motion**") [ECF No. __] to sell substantially all of its assets (the "**Assets**") free and clear of all liens, claims, encumbrances, and other interests (the "**Sale**") and assume and assign certain of its executory contracts and unexpired leases (collectively, the "**Contracts**") to the purchaser of the Assets.[1]

**PLEASE TAKE FURTHER NOTICE** that the Debtor is soliciting offers for the purchase of its Assets consistent with the bidding procedures (the "**Bid Procedures**") approved by the Court by the entry of an order on [_____] (the "**Bid Procedures Order**") [ECF No. __]. The Bid Procedures include, among other things, procedures for the assumption and assignment of the Contracts (the "**Assumption Procedures**").

**PLEASE TAKE FURTHER NOTICE** that, accordingly, pursuant to the Bid Procedures Order, the Debtor has selected [●] as the Successful Bidder for the Sale of its Assets and, by this written notice, the Debtor notifies you that the Successful Bidder has determined, in the exercise of its business judgment, that the Contracts

---

[1] Capitalized terms used but not defined herein shall have all the meanings ascribed to them in the Sale Motion, Bid Procedures, and/or Bid Procedures Order, as applicable.

and any modifications thereto set forth on **Schedule 1** attached hereto (collectively, the "**Assigned Contracts**") shall be assumed and assigned to the Successful Bidder, subject to the Successful Bidder's payment of the cure amount set forth on **Schedule 1**, or such other cure amounts as are agreed by the parties.

**PLEASE TAKE FURTHER NOTICE** that the Successful Bidder has the right under certain circumstances to designate additional Contracts as Assigned Contracts or remove certain Contracts from the list of Assigned Contracts prior to closing.

**PLEASE TAKE FURTHER NOTICE** that copies of the Sale Motion, the Bid Procedures, and the Bid Procedures Order, as well as all related exhibits, including the proposed Sale Order, are available by visiting the website maintained by the Debtor's claims and noticing agent at http://www.kccllc.net/HFV or for a fee via PACER by visiting https://www.pacer.gov/.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise provided by the Bid Procedures Order, the time for filing objections to (a) the cure amounts related to the Assigned Contracts and (b) the Debtor's ability to assume and assign the Assigned Contracts has passed and no further notice or action is necessary with respect to such matters.

**PLEASE TAKE FURTHER NOTICE** that any Non-Resident Contract Counterparty that objects to the adequacy of the Successful Bidder's assurance of continued performance set forth in **Schedule 1** hereto must file an objection with the Bankruptcy Court prior to the Sale Hearing.

Dated:  December __, 2020          Respectfully submitted,

**DYKEMA GOSSETT PLLC**

By: *DRAFT*_____
     Sheryl L. Toby (P39114)
     Jong-Ju Chang (P70584)
     39577 Woodward Avenue, Suite 300
     Bloomfield Hills, Michigan 48304
     (248) 203-0700 / Fax (248) 203-0763
     SToby@dykema.com
     JChang@dykema.com

     and

     Patrick L. Huffstickler
     Texas Bar No. 10199250
     Danielle N. Rushing
     Texas Bar No. 24086961
     112 East Pecan Street, Suite 1800
     San Antonio, Texas 78205
     (210) 554-5500 / Fax (210) 226-8395
     PHuffstickler@dykema.com
     DRushing@dykema.com

     ***COUNSEL FOR DEBTOR AND
     DEBTOR-IN-POSSESSION***

## Schedule 1 to Assumption Notice

### Assigned Contracts[2]

| Counterparty | Description of Assigned Contracts or Leases | Cure Amount |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

---

[2] The presence of a contract or lease on this Schedule 1 does not constitute and admission by the Debtor that such contract is an executory contract or such lease in an unexpired lease pursuant to Bankruptcy Code section 365 or any other applicable law, and the Debtor reserves all rights to withdraw any proposed assumption and assignment or to reject any contract or lease at any time before such contract or lease is assumed and assigned pursuant to an order of the Court.