# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

IN RE:                             Case No. 20-51066-MAR

HENRY FORD VILLAGE, INC.,      Chapter 11

      Debtor.                 Honorable Mark A. Randon

_____/

**ORDER (A) APPROVING BIDDING PROCEDURES AND PROTECTIONS IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (B) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (C) SCHEDULING AN AUCTION AND A SALE HEARING, (D) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS, AND (E) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[1] of the above-captioned debtor and debtor-in-possession (the "**Debtor**") for entry of an order (this "**Order**") (a) authorizing and approving the bidding procedures attached hereto as **Exhibit A** (the "**Bid Procedures**") in connection with the sale of substantially all of the Debtor's assets (the "**Assets**"), (b) approving the form and manner of notice in substantially the form attached to the Motion as Exhibit 6A (the "**Sale Notice**") of an auction (the "**Auction**") and sale hearing (the "**Sale Hearing**") with respect to the sale of the Assets free and clear of liens, claims, encumbrances, and other interests (the "**Sale**"),

_____

[1] Capitalized terms used but not otherwise defined shall have the meanings ascribed to them in the Bid Procedures. In the event there is a conflict between this Order and the Motion, this Order shall control and govern.

(c) scheduling the Sale Hearing, and (d) approving procedures for the possible assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale (each, a "**Contract**" and collectively, the "**Contracts**"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. § 1408; and this Court having found that the relief requested in the Motion is in the best interest of the Debtor's estate, its creditors, and other parties in interest; and this Court having found that notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

THE COURT FINDS THAT:

A.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that

any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.       The Debtor has articulated good and sufficient reasons for this Court to (a) approve the Bid Procedures; (b) schedule the Auction and Sale Hearing and approve the manner of notice of the Auction and Sale Hearing; and (c) approve procedures for the assumption and assignment of the Contracts, including notice of the proposed cure amounts.

C.       The Bid Procedures are reasonable and appropriate and represent the best method for maximizing the value of the Assets for the benefit of the Debtor and its estate.

D.       <u>Assumption and Assignment Procedures</u>.  The Motion, this Order, and the assumption and assignment procedures (the "**Assignment Procedures**") are reasonably calculated to provide counterparties to any Contracts to be assumed by the Debtor and assigned to the Successful Bidder with proper notice of the intended assumption and assignment of their Contracts, the procedures in connection therewith, and any cure amounts relating thereto.

E.       <u>Sale Notice</u>.  The Sale Notice is reasonably calculated to provide interested parties with timely and proper notice of the proposed Sale, including, without limitation: (a) the date, time, and place of the Auction (if one is held); (b) the

Bidding Procedures; (c) the deadline for filing objections to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing; (d) reasonably specific identification of the Assets to be sold; (e) a description of the Sale as being free and clear of liens, claims, encumbrances, and other interests (collectively, "**Claims and Interests**"), with all such Claims and Interests attaching with the same validity and priority to the Sale proceeds; and (f) notice of the proposed assumption and assignment of Contracts to the Successful Bidder. No other or further notice of the Sale shall be required.

IT IS HEREBY ORDERED THAT:

1. The Motion is granted as set forth herein.

2. All objections to the relief requested in the Motion with respect to the Bid Procedures that have not been withdrawn, waived, or settled as announced to the Court at the Hearing or by stipulation filed with the Court, are overruled.

3. The Bid Procedures, substantially in the form attached hereto and incorporated herein as **Exhibit A**, are approved in their entirety, and the Bid Procedures shall govern the submission, receipt, and analysis of all Bids relating to the proposed sale of the Assets. Any party desiring to bid on the Assets shall comply with the Bid Procedures and this Order. The Debtor is authorized to take any and all actions necessary to implement the Bid Procedures.

## I. The Auction

4. As further described in the Bid Procedures, if at least two Qualified Bids are received by the Bid Deadline, the Debtor will conduct the virtual Auction on May 4, 2021 or such later date, time, and location as the Debtor shall notify all Qualified Bidders who have submitted Qualified Bids that are timely received.

5. If the Debtor does not receive at least two Qualified Bids or otherwise determines appropriate: (a) the Debtor may, in consultation with the Consultation Parties, cancel the Auction; (b) the only Qualified Bid may be deemed by the Debtor to be the Successful Bid for the Assets; and (c) the Debtor shall be authorized to seek approval of the Successful Bid at the Sale Hearing.

6. If the Debtor receives at least two Qualified Bids, then the Debtor shall conduct the Auction in accordance with the Bid Procedures.

7. The Stalking Horse Bidder, if any, shall have the right (including as part of any Overbid) to credit bid all or a portion of its Bid Protections (if any) pursuant to Bankruptcy Code section 363(k).

8. In the event of a competing Qualified Bid, all Qualified Bidders will be entitled, but not obligated, to submit Overbids.

9. The Debtor, in consultation with the Consultation Parties, may (a) determine which Qualified Bid is the highest or otherwise best offer; (b) reject at any time before the entry of the Sale Order any Bid that, in the discretion of the

Debtor, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bid Procedures, or (iii) contrary to the best interest of the Debtor's estate and its creditors; (c) at or before the conclusion of the Auction may impose such other terms and conditions upon Qualified Bidders as the Debtor determines to be in the best interest of the Debtor's estate; and (d) prior to the entry of the Sale Order, may re-open the Auction, on notice to all participants, to consider further Bids, in its reasonable business judgment.

10.     The ability of the Debtor to provide the Bid Protections and the expense reimbursements, each pursuant to the terms of the Bid Procedures (inclusive of the consent of the Bond Trustee), is hereby approved.

