## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

IN RE:                                            Case No. 20-51066-MAR

HENRY FORD VILLAGE, INC.,            Chapter 11

    Debtor.                                 Honorable Mark A. Randon

_____/

## ORDER (I) APPROVING THE ASSET PURCHASE AGREEMENT BETWEEN THE DEBTOR AND HFV OPCO, LLC; (II) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, EXCEPT FOR CERTAIN ASSUMED LIABILITIES; (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH; AND (IV) GRANTING RELATED RELIEF

This matter having come before the Court upon Debtor's [Docket No. 110] (the "<u>Motion</u>") of the above-captioned debtor and debtor-in-possession (the "<u>Debtor</u>"), pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 6004, 6006 and 9007 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 6004-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Eastern District of Michigan (the "<u>Local Rules</u>"), for entry of an order (i) authorizing and approving, among other things, the sale of substantially all of the Debtor's assets free and clear of all liens, claims, interests and encumbrances (collectively, the "<u>Claims and Encumbrances</u>"), other than those liabilities expressly assumed under the APA (as defined below); (ii) authorizing the assumption and assignment of certain executory contracts and unexpired leases; and (iii) granting related relief; and the Court having entered the *Order (A) Approving Bid Procedures and Protections*

*in Connection with the Sale of Substantially all of the Debtor's Assets, (B) Approving the Form and Manner of Notice Thereof; (C) Scheduling an Auction and a Sale Hearing, (D) Approving Procedures for the Assumption and Assignment of Contracts, and (E) Granting Related Relief* [Docket No. 179] (the "<u>Bid Procedures Order</u>"); and the Debtor having conducted a marketing process in compliance with the Bid Procedures Order and, subject to court approval, entering into that certain Asset Purchase Agreement (the "<u>APA</u>")[1] with HFV OPCO, LLC (the "<u>Successful Bidder</u>"), pursuant to which the Successful Bidder has agreed to, among other things, purchase substantially all of the Debtor's assets (the "<u>CCRC Assets</u>") for a purchase price of $76,355,000.00 and other consideration as set forth in the APA; and the Debtor having determined that the Successful Bidder has submitted the highest and best bid for the CCRC Assets; and the Court having conducted a hearing to approve the sale to the Successful Bidder upon the terms and conditions set forth in the APA on May 24, 2021 (the "<u>Sale Hearing</u>") at which time all interested parties were offered an opportunity to be heard; and all parties in interest having been heard, or having had the opportunity to be heard, regarding entry of this Order and approval of the Sale and APA; and it appearing that due and appropriate notice of the Motion, the Bid Procedures Order, the Auction, the Sale Hearing, the results of the Auction and the Assignment Procedures having been given; and it appearing that no other notice of the relief granted by this Order need be given; and this Court being fully advised in the premises; this Court, based upon the arguments, testimony and evidence presented to it, hereby makes the following findings of fact and conclusions of law:[2]

---

[1] Capitalized terms not otherwise defined in this Order shall have the meanings ascribed to them in the APA or the Motion.

[2] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact when appropriate. *See* FED. R. BANKR. P. 7052.

A.    This Court has jurisdiction to hear and determine the Motion and to grant the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of this Chapter 11 Case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.    This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

C.    This proceeding is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(A), (N) and (O).

D.    The statutory predicates for the Motion are sections 105, 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9007, and Local Rule 6004-1.

E.    As evidenced by the affidavits of service filed with the Court, and based upon the representations of counsel at the Sale Hearing: (i) proper, timely and adequate notice of the Motion, the Bid Procedures Order, the Sale Hearing, the Sale, the Auction, the Bid Deadline, the results of the Auction and the Assignment Procedures has been provided in accordance with Bankruptcy Rules 2002, 6004, and 9007 and Local Rule 6004-1; (ii) such notice was good, sufficient and appropriate under the circumstances; and (iii) no other or further notice of the Motion, the Bid Procedures Order, the Sale Hearing, the Sale, the Auction, the Bid Deadline, the results of the Auction or the Assignment Procedures is necessary or shall be required.

F.    A reasonable opportunity to object or be heard with respect to the Motion and the Sale has been afforded to all interested persons and entities, including, without limitation: (i) the Office of the United States Trustee; (ii) counsel