11.     No person or entity, other than as set forth in paragraph 10 herein, shall be entitled to any expense reimbursement, breakup fee, topping or termination fee, or other similar fee or payment, and by submitting a Bid, such person or entity is deemed to have waived its right to request or file with this Court any request for expense reimbursement or any other fee of any nature in connection with the Auction and the Sale, whether by virtue of Bankruptcy Code section 503(b) or otherwise.

## II.     Assumption and Assignment Notices & Procedures

12.     After entry of the Bidding Procedures Order, the Debtor will file with the Bankruptcy Court and serve a notice to the Debtor's contract counterparties other than Debtor's residents (as of or after the Petition Date) party to a Resident

Agreement (each, a "**Non-Resident Contract Counterparty**" and collectively, the "**Non-Resident Contract Counterparties**"), setting forth the Debtor's calculation of each Non-Resident Contract Counterparty's cure amount, if any, that would be owing to such Non-Resident Contract Counterparty if the Debtor decided to assume or assume and assign such executory contract or unexpired lease, and alerting such Non-Resident Contract Counterparty that its agreement may be assumed and assigned to the Successful Bidder (the "**Cure and Possible Assumption and Assignment Notice**"), substantially in the form attached to the Motion as Exhibit 6B.[2] Any Non-Resident Contract Counterparty that objects to the cure amount set forth in the Cure and Possible Assumption and Assignment Notice must file an objection (a "**Cure Objection**") within 14 days of such notice, which Cure Objection must be served on (a) counsel for the Debtor, Dykema Gossett PLLC, Sheryl Toby, stoby@dykema.com and Danielle Rushing, drushing@dykema.com; (b) RBC, David Fields, david.fields@rbccm.com; (c) counsel for the Bond Trustee: Mintz Levin, Daniel Bleck, dsbleck@mintz.com and Eric Blythe, ERBlythe@mintz.com; and (d) counsel for the Committee: Perkins Coie LLP, Eric Walker, EWalker@perkinscoie.com. and Kathleen Allare, KAllare@perkinscoie.com (collectively, the "**Notice Parties**").

---

[2] For the avoidance of doubt, "**Non-Resident Contract Counterparty**" shall not include any resident, former resident, or other party asserting claims arising under the Resident Agreements.

13.     The presence of a Contract on the Cure and Possible Assumption and Assignment Notice does not constitute an admission that such Contract is an executory contract or unexpired lease, and the presence of a Contract on any notice shall not prevent the Debtor from subsequently withdrawing such request for assuming or rejecting such Contract any time before such Contract is actually assumed and assigned pursuant to the Sale Order.

14.     If a Non-Resident Contract Counterparty does not timely file and serve a Cure Objection on the Notice Parties, that party will be forever barred from objecting to the Debtor's proposed cure amount.  Where a Non-Resident Contract Counterparty files a timely Cure Objection asserting a higher cure amount than the amount listed in the Cure and Possible Assumption and Assignment Notice and the Non-Resident Contract Counterparty and the Debtor are unable to consensually resolve the dispute, the amount to be paid under Bankruptcy Code section 365 (if any) or, as the case may be, the Debtor's ability to assign the agreement to the Successful Bidder, will be determined at the Sale Hearing.

15.     After the conclusion of the Auction, the Debtor shall file with the Court and serve on the Non-Resident Contract Counterparties who are parties to an Assigned Contract a further notice substantially in the form attached to the Motion as <u>Exhibit 6C</u> (the "**Assumption Notice**") identifying the Successful Bidder, stating which Contracts may be assumed and assigned to the Successful Bidder, and

providing such Non-Resident Contract Counterparties with the Successful Bidder's assurance of future performance.

16.     Any Non-Resident Contract Counterparty that objects to the adequacy of the assurance or assumption and/or assignment of its Contract set forth in the Assumption Notice must file an objection (a "**Contract Objection**") with the Bankruptcy Court prior to the Sale Hearing and serve the Contract Objection on the Notice Parties.

17.     If a Non-Resident Contract Counterparty does not file a Contract Objection prior to the Sale Hearing, such party will be forever barred from objecting to the adequacy of the assurance to be provided by the Successful Bidder and shall be forever barred from objecting to the assumption and assignment of its Contract. Where a Non-Resident Contract Counterparty files a Contract Objection prior to the Sale Hearing, and the parties are unable to consensually resolve the dispute, the adequacy of the assurance provided by the Successful Bidder will be determined at the Sale Hearing.

## III.    Notice of the Sale Process

18.     The Sale Notice, the Cure and Possible Assumption and Assignment Notice, and the Assumption Notice, in substantially the forms attached to the Motion as Exhibit 6A, Exhibit 6B, and Exhibit 6C are approved.

19.     Within two (2) business days after the entry of this Order, the Debtor (or its agents) shall serve the Sale Notice by first-class mail and/or email upon: (a) all parties that have requested notice or which are on the Special Service List in this Bankruptcy Case as of the date of the Bid Procedures Order; (b) all Non-Resident Contract Counterparties; (c) the Bond Trustee; (d) all creditors of the Debtor; (e) all residents of the Debtor as of or after the Petition Date; (f) counsel to the Committee; (g) the Centers For Medicare & Medicaid Services legal department; (h) each other governmental agency that is an interested party with respect to the Sale; and (i) the Office of the United States Trustee (collectively, the "**Initial Parties**").