for the Committee; (iii) counsel for the Bond Trustee; (iv) all entities known by the Debtor to have expressed an interest in acquiring the CCRC Assets since the Petition Date; (vi) Centers for Medicare and Medicaid Services, Legal Department; (vii) all parties that have requested notice or which are on the Special Service List in this Chapter 11 Case as of the date of the filing of the Motion; (viii) all creditors of the Debtor; (ix) all residents of the Debtor as of or after the Petition Date; (x) each other governmental agency that is an interested party with respect to the Sale; (xi) Michigan Department of Health and Human Services; (xii) Michigan Department of Licensing and Regulatory Affairs; and (xiii) (all other parties who filed requests for notice under Bankruptcy Rule 2002. The Debtor also gave due and proper notice of the Sale and assumption and potential assignment of each of the executory contracts (the "Initial Contracts") listed in any of the *Notice to Counterparties to Potentially Assumed Executory Contracts and Unexpired Leases Regarding Cure Amounts and Possible Assignment to Successful Bidder at Auction* [Docket No. 265], the *Amended Notice to Counterparties Establishing Cure Amounts for Executory Contracts* [Docket No. 268] or *Notice of Proposed Assumption and Assignment of Executory Contracts and Unexpired Leases* [Docket No. 398] and *First Amended Notice of Proposed Assumption and Assignment of Executory Contracts and Unexpired Leases* [Docket No. 422] (together, the "Assumption and Assignment Notice") to each non-Debtor party to such Initial Contracts. The Debtor also gave due and proper notice of the Sale and offer of assumption and assignment of each of the modified Residency and Care Agreements (the "Assigned Modified Resident Agreements") listed in the Notices provided to Residents (*Notice of Treatment of Current Resident Residency and Care or Lease Agreements by Successful Bidder HFV Opco, LLC* [Docket No. 405] and *Amended Notice of Treatment of Current Resident Residency and Care or Lease Agreements by Successful Bidder HFV Opco,*

*LLC* [Docket No. 408]  (the "Resident Assumption and Assignment Notice") to each resident to such Assigned Modified Resident Agreement.

G.    Notice, as specified in the preceding paragraphs and as evidenced by the affidavits of service filed with the Court, has been provided in the form and manner specified in the Motion and required by the Bid Procedures Order, and the Court finds that the notice is adequate and sufficient in all respects to bind all creditors and parties in interest in this Chapter 11 Case.

H.    The process for the sale of the CCRC Assets was conducted in accordance with the Bid Procedures Order and in a non-collusive, fair and good faith manner.

I.    A reasonable opportunity has been given to any interested party to make a higher or better offer for the CCRC Assets.

J.    The Successful Bidder is purchasing the CCRC Assets in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the protection of that provision.

K.    The APA attached hereto as **Exhibit 1** was negotiated, proposed and entered into by the Debtor and the Successful Bidder without collusion, in good faith and from arms-length bargaining positions.  Neither the Debtor nor the Successful Bidder has engaged in any conduct that would cause or permit the Sale or any part of the transactions contemplated by the APA to be avoidable under section 363(n) of the Bankruptcy Code.

L.    As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing, and (ii) the representations of counsel made on the record at the Sale Hearing, the Debtor afforded interested potential purchasers a full and fair opportunity to qualify as Qualified Bidders under the Bid Procedures and to submit an offer for the CCRC Assets.

M.     The Successful Bidder is not an "insider" of the Debtor as that term is defined in section 101(31) of the Bankruptcy Code.

N.     The consideration provided by the Successful Bidder for the CCRC Assets pursuant to the APA: (i) is fair and reasonable; (ii) is the highest and best offer for the CCRC Assets; (iii) will provide a greater recovery for all of the Debtor's stakeholders than would be provided by any other practical available alternative; and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Voidable Transactions Act and all other applicable laws.

O.     The Debtor has demonstrated a sufficient basis and compelling circumstances requiring the Debtor to enter into the APA and sell its CCRC Assets under section 363 of the Bankruptcy Code, and such actions are appropriate exercises of the Debtor's business judgment and are in the best interests of the Debtor, its estate and its creditors.

P.     The marketing and bidding processes implemented by the Debtor and its advisors, as set forth in the Motion, were fair, proper, and reasonably calculated to result in the best value received for the CCRC Assets.

Q.     The Debtor has full authority and power to execute and deliver the APA and related agreements and all other documents contemplated by the APA, to perform its obligations therein and to consummate the Sale.  No additional consents or approvals, other than those provided in the APA, are necessary or required for the Debtor to enter into the APA, perform its obligations therein and consummate the Sale.

R.     The Successful Bidder would not have entered into the APA and would not consummate the transactions thereby, thus adversely affecting the Debtor, its estate and creditors, if the CCRC Assets were not sold to it free and clear of all Claims and Encumbrances, except those expressly assumed by the Successful

Bidder, or if the Successful Bidder would, or in the future could, be liable for any such Claims and Encumbrances, including based upon successor or vicarious liability or otherwise. A sale of the CCRC Assets other than one free and clear of all such Claims and Encumbrances would adversely impact the Debtor's estate and creditors, and would yield substantially less value to the Debtor's estate.

S.     The provisions of section 363(f) of the Bankruptcy Code have been satisfied, because, among other things: holders of Claims and Encumbrances have consented to the transaction, pursuant to the terms of this Sale Order. Those holders of Claims and Encumbrances who did not object, or withdrew their objections, to the Sale are deemed to have consented to the Sale.

T.     The Bond Trustee and DIP Lender have consented to the sale of the CCRC Assets pursuant to the APA free and clear of Claims and Encumbrances, including any Claims and Encumbrances of the Bond Trustee and the DIP Lender against the CCRC Assets, pursuant to the terms of this Sale Order.