20.     In the event that the Debtor enters into a Stalking Horse Agreement, the Debtor shall file with the Bankruptcy Court, within two (2) business days after execution of such Stalking Horse Agreement, a copy of the Stalking Horse Agreement, and serve (a) Initial Parties, and (b) all persons identified by the Debtor's professionals as potential purchasers of the Assets who have been or who are expected to be active in the marketing process with a notice (the "**Notice of Stalking Horse**") that includes: (a) the identity of the Stalking Horse Bidder; (b) the purchase price to be paid by the Stalking Horse Bidder; (c) the deposit paid by the Stalking Horse Bidder; (d) the amount and nature of the Stalking Horse Bid Protections; (e) the treatment of Residency and Care Agreements (the "**Resident Agreements**") of the Debtor's current residents; (f) the treatment of entrance fee refund obligations

owed to former residents; and (g) the operation and management of the facility after the Sale.

21.     Within two (2) business days of selection of the Successful Bidder and the Backup Bidder, the Debtor shall file with the Bankruptcy Court and serve on Initial Parties a notice identifying, for both the Successful Bid and the Backup Bid: (a) the identity of the bidder; (b) the purchase price to be paid; (c) the treatment of the Resident Agreements of the Debtor's current residents, including information relevant to adequate assurance of future performance; (d) the treatment of entrance fee refund obligations owed to former residents; and (e) the operation and management of the facility after the Sale.

## IV.  The Sale Hearing

22.     The Sale Hearing will be conducted on **May 24, 2021 at 10:00 a.m. (prevailing Eastern Time)**.  The Debtor will seek entry of an order of the Court at the Sale Hearing approving and authorizing the Sale of the Assets to the Successful Bidder.  Upon entry of this Order, the Debtor is authorized to perform any obligation intended to be performed prior to the Sale Hearing or entry of the Sale Order with respect thereto.  The Sale Hearing may be continued from time to time without further notice other than such announcement being made in open court or a notice of adjournment being filed with the Court and served on the Notice Parties.

## V. Objections to the Sale

23.     Objections, if any, to the relief requested in the Motion relating to the Sale must be in writing, filed with the Court, and be served so that it is actually received no later than **May 21, 2021 at 4:00 p.m. (prevailing Eastern time)**. Objections shall be served on (a) counsel for the Debtor, Dykema Gossett PLLC, Attn: Sheryl L. Toby, 39577 Woodward Avenue, Suite 300, Bloomfield Hills, Michigan 48304, stoby@dykema.com and Danielle N. Rushing, drushing@dykema.com; (b) counsel for the Bond Trustee, Mintz Levin, Attn: Daniel Bleck, dsbleck@mintz.com and Eric Blythe, erblythe@mintz.com; (c) the Office of the United States Trustee for the Eastern District of Michigan, Attn: Leslie Berg, leslie.k.berg@usdoj.gov; and (d) counsel to the Committee (i) Perkins Coie, Attn: Eric E. Walker, ewalker@perkinscoie.com and Kathleen Allare, kallare@perkinscoie.com, and (ii) Howard & Howard, Attn: Lisa S. Gretchko, lgretchko@howardandhoward.com.

24.     A party's failure to timely file and serve an objection in accordance with this Order shall forever bar the assertion of any objection to the Sale, entry of the Sale Order, and/or consummation of the Sale with the Successful Bidder pursuant to the applicable purchase agreement, including, without limitation, the assumption and assignment of the Contracts to the Successful Bidder pursuant to the applicable purchase agreement, and shall be deemed to constitute such party's

consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto, including, without limitation assumption and assignment of Contracts.

## VI. Other Relief Granted

25.     Nothing in this Order, the Stalking Horse Agreement (if any), or the Motion shall be deemed to or constitute the assumption or assignment of a Contract.

26.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry, notwithstanding any provision in the Bankruptcy Rules or the Local Rules to the contrary, and the Debtor may, in its discretion and without further delay, take any action and perform any act authorized by this Order

27.     The Debtor will provide publication of the sale opportunity in at least one senior living industry publication.

**EXHIBIT A**

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

IN RE:                           Case No. 20-51066-mar

HENRY FORD VILLAGE, INC.,     Chapter 11

     Debtor.                Honorable Mark A. Randon

_____

## BIDDING PROCEDURES

Henry Ford Village, Inc. (the "**Debtor**") proposes to conduct an auction (the "**Auction**") for the sale (the "**Sale**") of substantially all of its assets and operations (the "**Assets**") and will proceed in accordance with the following bid procedures (the "**Bid Procedures**") which have been approved pursuant to an Order entered by the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division (the "**Bankruptcy Court**") (the "**Bid Procedures Order**") in the Chapter 11 case styled *In re Henry Ford Village, Inc.*, Case No. 20-51066-MAR (the "**Bankruptcy Case**").

The form of asset purchase agreement for the Sale is posted in the Debtor's on-line data room (the "**Form APA**"). As provided for below, the Debtor is soliciting bids ("**Bids**") for the proposed acquisition of the Assets, in accordance with the procedures below (the "**Bidding Process**"), which require, among other things, that potential purchasers submit an executed asset purchase agreement, along with a marked version evidencing any changes to the Form APA or if applicable, the Stalking Horse Agreement. The Debtor will consider all Bids which comply with the terms of these Bidding Procedures.

### Important Dates (All times are prevailing Eastern District Time)[1]

**January 25, 2021:** Deadline to submit a letter of interest (a "**LOI**"). The Debtor shall send a letter of instruction, following consultation with the Consultation

_____

[1] Note: all dates are subject to change in the Debtor's discretion after consultation with the Bond Trustee and Unsecured Creditors' Committee (the "**Committee**" and together with the Bond Trustee, the "**Consultation Parties**").