U.     Subject to the right of parties to object pursuant to the terms of this Order, the Debtor may assume each contract and lease listed on the Schedules attached to the APA, as such Schedules may be amended pursuant to the APA (the "Assigned Contracts and Assigned Modified Resident Agreements"), and assign each of them to the Successful Bidder pursuant to sections 363 and 365 of the Bankruptcy Code and this Order notwithstanding any anti-assignment clause or other provision in the Assigned Contracts (as defined below) or the Assigned Modified Resident Agreements, as provided by section 365(f) of the Bankruptcy Code.

V.     The counterparties to the Assigned Contracts that were not listed on the Assumption and Assignment Notice, if any, shall be provided notice of the assumption and assignment and the proposed cure amounts pursuant to the procedures set forth in this Order.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED, EFFECTIVE IMMEDIATELY, AS FOLLOWS:**

1.    The relief requested in the Motion is granted and approved in all respects. The Debtor's entry into the APA and the Sale is hereby approved in all respects. The terms and conditions of the APA are hereby approved in all respects.

2.    All objections to the relief sought in the Motion that have not been previously resolved or withdrawn are hereby overruled on their merits and with prejudice; provided, however, that any Assumption Objections and Assignment Objections (as defined below) filed in connection with the Assigned Contracts shall be determined in accordance with paragraphs 16, 17 and 18 of this Order.[3]

3.    The Debtor is authorized and directed to take any and all actions necessary or appropriate to (a) consummate the Sale in accordance with the Motion, the APA and this Order, and (b) perform, consummate, implement and close fully the Sale, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA. After the date of entry of this Order, the Debtor and the Successful Bidder may enter into any amendment, supplement, or modification to the APA that is not material or is not adverse to the Debtor's estate upon prior written notice to the Bond Trustee and the Committee without the need of further notice, hearing or Court order.

4.    Those holders of Claims and Encumbrances and other non-Debtor parties who did not object, or who withdrew their objections prior to entry of this Order are deemed to have consented to this Order, the Bid Procedures Order, the Sale and the APA pursuant to section 363(f)(2) of the Bankruptcy Code and are enjoined from taking any action against the Successful Bidder, its affiliates, or any

---

[3] Comerica Bank's sale objection [ECF No. 416] and the Debtor's reply thereto [ECF No. 423] are adjourned, shall be heard on August 9, 2021, at 11:00 a.m. Eastern, and are not resolved by entry of this Order.

agent of the foregoing to recover any claim which such person or entity has against the Debtor. Those holders of Claims and Encumbrances and other non-Debtor parties who did object, if any, fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

### Sale and Transfer of the CCRC Assets

5.     The APA, the Related Agreements (as defined in the APA), all transactions contemplated thereby and all of the terms and conditions thereof are hereby approved.

6.     Upon closing of the Sale with the Successful Bidder (the "Closing"), the CCRC Assets transferred, sold and delivered to the Successful Bidder pursuant to the APA shall be free and clear of all Claims and Encumbrances of any person or entity (except those Claims and Encumbrances expressly assumed by the Successful Bidder), with all such Claims and Encumbrances attaching automatically to the proceeds of the Sale in the same manner, validity and priority that they attached to the CCRC Assets prior to the Sale.  The transfer of the CCRC Assets to the Successful Bidder constitutes a legal, valid and effective transfer of the CCRC Assets and shall vest the Successful Bidder with all right, title and interest in and to the CCRC Assets described in the APA.

7.     Upon Closing, this Order shall be construed as, and shall constitute for any and all purposes, a full and complete general assignment, conveyance and transfer of the CCRC Assets pursuant to the terms of the APA.  Notwithstanding anything to the contrary in the APA, the "Effective Time" for purposes of the APA will be as of 12:01 a.m. in the time zone where the facility is located on the Closing Date, and all rights and obligations of the Debtor and the Successful Bidder with respect to Closing shall be effective as of the Effective Time.

8.	The CCRC Assets sold to the Successful Bidder pursuant to the APA and this Order shall, in accordance with and subject to applicable law, include any charitable funds held by or on behalf of the Debtor.

9.	Except with respect to the Assumed Liabilities (as defined in the APA), effective on the date of entry of this Order, all persons and entities, including, but not limited to, the Debtor and its creditors, residents, employees, former employees and shareholders, administrative agencies, tax and regulatory authorities, governmental departments, secretaries of state, federal, state and local officials, and their respective successors or assigns, including, but not limited to, persons asserting any Claims and Encumbrances against the CCRC Assets, shall be permanently and forever barred, restrained and enjoined from commencing or continuing in any manner any action or other proceeding of any kind against the CCRC Assets, the Successful Bidder (or its members, representatives, or affiliates) as alleged successor or otherwise, with respect to (i) any Claims and Encumbrances on or in respect of the CCRC Assets, and (ii) recovering from any claim which such person or entity had solely against the Debtor or any of the Debtor's subsidiaries, affiliates, directors, officers, agents, representatives, employees, investors, owners, shareholders, partners, or joint venturers.