Parties, to all interested parties that have executed a nondisclosure agreement explaining the information to be included in any LOI.

**March 26, 2021:** Not later than such date, the Debtor, with the consent of the Bond Trustee and after consulting with the Committee, may designate a potential purchaser's Bid to be designated as the stalking horse bid (the "**Stalking Horse Bid**" and such potential purchaser, the "**Stalking Horse Bidder**") upon execution of a binding Stalking Horse Agreement between the Debtor and the Stalking Horse Bidder, which, subject to the terms of the Bid Procedures Order, may include the Stalking Horse Bid Protections. The Debtor reserves the right, with the consent of the Bond Trustee and after consultation with the Committee, to provide expense reimbursement to potential purchasers, including of any Stalking Horse Bidder, in an aggregate amount not to exceed $400,000 (the "**Aggregate Expense Reimbursement Cap**").

**Within Two (2) Business Day after Designation of Stalking Horse Bid, if any:** Deadline for the Debtor to file and serve the Notice of Stalking Horse (as defined below), if any, to Initial Parties (as defined below).

**Deadline to file objections to the Cure and Possible Assumption and Assignment Notice** (as defined below): 14 days from filing of the Cure and Possible Assumption and Assignment Notice.

**April 30, 2021:** Bid Deadline (as defined below).

**May 4, 2021:** Auction date.

**Within Two (2) Business Days after Conclusion of Auction:** Deadline for the Debtor to file a notice regarding the results of the Auction, including the selection of the Successful Bidder and the Backup Bidder (as each are defined below).

**May 21, 2021 at 4:00 p.m. Eastern time:** Deadline to serve objections to the Sale.

**May 24, 2021 at 10:00 a.m. Eastern time:** Sale Hearing.

### Marketing Process

The Debtor, in consultation with RBC Capital Markets, LLC ("**RBC**"), has developed a list of parties who the Debtor believes may be interested in consummating a Sale, which list includes both strategic and financial parties (each, individually, a "**Contact Party**", and collectively, the "**Contact Parties**"). RBC has

or will contact each Contact Party to explore its interest in acquiring the Assets. The Debtor may supplement the list of Contact Parties throughout the marketing process.

The Debtor shall distribute to, or make available in the data room for, each Contact Party an "**Information Package**" that is comprised of:

- a cover letter;

- a copy of these Bid Procedures; and

- a copy of a confidentiality agreement (the "**Confidentiality Agreement**").

To participate in the Bidding Process and to receive access to any confidential materials relating to the Assets (the "**Diligence Materials**"), each Contact Party must submit to the Debtor, through RBC, an executed Confidentiality Agreement, signed and transmitted by the person or entity wishing to have access to the Diligence Materials. Each Contact Party who qualifies for access to the Diligence Materials shall be a "**Preliminary Potential Purchaser**." All Diligence Material requests must be directed to RBC. Except as specifically noted in the paragraph immediately below, the same access and information will be made available to all Preliminary Potential Purchasers.

For any Preliminary Potential Purchaser who is a competitor of the Debtor or is affiliated with any competitor of the Debtor, the Debtor reserves the right to withhold certain Diligence Materials if the Debtor reasonably believes, in consultation with the Consultation Parties, that (a) such disclosure would be detrimental to the interests of the Debtor or (b) the Preliminary Potential Purchaser does not have the capacity to consummate a Bid.

RBC can be contacted as follows:

RBC Capital Markets, LLC
Attn: David B. Fields, Managing Director
Email: david.fields@rbccm.com
Telephone: (518) 312-2336

**Bid Protections**

Stalking Horse Bid Protections: Subject to the terms of the Bid Procedures Order and the Stalking Horse Bidder executing a definitive asset purchase agreement (the "**Stalking Horse Agreement**"), as a component of the Stalking Horse Agreement,

the Debtor, with the consent of the Bond Trustee, may provide a break-up fee of up to 3% of the cash purchase price and an expense reimbursement which combined with the Expense Reimbursement for other Preliminary Potential Purchasers shall not exceed the Aggregate Expense Reimbursement Cap, payable from the proceeds of a closing of a Sale with an alternative purchaser in accordance with these Bid Procedures (collectively, the "**Stalking Horse Bid Protections**").

## Notice of Stalking Horse

It shall be in the Debtor's discretion, with the consent of the Bond Trustee and after consulting with the Committee, as to whether to enter into a Stalking Horse Agreement or to conduct an Auction without a Stalking Horse Bidder. In the event that the Debtor enters into a Stalking Horse Agreement, the Debtor shall file with the Bankruptcy Court, within two (2) business days after execution of such Stalking Horse Agreement, a copy of the Stalking Horse Agreement, and serve (i) all parties that have requested notice or which are on the Special Service List in this Bankruptcy Case as of the date of the Bid Procedures Order; (ii) the Office of the United States Trustee; (iii) all Non-Resident Contract Counterparties (as defined below); (iv) the Bond Trustee; (v) all creditors of the Debtor; (vi) all residents of the Debtor as of or after the Petition Date; (vii) counsel to the Committee; (viii) the Centers For Medicare & Medicaid Services legal department; (ix) each other governmental agency that is an interested party with respect to the Sale (the foregoing parties in (i)–(ix) shall be referred to collectively as the "**Initial Parties**"); and (x) all persons identified by the Debtor's professionals as potential purchasers of the Assets who have been or who are expected to be active in the marketing process with a notice (the "**Notice of Stalking Horse**") that includes: (a) the identity of the Stalking Horse Bidder; (b) the purchase price to be paid by the Stalking Horse Bidder; (c) the deposit paid by the Stalking Horse Bidder; (d) the amount and nature of the Stalking Horse Bid Protections; (e) the treatment of Residency and Care Agreements (the "**Resident Agreements**") of the Debtor's current residents; (f) the treatment of entrance fee refund obligations owed to former residents; and (g) the operation and management of the facility after the Sale.