10.	The terms and provisions of this Order shall be binding in all respects upon all entities, including, but not limited to the Debtor, the Successful Bidder, creditors, residents, former residents, employees, former employees and shareholders, administrative agencies, governmental departments, secretaries of state, federal, state and local officials and their respective successors or assigns, including, but not limited to, persons asserting any Claim and Encumbrance against or interest in the Debtor's estate or the CCRC Assets, including any subsequent appointment of a trustee or other fiduciary under any section of the Bankruptcy Code.

11.     Upon Closing, except to the extent such liability is expressly assumed by the Successful Bidder under the APA, all entities holding a Claim and Encumbrance of any kind and nature against the CCRC Assets hereby are barred from asserting such Claim and Encumbrance against the Successful Bidder and/or the CCRC Assets and, effective upon the transfer of the CCRC Assets to the Successful Bidder upon Closing, the Claims and Encumbrances shall attach to the proceeds of the Sale with the same force, validity, priority and effect, if any, as against the CCRC Assets.

12.     This Order (i) is and shall be effective as a determination that, upon Closing, all Claims and Encumbrances existing as to the CCRC Assets conveyed to the Successful Bidder have been and hereby are adjudged to be unconditionally released, discharged and terminated, with all such Claims and Encumbrances attaching automatically to the proceeds in the same manner, extent, validity and priority as existed at Closing, and (ii) shall be binding upon and govern the acts of all entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the CCRC Assets conveyed to the Successful Bidder.  All Claims and Encumbrances of record as of the date of this Order shall be removed and stricken as against the CCRC Assets in accordance with the foregoing.  All entities are authorized and specifically directed to strike all such recorded Claims and Encumbrances against the CCRC Assets from their records, official or otherwise.

13.     If any person or entity which has filed financing statements, mortgage, lis pendens or other documents or agreements evidencing Claims and Encumbrances on the CCRC Assets shall not have delivered to the Debtor prior to Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements and any other documents necessary for the purpose of documenting the release of all Claims and Encumbrances which the person or entity has or may assert with respect to the CCRC Assets, the Debtor is hereby authorized and directed upon Closing, and the Successful Bidder is hereby authorized upon Closing, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the CCRC Assets.  Upon Closing of the Sale, each of the Debtor's creditors is authorized and directed to execute such documents and take all such actions as may be necessary to release their respective Claims and Encumbrances against the CCRC Assets.

14.     Upon a Closing, the Successful Bidder shall not be deemed to be (i) a successor to the Debtor, (ii) party to a *de facto* merger of the Successful Bidder and the Debtor or (iii) a mere continuation of the Debtor.  Without limiting the generality of the foregoing, and except as specifically provided in the APA, the Successful Bidder shall not be liable for any claims against the Debtor or any of its predecessors or affiliates, other than as expressly provided for in such APA.  Further, except as expressly provided in the APA, the Successful Bidder is not assuming nor shall it in any way be liable or responsible, as successor or otherwise, for any claims, debts, obligations, Claims or Encumbrances of the Debtor or its estate of any kind or character in any way whatsoever relating to or arising from the CCRC Assets or the Debtor's operation or use of the CCRC Assets prior to the Closing, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, under the laws of the United States, any state, territory, or possession of

the United States, the District of Columbia or any other country or foreign jurisdiction.

## Application of the Sale Proceeds

15.     All amounts received by the Debtor at Closing shall be paid directly to the DIP Lender and the Bond Trustee, and the Debtor is authorized and directed to pay such amounts directly to the DIP Lender in an amount up the aggregate amount of the DIP Obligations outstanding, and to the Bond Trustee in an amount up to the aggregate amount of the outstanding prepetition and postpetition obligations of the Debtor to the Bond Trustee for indefeasible application by the Bond Trustee to all outstanding obligations owed to the Bond Trustee.

## Assumption and Assignment of Assigned Contracts

16.     On or before five (5) Business Days prior to the Closing, the Successful Bidder shall provide a list of all non-resident executory contracts or unexpired leases of the Debtor not already identified in any Assumption and Assignment Notice (the "Supplemental Contracts," and together with the Initial Contracts, the "Assigned Contracts") that it seeks to have assumed by the Debtor and assigned to the Successful Bidder pursuant to the APA.  Additionally, on or before five (5) Business Days prior to the Closing, the Successful Bidder shall provide a list of all executory contracts or unexpired leases of the Debtor that it seeks to have removed from the list of Initial Contracts.  To the extent it has not already done so, the Debtor shall file one or more Assumption and Assignment Notices with respect to the Supplemental Contracts in accordance with the Bid Procedures Order that, among other things, sets a deadline of fourteen (14) days after service of the Assumption and Assignment Notice (the "Objection Deadline") by which the counterparty to a Supplemental Contract must assert an objection (an "Assumption Objection") to the assumption

by the Debtor and assignment to the Successful Bidder of the Supplemental Contract.