## Qualifying Bid Process

To be eligible to participate in the Auction, each initial Bid, and each party other than the Stalking Horse Bidder submitting such a Bid (each, a "**Bidder**"), must be determined by the Debtor, in consultation with the Consultation Parties, to satisfy each of the following conditions and, if so met, such Bid shall constitute a "**Qualified Bid**," and such Bidder shall constitute a "**Qualified Bidder**":

1. <u>Minimum Bid if Stalking Horse Bidder Designated</u>: Each initial Bid must be in an amount that exceeds by $250,000 a combination of (a) the purchase price agreed to by the Stalking Horse Bidder; plus (b) the Stalking Horse Bid Protections.

2. <u>Good Faith Deposit</u>: Each initial Bid must be accompanied by a deposit in an amount of ten percent (10%) of the Bidder's proposed cash purchase price to an interest bearing escrow account to be identified and established by or on behalf of the Debtor (the "**Good Faith Deposit**").

3. <u>Terms of Bid</u>: Each Bid, including any Stalking Horse Bid, must include:

- <u>Transaction Documents</u>. All executed transaction documents pursuant to which the Bidder proposes to effectuate the Sale, including (a) an executed asset purchase agreement (the "**Bidder APA**"), in word and pdf formats, and, for any bid other than the Stalking Horse Bid, a version of such Bidder APA marked against (1) the Stalking Horse Agreement, if any, or (2) the Form APA, if no Stalking Horse Agreement exists; (b) related agreements and disclosures; and (c) a copy of the draft Sale Order marked to reflect the amendments and modifications compared to the form of draft Sale Order posted in the Debtor's data room (collectively the "**Transaction Documents**"). Each Bid may provide for either a for-profit or not-for-profit entity as the owner and/or operator of the Debtor's facilities.

- <u>Going Concern Information</u>. The Bidder APA shall also (a) identify any Non-Resident Contract Counterparty agreements that the Bidder wishes to have assumed and assigned to it pursuant to the Sale; (b) provide detail regarding the treatment of entrance fee refund obligations owed to former residents; (c) provide detail regarding the treatment of Resident Agreements with the Debtor's current residents; (d) provide detail regarding the operation and management of the Assets after the Sale; and (e) provide information pertinent to the ability to obtain regulatory approvals to purchase and operate the Assets.

- <u>Corporate Authority</u>. Each Bid must disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid, and the complete terms of any such participation, and provide written evidence, reasonably acceptable to the Debtor, demonstrating appropriate corporate authorization to consummate the Sale.

- <u>Proof of Financial Ability to Perform</u>. Each Bid must include written evidence sufficient for the Debtor to reasonably conclude, after consultation with the Consultation Parties, that the Bidder has or will have the necessary financial ability to consummate the Sale and provide adequate assurance of future performance under all Non-Resident Contract Counterparty agreements to be assumed and assigned in accordance therewith. Such information should include, *inter alia*, the following:

  - contact names and numbers for verification of financing sources;

  - evidence of the Bidder's internal resources and proof of any outside funding sources that are needed to close the Sale;

  - the Bidder's current financial statements and any such other form, financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor demonstrating that such Bidder has or will have the ability to close the Sale.

4. <u>Contingencies</u>. Each Bid must include a statement that there are no conditions precedent to the Bidder's ability to close the Sale, including that there are no due diligence or financing contingencies to the Bid, and that all necessary internal and shareholder approvals have been obtained prior to the Bid; each Bid may be subject to the satisfaction of the conditions precedent to the Sale, as set forth in the Bidder APA.

5. <u>Irrevocable</u>: Each Bid must be irrevocable through the entry of the Sale Order; provided, however, that a Bid accepted as the Successful Bid or the Backup Bid (as each are defined below) shall remain irrevocable as set forth below, subject to the terms and conditions of the Bid Procedures.

6. <u>Bid Deadline</u>: Regardless of when a party qualifies as a Preliminary Potential Purchaser, the Debtor must receive each Bid, in writing, on or before April 30, 2021, or such later date as may be agreed to by the Debtor (the "**Bid Deadline**"). Each Bid must be sent by the Bid Deadline to each of the following by email: (a) counsel for the Debtor, Dykema Gossett PLLC, Sheryl Toby, stoby@dykema.com and Danielle Rushing, drushing@dykema.com; (b) RBC, David Fields, david.fields@rbccm.com; (c) counsel for the Bond Trustee: Mintz Levin, Daniel Bleck, dsbleck@mintz.com and Eric Blythe, ERBlythe@mintz.com; and (d) counsel for the Committee: Perkins Coie LLP, Eric Walker,

EWalker@perkinscoie.com. and Kathleen Allare, KAllare@perkinscoie.com (collectively, the "**Notice Parties**").