17.     If, as to any Assigned Contract, a counterparty does not assert an Assumption Objection by the Objection Deadline, and unless Successful Bidder removes such Assigned Contract from the list of Assumed Contracts in accordance with the APA, such Assigned Contract shall be deemed assumed by the Debtor and assigned to the Successful Bidder pursuant to section 365 of the Bankruptcy Code without further order of the Court, effective as of the later of (i) the Objection Deadline; (ii) payment of the applicable cure amount, if any; and (iii) the Closing Date.  If, however, an Assumption Objection is received by the Objection Deadline, and the Debtor and/or the Successful Bidder is unable to resolve such objection consensually, the proposed assumption and assignment which is the subject of the Assumption Objection shall be subject to further order of the Court, and the Debtor and/or the Successful Bidder shall promptly schedule a hearing to consider the Assumption Objection.

18.     The Debtor has demonstrated that assuming and assigning the Assigned Contracts in connection with the Sale is an exercise of its sound business judgment, and that such assumption and assignment is in the best interests of the Debtor's estate.  Pursuant to the Assignment Procedures, the Debtor will provide adequate assurance of cure of any defaults existing prior to the Closing Date, which is the effective date of the assumption of the Assigned Contracts, and will provide for compensation or adequate assurance of compensation to any non-Debtor party to such contracts for any of their actual pecuniary losses resulting from any default arising prior to the Closing Date under the Assigned Contracts, within the meaning of section 363(b)(1)(B) of the Bankruptcy Code (collectively, the "Cure Amounts").

19.     Subject to paragraphs 16, 17 and 18, and subject only to the payment of the Cure Amounts (which amounts may be satisfied or waived in part or whole

according to any separate agreements with any non-Debtor party thereto), each Assigned Contract will be in full force and effect and enforceable by the Successful Bidder against any non-Debtor party thereto in accordance with its terms upon the Closing of the Sale. The Debtor shall be relieved from any further liability with respect to the Assigned Contracts after such assignment to and assumption by the Successful Bidder.

20.     Unless otherwise agreed by any party potentially entitled to a Cure Amount, on the Closing Date or such other date as determined by the Court, the Successful Bidder will pay in full all Cure Amounts in respect of all undisputed cure claims and all Cure Amounts that have been determined by this Court or resolved by agreement. Any agreements regarding Cure Amounts shall be binding as if and have the same effect as if the Court had made a final determination of such Cure Amounts pursuant to this Order and the motion or notice filed by the Debtor regarding assumption and assignment of such Assigned Contracts.

21.     Subject to paragraph 16, 17 and 18, except for the obligation to pay the Cure Amounts, each nondebtor party to an Assigned Contract hereby is forever barred, estopped, and permanently enjoined from asserting against the Debtor or the Successful Bidder, or the property of any of them, any default existing as of the date of the Sale Hearing, whether declared or known or unknown.

22.     Any provisions in any Assigned Contracts that prohibit or condition the assignment of any Assigned Contracts or allow the non-Debtor party to such Assigned Contract to terminate, recapture, impose any penalty, condition a renewal or extension, or modify or limit any term or condition upon the assignment of such Assigned Contract, constitutes unenforceable anti-assignment provisions that are void and of no force and effect. Subject to paragraphs 16, 17 and 18, all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for

the assumption by the Debtor and assignment to the Successful Bidder of the Assigned Contracts have been satisfied.

23.     Subject to paragraphs 16, 17 and 18, the Successful Bidder has provided adequate assurance of its future performance under the Assigned Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

24.     Assumption of the Assigned Contracts shall include any ancillary or related agreements, or rights appurtenant thereto, pursuant to which the Debtor has rights or licenses granted in connection with or under the Assigned Contracts, so long as such ancillary or related agreements do not create additional obligations of the Debtor or Successful Bidder beyond those set out in the Assigned Contracts (unless Successful Bidder subsequently agrees to such obligations).

25.     The Debtor and the Successful Bidder shall jointly file and serve a Notice of Closing and Schedule of Assigned Contracts (the "Closing Notice") within two (2) business days following the Closing, and service of such Closing Notice by CM/ECF shall be deemed sufficient in all regards.  No assumption and assignment of any Assigned Contracts shall be binding on the Debtor and the Successful Bidder until the Closing of the APA pursuant to this Order, and until the Debtor and Successful Bidder have identified each such Assigned Contract on the Closing Notice to be filed with the Court.

**Assumption and Assignment of Assigned Modified Resident Agreements**

26.     The Debtor, immediately prior to the Closing, shall enter into Assigned Modified Resident Agreements with those residents who have accepted the terms of such Assigned Modified Resident Agreements in accordance with the terms and conditions of the APA. All such Assigned Modified Resident Agreements shall be deemed assumed by the Debtor and assigned to the Successful Bidder pursuant to section 365 of the Bankruptcy Code without further order of the Court, effective as

of the later of (i) payment of the applicable cure amount, if any (the "Resident Cure Amounts"); and (ii) the Closing Date.