       7.    <u>Credit Bid</u>: The Bond Trustee reserves its right to submit a credit bid for the Assets (a "**Credit Bid**") and is a Qualified Bidder, enabling it to participate at the Auction. If no Qualified Bids are received by the Bid Deadline (other than a Stalking Horse Bid), the Bond Trustee's deadline to submit a Credit Bid shall be two (2) business days prior to the date of the Auction. If at least one Qualified Bid is received by the Bid Deadline (other than the Stalking Horse Bid), the Bond Trustee's deadline to submit a credit bid shall be the close of the Auction. As part of any Credit Bid, the Bond Trustee must disclose the Going Concern Information set forth in Paragraph 3 of these Bid Procedures. For the avoidance of doubt, the Bond Trustee shall not be required to post a Good Faith Deposit.

## Auction

If any Bid (other than the Stalking Horse Bid) received by the Bid Deadline is determined to be a Qualified Bid, the Debtor will conduct the Auction to determine the highest or best Qualified Bid. This determination shall take into account any factors the Debtor, upon consultation with the Consultation Parties, reasonably deems relevant to the value of the Qualified Bid to the estate. The Stalking Horse Bidder, if any, and Qualified Bidders will be notified no later than twenty-four (24) hours prior to the Auction, if any Qualified Bids have been received. If no other Qualified Bid is received and the Bond Trustee has not provided notice of its intent to exercise its credit bid rights, the Debtor will not hold an Auction and the Stalking Horse Bidder will be named the Successful Bidder. The Auction, if necessary, shall take place virtually on May 4, 2021. Unless otherwise agreed to by the Debtor, only Qualified Bidders, members of the Committee, the Bond Trustee, representatives of holders of the Bonds, and each of their respective legal or financial professionals are eligible to attend or participate at the Auction. The Auction shall be recorded, transcribed or videotaped, and shall be conducted according to the following procedures, which may be modified by the Debtor in consultation with the Consultation Parties:

### ***The Debtor Shall Conduct the Auction.***

The Debtor and its professionals shall direct and preside over the Auction in consultation with the Consultation Parties in a manner that is consistent with these Bid Procedures. At the start of the Auction the Debtor shall describe the terms of the highest or best Qualified Bid(s) (the "**Auction Baseline Bid**").

All Bids made thereafter shall be Overbids (as defined below), and shall be made in a manner determined by the Debtor, in consultation with the Consultation Parties, and all material terms of each Overbid received shall be disclosed to all Bidders who have submitted Qualified Bids prior to any subsequent round of bidding. The Debtor shall maintain a transcript of all Bids made and announced at the Auction, including the Auction Baseline Bid and all Overbids.

### *Terms of Overbids.*

An "**Overbid**" is any Bid made at the Auction subsequent to the Debtor's announcement of the Auction Baseline Bid. To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

### (1) *Minimum Overbid Increment.*

In advance of the Auction and after a review of the Qualified Bids received and in consideration of any Stalking Horse Bid Protections, the Debtor, in consultation with the Consultation Parties, shall determine the increments of any Overbid after the Auction Baseline Bid (the "**Minimum Overbid Increment**"); provided, that the Debtor shall retain the right to modify the Minimum Overbid Increment at the Auction in consultation with the Consultation Parties. A Stalking Horse Bidder shall be entitled to credit bid the amount of its Stalking Horse Bid Protections.

### (2) *Remaining Terms are the Same as for Qualified Bids.*

Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above; provided, however, that the Bid Deadline shall not apply. Upon the conclusion of the Auction, each Qualified Bidder's last Bid accepted by the Debtor, in consultation with the Consultation Parties, shall remain open and binding on each Qualified Bidder until the entry of the Sale Order.

To the extent not previously provided, a Qualified Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure, credit-quality support information or other enhancement reasonably acceptable to the Debtor in consultation with the Consultation Parties) demonstrating such Bidder's ability to close the Sale.

### (3) *Announcing Overbids.*

Each Overbid will be made by the Qualified Bidder in the main virtual auction room where the Auction proceedings are being transcribed such that all Qualified Bidders can hear and seek clarification from the Debtor on the terms of such Overbid. As

requested, the Debtor may provide the basis for calculating the total consideration offered in each Overbid and the resulting benefit to the Debtor's estate.

(4) ***Consideration of Overbids.***

The Debtor reserves the right, in its reasonable business judgment in consultation with the Consultation Parties, to make one or more adjournments in the Auction to, among other things: (a) facilitate discussions among the Debtor, the Consultation Parties, and any Qualified Bidder to consider how they wish to proceed, (b) give Qualified Bidders the opportunity to provide the Debtor with such additional evidence as the Debtor in its reasonable business judgment, in consultation with the Consultation Parties, may require to evaluate that the Qualified Bidder's financial ability to consummate the Sale at the prevailing Overbid amount, or (c) address other reasonable concerns, including technical difficulties.

### *No Collusion; Good-Faith Bona Fide Offer.*

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (a) it has not engaged in any collusion with respect to the Sale or Bidding Process (including that it has no agreement with any other Bidder or Qualified Bidder to control the price) and (b) its Qualified Bid is a good-faith *bona fide* offer and it intends to consummate the Sale if selected as the Successful Bidder or the Backup Bidder.

### *"As Is, Where Is" Sale.*

Except as explicitly set forth in the Form APA, any Sale of the Assets will be transferred on an "as is, where is" basis, with all faults, and without representations or warranties of any kind, nature or description by the Debtor, its agents or estate, whether written, verbal, express, implied, or by operation of law.

### *Consent to Jurisdiction as Condition to Bidding.*

All Qualified Bidders are deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to any Bids, the Bidding Procedures, the Transaction Documents or the Auction.