27.     The Debtor has demonstrated that assuming and assigning the Assigned Modified Resident Agreements in connection with the Sale is an exercise of its sound business judgment, and that such assumption and assignment is in the best interests of the Debtor's estate.

28.     Subject to the payment of the Resident Cure Amounts, each Assigned Modified Resident Agreements will be in full force and effect and enforceable by the Successful Bidder against any non-Debtor party thereto in accordance with its terms upon the Closing of the Sale.  The Debtor shall be relieved from any further liability with respect to the Assigned Modified Resident Agreements after such assignment to and assumption by the Successful Bidder.

29.     Except for the obligation to pay the Resident Cure Amounts, each non-Debtor party to an Assigned Modified Resident Agreements hereby is forever barred, estopped, and permanently enjoined from asserting against the Debtor or the Successful Bidder, or the property of any of them, any default existing as of the date of the Sale Hearing, whether declared or known or unknown.

30.     Any provisions in any Assigned Modified Resident Agreements that prohibit or condition the assignment of any Assigned Modified Resident Agreements or allow the non-Debtor party to such Assigned Modified Resident Agreements to terminate, recapture, impose any penalty, condition a renewal or extension, or modify or limit any term or condition upon the assignment of such Assigned Modified Resident Agreements, constitutes unenforceable anti-assignment provisions that are void and of no force and effect.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to the Successful Bidder of the Assigned Modified Resident Agreements have been satisfied.

31.    The Successful Bidder has provided adequate assurance of its future performance under the Assigned Modified Resident Agreements within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

32.    Assumption of the Assigned Modified Resident Agreements shall include any ancillary or related agreements, or rights appurtenant thereto, pursuant to which the Debtor has rights or licenses granted in connection with or under the Assigned Modified Resident Agreements, so long as such ancillary or related agreements do not create additional obligations of the Debtor or Successful Bidder beyond those set out in the Assigned Modified Resident Agreements (unless Successful Bidder subsequently agrees to such obligations).

33.    The Debtor and the Successful Bidder shall jointly file and serve a Notice of Closing and Schedule of Assigned Contracts (the "Closing Resident Notice") within two (2) business days following the Closing, and service of such Closing Resident Notice by CM/ECF shall be deemed sufficient in all regards. No assumption and assignment of any Assigned Modified Resident Agreements shall be binding on the Debtor and the Successful Bidder until the Closing of the APA pursuant to this Order, and until the Debtor and Successful Bidder have identified each such Assigned Modified Resident Agreements on the Closing Resident Notice to be filed with the Court

**No Assumption of Liability under Former Resident Residency Agreements**

34.    The Successful Bidder has not assumed any former resident Residency Agreements or any liability thereunder. The sale and transfer of the CCRC Assets shall be free and clear of any such liabilities.

**Assumption and Assignment of Provider Agreements**

35.    This Order contemplates that upon Closing, the Debtor will assume the Medicare provider agreement, sell its skilled nursing facility ("SNF"), and, concomitantly with the sale of that SNF, assign its Medicare provider agreement to

the Successful Bidder. The sale of the SNF will constitute a Change of Ownership ("CHOW") within the meaning of 42 C.F.R. § 489.18, meaning that the Medicare provider agreement may be assigned to the Successful Bidder without interruption. Throughout the assumption, assignment and CHOW process, the Debtor and the Successful Bidder will comply with all applicable Medicare program requirements as set forth in Title XVIII the Social Security Act, 42 U.S.C. § 1395 *et seq.* ("Medicare Act"), and all relevant rules and regulations.

36.    Except as otherwise provided by mutual agreement between Centers for Medicare & Medicaid Services ("CMS") and Debtor in a separate written agreement, compromise and/or extended liquidation schedule that Debtor and CMS may (but are not obligated to) enter into prior to the Assumption Date, Debtor must cure all monetary defaults and pay all known claims due under the Medicare provider agreement that CMS has identified to the Debtor in writing before the Assumption Date. CMS's right to cure of such identified monetary defaults per the Plan will be in addition to and without limitation upon its right to recoup Medicare debts or its other rights and authorities under the Medicare Act. If Debtor and/or CMS propose a separate agreement, compromise and/or extended liquidation schedule, the process for consideration of any such proposal will remain governed by the Medicare Act, as well as all relevant rules and regulations, as if Debtor were not in bankruptcy.

37.    Provided that any defaults under the Medicare provider agreement are cured, the Debtor shall assume and assign the Medicare provider agreement upon the Closing (the "Assumption Date"). Notwithstanding anything to the contrary in this Sale Order, the Sale Motion, any exhibits thereto (now or as amended), or in the related sale documents, the term "cure," for purposes of the Debtor's assumption of the Medicare provider agreement, means being governed by, and subject to, the terms and conditions of the Medicare provider agreement and the incorporated

statutes and regulations; and remaining liable for any debt under the Medicare provider agreement to CMS as if the Chapter 11 Case had not occurred.