### *Closing the Auction.*

The Auction may be adjourned from time to time by the Debtor after consultation with the Consultation Parties. Other than reasonable adjournments, the Auction

shall continue until there is only one Qualified Bid that the Debtor determines in its reasonable business judgment, after consultation with its financial and legal advisors and the Consultation Parties, is the highest or best Qualified Bid at the Auction (the "**Successful Bid**" and the Qualified Bidder submitting such Successful Bid, the "**Successful Bidder**"). The Auction shall not close unless and until all Qualified Bidders who have submitted Qualified Bids and remain active in the Auction by submitting Overbids as deemed necessary by the Debtor's Auction procedures announced at the Auction, have been given a reasonable opportunity to submit an Overbid at the Auction to the then-existing Overbid. Prior to the conclusion of the Auction, the Successful Bidder and Backup Bidder shall have submitted fully executed Transaction Documents memorializing the terms of the Successful Bid and Backup Bid and each of the Successful Bidder and the Backup Bidder shall have increased the amount of its Good Faith Deposit to 10% of the cash purchase price of the Successful Bid and the Backup Bid, respectively. Within two (2) business days of selection of the Successful Bidder and the Backup Bidder, the Debtor shall file with the Bankruptcy Court and serve on the Initial Parties a notice identifying for both the Successful Bid and the Backup Bid: (a) the identity of the bidder; (b) the purchase price to be paid; (c) the treatment of the Resident Agreements of the Debtor's current residents; (d) the treatment of entrance fee refund obligations owed to former residents; and (e) the operation and management of the facility after the Sale.

Notwithstanding anything in the Bid Procedures to the contrary, if an Auction is conducted, the party with the next highest or otherwise best Qualified Bid(s) at the conclusion of the Auction, as determined by the Debtor, in the exercise of its business judgment in consultation with the Consultation Parties, shall be required to serve as a backup bidder (the "**Backup Bidder**"). The Backup Bidder shall be required to keep its final Qualified Bid or last Overbid at Auction (the "**Backup Bid**") open and irrevocable until the earlier of one (1) business day after the closing of the Sale with the Successful Bidder, and forty-five (45) days from the entry of the Sale Order (the "**Outside Backup Date**") unless such Backup Bidder is determined to become the Successful Bidder. Following entry of the Sale Order, if the Successful Bidder fails to consummate the Sale, the Debtor may designate the Backup Bidder to be the new Successful Bidder, and the Debtor will be authorized, but not required, to consummate the Sale with the Backup Bidder without further order of the Bankruptcy Court. The closing date to consummate the Sale with the Backup Bidder shall be as soon as reasonably possible after the date that the Debtor provides notice to the Backup Bidder that the Successful Bidder failed to consummate the Sale and that the Debtor desires to consummate the transaction with the Backup Bidder subject to the terms of the Bidder APA executed by the Backup

Bidder (the "**Backup Bidder APA**"). The Good Faith Deposit of the Backup Bidder shall be held by the Debtor until the earlier of one (1) business day after the closing of the Sale with the Successful Bidder, and the Outside Backup Date; provided, however, that in the event the Successful Bidder does not consummate the Sale as described above and the Debtor provides notice to the Backup Bidder that it has been chosen as the replacement Successful Bidder and the Backup Bidder's Good Faith Deposit shall be held until the closing of the Sale with the Backup Bidder as set forth in the Backup Bidder APA.

### <u>Procedures for Determining Cure Amounts and Adequate Assurance for Non-Resident Contract Counterparties to Assigned Contracts</u>

After entry of the Bidding Procedures Order, the Debtor will file with the Bankruptcy Court and serve a notice to the Debtor's contract counterparties other than residents, as of the Debtor's Petition Date, that are party to a Resident Agreement (each, a "**Non-Resident Contract Counterparty**" and collectively, the "**Non-Resident Contract Counterparties**"), setting forth the Debtor's calculation of each Non-Resident Contract Counterparty's cure amount, if any, that would be owing to such Non-Resident Contract Counterparty if the Debtor decided to assume or assume and assign such executory contract or unexpired lease, and alerting such Non-Resident Contract Counterparty that its agreement may be assumed and assigned to the Successful Bidder (the "**Cure and Possible Assumption and Assignment Notice**").[2] Any Non-Resident Contract Counterparty that objects to the cure amount set forth in the Cure and Possible Assumption and Assignment Notice, must file an objection (a "**Cure Objection**") within 14 days of such notice, which Cure Objection must be served on the Notice Parties.

If a Non-Resident Contract Counterparty does not timely file and serve a Cure Objection, that party will be forever barred from objecting to the Debtor's proposed cure amount. Where a Non-Resident Contract Counterparty files a timely Cure Objection asserting a higher cure amount than the amount listed in the Cure and Possible Assumption and Assignment Notice, and the Non-Resident Contract Counterparty and the Debtor are unable to consensually resolve the dispute, the amount to be paid under Bankruptcy Code section 365 (if any) or, as the case may be, the Debtor's ability to assign the agreement to the Successful Bidder, will be determined at the Sale Hearing.

---

[2] For the avoidance of doubt, "**Non-Resident Contract Counterparty**" shall not include any resident, former resident, or other party asserting claims arising under the Resident Agreements.