38.     If the Successful Bidder accepts assignment of the Medicare provider agreement, then after the CHOW date occurs, CMS must determine whether to approve the CHOW in accordance with CMS's rules, regulations and procedures.  If approved, the effective date of assignment would be the date of the CHOW within the meaning of 42 C.F.R. § 489.18.  However, payment will not be made to the Successful Bidder until the relevant Medicare administrative contractor receives and implements a "tie in notice" confirming that CMS has approved the CHOW.  Until that process is complete, Medicare payments may continue to be made to the Debtor as the Medicare provider of record.  CMS is not a party to the Debtor's and Successful Bidder's terms of the sale and the allocation of Medicare overpayments and/or underpayments between themselves pursuant to the terms of the Sale Order, Sale Motion and related sale documents.  Because CMS is not a party to their arrangements, disagreements between the Debtor and the Successful Bidder regarding their rights and responsibilities under these arrangements may not affect CMS and its claims, rights and duties under Medicare statutes, rules and regulations in regard to the Medicare provider, regardless of its ownership.

39.     Although the Medicare Act does not require the Successful Bidder to accept assignment of the Medicare provider agreement because continued participation in Medicare is voluntary, if Successful Bidder chooses to reject assignment and thereby avoid Medicare liabilities associated with the SNF, the Successful Bidder must do so promptly and in writing. If assignment is rejected, the Medicare provider agreement terminates as of the date of the CHOW.  In such circumstances, if Successful Bidder wishes the SNF to participate in Medicare and be eligible to receive Medicare reimbursement, the SNF must first complete the certification and enrollment process for a new Medicare provider.

40.     Given Successful Bidder's agreement as to assignment of the Medicare provider agreement and provided Successful Bidder does not promptly reject assignment, Successful Bidder must accept assignment of the Medicare provider agreement in full, including its benefits and burdens, and must comply with all applicable CMS rules and regulations.  No provision of this Order, Sale Motion or any exhibits thereto (now or as amended), associated sale documents, or any other order will be interpreted as superseding Medicare's rules for CHOWs, enrollment, and/or survey and certification, including requirements that the Medicare provider's new owner who receives assignment through a CHOW be subject to successor liability.

41.     If any lender, creditor, or other entity were to seek direct payment from CMS or its Medicare contractors of reimbursement due the Medicare provider before, during or after the assumption and assignment of the Medicare provider agreement, that lender, creditor or other entity must do so in accordance with the applicable anti-assignment provisions of the Medicare Act and CMS's implementing regulations.

42.     Without limiting CMS's right to cure, all of CMS's claims shall pass through the Chapter 11 Case and the Sale unaffected and shall not be impaired within the meaning of 11 U.S.C. § 1124.  Any amounts due on CMS's claims may be collected in the ordinary course of business, and the United States, on behalf of CMS, shall not be required to file any separate claim in the Chapter 11 Case to collect any amounts due to CMS under the Medicare program, whether via proof of claim, claim for cure, or administrative claim.  Nothing in this Sale Order, Sale Motion, related sale documents or other orders shall release or operate to enjoin any claim of the United States, on behalf of CMS, against the Debtor, the Successful Bidder, or any non-debtor.

43. Notwithstanding any other provisions of the Sale Order, Sale Motion and related sale documents, all agreements, issues, and disputes arising under the Medicare Act shall be governed exclusively by Medicare statutes, rules, regulations and procedures for administrative and judicial review, without regard to the Bankruptcy Code or Bankruptcy Rules. Without regard to when the events giving rise to the issue or dispute occurred, the jurisdictional limitations of the Medicare Act shall apply. Such limitations include, but are not limited to presentment of claims and exhaustion of administrative remedies under the relevant statutory process for administrative review of Medicare provider enrollment, certification, reimbursement or other Medicare determinations.

## Additional Provisions

44. The provisions of this Order and the APA and any actions taken pursuant hereto or thereto shall survive entry of any order which may be entered (i) confirming or consummating any plan of reorganization or liquidation of the Debtor; (ii) converting the Debtor's bankruptcy case from Chapter 11 to Chapter 7; (iii) dismissing the Debtor's bankruptcy case; or (iv) appointing a Chapter 11 trustee or examiner, and the terms and provisions of the APA as well as the rights and interests granted pursuant to this Order and the APA shall continue in this Chapter 11 Case or any superseding case and shall be binding upon the Debtor, the Successful Bidder and their respective successors and permitted assigns.

45. Each and every federal, state and governmental agency or department and any other person or entity is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

46. Pursuant to section 1146(a) of the Bankruptcy Code, the sale of the CCRC Assets shall not be taxed under any law imposing a stamp tax or similar tax.