After the conclusion of the Auction, the Debtor shall file with the Bankruptcy Court and serve on the Non-Resident Contract Counterparties a further notice (the "**Assumption Notice**") identifying the Successful Bidder, stating which Contracts may be assumed and assigned to the Successful Bidder, and providing such Non-Resident Contract Counterparties with the Successful Bidder's assurance of future performance. Any Non-Resident Contract Counterparty that objects to the adequacy of the assurance or assumption and/or assignment of its Contract set forth in the Assumption Notice must file an objection with the Bankruptcy Court (a "**Contract Objection**") and serve the Contract Objection on the Notice Parties prior to the Sale Hearing. If a Non-Resident Contract Counterparty does not file a Contract Objection prior to the Sale Hearing, such party will be forever barred from objecting to the adequacy of the assurance to be provided by the Successful Bidder and assumption and assignment to the Successful Bidder. Where a Non-Resident Contract Counterparty files a Contract Objection prior to the Sale Hearing, and the parties are unable to consensually resolve the dispute, the adequacy of the assurance provided by the Successful Bidder or raised issues regarding the potential assumption and assignment will be determined at the Sale Hearing.

## Sale Hearing

The Bankruptcy Court has scheduled a hearing (the "**Sale Hearing**") on May 24, 2021 at 10:00 a.m. (prevailing Eastern Time), at which the Debtor will seek approval of the Sale to the Successful Bidder and if applicable, the Backup Bidder. Objections of any kind to the Sale of the Assets to the Successful Bidder or Back-Up Bidder must be filed and served so that they are actually received by the Debtor no later than 4:00 p.m. (ET) May 21, 2021, on the Notice Parties and the Office of the United States Trustee for the Eastern District of Michigan, Attn: Leslie Berg, Leslie.K.Berg@usdoj.gov. Failure to file and serve an objection to the Sale of the Assets to the Successful Bidder or Back-Up Bidder bars any and all objections.

## Return of Good Faith Deposits

The Good Faith Deposits of all Qualified Bidders shall be held in one or more interest-bearing escrow accounts by the Debtor, but shall not become property of the Debtor's estate absent further order of the Court. The Good Faith Deposits of any Qualified Bidder that is neither the Successful Bidder nor the Backup Bidder shall be returned to such Qualified Bidder not later than two (2) business days after entry of the Sale Order. The Good Faith Deposit of the Backup Bidder shall be returned to the Backup Bidder on the date that is the earlier of one (1) business day after the closing of the Sale with the Successful Bidder, and the Outside Backup Date, unless such Backup Bidder is determined to become the Successful Bidder. Upon the return

of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon. If the Successful Bidder or the Backup Bidder timely closes the Sale, its Good Faith Deposit shall be credited towards its purchase price.

### **Reservation of Rights**

THE DEBTOR RESERVES ITS RIGHTS TO MODIFY THESE BIDDING PROCEDURES IN ANY MANNER, IN CONSULTATION WITH CONSULTATION PARTIES (OTHER THAN WITH RESPECT TO CONSENT AND CREDIT BID RIGHTS FOR THE BOND TRUSTEE AS SET FORTH ABOVE FOR WHICH ITEMS THE BOND TRUSTEE MUST PROVIDE CONSENT TO ANY MODIFICATION), THAT WILL BEST PROMOTE THE GOALS OF THE BIDDING PROCESS AND TO IMPOSE, AT OR PRIOR TO THE AUCTION, ADDITIONAL OR DIFFERENT CUSTOMARY TERMS AND CONDITIONS ON THE SALE OF THE ASSETS, INCLUDING, WITHOUT LIMITATION, MODIFYING THE REQUIREMENTS FOR A QUALIFIED BID, EXTENDING THE DEADLINES SET FORTH IN THESE BIDDING PROCEDURES, ADJOURNING THE AUCTION AT OR PRIOR TO THE AUCTION AND/OR ADJOURNING THE SALE HEARING PRIOR TO SUCH HEARING OR IN OPEN COURT WITHOUT FURTHER NOTICE, AND REJECTING ANY OR ALL QUALIFIED BIDS IF, IN THE DEBTOR'S REASONABLE, GOOD-FAITH BUSINESS JUDGMENT DETERMINED THAT SUCH QUALIFIED BID IS (I) INADEQUATE OR INSUFFICIENT, (II) NOT IN CONFORMITY WITH THE REQUIREMENTS OF THE BANKRUPTCY CODE OR ANY RELATED RULES OR THE TERMS SET FORTH HEREIN, OR (III) CONTRARY TO THE BEST INTERESTS OF THE DEBTOR. THE DEBTOR RESERVES THE RIGHT, AT ANY TIME, FOR ANY REASON AND IN ITS REASONABLE, GOOD-FAITH BUSINESS JUDGMENT IN CONSULTATION WITH THE CONSULTATION PARTIES, TO DECLINE TO PURSUE THE SALE AND TO WITHDRAW ANY MOTION FILED IN THE COURT SEEKING TO APPROVE THE SALE.

Dated: December __, 2020

**DYKEMA GOSSETT PLLC**

By: *DRAFT*
    Sheryl L. Toby (P39114)
    Jong-Ju Chang (P70584)
    39577 Woodward Avenue, Suite 300
    Bloomfield Hills, Michigan 48304
    (248) 203-0700 / Fax (248) 203-0763
    SToby@dykema.com
    JChang@dykema.com

    and

    Patrick L. Huffstickler
    Texas Bar No. 10199250
    Danielle N. Rushing
    Texas Bar No. 24086961
    112 East Pecan Street, Suite 1800
    San Antonio, Texas 78205
    (210) 554-5500 / Fax (210) 226-8395
    PHuffstickler@dykema.com
    DRushing@dykema.com

    ***COUNSEL FOR DEBTOR AND DEBTOR-IN-POSSESSION***

Signed on December 21, 2020



/s/ Mark A. Randon
**Mark A. Randon**
**United States Bankruptcy Judge**