47. Upon Closing, the Successful Bidder shall pay to the Debtor the Purchase Price pursuant to the terms of the APA, less the Deposit. Additionally, upon Closing, the Deposit shall be paid by the Title Company to the Debtor, and, notwithstanding anything in the APA to the contrary, Successful Bidder shall not receive any credit against the purchase price with respect to the Medicare Advance Payments, and the Debtor shall pay to the Medicare Administrative Contractor, as the agent for the Centers for Medicare and Medicaid Services, from the purchase price received, an amount equal to the total amount of all then-outstanding Medicare Advance Payments. In addition, notwithstanding anything in the APA to the contrary, "Medicare Advance Payments" means unpaid or unreturned accelerated or advance Medicare payments received by the SNF under the Coronavirus Aid Relief, and Economic Security Act amending the Accelerated Payments program.

48. In the event the Successful Bidder cannot consummate the APA when and as required by its terms, the Debtor may designate HFV Senior Living, LLC (the "Back-Up Bidder") as the Successful Bidder and consummate the bid submitted by the Back-Up Bidder at the Auction without further order of this Court. Under such circumstances, and for all purposes of this Order, the Back-Up Bidder shall be determined to be the Successful Bidder.

49. Notwithstanding anything in this Order, the APA, or previous notices regarding the assumption of contracts to the contrary, upon Closing by the Successful Bidder: (i) Purchased Assets shall not include the Tradename License, or the ability to use in any fashion the name "Henry Ford" or "Ford," whether in a domain name or otherwise; and (ii) Successful Bidder will not use or reproduce the name "Henry Ford" or "Ford," and Successful Bidder will destroy all materials, except for patient medical records, billing records, and other documents required to be retained pursuant to federal law, regulation, or rule, bearing those names (the "Destruction of Materials"). After Closing with the Successful Bidder, Debtor may

continue to use the name "Henry Ford" in accordance with the terms of the License Agreement signed June 1 and July 25, 2002 between Debtor and Ford Estates, Inc. (k/n/a Ford Estates, LLC) ("Licensor") for the purposes of administration of the bankruptcy until the earlier of rejection of the License Agreement or termination of the License Agreement according to its terms. If the Successful Bidder fails to consummate the sale and the Debtor seeks to enter into a sale purchase agreement with the Back-Up Bidder or another purchaser (an "Alternative Transaction"), notwithstanding anything in this Order, the Alternative Transaction APA, or previous notices regarding the assumption of contracts to the contrary, the Alternative Transaction shall not include, as an assumed contract or a transferred asset, the Tradename License, or the ability to use in any fashion the name "Henry Ford" or "Ford," whether in a domain name or otherwise, unless the prior written consent is obtained from Licensor in the form of a stipulation and order.

50.     To the extent, if any, anything contained in this Order conflicts with a provision in the APA, this Order shall govern and control.

51.     The Successful Bidder is purchasing the CCRC Assets in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the protection of that provision. The consideration provided by the Successful Bidder for the CCRC Assets is fair and reasonable, and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

52.     This Court retains jurisdiction, even after conversion of this Chapter 11 Case to a case under Chapter 7, to: (i) interpret, implement and enforce the terms and provisions of this Order (including any injunctive relief provided in this Order) and the terms of the APA, all amendments thereto and any waivers and consents thereunder and of each of the agreements executed in connection therewith; (ii) protect the Successful Bidder and the CCRC Assets from and against any of the

Claims and Encumbrances, other than those expressly assumed by the Successful Bidder; (iii) resolve any disputes arising under or related to the APA or the Sale; (iv) adjudicate all issues concerning (alleged) pre-Closing Claims and Encumbrances and any other (alleged) interest(s) in and to the CCRC Assets, including the extent, validity, enforceability, priority and nature of all such (alleged) Claims and Claims and Encumbrances and any other (alleged) interest(s); (v) adjudicate any disputes related to the Assigned Contracts or the Assigned Modified Resident Agreements between the Debtor and the Successful Bidder or the Debtor and a counterparty to the Assigned Contracts or the Assigned Modified Resident Agreements; and (vi) adjudicate any and all issues and/or disputes relating to the Debtor's right, title or interest in the CCRC Assets, the Motion and the APA.

53.     From and after the date hereof, the Debtor and the Successful Bidder shall act in accordance with the terms of the APA.

54.     This Order shall be binding in all respects upon all creditors (whether known or unknown) of the Debtor, all successors and assigns of the Successful Bidder, the Debtor and its affiliates and subsidiaries, the CCRC Assets, and any subsequent trustees appointed in this Chapter 11 Case or upon (a) a conversion of this Chapter 11 Case to a case under Chapter 7 or (b) dismissal of the Debtor's Chapter 11 Case.

55.     The provisions of this Order are nonseverable and mutually dependent.

56.     The automatic stay of section 362(a) of the Bankruptcy Code shall not apply to and otherwise shall not prevent the exercise or performance by any party of its rights or obligations under the APA with the Successful Bidder, including, without limitation, with respect to any cash held in escrow pursuant to the provisions thereof.

57. This Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 6004(g), 6004(h), 6006(d), 7062, or otherwise.

**Signed on May 25, 2021**



/s/ Mark A. Randon

**Mark A. Randon**
**United States Bankruptcy Judge**