## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

IN RE:                                Case No. 20-51066-MAR

HENRY FORD VILLAGE, INC.,              Chapter 11

    Debtor.                           Honorable Mark A. Randon

_____

## ORDER (I) APPROVING DISCLOSURE STATEMENT ON A FINAL BASIS AND (II) CONFIRMING CHAPTER 11 LIQUIDATING PLAN OF HENRY FORD VILLAGE, INC.
### [Relates to ECF Nos. 590 and 651]

Henry Ford Village, Inc. (the "**Debtor**"), as debtor and debtor-in-possession

in the above-captioned chapter 11 case (the "**Chapter 11 Case**"), filed the *Combined*

*Disclosure Statement and Liquidating Chapter 11 Plan for Henry Ford Village, Inc.*,

dated October 18, 2021 (the "Initial Plan") [ECF No. 590]  Thereafter, Debtor filed

the *First Amended Combined Disclosure Statement and Liquidating Chapter 11*

*Plan for Henry Ford Village, Inc.*, dated November 30, 2021 [ECF No. 651] (as

amended, modified, or supplemented in accordance with its terms, the "**Plan**"),[1] a

copy of which is attached hereto as **Exhibit A**.

Previously, the Bankruptcy Court conditionally and preliminarily approved

the Disclosure Statement provisions of the Initial Plan, deadlines for the solicitation

---

[1] Capitalized terms used in this Confirmation Order but not defined herein shall have
the meanings ascribed to them in the Plan.

1

of acceptances and rejections of the Initial Plan and for the filing of any objections to confirmation of the Initial Plan, and set a telephonic confirmation hearing for **December 6, 2021, at 11:00 a.m. (prevailing Eastern time)** on the Initial Plan, pursuant to the *Order Granting Preliminary Approval of the Disclosure Statement* [ECF No. 593] (the "**Disclosure Statement Interim Order**").

Thereafter, the Debtor served the Initial Plan on the Holders of Claims and all other necessary parties-in-interest in the Chapter 11 Case (including all necessary governmental entities) pursuant to the Disclosure Statement Interim Order as set forth in the *Certificate of Services* filed on November 2, 2021 [ECF No. 624] and November 30, 2021 [ECF No. 636] (the "**Certificates of Service of Solicitation Materials**"). Debtor also filed (a) the *Declaration of Chief Restructuring Officer, Chad Shandler, In Support of Confirmation of the Chapter 11 Liquidating Plan of Henry Ford Village, Inc.* [ECF No. 657] (the "**Shandler Declaration**"), and (b) the *Certification and Verified Summary of the Ballot Count Under 11 U.S.C. § 1126 of Andres A. Estrada with Respect to the Tabulation of Votes on the Combined Disclosure Statement and Liquidating Chapter 11 Plan of Henry Ford Village, Inc.* [ECF No. 658] (the "**Voting Declaration**" and, collectively, with the Shandler Declaration, as each may have been amended, modified, or supplemented from time to time, the "**Confirmation Declarations**"), such Declarations having been timely filed prior to the hearing on confirmation of the Plan.

2

On December 6, 2021, the Bankruptcy Court held a hearing on confirmation of the Plan (the "**Confirmation Hearing**"). At the Confirmation Hearing, the Bankruptcy Court considered the record in this Chapter 11 Case, the creditor support for the Plan as evidenced on the record and in the Voting Declaration, the terms of the Initial Plan and the Plan (including the provisions for and treatment of Claims embodied in and contemplated by the Plan and the means for implementation of the Plan), the objections filed by parties opposing confirmation of the Plan, the arguments of the parties appearing at the Confirmation Hearing regarding Confirmation of the Plan, the evidence introduced regarding confirmation of the Plan (including the Confirmation Declarations), and the exhibits introduced and admitted at the Confirmation Hearing, and, after due deliberation:

**THE COURT HEREBY FINDS AND DETERMINES THAT:**

A. <u>Findings of Fact and Conclusions of Law</u>: The determinations, findings, judgments, decrees, orders and conclusions set forth in this order (this "**Confirmation Order**") and on the record at the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"). To the extent any of the following findings of fact constitute conclusions of law,

120951.000002 4814-2925-5933.16 154831882.1

they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.     <u>Proper Debtor and Plan Proponents</u>:  The Debtor is an eligible debtor under section 109 of the Bankruptcy Code, 11 U.S.C. § 101, *et. seq.* (the "**Bankruptcy Code**").  The Debtor is a proper plan proponent under section 1121(a) of the Bankruptcy Code, and the Debtor consents to entry of a final order by the Bankruptcy Court in accordance with the terms set forth herein to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

C.     <u>Jurisdiction, Venue and Core Proceeding</u>:  The Bankruptcy Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The approval of the Disclosure Statement and confirmation of the Plan are core proceedings pursuant to 28 U.S.C. § 157(b) and the Bankruptcy Court has jurisdiction and the constitutional authority to enter a final order with respect thereto. This Bankruptcy Court has exclusive jurisdiction to determine whether the

Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively.

D.   <u>Approval of Disclosure Statement on Final Basis</u>:  The Initial Plan (which was a combined Plan and Disclosure Statement under the Local Rules with the Disclosure Statement provisions thereof referred to herein as the "**<u>Disclosure Statement</u>**") (i) contains sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy rules, laws, and regulations, including the Securities Act, and (ii) contains "adequate information" (as such term is defined in 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtor, the Chapter 11 Case, the Plan, and the transactions contemplated therein, and (iii) is hereby, thus should be, and approved in all respects on a final basis.  The modifications to the Initial Plan reflected in the Plan are non-material modifications and do not adversely change the treatment of the Claim of any creditor such that Sections 1125 and 1127(a) and (c) of the Bankruptcy Code have been satisfied.

E.   <u>Plan Satisfies General Confirmation Requirements</u>:  The Debtor has met the burden of proving that the Plan satisfies the requirements of the applicable

5

sections of 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence.

F. <u>Plan Solicited in Good Faith and with Proper Notice</u>: The Plan was solicited in good faith and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, Local Rules for the United States Bankruptcy Court for the Eastern District of Michigan (the "**Local Rules**"), and all other applicable rules, laws and regulations. As is evidenced by the Certificates of Service of Solicitation Materials and the Voting Declaration, the transmittal and service of the Plan and the ballots were adequate and sufficient under the circumstances, all parties required to be given notice of the Plan and the Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, timely, and adequate notice in accordance with the Disclosure Statement Interim Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws and regulations, and such parties have had a full and fair opportunity to appear and be heard with respect thereto. No additional or further notice is required under the circumstances.

G. <u>Plan Proposed in Good Faith</u>: The Plan has been proposed in good faith and not by any means forbidden by law. In so finding, the Bankruptcy Court has considered the totality of the circumstances of this Chapter 11 Case, and found that

6

all constituencies acted in good faith. The Plan is the result of extensive, good faith, arm's length negotiations among the Debtor and its principal constituencies, including the Official Committee of Unsecured Creditors (the "**Committee**").

H. <u>Liquidation Analysis Appropriate</u>: The Liquidation Analysis included as <u>Exhibit 3</u> to the Disclosure Statement and the estimated liquidation value, as described therein, is reasonable, proposed in good faith, and supported by the Confirmation Declarations and the evidence presented at or prior to the Confirmation Hearing. All parties in interest have been given the opportunity to challenge the Liquidation Analysis. The Liquidation Analysis (i) is reasonable, persuasive, and credible as of the date such analysis was prepared, presented, or proffered, and (ii) uses reasonable and appropriate methodologies and assumptions.

I. <u>Plan Vote Tabulation Appropriate</u>: With respect to Debtor and the Plan, the votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Disclosure Statement Interim Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

J. <u>Judicial Notice</u>: The Bankruptcy Court takes judicial notice of the docket of the Case maintained by the clerk of the Bankruptcy Court (the "**Docket**"), including, without limitation, all pleadings, certifications, notices and other documents docketed, all orders entered, and the transcripts of, and all evidence and

120951.000002 4814-2925-5933.16 154831882.1

arguments made, admitted, proffered or adduced at, the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Case.

K. <u>Burden of Proof</u>: The Debtor, as the proponent of the Plan, has met its burden of proof with respect to each element of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard respecting confirmation of a plan under Chapter 11 of the Bankruptcy Code. The Bankruptcy Court also finds that the Debtor has satisfied the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by clear and convincing evidence. Each witness who testified in connection with confirmation of the Plan was credible, reliable, and qualified to testify as to the topics addressed in his or her testimony.

L. <u>Bankruptcy Rule 3016</u>: The Plan is dated and identifies the Debtor submitting it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Plan (which includes the Disclosure Statement) with the clerk of the Bankruptcy Court satisfies Bankruptcy Rule 3016(b).

M. <u>Transmittal and Mailing of Solicitation Materials and Notice of Confirmation Hearing</u>: As evidenced by the Certificates of Service of Solicitation Materials and the Voting Declaration, the Debtor complied with the service requirements and deadlines approved in the Disclosure Statement Interim Order. The Debtor has provided notice of the Confirmation Hearing, the Voting Deadline,

120951.000002 4814-2925-5933.16 154831882.1

and the Plan Objection Deadline and solicited ballots accepting or rejecting the Plan by timely transmitting the Solicitation Package to all Holders of Claims, in accordance with the Disclosure Statement Interim Order, the Bankruptcy Code, the Bankruptcy Rules and the Local Rules. The notice of the Confirmation Hearing was adequate and sufficient, and no other notice need be given.

N.     <u>Compliance With the Applicable Requirements of the Bankruptcy Code for Confirmation of the Plan</u>[2]: The Bankruptcy Court specifically finds and determines that the Plan complies with all applicable provisions of the Bankruptcy Code under 11 U.S.C. § 1129(a)(1) and the following specific provisions of Chapter 11 of the Bankruptcy Code as set forth below:

(i)     <u>Sections 1122 and 1123(a)(1): Proper Classification</u>: Article I of the Plan classifies Claims into two Classes of Claims. The respective Claims placed in each Class are substantially similar to other Claims in such Class, and such classifications are appropriate as to each voting Class. Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims designated by the Plan, and the creation of such Classes does not unfairly

---

[2] The following Bankruptcy Code provisions are not applicable in this Chapter 11 Case and, therefore, not addressed in this Order: 11 U.S.C. §§ 1129(a)(6), 1129(a)(13), 1129(a)(14), and 1129(a)(15).

120951.000002 4814-2925-5933.16 154831882.1

discriminate between holders of Claims. The Plan, therefore, satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii) <u>Section 1123(a)(2)-(4): Specified Treatment and No Discrimination</u>: Article I, Sections 1.2 and 1.3 of the Plan, in accordance with section 1123(a)(2) of the Bankruptcy Code, specifies that Class 2 is Impaired under the Plan and Class 1 is Unimpaired under the Plan. In accordance with section 1123(a)(3) of the Bankruptcy Code, Article III of the Plan describes the treatment of the Allowed Claims in each such Class. As required by section 1123(a)(4) of the Bankruptcy Code, the Plan treatment of each Claim within a Class is the same as the treatment of each other Claim in such Class, unless the Holder of a Claim agrees to less favorable treatment on account of its Allowed Claim in such Class. The Plan, thus, satisfies section 1123(a)(2)-(4) of the Bankruptcy Code.

(iii) <u>Section 1123(a)(5): Adequate Means for Plan Implementation</u>: Pursuant to section 1123(a)(5) of the Bankruptcy Code, Article IV of the Plan provides adequate and proper means for the Plan's implementation, including, without limitation, (a) the establishment of the Liquidating Trust and the appointment of the Liquidating Trustee; (b) vesting of the Liquidating Trust Assets in the Liquidating Trust; (c) governance, operation of, and oversight for the Liquidating Trust; (d) treatment of Protected Funds; (e) distributions of funds by the Liquidating Trust, and (f) Exculpation and Injunction provisions post-confirmation.

120951.000002 4814-2925-5933.16 154831882.1

(iv)     Section 1123(a)(6):  Non-Voting Equity Securities:  The Plan does not provide for the Debtor's issuance of non-voting equity securities, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.  In that regard, Debtor, as a nonprofit, nonstock Michigan Corporation, had no equity securities.

(v)     Section 1123(a)(7):  Designation of Liquidating Trustee:  The Plan complies with section 1123(a)(7) of the Bankruptcy Code because the selection of the Liquidating Trustee is consistent with the interests of holders of Liquidating Trust Interests and the Liquidating Trust Agreement provides for appropriate selection of a successor Liquidating Trustee if necessary.

(vi)     Section 1123(b)(1)-(3):   Impairment/Unimpairment of Classes of Claims, Treatment of Executory Contracts and Settlement or Adjustment of Estate Claims:   As described above, the Plan Impairs Class 2, while leaving Class 1 Unimpaired.  The Plan therefore modifies the rights of some Holders of Claims and leaves the rights of others unaffected.  In addition, Articles V and VI of the Plan provides for the assumption and assignment or rejection of all Executory Contracts to which the Debtor is a party as provided for in the Plan and further addressed in this Order below.  Finally, except for the limited exculpation provisions set forth in the Plan, all Rights of Action are retained by the Debtor and vested in the Liquidating Trust under the Plan and the Liquidating Trustee is authorized to investigate, pursue

or settle all Rights of Action. As a result, sections 1123(b)(1)-(3) of the Bankruptcy Code are satisfied.

(vii)  <u>Section 1129(a)(2): Compliance By Proponent With the Applicable Provisions of the Bankruptcy Code</u>: The Debtor, as proponent of the Plan, has complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2), including, without limitation, sections 1123, 1125, 1126 and 1129 of the Bankruptcy Code and Bankruptcy Rules 2002, 3017, 3018 and 3019. The Debtor and each of its representatives have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code.

(viii)  <u>Section 1129(a)(3): Proposal of the Plan in Good Faith</u>: The Debtor proposed the Plan based upon extensive, arm's-length negotiations between and among the Debtor, the Committee, and various other parties in interest, and proposed the Plan in good faith (as such term is used in section 1125(e) of the Bankruptcy Code) and not by any means forbidden by law, as required by section 1129(a)(3) of the Bankruptcy Code. The Committee submitted a letter with the Plan supporting the Plan. The Bankruptcy Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Case and the process leading to the formulation of the Plan. The Chapter 11 Case was filed, the Debtor's assets were appropriately marketed and sold, and the Plan was proposed, with the legitimate and

12

good faith purpose of liquidating the Debtor's Estate, maximizing the recovery for the Estate's creditors and effectuating a successful chapter 11 case for the Debtor.

(ix)     Section 1129(a)(4):  Bankruptcy Court Approval of Certain Payments as Reasonable:  The procedures set forth in the Plan for the Bankruptcy Court's review and ultimate determination of the fees and expenses to be paid in connection with the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, comply with section 1129(a)(4) of the Bankruptcy Code.  As a result, the requirements of section 1129(a)(4) of the Bankruptcy Code have been satisfied.

(x)     Section 1129(a)(5):  Disclosure and Identity of Proposed Management: The Plan complies with Bankruptcy Code section 1129(a)(5) by providing for the appointment of the Liquidating Trustee to administer the Liquidating Trust under the Liquidating Trust Agreement as of and after the Effective Date.

(xi)     Section 1129(a)(7):  Best Interests of Creditors:  The Debtor has demonstrated that each entity that holds a Claim in Class 2 (the only Impaired Class under the Plan) either: (a) has accepted the Plan; or (b) as set forth in the Liquidation Analysis annexed as Exhibit 3 to the Disclosure Statement, will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the Entity would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code.  The methodology used and assumptions made in the Liquidation Analysis, as supplemented by the evidence proffered or adduced at the Confirmation

120951.000002 4814-2925-5933.16 154831882.1

Hearing or otherwise in the record of this Chapter 11 Case, are reasonable. As a result, the requirements of section 1129(a)(7) of the Bankruptcy Code have been satisfied.

(xii)    Section 1129(a)(8):  Acceptance of the Plan by Each Impaired Class: As set forth in the Voting Declaration, Class 2 (General Unsecured Claims), the only Impaired Class entitled to vote on the Plan, accepted the Plan.  Class 1 (LARA Escrow Claims) are Unimpaired and are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

(xiii)   Section 1129(a)(9):  Treatment of Unclassified Claims:  The treatment of Allowed Administrative Claims, Professional Fee Claims, and Allowed Priority Tax Claims under Article II of the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.  Allowed Priority Tax Claims will be paid in full on or after the Effective Date once allowed.  To the extent an Administrative Claim, Professional Fee Claim, or Priority Tax Claim is not yet due or has not yet been Allowed by Final Order as of the Effective Date, the Liquidating Trustee shall establish reserves in amounts sufficient to pay the asserted amounts of such Administrative Claims, Professional Fee Claims, and/or Priority Tax Claims.  Such reserves may be reduced by agreement of the applicable Claimants or orders of the Bankruptcy Court.  The Liquidating Trustee may not make Distributions to Holders

14

of Allowed Class 2 General Unsecured Claims, from such reserves unless expressly permitted by order of the Bankruptcy Court or agreement of the applicable Claimant.

(xiv)   Section 1129(a)(10):  Acceptance by at Least One Impaired Class:  As set forth in the Voting Declaration and as reflected above, at least one Impaired Class voted to accept the Plan by the requisite majorities, determined without including the acceptance of the Plan by any insider.  Accordingly, section 1129(a)(10) of the Bankruptcy Code is satisfied.

(xv)    Section 1129(a)(11):  Feasibility of the Plan:  The Plan satisfies section 1129(a)(11) of the Bankruptcy Code.  The evidence proffered or adduced and admitted at the Confirmation Hearing demonstrates that the Debtor will have sufficient funds to satisfy its obligations under the Plan and confirmation of the Plan is not likely to be followed by the further liquidation of the Debtor or any successor to the Debtor that is not otherwise contemplated by the Plan.  In this regard, the Plan provides for the dissolution of the Debtor and satisfaction of claims through Distributions made by the Liquidating Trustee after the Effective Date.  As a result, the requirements of section 1129(a)(11) of the Bankruptcy Code have been satisfied.

(xvi)   Section 1129(a)(12):  Payment of Statutory Fees:  In accordance with Section 1129(a)(12) of the Bankruptcy Code, Article II, Section 2.3 and Article XIV, Section 14.6 of the Plan provide for the payment of all fees payable under 28

120951.000002 4814-2925-5933.16 154831882.1

U.S.C. § 1930(a). As a result, the requirements of section 1129(a)(12) of the Bankruptcy Code have been satisfied.

(xvii)    Plan Modifications Satisfy 11 U.S.C. §§ 1127(a), 1122, 1123 and 1125 and Bankruptcy Rule 3019(a): The Plan, which includes modifications made prior to the Confirmation Hearing (including modifications to the Initial Plan), satisfies the requirements of sections 1127(a) and (c), 1122, 1123 and 1125 of the Bankruptcy Code. Such modifications comply with Bankruptcy Rule 3019(a), are non-material modifications for purposes of adequate information disclosure under Section 1125 of the Bankruptcy Code, and do not adversely change the treatment of the Claim of any creditor. As such, the Plan (as modified) shall be and hereby is deemed the Plan and is deemed to have been accepted by all creditors who accepted any prior iterations of the Plan (including the Initial Plan) pursuant to Bankruptcy Rule 3019(a).

(xviii)   Satisfaction of Confirmation Requirements: Based on the foregoing and all other filings, submission and evidence proffered and adduced at or prior to the Confirmation Hearing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code and, if applicable, the Plan may be confirmed notwithstanding the rejection by any Class of Claims.

O.    Section 1129(c):  Only One Plan: Other than the Plan (including previous versions thereof), which is a plan for the Debtor proposed by the Debtor,

no other plan has been filed in the Debtor's Chapter 11 Case. As a result, the requirements of section 1129(c) of the Bankruptcy Code are satisfied.

P.     <u>Section 1129(d): Principal Purpose of the Plan is Not the Avoidance of Taxes or Application of the Securities Law</u>: The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933 (15 U.S.C. § 77e). As a result, the requirements of section 1129(d) of the Bankruptcy Code are satisfied.

Q.     <u>Section 1129(e) – Not Small Business Case</u>: The Chapter 11 Case is not a small business case, and, accordingly, section 1129(e) of the Bankruptcy Code does not apply to the Chapter 11 Case.

R.     <u>Evidence at Confirmation Hearing</u>: The evidence proffered or adduced at the Confirmation Hearing (i) is reasonable, persuasive, and credible, (ii) utilizes reasonable and appropriate methodologies and assumptions, (iii) has not been controverted by other evidence, and (iv) establishes that the Plan does not discriminate unfairly, and is fair and equitable.

S.     <u>Objections to Confirmation</u>: No party submitting an objection to confirmation of the Plan has presented admissible factual or documentary evidence or an appropriate legal basis supporting its objection to confirmation of the Plan such that the Bankruptcy Court should find that the Plan cannot be confirmed and that the Bankruptcy Court should, therefore, deny confirmation of the Plan.

T.    Rejection of Executory Contracts and Unexpired Leases:    The (i) assumption and assignment of Residency Agreements to the Purchaser as set forth in the Plan; (ii) rejection of all Residency Agreements not assumed and assigned to the Purchaser as provided for in the Plan; (iii) the assumption of General Executory Contracts on the Assumption Schedule; and (iv) rejection of General Executory Contracts not set forth on the Assumption Schedule all as provided for in the Plan is a valid and appropriate exercise of the Debtor's business judgment and, as such, should be fully authorized and approved.

**BASED ON THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    Disclosure Statement Approved on a Final Basis:    The Disclosure Statement (i) contains adequate information of a kind generally consistent with the disclosure requirements of all applicable nonbankruptcy law, including the Securities Act, (ii) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtor, the Plan, and the liquidating transactions contemplated therein, and (iii) is fully approved on a final basis in all respects.

2.    Confirmation of the Plan:    All requirements for Confirmation of the Plan have been satisfied.  The Plan is confirmed in its entirety pursuant to section 1129 of the Bankruptcy Code.  Each of the terms and conditions of the Plan and the exhibits and schedules thereto, are an integral part of the Plan.  The Plan complies

18

with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. The Debtor and the Liquidating Trustee, as appropriate, are authorized to implement the provisions of the Plan and to consummate and effectuate the Plan. The Plan is deemed accepted by all creditors who have previously accepted the Plan and such acceptances cannot be withdrawn.

3. <u>Objections to Confirmation Denied and Overruled</u>: Any and all objections to Confirmation of the Plan that have not been resolved, withdrawn, waived, or settled and all reservations of rights included therein, are overruled on the merits and for the reasons set forth on the record at the Confirmation Hearing, and all withdrawn objections are deemed withdrawn with prejudice.

4. <u>Authorization of Actions</u>: The Debtor, the Committee, and the Liquidating Trustee (as applicable) are authorized to take all actions required under the Plan so as to implement and effectuate the Plan and the transactions contemplated therein.

5. <u>Binding Nature of Plan</u>: The terms of the Plan, and all transactions contemplated by the Plan, shall be effective and binding as of the Effective Date. The failure to specifically include or refer to any particular article, section, or provision of the Plan, or any related document in this Confirmation Order does not

120951.000002 4814-2925-5933.16 154831882.1

diminish or impair the effectiveness or enforceability of such article, section, or provision.

6. <u>Confirmation Order as Approval and Consent for Actions</u>: This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan. Pursuant to section 1142(b) of the Bankruptcy Code, as well as applicable non-bankruptcy law, no action of the respective directors of the Debtor shall be required to authorize the Debtor to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan and any contract, instrument, or other document to be executed, delivered, adopted, or amended in connection with implementation of the Plan.

7. <u>Governmental Filings and Actions</u>: Subject to payment of any applicable filing fees under applicable non-bankruptcy law, each federal, state, commonwealth, local, foreign, or other governmental agency shall accept for filing and/or recording any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan and this Confirmation Order. To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any issuance, transfer, or exchange of a security,

or the making or delivering of an instrument of transfer of property pursuant to, in contemplation of, or in connection with the Plan, this Confirmation Order, or the Liquidating Trust Agreement shall not be subject to any stamp tax, document recording tax, conveyance fee, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, sales or use tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment in the United States, and this Confirmation Order hereby directs the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents in connection with such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to: (a) all actions, agreements, and documents necessary to evidence and implement the provisions of, transactions contemplated by and the distributions to be made under the Plan, this Confirmation Order, or the Liquidating Trust Agreement, and (b) the making or delivery of any deed, bill of sale, assignments, or other instruments of transfer under, in furtherance of, or in connection with the Plan.

8. <u>Subsequent Plan Modifications</u>: The amendments and modifications to the solicitation version of the Plan (i.e., the Initial Plan) are non-material modifications to the Plan and do not adversely change the treatment of the Claim of

120951.000002 4814-2925-5933.16 154831882.1

any creditor. Thus, notice of such amendments and modifications (collectively, the "**Subsequent Plan Modifications**") need not be given to creditors and parties-in-interest and no other or further notice is or shall be required and such Subsequent Plan Modifications are approved in full in accordance with sections 1127(a) and (c), 1122, 1123 and 1125 of the Bankruptcy Code and Bankruptcy Rule 3019(a). The Plan, containing the Subsequent Plan Modifications, is deemed accepted by all creditors who have previously accepted the Initial Plan.

9. <u>Binding Effect of Confirmation of Plan</u>: Pursuant to section 1141 of the Bankruptcy Code and the other applicable provisions of the Bankruptcy Code, effective as of the Effective Date, the provisions of the Plan (including the exhibits, attachments, and schedules thereto, and all documents and agreements executed pursuant to or in connection with, the Plan) and this Confirmation Order shall be binding on (a) the Debtor and the Liquidating Trust, (b) all Holders of Claims against the Debtor, whether or not Impaired under the Plan and whether or not such Holders have accepted or rejected the Plan or affirmatively voted to reject the Plan, (c) each Person or Entity receiving, retaining or otherwise acquiring property under the Plan, (d) any non-Debtor party to an Executory Contract or Unexpired Lease with the

120951.000002 4814-2925-5933.16 154831882.1

Debtor, and (e) any and all parties receiving notice of the filing of the Plan and the confirmation of the Plan through this Confirmation Order.

10.     <u>Approval of Exculpations and Injunctions</u>:  For the avoidance of doubt, pursuant to Bankruptcy Rule 3020(c)(1), the following provisions in the Plan are hereby approved in full and will be effective immediately on the Effective Date without further order or action by the Bankruptcy Court, any of the parties to such provisions, or any other Person or Entity: (a) Exculpations (<u>Article IV, Section. 4.10 and Article IX, Section 9.4</u>); and (b) Injunctions (<u>Article IV, Section 4.11 and Article IX, Section 9.5</u>). The Injunction provisions under Article IV, Section 4.11 and Article IX, Section 9.5 are fully enforceable per their terms.  By accepting Distributions pursuant to the Plan, each Holder of an Allowed Claim will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth in those Articles and Sections of the Plan. The exculpations set forth in Article IV, Section 4.10 and Article IX, Section 9.5 of the Plan are essential and integral provisions of the Plan, and are appropriate under the circumstances of the Chapter 11 Case and applicable law because they were proposed in good faith, were formulated following extensive good-faith, arm's-length negotiations between key constituents, and are appropriately limited in scope. Each of the exculpation provisions set forth in the Plan, as approved, modified or limited, and as ordered and decreed by this Confirmation Order: (a) are within the

120951.000002 4814-2925-5933.16 154831882.1

jurisdiction of the Bankruptcy Court under 28 U.S.C. §§1334(a), 1334(b), and 1334(d); (b) are essential to the implementation of the Plan; (c) are integrated and dependent elements of the settlement and transactions incorporated into and contemplated by the Plan; (d) confer material benefits on, and are in the best interests of, the Debtor and the Estate; (e) are important to the overall objectives of the Plan; (f) are consistent with sections 105, 1123, 1129, and other applicable provisions of the Bankruptcy Code; and (g) do not violate section 524(e) by releasing third-party claims asserted against third-party non-debtor persons. The record presented at the Confirmation Hearing and the filings submitted in connection with the Chapter 11 Case and the records made at the hearings held by the Bankruptcy Court during the Chapter 11 Case provide a sufficient basis to support the approval of the exculpation provisions contained in Article IV, Section 4.10 and Article IX, Section 9.5 of the Plan.

11.    <u>Dissolution of Debtor's Board</u>:  The existing board of directors and board officers of the Debtor will be deemed to have resigned on and as of the Effective Date, in each case (a) without further notice to or order of the Bankruptcy Court, (b) act or action under applicable law, regulation, order, or rule or (c) the vote, consent, authorization, or approval of any Person or Entity.

12.    <u>Remaining Assets Free and Clear of Liens, Claims and Encumbrances</u>: Except as otherwise specifically provided for in the Plan, or in any contract,

instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all encumbrances, mortgages, deeds of trust, Liens, pledges, or other security interests against any asset or property of the Debtor and/or its Estate shall be fully released and discharged, and all of the right, title, and interest of the Debtor, the Liquidating Trust, and the Liquidating Trustee in any such asset or property shall be free and clear of such encumbrances, mortgages, deeds of trust, Liens, pledges, or other security interests and without further: (a) notice to or order of the Bankruptcy Court, (b) act or action under applicable law, regulation, order, or rule, or (c) the vote, consent, authorization or approval of any Person or Entity.

13.     Notice of Entry of Confirmation Order and Occurrence of the Effective Date: The Debtor, through its Noticing Agent, Kurtzman Carson Consultants (the "**Noticing Agent**") shall cause to be served a notice of the entry of this Confirmation Order and a notice of the occurrence of the Effective Date (the "**Effective Date Notice**"), upon (a) all parties listed in the full creditor matrix maintained by the Noticing Agent, and (b) such additional persons and entities as deemed appropriate by the Debtor, no later than five (5) business days after entry of this Confirmation Order and the occurrence of the Effective Date, as applicable. A certificate of service reflecting such service of notice of same shall be filed by Debtor.

14.     Assumed General Executory Contracts: The Debtor has exercised sound business judgment in determining to assume the General Executory Contracts

identified on the Assumption Schedule including identified insurance policies and any agreements, documents, or instruments relating thereto and the assumption of the General Executory Contracts on the Assumption Schedule or as otherwise set forth in the Plan is approved.

15.    Rejection of Executory Contracts and Unexpired Leases: The Debtor has exercised sound business judgment in determining to reject (i) Debtor's General Executory Contracts and Unexpired Leases that are not on the Assumption Schedule pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code and Article V of the Plan; and all (ii) Residency Agreements that were not assumed and assigned to the Purchaser pursuant to the terms of the Sale Order or Plan. The rejection of the Debtor's Executory Contracts and Unexpired Leases and Residency Agreements as set forth in the Plan is hereby fully authorized and approved in all respects. As provided in Article V, Section 5.1(c)(ii) of the Plan, any Claims arising out of rejection of any Residency Agreement must be filed by the Current Resident Claim Bar Date, which is 30 days after the entry of this Confirmation Order and as provided in Article VI, Section 6.2 of the Plan, any Claims arising out of rejection of General Executory Contracts must be filed by the General Contract Rejection Claim Bar Date which is 30 days after the entry of this Confirmation Order. Unless a proof of claim is filed by the Current Resident Claim Bar Date or General Contract Rejection Bar date, as applicable, then such Claim shall be forever barred and waived, and shall

120951.000002 4814-2925-5933.16 154831882.1

not be enforceable against the Debtor, the Liquidating Trustee, or the Liquidating Trust Assets.

16. <u>Assumption and Rejection of Residency Agreements</u>: The Debtor has exercised sound business judgment in determining to assume and assign to the Purchaser Residency Agreements in accordance with Article V of the Plan and otherwise reject any Residency Agreements not assigned to Purchaser and all the provisions of the Plan related thereto including the treatment of Claims associated with rejected Residency Agreement and bar against Debtor of Claims associated with assumed and assigned Residency Agreements are approved.

17. <u>United States Trustee Matters:</u>  The Debtor shall timely file monthly operating reports in the form required by the Office of the United States Trustee for the Eastern District of Michigan (the "**<u>U.S. Trustee</u>**") for all periods through the date of confirmation of the Plan.  On or before the Effective Date, the Debtor shall pay all outstanding U.S. Trustee Quarterly Fees arising prior to and through the date of Confirmation.  On and after the Effective Date, the Liquidating Trustee shall timely file quarterly post-confirmation disbursement reports in a form required by the U.S. Trustee, and shall pay any applicable quarterly fee required to be paid under 28 U.S.C. § 1930(a)(6) until the Chapter 11 Case is closed or dismissed.  A report is "timely filed" if filed on or before the 21st day following the end of a calendar year

120951.000002 4814-2925-5933.16 154831882.1
20-51066-mar    Doc 663    Filed 12/06/21    Entered 12/06/21 16:57:35    Page 27 of 121

quarter or within twenty-one (21) days following the closing or dismissal of the Chapter 11 Case.

18.    Conditions to Effectiveness:    The Plan shall not become effective unless and until all conditions set forth in Article XIV, Section 14.1 of the Plan have been satisfied.

19.    Provisions of Plan and Confirmation Order Non-Severable:    The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are non-severable and mutually dependent.

20.    Lack of Particular References to Plan Provisions:    The failure specifically to include or reference any particular article, section or provision of the Plan or any related document in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan (and the exhibits, attachments, and schedules thereto) be confirmed in its entirety and any related documents be approved in their entirety and incorporated herein by reference.

21.    Provisions of Confirmation Order and Plan Enforceable:    The provisions of this Confirmation Order, the Plan and related documents, or any

120951.000002 4814-2925-5933.16 154831882.1

amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

22. <u>Inconsistencies</u>: To the extent of any inconsistency between this Confirmation Order and the Plan, the terms and conditions of this Confirmation Order shall govern.

23. <u>Retention of Jurisdiction</u>: The Bankruptcy Court retains jurisdiction over the interpretation or implementation of this Order and any and all issues related to or arising in connection therewith. Additionally, to the broadest extent possible under applicable law, including those matters set out in Article XII of the Plan, the Bankruptcy Court retains jurisdiction to address all matters relating to the Chapter 11 Case, the Plan, and the implementation, effectuation, and consummation thereof.

24. <u>Further Technical Modifications to the Plan</u>: Prior to the Effective Date, the Debtor may make additional appropriate technical adjustments and modifications to the Plan and documents related thereto, but only in accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, without further order or approval of the Bankruptcy Court; *provided, that*, such technical

120951.000002 4814-2925-5933.16 154831882.1

adjustments and modifications shall be consistent with the Plan and this Confirmation Order.

25. <u>Record Closed</u>:  The record of the Confirmation Hearing is closed.

26. <u>Plan Classification Controlling</u>:  Unless expressly modified by this Order, the terms of the Plan shall solely govern the classification of Claims for purposes of the Distributions to be made thereunder.  The classifications set forth on the ballots tendered to or returned by the Debtor's creditors in connection with voting on the Plan: (a) were set forth on the ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for Distribution purposes; (c) may not be relied upon by any creditor as representing the actual classification of such Claims under the Plan for Distribution purposes; and (d) shall not bind the Debtor or its successor in interest, the Liquidating Trustee.

27. <u>Effectuation of the Plan</u>:  No action of the board of directors of the Debtor is necessary in order to authorize the Debtor to execute, deliver, file, or record all documents and instruments, take all actions necessary or desirable to implement the Plan (including, without limitation, the Liquidating Trust Agreement and the other documents related to the Plan and the exhibits and attachments thereto) and this Confirmation Order, and to effect and undertake any other transactions contemplated therein or thereby.  To effectuate the Plan and such transactions, the

120951.000002 4814-2925-5933.16 154831882.1

officers or responsible representatives of the Debtor, including the Chief Restructuring Officer, are authorized, without further notice or application to or order of the Bankruptcy Court, to execute, deliver, file, or record such agreements or documents, and to take such other actions as any such individual may determine to be necessary or desirable to effectuate the Plan and such transactions, regardless of whether such actions or documents are specifically referred to in the Plan or this Confirmation Order. To the extent that, under applicable non-bankruptcy law, any of these actions otherwise would require the consent or approval of the board of directors of the Debtor, this Confirmation Order constitutes such consent, approval and direction.

28. <u>Activities in Anticipation of the Effective Date</u>: The Debtor is hereby authorized and empowered to take all necessary steps, and pay all related expenses, in anticipation of the Effective Date, including, without limitation, the steps necessary to establish the Liquidating Trust, appoint the Liquidating Trustee, and vest all Liquidating Trust Assets in the Liquidating Trust, consistent with the terms of the Plan. As the Plan provides for the liquidation of the Debtor and establishment of the Liquidating Trust to effectuate such liquidation, Rule 3021-1 of the Local Rules shall not be applicable in this Chapter 11 Case as to the Debtor, and the Liquidating Trustee will file the initial report under Rule 3021-1 of the Local Rules within thirty (30) days of the Effective Date.

120951.000002 4814-2925-5933.16 154831882.1

29.    Substantial Consummation:  On the Effective Date, the Plan shall be deemed to be substantially consummated pursuant to sections 1101 and 1127(b) of the Bankruptcy Code.

30.    Vesting of Liquidating Trust Assets in the Liquidating Trust:  Except as otherwise provided in the Plan, the Liquidating Trust Agreement, or this Confirmation Order, all Assets not otherwise sold or released under the Plan, the Sale Order, or any other prior order shall be conveyed and assigned to the Liquidating Trust including, among other assets, the Rights of Action, any cash held by the Debtor (excluding the Protected Funds except to the extent described in the Plan), any Excluded Assets not transferred in the Sale to the Purchaser and any excess cash proceeds from the sale.  On the Effective Date, the Liquidating Trust Assets shall be deemed transferred to and vested in the Liquidating Trust, and the Liquidating Trust shall assume liability for all Allowed General Unsecured Claims.

31.    Liquidating Trustee:  Sheldon Stone of Capstone Partners shall be appointed, and is hereby approved, as the Liquidating Trustee for the sole purpose of administering the Liquidating Trust pursuant to the terms and conditions provided in the Plan and the Liquidating Trust Agreement, including without limitation, the duty and obligation to liquidate Liquidating Trust Assets, to make Distributions therefrom in accordance with the provisions of the Plan, and to pursue, settle, or abandon any Rights of Action vested in the Liquidating Trust, all in accordance with

32

the Liquidating Trust Agreement. Following the Effective Date, the Liquidating Trustee is given full power of attorney and has the authority to execute and/or endorse any documentation on behalf of the Debtor in furtherance of the Plan and the Debtor's liquidation, including but not limited to, the filing of final tax returns. From and after the Effective Date, subject to the terms of the Plan and Liquidating Trust Agreement, the Liquidating Trustee may administer the Liquidating Trust and use, acquire, and dispose of property, and settle and compromise claims, without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan, the Liquidating Trust Agreement, and this Confirmation Order. Without limiting the generality of the foregoing, the Liquidating Trustee may, without application to or approval by the Bankruptcy Court or any other person or party, but in accordance with the Liquidating Trust Agreement, pay professional fees and expenses that the Liquidating Trust incurs after the Effective Date. The transfer of any Assets to the Liquidating Trust under the Plan (a) is or shall be a legal, valid, and effective transfer of property, (b) vests or shall vest the Liquidating Trust with good title to such property, free and clear of all Liens, Claims, charges, or other Encumbrances, except as expressly provided in the Plan or this Confirmation Order, (c) does not and shall not constitute an avoidable transfer under the Bankruptcy Code or under applicable non-bankruptcy law, and (d) does not and shall not subject the

Liquidating Trustee or the Liquidating Trust to any liability by reason of such transfer under the Bankruptcy Code or under applicable non-bankruptcy law, including by laws affecting successor or transferee liability.

32.   <u>Liquidating Trust</u>:  The Liquidating Trust Agreement, in substantially the form filed with the Plan, is hereby approved, and all of the Debtor's right, title, and interest in the Liquidating Trust Assets shall be transferred to, and vest in, the Liquidating Trust on the Effective Date.  The Liquidating Trustee shall have all the liabilities, duties, powers, rights, title, discretion, and privileges designated in the Plan, this Confirmation Order and in the Liquidating Trust Agreement.  The Debtor, the Committee, and the Liquidating Trustee shall be, and hereby are, authorized to enter into the Liquidating Trust Agreement, in substantially the form filed with the Plan, and the terms of the Liquidating Trust Agreement are hereby incorporated in this Confirmation Order by reference as if fully set forth in this Confirmation Order. The Liquidating Trust is intended to be a "liquidating trust" (a) as such term is defined in Section 301.7701-4(d) of U.S. Treasury Regulations, and (b) in accordance with the requirements set forth in Revenue Procedure 94-45, 1994-2 C.B. 684.

33.   <u>Treatment Is in Full Satisfaction:</u>  Except as provided in the Plan or this Confirmation Order or otherwise agreed in writing and approved by the Bankruptcy Court, the treatment set forth in the Plan and the payments and Distributions to be

120951.000002 4814-2925-5933.16 154831882.1

made pursuant to the terms and subject to the conditions thereof shall be in full and complete satisfaction of all Claims against the Debtor and its Estate. Except as otherwise provided in the Plan or this Confirmation Order, such treatment supersedes and replaces any agreements with or rights any Entity may have in or against the Debtor or its property.

34. <u>Claims Released in Exchange for Rights Under the Plan</u>: The rights afforded in the Plan and the treatment of all Claims in the Plan shall be in exchange for and in complete satisfaction of Claims of any nature whatsoever, against the Debtor or any of its assets or properties. On the Effective Date, all such Claims against the Debtor shall be satisfied and released in full and replaced with the beneficial interests of such Holders in the Liquidating Trust.

35. <u>The Committee</u>: On the Effective Date, the Committee shall dissolve and the members of the Committee, and attorneys retained by the Committee, shall be released, exculpated, and discharged from all authority, duties, responsibilities, and obligations related to and arising from and in connection with this Chapter 11 Case, provided that the Committee shall continue to exist solely with respect to (i) any applications for Professional Fee Claims or expense reimbursements for members of the Committee including preparing same, objecting to same, defending same, and attending any hearing with respect to same; (ii) any motions or other actions seeking enforcement of implementation of the provisions of the Plan or the

120951.000002 4814-2925-5933.16 154831882.1

Confirmation Order; and (iii) any appeal pending as of the Effective Date or filed thereafter, the outcome of which could affect the treatment of prepetition creditors. Following the Effective Date, Professionals retained by the Committee shall be entitled to reasonable compensation for services rendered in connection with the matters identified in clauses (i) – (iii) of this paragraph; provided that any such payments made in connection therewith shall only be made after notice and a hearing, and approval by the Bankruptcy Court.

36. <u>Exemption from Securities Laws</u>: The issuance of and the distribution under the Plan of the beneficial interests in the Liquidating Trust shall be exempt from registration under the Securities Act and any other applicable securities laws pursuant to section 1145 of the Bankruptcy Code.

37. <u>Headings</u>: Headings utilized herein are for convenience and reference only, and shall not constitute a part of this Confirmation Order for any other purpose.

38. <u>Effect of Conflict Between Plan and Confirmation Order</u>: The provisions of the Plan, and this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purpose of each. If there is any conflict between the terms of the Plan, on the one hand, and the terms of this Confirmation

120951.000002 4814-2925-5933.16 154831882.1

Order on the other, the terms of this Confirmation Order shall control solely to the extent of the conflict.

39. <u>Prior Orders Remain in Effect</u>: Over the course of the Chapter 11 Case, the Bankruptcy Court has entered several orders authorizing certain transactions, approving compromises, releasing certain claims and causes of action and, most importantly, approving the sale. Unless expressly overwritten by a specific provision of the Plan or this Confirmation Order, the terms of all such prior orders, including the Sale Order, shall remain fully effective and enforceable per their terms.

40. <u>Final Order and Waiver of Stay</u>: This Confirmation Order is a Final Order and judgment and the period in which an appeal must be filed shall commence upon the entry hereof. Notwithstanding the possible applicability of Bankruptcy Rule 3020(e), 6004(h), 7062, or 9014, or otherwise, the terms and conditions of this Confirmation Order shall be immediately effective and enforceable upon its entry. The Debtor, the Committee, the Liquidating Trustee, and the Liquidation Trust are hereby authorized to consummate the Plan and the transactions contemplated thereby immediately upon the entry of this Confirmation Order upon the Bankruptcy Court's Docket, subject to the satisfaction of the conditions set forth in Article XIV, Section 14.1 of the Plan. If any or all of the provisions of this Confirmation Order are hereafter reversed, modified or vacated by subsequent order of the Bankruptcy Court or any other court, such reversal, modification or vacatur shall not affect the

120951.000002 4814-2925-5933.16 154831882.1

validity of the acts or obligations incurred or undertaken under or in connection with the Plan and this Confirmation Order prior to the Debtor's receipt of written notice of such order. Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan and all related documents or any amendments or modifications thereto.

    41. The following sentence appearing in Article VIII(F) of the Disclosure Statement is deleted:

> This means that all claims, rights, and remedies that a creditor or other party in interest could have asserted against the Debtor will be discharged, and such creditors or interested parties will be enjoined from pursuing such remedies.

Signed on December 6, 2021



/s/ Mark A. Randon
**Mark A. Randon**
**United States Bankruptcy Judge**

120951.000002 4814-2925-5933.16 154831882.1

**EXHIBIT A**

120951.000002 4814-2925-5933.16 154831882.1

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

IN RE:                        Case No. 20-51066-MAR

HENRY FORD VILLAGE, INC.,       Chapter 11

       Debtor.                 Honorable Mark A. Randon

_____/

## FIRST AMENDED CHAPTER 11 LIQUIDATING PLAN OF
## HENRY FORD VILLAGE, INC.

## INTRODUCTION

Henry Ford Village, Inc. (the "**Debtor**" or "**HFV**"), supported by the Official Committee of Unsecured Creditors for the Debtor (the "**Committee**"), respectfully submits this First Amended Chapter 11 Liquidating Plan of Henry Ford Village, Inc. (the "**Plan**") under Chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") pursuant to 11 U.S.C. § 1121(a) of the Bankruptcy Code for the resolution of the Debtor's outstanding creditor claims. Reference is made to the accompanying Disclosure Statement for the Chapter 11 Liquidating Plan of Henry Ford Village, Inc. (the "**Disclosure Statement**") for information regarding the history of and the circumstances leading to HFV's Chapter 11 Case, certain events during the Chapter 11 Case, as well as a summary and description of the Plan and related matters, including distributions to be made under the Plan.

The Plan contemplates the creation of a Liquidating Trust to liquidate the remaining assets of the Debtor's Estate and to coordinate distribution of the cash in the Estate and any other proceeds of the Liquidating Trust to holders of Allowed Claims.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. No materials, other than the Disclosure Statement and any exhibits and schedules attached thereto or referenced therein, have been approved for use in soliciting acceptances or rejections of the Plan.

All capitalized terms not defined elsewhere in this Plan shall have the meaning assigned to them in the Defined Terms and Rules of Interpretation attached hereto as **Exhibit A**, the Disclosure Statement, the Bankruptcy Code, and the Bankruptcy Rules, as the case may be.

# ARTICLE I.
# CLASSIFICATION OF CLAIMS

1.1    <u>Classification of Claims</u>: Pursuant to section 1122 of the Bankruptcy Code, a Claim is placed in a particular Class for purposes of voting on the Plan and receiving Distributions under the Plan, as set forth herein.  A Claim shall be deemed classified within a particular Class only to the extent: (i) the Claim qualifies within the description of that Class; (ii) the Claim is an Allowed Claim in that Class; and (iii) the Claim has not been paid, released, or otherwise compromised before the Effective Date.

In accordance with section 1123(a)(1) of the Bankruptcy Code, all Claims except Administrative Claims and Priority Tax Claims are classified in the Classes set forth below. Because the Debtor is a not-for-profit entity it does not have shareholders, and therefore, there is no class of interests.

(a)    Class 1 LARA Escrow Claims: Class 1 consists of LARA Escrow Claims.  After the Sale Closing Date, to the extent not already distributed pursuant to directives of LARA, Debtor or the Liquidating Trustee will disburse LARA Order Escrow Funds in accordance with LARA directives.  LARA Escrow Resident Claims are limited to recovery from the LARA Order Escrow Funds.  Class 1 LARA Escrow Claims are Unimpaired.

(b)    <u>Class 2 General Unsecured Claims</u>: Class 2 consists of General Unsecured Claims against the Debtor.  Class 2 General Unsecured Claims are Impaired.

1.2    <u>Unimpaired Classes</u>: Class 1 is Unimpaired under the Plan.  Under section 1126(f) of the Bankruptcy Code, Holders of Claims in Class 1 are conclusively presumed to have accepted the Plan and are therefore not entitled to vote to accept or reject the Plan.

1.3    <u>Impaired, Voting Classes</u>: Class 2 is Impaired under the Plan.  Under section 1126(f) of the Bankruptcy Code, Holders of Claims in Class 2 are entitled to vote to accept or reject the Plan.

1.4    Acceptance or Rejection of the Plan.

(a)    Voting and Acceptance by the Impaired Class of Claims: The Impaired Class is entitled to vote to accept or reject the Plan. The Impaired Class of Claims has accepted the Plan if the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in Class 2 actually voting have voted to accept the Plan.

(b)    Voting of Disputed Claims: A Holder of a Disputed Claim that has not been temporarily Allowed for purposes of voting on the Plan may vote only such Disputed Claim in an amount equal to the portion, if any, of such Claim shown as fixed, liquidated, and undisputed in the Schedules.

## ARTICLE II.
## TREATMENT OF UNCLASSIFIED
## ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, U.S. Trustee Fees, and Priority Tax Claims have not been classified and, thus, are excluded from any Class of Claims set forth in Article I of the Plan.

2.1    Allowed Administrative Claims:

(a)    General: Subject to the Administrative Claims Bar Date and other provisions of this Plan, and except to the extent that a Holder of an Allowed Administrative Claim agrees to a different treatment, on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date an Administrative Claim becomes an Allowed Claim, the Holder of such Allowed Administrative Claim shall receive from the Debtor or the Liquidating Trustee, as applicable, an amount equal to such Allowed Claim; *for the avoidance of doubt*, Professional Fee Claims shall be Allowed Administrative Claims.

(b)    Administrative Claims Bar Date: Except as provided below for (i) Professional Fee Claims and (ii) U.S. Trustee Fees, requests for payment of Administrative Claims must be filed and served no later than 30 days after entry of the Confirmation Order. Holders of Administrative Claims who do not file and serve such requests by the Administrative Claims Bar Date shall be forever barred from asserting such Administrative Claim against the Debtor, the Estate, the Liquidating Trustee, the Liquidating Trust, or the

property of each of the foregoing, and the Holder of such Administrative Claim shall be enjoined from commencing or continuing any action, employment of process, or act to collect, offset, or recover such Administrative Claim.

2.2   Professional Fee Claims:

(a)   Final Fee Applications:  All final requests for Professional Fee Claims for services rendered before the Effective Date shall be filed and served no later than 30 days after entry of the Confirmation Order.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, Professional Fee Claims will become Allowed Professional Fee Claims in the amount awarded by the Bankruptcy Court.  All Allowed Professional Fee Claims shall be paid by the Debtor or the Liquidating Trustee, as applicable, in full as soon as practicable after any such Professional Fee Claims are Allowed.

(b)   Professional Fee Reserve:  All professionals with Professional Fee Claims shall promptly provide the Debtor with a reasonable and good faith estimate of their fees and expenses incurred and to be incurred in rendering services through the Effective Date.  The Professional Fee Reserve shall be established in the estimated amount to pay all Allowed Professional Fee Claims.  Payment of Allowed Professional Fee Claims shall not be limited by the Professional Fee Reserve and any shortfall will be paid from the Liquidating Trust Assets.  Excess funds, if any, from the Professional Fee Reserve after payment of all Allowed Professional Fee Claims in full will be transferred to the Liquidating Trust to become part of the Liquidating Trust Assets.

2.3   Payment of Statutory Fees: All fees payable pursuant to 28 U.S.C. § 1930 shall be paid in an amount equal to such Allowed Administrative Claim when due.

2.4   Allowed Priority Tax Claims: Unless otherwise provided for pursuant to a Final Order or Confirmation Order, each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date shall receive in full satisfaction, settlement, and release of, and in exchange for, such Allowed Priority Tax Claim after the later of: (i) the Effective Date; (ii) the first Business Day that is thirty (30) days after the date a Priority Tax Claim becomes an Allowed Claim; or (iii) such date as is mutually agreed upon by the Liquidating Trustee and the Holder of such Allowed Priority Tax Claim, either the unpaid amount of such Allowed

Priority Tax Claim, or such other less favorable treatment as to which the Liquidating Trustee and the Holder of such Allowed Priority Tax Claim shall have agreed upon in writing.

## ARTICLE III.
## TREATMENT OF CLASSIFIED CLAIMS

3.1 <u>Treatment of Class 1 – LARA Escrow Claims</u>: Each Holder of a LARA Escrow Claim will receive disbursements in accordance with the provisions of the LARA Order, LARA disbursement directives and the LARA Escrow Agreement and each LARA Escrow Claimant that is a Current Resident will also be entitled to enter into a Base Lease accompanied with an Addendum.

3.2 <u>Treatment of Class 2 – General Unsecured Claims</u>: Unless otherwise provided for pursuant to a Final Order or the Confirmation Order, each Holder of an Allowed General Unsecured Claim, in exchange for such Allowed General Unsecured Claim, shall receive, subject to <u>Article IV</u> of the Plan, a beneficial interest in the Liquidating Trust entitling such Holder to receive on account of such Claims *pro rata* Distributions from the Liquidating Trust Assets. Notwithstanding the foregoing, the Holder of an Allowed General Unsecured Claim may receive such other less favorable treatment as may be agreed to in writing by the Liquidating Trustee and the Claimant.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

4.1 <u>Creation of the Liquidating Trust and Appointment of the Liquidating Trustee</u>. On or prior to the Effective Date, the Liquidating Trust shall be created pursuant to the Liquidating Trust Agreement subject to execution by the Liquidating Trustee and the Debtor. The Liquidating Trust shall become effective on the Effective Date. On the Effective Date, the Liquidating Trust shall be deemed to be valid, binding, and enforceable in accordance with the terms and provisions of the Plan and the Liquidating Trust Agreement. After the Effective Date, the Liquidating Trust Agreement may be amended in accordance with its terms without further order of the Court but in all circumstances the Liquidating Trust Agreement must maintain provisions to retain a Liquidating Trust Oversight Committee. The Liquidating Trust Agreement shall be satisfactory in form and substance to the Debtor and the Committee.

4.2 <u>Transfer of Liquidating Trust Assets to the Liquidating Trust.</u> As of the Effective Date, pursuant to the provisions of 1141(b) and (c) of the Bankruptcy

Code, all assets of the Debtor and its Estate existing as of the Effective Date shall transfer to the Liquidating Trust including only the excess, if any, from the Professional Fee Reserve after payment of all Allowed Professional Fees, but excluding the Protected Funds, provided that (i) custody of the LARA Order Escrow Funds and the Charitable Account Funds may transfer to the Liquidating Trust to the extent necessary to complete the administration of such funds and in which case legal, but not equitable title, is vested with the Liquidating Trust; (ii) the Charitable Annuities Account shall be transferred to the Liquidating Trust to be administered by the Liquidating Trustee consistent with the terms of the underlying agreements that govern the use of funds in the Charitable Annuities Account; and (iii) the Accounts Receivable shall at all times be initially received by the existing accounts of the Debtor registered with third party payors and, notwithstanding dissolution, Debtor shall have sole legal and equitable title to such Debtor accounts, provided that the Debtor and Liquidating Trustee shall arrange for the immediate transfer of Accounts Receivable received by the Debtor accounts to the Purchaser consistent with the Asset Purchase Agreement, and provided further that the Liquidating Trustee shall be an authorized official for administration of such Debtor accounts and prepare and submit any documents necessary to accomplish that result . The Liquidating Trust Assets shall be transferred, assigned and become vested in the Liquidating Trust free and clear of Claims, Liens, encumbrances, charges, and other interests, subject only to the Allowed Claims of the General Unsecured Creditors pursuant to and in accordance with the terms of this Plan and the expenses of the Liquidating Trust as set forth herein and in the Liquidating Trust Agreement. In the case of a conflict between the Liquidating Trust Agreement and the Plan, the Plan shall control.

For the avoidance of doubt, the Liquidating Trust and Liquidating Trustee shall have no equitable interest in the Protected Funds. With respect to Accounts Receivable, the bank accounts of Debtor established and registered with the Medicare and Medicaid programs for the receipt of Medicare and Medicaid Accounts Receivable shall remain registered to Debtor but shall be administered by the Liquidating Trust and Liquidating Trustee in accordance with the Asset Purchase Agreement.

The Liquidating Trustee shall turn over the proceeds of any Accounts Receivable in accordance with the terms of the Asset Purchase Agreement. Other than the Protected Funds and Accounts Receivable that will continue to be held in segregated accounts, all other cash from the Debtor's debtor-in-possession bank accounts shall be transferred to a Liquidating Trust account established at a financial

institution designated by the U.S. Trustee as an approved depository for bankruptcy funds.

4.3 <u>Governance of the Liquidating Trust and Appointment of the Liquidating Trustee</u>. On the Effective Date, the Liquidating Trustee shall be deemed the Estate's representative in accordance with 11 U.S.C. § 1123 and shall have all powers, authority, and responsibilities specified in the Plan, including, without limitation, the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code and Rules 2004 and 9019 of the Federal Rules of Bankruptcy Procedure. The Liquidating Trust shall operate under the provisions of the Liquidating Trust Agreement. The Liquidating Trust shall be administered by the Liquidating Trustee reporting to and under the supervision of the Liquidating Trust Oversight Committee. The initial Liquidating Trustee shall be named and appointed as of the Effective Date and shall be compensated and otherwise bound by the terms of the Liquidating Trust Agreement, without further order of the Bankruptcy Court. The Plan will be administered and actions will be taken in the name of the Debtor or Liquidating Trust, as appropriate, through the Liquidating Trustee, irrespective of whether the Debtor has been dissolved. The Liquidating Trust Agreement is attached hereto as **<u>Exhibit B</u>**, as may be amended by a Plan Supplement.

4.4 <u>Liquidating Trust Oversight Committee</u>: The Liquidating Trust Oversight Committee shall initially be comprised of former members of the Committee that volunteer to participate as Liquidating Trust Oversight Committee members. Except as otherwise set forth in this Plan, the Liquidating Trust Agreement shall address all matters regarding the governance of the Liquidating Oversight Committee.

(a) The Liquidating Trustee shall consult the Liquidating Oversight Committee as the Liquidating Trustee deems necessary or advisable or as reasonably requested by the Liquidating Trust Oversight Committee in carrying out the purpose and intent of the Liquidating Trust. Members of the Liquidating Trust Oversight Committee shall be entitled to reimbursement of the reasonable, necessary and actual out of pocket expenses incurred by them in carrying out the purpose of the Liquidating Trust Oversight Committee, which shall be payable by the Liquidating Trust from the Liquidating Trust Assets.

(b) Within reasonable ability, Liquidating Trust Oversight Committee members shall use good faith efforts to provide at least 3 business days written notification to the Liquidating Trustee and the other Liquidating Trust Oversight Committee members of any inability or unwillingness to

continue to serve on the Liquidating Trust Oversight Committee. The remaining members of the Liquidating Trust Oversight Committee in consultation with the Liquidating Trustee shall use good faith efforts to replace the withdrawing Liquidating Trust Oversight Committee member.

(c)     Upon the distribution of the Liquidating Trust Assets and the completion of the Liquidating Trustee's responsibilities, the members of the Liquidating Trust Oversight Committee shall be deemed to resign their positions, whereupon they shall be discharged from further duties and responsibilities.

(d)     Notwithstanding anything to the contrary in this Plan, neither the Liquidating Trust Oversight Committee nor any of its members, designees, counsel, financial advisors or any duly designated agent or representatives of any such party shall be liable for the act, default or misconduct of any other member of the Liquidating Trust Oversight Committee, nor shall any member be liable for anything other than such members' own gross negligence or willful misconduct, nor shall any Liquidating Trust Oversight Committee member owe any duties or obligations to any individual creditors. The Liquidating Trust Oversight Committee may, in connection with the performance of its duties, and in its sole and absolute discretion, consult with its or the Liquidating Trust or Liquidating Trustee's counsel, accountants or other professionals, and shall not be liable for anything done or omitted or suffered to be done in accordance with such advice or opinions. If the Liquidating Trust Oversight Committee determines not to consult with counsel, accountants or other professionals, such action or omission shall not be deemed to impose any liability on the Liquidating Trust Oversight Committee, or its members and/or designees.

4.5     Treatment of Protected Funds.

(a)     The Charitable Account Funds: In the event the Charitable Account Funds have not been fully administered prior to the Effective Date, the Liquidating Trustee shall take legal title to the Charitable Funds solely for the purpose of administering the Charitable Funds in accordance with the Wayne County Probate Order.  In the event the Liquidating Trustee is unable to procure a Wayne County Probate Court Order, the Liquidating Trustee will use good faith efforts to obtain a Final Order to administer the Charitable Account Funds in a manner consistent with the petition for Cy Pres filed by the Debtor in the Probate Court for the County of Wayne, State of Michigan.

(b)    <u>LARA Order Escrow Funds</u>: The LARA Order Escrow Funds will be disbursed to the Holders of LARA Escrow Claims to which the funds apply in accordance with the terms of the LARA Escrow Agreement and directives of LARA. LARA Escrow Claims will be identified on the Amended Schedules. LARA Escrow Claimants are advised to file a Proof of Claim within 30 days of the filing of the Amended Schedules if they disagree with the amount identified by Debtor as owed for reconciliation purposes with LARA and the Debtor.

4.6    <u>Property of the Liquidating Trust and Plan Distributions</u>: All cash necessary for the Liquidating Trustee to make Distributions under the Plan shall be from the cash proceeds of the Liquidating Trust Assets. On the Effective Date, other than with respect to the Professional Fee Reserve and the Protected Funds, the Debtor and the Estate shall be deemed to have transferred and/or assigned any and all assets of the Debtor and the Estate as of the Effective Date, including, without limitation and except as otherwise provided in the Plan: (i) all cash and accounts, including, without limitation, any and all cash held in any general, escrow or segregated separate accounts during the pendency of the Chapter 11 Case; (ii) all Rights of Action, (iii) all other property interests, rights, claims, defenses and causes of action of the Debtor or the Estate, to the beneficiaries of the Liquidating Trust followed by a deemed transfer by such beneficiaries to the Liquidating Trust; and (iv) notwithstanding any other provision of the Plan or its exhibits or schedules, all of the Debtor's insurance policies and any agreements, documents, or instruments relating thereto are expressly assumed by the Debtor and assigned to the Liquidating Trust. Nothing contained in the Plan shall constitute or be deemed a waiver of any rights, claims, coverage or protections under any insurance policy providing protection or coverage for the Debtor and claims or causes of action asserted against the Debtor, whether the Debtor is the owner of and named insured under such insurance policy, is an additional insured under an insurance policy of a third party or is otherwise covered and protected by such policy under applicable law. Additionally, the Debtor and/or the Liquidating Trust are not waiving any claim or cause of action that the Debtor or the Liquidating Trust may hold against any person or entity related thereto. All Liquidating Trust Assets shall be transferred and held by the Liquidating Trust free and clear of all Claims, Liens, encumbrances and contractually imposed restrictions of any kind, except for the rights to Distribution. After all Allowed Professional Fee Claims have been paid in full, excess funds in the Professional Fee Reserve, if any, shall become Liquidating Trust Assets.

4.7    <u>Corporate Action</u>: The entry of the Confirmation Order shall constitute authorization for the Debtor and the Liquidating Trustee to take or cause to be taken

all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including, among other things: (i) all transfers of assets that are to occur pursuant to the Plan; (ii) the incurrence of all obligations contemplated by the Plan and the making of Distributions; (iii) the implementation of all settlements and compromises as set forth in or contemplated by the Plan; and (iv) the execution of any documents required for dissolving the Debtor, to the extent necessary. As of the Effective Date, the Liquidating Trustee is authorized and directed to do all things and to execute and deliver all agreements, documents, instruments, notices and certificates as are contemplated by the Plan and to take all necessary actions required in connection therewith, in the name of and on behalf of the Debtor and the Liquidating Trust, as applicable.

      4.8   <u>Dissolution of the Debtor</u>: On the Effective Date, the Debtor shall be deemed dissolved, as permitted by Michigan Compiled Laws §450.2801 and filing of a certified copy of the Confirmation Order with the Michigan Department of Licensing and Regulatory Affairs, Corporations, Securities, & Commercial Licensing Bureau and all board members shall be deemed discharged of all further obligations and duties thereunder, but not released for any action, decision or omission that occurred before the Petition Date, with all such responsibilities transferred to the Liquidating Trust and Liquidating Trustee, and provided that, consistent with Michigan Compiled Laws §450.2833, the Debtor shall continue its corporate existence but shall not conduct affairs except for the purpose of winding up its affairs, including collecting Accounts Receivable, and all other acts incident to liquidation of its affairs not expressly delegated to the Liquidating Trust or Liquidating Trustee under the Plan and Liquidating Trust Agreement. For purposes of the dissolution of Debtor, the Plan provides for: (a) written notice to all Claimants of the dissolution of Debtor; (b) all debts, obligations and liabilities of Debtor; (c) any required return, transfer or conveyance of all assets of the Debtor's Estate; (d) the distribution of any charitable, religious, eleemosynary, benevolent, educational, or similar funds of Debtor consistent with the charitable purposes applicable to such Protected Funds; and (e) all remaining assets of the Debtor to be distributed pursuant to the Plan, which shall also constitute the plan of distribution for purposes of dissolution of Debtor as a Michigan nonprofit corporation and be consistent with the dissolution provisions of the articles of incorporation and corporate bylaws of Debtor. No other actions or filings or payments shall be required in furtherance of such dissolution. Except as otherwise provided in the Plan, the Liquidating Trust shall succeed to all privileges and rights of the Debtor, including with respect to

Rights of Action, and shall own and be entitled to pursue any and all Rights of Action belonging to the Debtor and seek any and all legal or equitable remedies available to the Debtor. On the Effective Date, the Liquidating Trust shall be deemed to be a representative of the Debtor's Estate within the meaning of section 1123(b)(3) of the Bankruptcy Code and a successor to the Debtor solely with respect to the Rights of Action and shall have those powers and duties set forth in §§ 323, 704(1), 704(2), 704(5), 704(9), 1106(a)(6) and 1106(a)(7) of the Bankruptcy Code.

4.9  <u>Liquidating Trustee</u>: The salient terms of the Liquidating Trustee's employment, including the Liquidating Trustee's duties and compensation, to the extent not set forth in the Plan, shall be set forth in the Liquidating Trust Agreement. In general, the Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code. The Liquidating Trust Agreement shall specify the terms and conditions of the Liquidating Trustee's compensation, responsibilities and powers. The duties and powers of the Liquidating Trustee, shall generally include, without limitation, the following:

(a)  All duties and powers authorized under the Liquidating Trust Agreement;

(b)  hold legal title to the Liquidating Trust Assets and exercise any and all rights of the Debtor in or arising from the Liquidating Trust Assets, including, but not limited to, collecting any and all money and other property belonging to the Liquidating Trust, investigating, pursuing and resolving all Rights of Action, and otherwise liquidating and reducing all Liquidating Trust Assets for Distribution to Allowed Class 2 General Unsecured Claims;

(c)  perform the duties, exercise the powers, and assert the rights of a trustee under Sections 704(a)(1), (2), (5) and (9) and 1106(a)(6) and (7) of the Bankruptcy Code with respect to the Liquidating Trust Assets and assert all rights of the Debtor or the Estate under section 558 of the Bankruptcy Code;

(d)  protect and enforce the rights to the Liquidating Trust Assets by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law and general principles of equity in accordance with Section 1123(b)(3)(B) of the Bankruptcy Code;

(e)     engage in, intervene in, join, compromise, object to, adjust, release, arbitrate, sue on or defend, counterclaim, setoff, recoup, pursue, prosecute, abandon, or otherwise deal with and settle any actions, suits, proceedings, disputes, claims, controversies, demands, causes of action, or other litigation in any court of competent jurisdiction or other proceeding, to enter into agreements relating to the foregoing, whether or not any suit is commenced or claim accrued or asserted and, in advance of any controversy, to enter into agreements regarding arbitration, adjudication or settlement thereof, all in the name of the Debtor or the Liquidating Trust if necessary or appropriate, and institute or continue actions which were or otherwise could have been brought by the Debtor that constitute Liquidating Trust Assets, and prosecute or defend all litigation or appeals that are Liquidating Trust Assets on behalf of the Debtor and, when appropriate, settle such actions and claims, in each case as the Trustee shall deem advisable;

(f)     determine and satisfy any and all liabilities created, incurred or assumed by the Liquidating Trust, subject to the terms of the Trust Agreement;

(g)     make all distributions provided for in, or contemplated by, the Plan and Liquidating Trust Agreement;

(h)     administer the Professional Fee Reserve;

(i)     file, if necessary, any and all tax and reporting requirements or information returns with respect to the Debtor and the Liquidating Trust and/or pay taxes properly payable by the Debtor and/or the Liquidating Trust, if any;

(j)     assert or waive any privilege or defense on behalf of the Liquidating Trust;

(k)     pay all expenses and make all other payments relating to the Liquidating Trust Assets, including the liquidation and distribution thereof;

(l)     obtain insurance coverage with respect to the liabilities and obligations of the Liquidating Trustee under the Liquidating Trust Agreement (in the form of, among other things, an errors and omissions policy or otherwise) and indemnification for the Liquidating Trustee and others as provided for in this Plan and the Liquidating Trust Agreement;

(m)     retain and pay such law firms as counsel to the Liquidating Trust and the Liquidating Trustee, as the Liquidating Trustee may select, to perform such functions as may be appropriate in the Liquidating Trustee's discretion. The Liquidating Trustee may commit the Liquidating Trust to and shall pay such law firms reasonable compensation for services rendered and expenses incurred. The Liquidating Trustee may retain counsel;

(n)     retain and pay an independent public accounting firm to perform such reviews and/or audits of the financial books and records of the Liquidating Trust as may be appropriate in the Liquidating Trustee's discretion, and to prepare and file any tax returns or informational returns for the Liquidating Trust as may be required in accordance with the Liquidating Trust Agreement. The Liquidating Trustee may retain an independent accounting firm. The Liquidating Trustee may commit the Liquidating Trust to and shall pay such independent public accounting firm reasonable compensation for services rendered and expenses incurred;

(o)     retain and pay such third parties as the Liquidating Trustee, in its discretion, may deem necessary or appropriate to assist the Liquidating Trustee in carrying out its powers and duties under the Liquidating Trust Agreement. The Liquidating Trustee may commit the Liquidating Trust to and shall pay all such persons or entities reasonable compensation for services rendered and expenses incurred, as well as commit the Liquidating Trust to indemnify any such parties in connection with the performance of services;

(p)     invest any moneys held as part of the Liquidating Trust (including any earnings thereon or proceeds therefrom) subject Treasury Regulations, IRS rulings, guidelines or other pronouncements relating to "liquidating trusts";

(q)     request any appropriate tax determination with respect to the Liquidating Trust, including, without limitation, a determination pursuant to Section 505 of the Bankruptcy Code;

(r)     to open and maintain bank accounts and deposit funds, draw checks and make disbursements in accordance with the Plan and Trust Agreement;

(s)     to enforce, waive, assign or release rights, privileges or immunities of any kind;

(t)     to seek any relief from, or resolution of, any disputes by the Bankruptcy Court;

(u)     to appear and participate in any proceeding before the Bankruptcy Court with respect to any matter regarding or relating to the Plan (insofar as it affects the Liquidating Trust or the Liquidating Trust Assets) or the Liquidating Trust;

(v)     without limitation, to do any and all things necessary to accomplish the purposes of the Plan and Liquidating Trust Agreement; and

(w)     file any and all documents and take or refrain from taking any and all actions the Liquidating Trustee reasonably deems necessary for the continuation, protection, distribution, Liquidating, and maximization of the Liquidating Trust Assets consistent with the purposes of the Liquidating Trust.

(x)     The Debtor or Liquidating Trustee, as applicable, shall pay the United States Trustee's quarterly fees incurred pursuant to 28 U.S.C. §1930(a)(6).  Any fees due as of the Confirmation Date shall be paid in full on the Effective Date from any available cash on hand.

4.10    **Exculpation of the Liquidating Trustee and Liquidating Trust Oversight Committee: To the extent permissible under the Bankruptcy Code, from and after the Effective Date, the Liquidating Trustee, the Liquidating Trust Oversight Committee and their respective professionals shall be exculpated by the Estate and all Holders of Claims from any Rights of Action and all claims or causes of action and assertions of liability arising out of their performance of the duties conferred upon them by the Plan, the Liquidating Trust Agreement, or any orders of the Bankruptcy Court, except to the extent an act is deemed by Final Order to be bad faith, gross negligence, willful misconduct, or actual fraud. The Liquidating Trustee, the Liquidating Trust Oversight Committee members and their designees, partners, affiliates, employees, attorneys or professionals, or any of their duly designated agents or representatives shall not be personally liable for any claim asserted against any of them or the Liquidating Trust or for any actions taken or omitted in their capacity as, or on behalf of the Liquidating Trustee or the Liquidating Trust Oversight Committee and/or the Liquidating Trust in furtherance of their responsibilities hereunder or under the Liquidating Trust Agreement, except to the extent that their conduct is determined by a Final Order to be due to their own willful misconduct, gross negligence, fraud or self-dealing acts. Nothing in**

this provision shall be deemed to alter the provisions of the Liquidating Trust Agreement.

4.11 __INJUNCTION__: EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN AND EXCEPT IN CONNECTION WITH THE ENFORCEMENT OF THE TERMS OF THIS PLAN, OR ANY FINAL ORDER, OR ANY DOCUMENTS PROVIDED FOR UNDER THIS PLAN, ALL ENTITIES THAT HAVE, HOLD, OR MAY HOLD CLAIMS AGAINST THE DEBTOR OR THE ESTATE THAT AROSE PRIOR TO THE EFFECTIVE DATE ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE COVERED PERSONS WITH RESPECT TO ANY SUCH CLAIM, INCLUDING BUT NOT LIMITED TO THE ENFORCEMENT, ATTACHMENT, COLLECTION OR RECOVERY BY ANY MANNER OR MEANS, DIRECTLY OR INDIRECTLY, OF ANY JUDGMENT, AWARD, DECREE, OR ORDER, CREATING, PERFECTING OR ENFORCING, DIRECTLY OR INDIRECTLY, ANY CLAIM, LIEN OR ENCUMBRANCE OF ANY KIND AGAINST THE COVERED PERSONS OR ANY OF THEIR PROPERTY WITH RESPECT TO ANY SUCH CLAIM; AND ANY ACT, IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM TO OR COMPLY WITH THE PROVISIONS OF THE PLAN WITH RESPECT TO SUCH CLAIM.

4.12 Reliance by the Liquidating Trustee: The Liquidating Trustee may absolutely and unconditionally rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper, document, spreadsheet, or database reasonably believed by it to be genuine and to have been signed or presented by the proper party or parties, and may consult with legal counsel, financial or accounting advisors, and other professionals to be selected by the Liquidating Trustee and may rely, in good-faith, on the advice thereof, and shall not be liable for any action taken or omitted to be taken in accordance with the advice thereof. Persons dealing with the Liquidating Trustee or the Liquidating Trust shall look only to the Liquidating Trust Assets (or to any insurance that may cover such claim) to satisfy any liability incurred by the Covered Persons to such person in carrying out the terms of this Liquidating Trust Agreement, and neither the Liquidating Trustee, nor any of the other Covered Persons shall have any personal obligation or recourse of any nature or kind whatsoever to satisfy any such liability. Nothing contained in this Plan or the Confirmation Order shall be deemed to be an assumption by the Liquidating Trustee

or Liquidating Trust of any of the liabilities, obligations or duties of the Debtor and shall not be deemed to be or contain a covenant or agreement by the Liquidating Trustee or Liquidating Trust to assume or accept any such liability, obligation or duty.

4.13 <u>Non-Liability for Acts of Others</u>: The Liquidating Trustee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in good faith reliance upon the advice or opinions rendered by such persons, regardless of whether such advice or opinions are provided in writing. Notwithstanding such authority, the Liquidating Trustee shall not be under any obligation to consult with attorneys, accountants, financial advisors or agents, and its determination not to do so shall not result in the imposition of liability on the Liquidating Trustee or its agents, unless such determination is based on willful misconduct, gross negligence, fraud, self-dealing, or *ultra vires* acts as determined by a Final Order. Nothing contained in the Plan or the Confirmation Order shall be deemed to be an assumption by the Liquidating Trustee of any of the liabilities, obligations, or duties of the Debtor or a covenant or agreement by the Liquidating Trustee to assume or accept any such liability, obligation or duty. Any successor Liquidating Trustee may accept and rely upon any accounting made by or on behalf of any predecessor Liquidating Trustee, and any statement or representation made by a predecessor Liquidating Trustee or its agents as to the Liquidating Trust Assets or as to any other fact bearing upon the prior administration of the Liquidating Trust, so long as it has a good faith basis to do so. A successor Liquidating Trustee shall not be liable for having accepted and relied in good faith upon any such accounting, statement, or representation if it is later proved to be incomplete, inaccurate, or untrue. A successor Liquidating Trustee shall not be liable for any act or omission of any predecessor Liquidating Trustee, nor have a duty to enforce any claims against any predecessor Liquidating Trustee on account of any such act or omission.

4.14 <u>Tax Treatment of Liquidating Trust</u>: The Plan Proponent intends that the Liquidating Trust will be treated as a "Liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations. Accordingly, the Liquidating Trustee shall, in an expeditious but orderly manner, liquidate and convert to cash any non-cash assets, make timely Distributions to the beneficiaries of the Liquidating Trust, and not unduly prolong its duration. The transfer of the Debtor's and the Estate's remaining assets to the Liquidating Trust shall be treated as a transfer to the beneficiaries of the Liquidating Trust for all purposes of the Internal Revenue Code (e.g., sections 61(a)(12), 483, 1001, 1012 and 1274) followed by a

deemed transfer by such beneficiaries to the Liquidating Trust. The Liquidating Trust shall be considered a "grantor" trust, and the beneficiaries of the Liquidating Trust shall be treated as the grantors and deemed owners of the Liquidating Trust. To the extent valuation of the transferred property to the Liquidating Trust is required under applicable law, the Liquidating Trustee shall value the transferred property and notify in writing the beneficiaries of the Liquidating Trust of such valuations. The assets transferred to the Liquidating Trust shall be valued consistently by the Liquidating Trustee and the Trust beneficiaries, and these valuations will be used for all federal income tax purposes.

4.15    Distribution Fund: After the payment of all Administrative Claims, Allowed Priority Tax Claims, Professional Fee Claims, and the funding of the Wind-Down Reserve, the remaining cash not otherwise allocated to the Wind-Down Reserve will be placed in a Distribution Fund to be distributed to the Holders of Allowed General Unsecured Claims in accordance with the terms of this Plan. Distributions to Holders of Allowed General Unsecured Claims shall be made at the discretion of the Liquidating Trustee through the exercise of its business judgment.

4.16    Reserves: To the extent not otherwise provided for herein or ordered by the Bankruptcy Court, the Liquidating Trustee shall estimate appropriate reserves of cash to be set aside in order to pay or reserve for accrued expenses and for the payment of prospective expenses and liabilities of the estate and the Liquidating Trust after the Effective Date. Without limitation, these reserves shall include funds for the Wind-Down Reserve, Administrative Claims, Priority Tax Claims, and Disputed Claims. Notwithstanding any contrary provision contained herein, the Liquidating Trustee shall not be obligated to physically segregate and maintain separate accounts for reserves or for the Distribution Fund. Separate reserves and funds may be merely bookkeeping entries or accounting methodologies, which may be revised from time to time, to enable the Liquidating Trustee to determine cash available for Distributions, reserves and amounts to be paid to parties-in-interest.

4.17    Fees and Expenses of Liquidating Trust:  Except as otherwise ordered by the Bankruptcy Court or specifically provided for in the Plan, the amount of any fees and expenses incurred by the Liquidating Trust on or after the Effective Date (including, without limitation, taxes) and any compensation and expense reimbursement Claims (including, without limitation, reasonable fees and expenses of counsel) of the Liquidating Trust arising out of the liquidation of the Liquidating Trust Assets, the making of Distributions under the Plan, and the performance of any other duties given to it shall be paid from the Wind-Down Reserve and in accordance with the Liquidating Trust Agreement.

4.18   Rights of Action: The Liquidating Trustee shall have the authority to assert, prosecute, and settle all Claims and Rights of Action that belong to the Estate, and, in connection therewith, shall have the right to assert and enforce all defenses belonging to the Debtor and the Estate, including, without limitation, setoff, recoupment and any rights under Bankruptcy Code Section 502(d).

4.19   Employment of Professionals by Liquidating Trustee: The Liquidating Trustee may employ, without further order of the Bankruptcy Court, professionals to assist him in carrying out its duties hereunder and may compensate and reimburse the expenses of those professionals without further order of the Bankruptcy Court and any such compensation and reimbursement shall be made out of the Liquidating Trust Assets.

# ARTICLE V.
# TREATMENT OF RESIDENCY AGREEMENTS

5.1    Assumption and Assignment or Rejection of Residency Agreements:

(a)    Current Residents that are not Holders of Current Resident Entrance Fee Claims:

As provided by in the Resident Notices, all Current Residents that do not hold Current Resident Entrance Fee Claims have been offered a Base Lease accompanied with an Addendum.  If such Current Resident signs the Base Lease accompanied with an Addendum by entry of the Confirmation Order, such Current Resident's Residency Agreement shall be deemed to have been voluntarily modified, assumed by the Debtor and assigned to the Purchaser pursuant to section 365 of the Bankruptcy Code as of the Sale Closing Date without further notice or action, order, or approval of the Bankruptcy Court and any defaults under the prepetition Residency Agreement shall be deemed cured.  Except as otherwise provided for LARA Escrow Residents, whose Claims are treated pursuant to Article 3.1 of this Plan, Current Residents that execute a Base Lease accompanied with an Addendum shall have no Claim arising under or related to their Residency Agreement.

(b)    Current Resident Entrance Fee Claimants:

As set forth in the Resident Notices, Current Resident Entrance Fee Claimants have been provided three options:

(i)    The first option was that the Current Resident Entrance Fee Claimants could enter into a Base Lease accompanied with an

Addendum, in which case such Current Resident's Residency Agreement shall be deemed to have been voluntarily modified, assumed by the Debtor and assigned to the Purchaser pursuant to section 365 of the Bankruptcy Code as of the Sale Closing Date without further notice or action, order, or approval of the Bankruptcy Court and any defaults under the prepetition Residency Agreement shall be deemed cured and such Current Resident shall have no other Claim arising under or related to their Residency Agreement with all rights and remedies limited to the treatment provided by the Purchaser in the applicable Addendum.

(ii)     The other options afforded to Current Resident Entrance Fee Claimants were to (a) execute a Base Lease with the Purchaser without an Addendum thereby continuing to have the right to reside at the Facility pursuant to the terms of the Base Lease without the benefits of the Addendum; or (b) not executing a Base Lease with the Purchaser (regardless of whether with or without the Addendum) and voluntarily leave the Facility in accordance with the terms of the Residency Agreement. Current Resident Entrance Fee Claimants that exercise option (a) or (b) above by the Plan filing date are deemed to have their Residency Agreements rejected effective as of the Petition Date and have a Class 2 General Unsecured Claim for any rejection damages under their Residency Agreement.  Entry of the Confirmation Order shall constitute a Final Order of the Bankruptcy Court approving the rejection of such Residency Agreements pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  The Amended Schedules reflect the Allowed Current Resident Entrance Fee Claims.  Allowed Current Resident Entrance Fee Claimants other than LARA Escrow Claimants may vote the Allowed Current Resident Entrance Fee Claim as a Class 2 General Unsecured Claim in the amount on the Amended Schedules. If an Allowed Current Resident Entrance Fee Claimant disputes the amount of the Current Resident Entrance Fee Claim listed on the Amended Schedules, such Current Resident must file a Proof of Claim by the Current Resident Claim Bar Date and such asserted Claim will be treated as a Disputed Claim for voting purposes.

(c)     <u>Rejection of Residency Agreements and Current Resident Bar Date</u>.

(i)     <u>Rejection of Residency Agreements</u>. Any Current Residents that have not executed a Base Lease (with or without an

Addendum) by entry of the Confirmation Order will have their Residency Agreements rejected effective as of the Petition Date and entry of the Confirmation Order shall constitute a Final Order of the Bankruptcy Court approving the rejection of such Residency Agreements pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Such Current Residents may be subject to actions by the Purchaser to evict or discharge such Current Residents from the Facility. Except with respect to Allowed Current Resident Entrance Fee Claims and LARA Escrow Claims, any potential Claims by such Current Residents are deemed Disputed Claims.

(ii)     Current Resident Claim Bar Date:  To the extent that a Current Resident asserts a Claim other than the Claim of a Current Resident arising from the rejection of a prepetition Residency Agreement as set forth in this Article V of the Plan, such Current Resident must file a proof of such Claim by the Current Resident Claim Bar Date but any such Claim shall be treated as a Disputed Claim. Unless a Proof of such Claim is filed by the Current Resident Claim Bar Date, then such Claim shall be forever barred and shall not be enforceable against the Debtor, the Liquidating Trustee, or their respective property.

# ARTICLE VI.
## TREATMENT OF GENERAL EXECUTORY CONTRACTS

6.1     Rejection of General Executory Contracts:  Unless rejected or assumed by prior order of the Bankruptcy Court, each General Executory Contract that is not identified on the Assumption Schedule shall be deemed rejected as of the Petition Date, and such shall no longer represent binding obligations of the Debtor or the Liquidating Trust after the Effective Date. Entry of the Confirmation Order shall constitute approval of such rejections under Sections 365 and 1123 of the Bankruptcy Code. General Executory Contracts identified on the Assumption Schedule will be assumed as of the Effective Date. The Assumption Schedule is attached hereto as **Exhibit C**. For the avoidance of doubt, General Executory Contracts that have been previously assumed by the Debtor pursuant to a Final Order of the Bankruptcy Court are assumed without inclusion on the Assumption Schedule.

6.2     General Contract Rejection Claim Bar Date: Except as addressed in a previous Final Order or the Confirmation Order, any person or entity asserting a Claim relating to the rejection of a General Executory Contract must file a proof of Claim on or before the General Contract Rejection Claim Bar Date. Unless a proof

of Claim is filed by the General Contract Rejection Claim Bar Date, then such Claim shall be forever barred and shall not be enforceable against the Debtor, the Liquidating Trustee, or their respective property. Each Allowed Claim arising from the rejection of a General Executory Contract shall be classified as a Class 2 General Unsecured Claim.

6.3   <u>Reservation of Rights</u>: Neither the exclusion nor inclusion of any contract or lease on the Schedules, nor anything contained in this Plan, will constitute an admission that any such contract or lease is or is not in fact an Executory Contract or that the Debtor or the Liquidating Trustee has any liability under any such contract or lease. Nothing in this Plan will waive, excuse, limit, diminish, or otherwise alter any of the defenses, Claims, Rights of Action, or other rights of the Debtor or the Liquidating Trust under any Executory Contract or non-Executory Contract or any unexpired lease. Nothing in this Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtor or the Liquidating Trustee under any Executory Contract or non-Executory Contract.

## ARTICLE VII.
## OBJECTIONS TO AND PROCEDURES FOR RESOLVING DISPUTES REGARDING CLAIMS

7.1   <u>Objections to Claims</u>: Only the Liquidating Trustee may dispute, object to, compromise or otherwise resolve all Claims. Except as otherwise specifically provided in the Plan, after the Effective Date, the Liquidating Trustee shall have the exclusive authority: (1) to file, withdraw, or litigate to judgment any objections to Claims; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the claims register maintained in the Chapter 11 Case to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. Unless otherwise provided herein or as otherwise ordered by the Bankruptcy Court after notice and a hearing, objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made as soon as practicable, but in no event by the later of 180 days after the Effective Date, provided that the Liquidating Trustee may request (and the Bankruptcy Court may grant) an extension of time by filing a motion with the Bankruptcy Court.

7.2   <u>Claims Listed as Contingent, Unliquidated, or Disputed in Schedules</u>: **ANY CLAIM THAT HAS BEEN OR IS HEREAFTER LISTED IN THE SCHEDULES AS CONTINGENT, UNLIQUIDATED OR DISPUTED, AND**

**FOR WHICH NO PROOF OF CLAIM HAS BEEN TIMELY FILED IS CONSIDERED DISALLOWED ON THE EFFECTIVE DATE WITHOUT FURTHER ACTION BY THE DEBTOR OR THE LIQUIDATING TRUST AND WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT**.

7.3     <u>Retention of Claims and Defenses</u>: After the Effective Date, except as released in the Plan or by Bankruptcy Court order, the Liquidating Trustee shall have and retain any and all rights and defenses the Debtor had with respect to any Claims and Rights of Action as of immediately prior to the Effective Date.

7.4     <u>Adjustment to Claims Without Objection</u>: Any Claim that has been paid or satisfied or any Claim that has been amended or superseded may be adjusted for Distribution purposes by the Liquidating Trustee without any further notice to or action, order, or approval of the Bankruptcy Court.

7.5     <u>Disallowance of Claims</u>: Any Claims held by any Entity from which property is recoverable under Sections 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under Sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to Section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Rights of Action against that Entity have been settled, or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Estate by that Entity have been turned over or paid to the Liquidating Trustee.

7.6     <u>Offer of Judgment</u>: The Liquidating Trustee is authorized to serve upon a Holder of a Claim an offer to allow judgment to be taken on account of such Holder's Claim and pursuant to Bankruptcy Rules 7068 and 9014, Federal Rule of Civil Procedure 68 shall apply to such offer of judgment. To the extent the Holder of a Claim must pay the costs incurred by the Liquidating Trustee after the Liquidating Trustee makes such offer, the Liquidating Trustee, as applicable, is entitled to set off such amounts against the amount of any distribution to be paid to such Holder without any further notice to or action, order, or approval of the Bankruptcy Court.

# ARTICLE VIII.
## PROVISIONS GOVERNING DISTRIBUTIONS OF
## PROPERTY UNDER THE PLAN

8.1 <u>General</u>: Except as otherwise specified herein, the Liquidating Trustee shall make all Distributions required under the Plan.

8.2 <u>Delivery of Distributions</u>: Subject to Bankruptcy Rule 9010, Distributions to Holders of Allowed Claims will be made by mail: (i) at the address of each such Holder as set forth on the Proof of Claim filed by such Holder; (ii) at the address set forth in any written notice of address change delivered after the date of any related Proof of Claim to the Liquidating Trustee; or (iii) at the address reflected in the Schedules filed by the Debtor, if no Proof of Claim is filed and the Liquidating Trustee has not received a written notice of address change. If any Distribution to the Holder of an Allowed Claim is returned as undeliverable, the Liquidating Trustee shall have no obligation to determine such Holder's then-current address and no Distribution to such Holder shall be made unless and until the Liquidating Trustee is notified by the Holder of the current address of such Holder within one hundred and twenty (120) days of such Distribution, at which time a Distribution shall be made to such holder without interest.

8.3 <u>Unclaimed Distributions</u>: Any Distribution that remains unclaimed after one hundred and twenty (120) days following any Distribution Date, including, without limitation checks (and the funds represented thereby) that (a) have been returned as undeliverable without a proper forwarding address, (b) have not been cashed or otherwise negotiated or (c) were mailed and returned as undeliverable or not mailed or delivered because of the absence of a valid address, shall be canceled (by a stop payment order or otherwise), the Claim(s) relating to such Distribution(s) shall be deemed forfeited and expunged without any further action or order of the Bankruptcy Court, and the Holder of such Claim(s) shall be removed from the Distribution schedules and expunged from the Claims register and shall receive no further Distributions under the Plan. Any such unclaimed Distributions shall revert to the Distribution Fund to be redistributed pursuant to the provisions of this Plan. With respect to an undeliverable Distribution, in the event the Liquidating Trustee is notified in writing of a Claimant's then current address within ninety (90) days after a Distribution Date such Distribution shall be made to such Claimant without interest as soon as practicable following the Liquidating Trustee's receipt of the notice. Checks or drafts issued pursuant to this Plan which are not presented for payment within one hundred and twenty (120) days following mailing thereof to the last known address for the Claimant shall be deemed nonnegotiable thereafter. Unless otherwise agreed to by the Liquidating Trustee, any Claim in respect of such

distribution shall be discharged and forever barred. Any distribution which is deemed nonnegotiable shall re-vest into the Distribution Funds and be available for distribution consistent with the Plan.

8.4    <u>Tax Forms</u>: Any Claimant receiving a Distribution or person receiving a distribution from the Trust, if requested, shall furnish, in writing, its name, address, tax identification number, and completed IRS Form W-9 or, if applicable, IRS Form W-8, to the Liquidating Trustee within thirty (30) days of a written request from the Liquidating Trustee, and the Liquidating Trustee shall make two (2) such requests. Failure to comply with the preceding sentence shall within 30 days of the second request shall result in forfeiture of the interest in the Liquidating Trust and rights to any Distribution, and any such forfeited amounts shall be distributed to the remaining Claimants in accordance with this Plan.

8.5    <u>Conflicting Claims</u>: If any conflicting claims or demands are made or asserted with respect to an Allowed Claim of a Claimant, the Liquidating Trustee shall be entitled, in its sole election, to refuse to comply with any such conflicting claims or demands. In so refusing, the Liquidating Trustee shall (i) make no payment or Distribution with respect to the Allowed Claim represented by the conflicting claims or demands involved, or any part thereof, and (ii) refer such conflicting claims and demands to the Bankruptcy Court, which shall have exclusive jurisdiction over the resolution of such conflicting claims or demands. In so doing, the Liquidating Trustee shall not be liable to any party for its refusal to comply with any such conflicting claims or demand. The Liquidating Trustee shall be entitled to refuse to comply with conflicting claims and demands until either (a) the rights of the adverse claimants have become adjudicated by a Final Order of the Bankruptcy Court or (b) the conflict has been resolved by a written agreement among such parties and the Liquidating Trustee, which agreement shall include a complete release of the Liquidating Trust and the Liquidating Trustee with respect to the subject matter of the dispute.

8.6    <u>Identification of Beneficiaries</u>: Beneficiaries of the Trust shall be recorded and set forth in a register maintained by the Liquidating Trustee expressly for such purpose. No later than the Effective Date, the Debtor shall deliver to the Liquidating Trustee a true and correct list of Claim Holders setting forth the names, addresses, any tax identification numbers (if known) and Claim amounts (including the amounts set forth in the Proofs of Claim and the amount of such Holder in the Schedules). Neither the Liquidating Trust nor the Liquidating Trustee shall incur any liability in connection with the determination of the interests of the beneficiaries in the Liquidating Trust. The Liquidating Trust and the Liquidating Trustee shall have

the absolute and unconditional right to rely on the information provided by the Debtor and neither shall incur any liability by relying on the information it receives.

8.7    Payment in U.S. Dollars: All cash Distributions under the Plan shall be made in U.S. dollars by checks drawn on a domestic bank selected by the Liquidating Trustee in accordance with the Plan or by wire transfer from a domestic bank, at the option of the Liquidating Trustee. The Liquidating Trustee may use the services of a third party to aid in the Distributions required to be made under this Plan.

8.8    Distributions Only on Business Days: Notwithstanding the foregoing provisions, if any Distribution called for under this Plan is due on a day other than a Business Day, such Distribution shall instead be made the next Business Day.

8.9    No Payment or Distribution on Disputed Claims: Any contrary provision hereof notwithstanding, no payments or other Distributions shall be made on account of any Disputed Claim, or any portion thereof, unless and until such Claim is Allowed by Final Order of the Bankruptcy Court. For the avoidance of doubt, no portion of any Disputed Claim is entitled to a Distribution. Holders of Disputed Claims shall be bound, obligated and governed in all respects by this Plan.

8.10   De Minimis Distributions: The Liquidating Trustee shall (i) not be required to make Distributions of fractions of dollars, and whenever any Distribution of a fraction of a dollar would otherwise be required, the actual Distribution made may reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down and (ii) have no duty to make a Distribution on account of any Allowed Claim if the amount to be distributed on account of the Allowed Claims on the particular Distribution Date is less than $25, in which case such distributions to shall be deferred to the next Distribution Date unless such Distribution constitutes the final Distribution to be made to the beneficiary, in which case such Distribution shall revert to the Liquidating Trust to be reallocated and distributed to remaining beneficiaries.

8.11   Remaining Funds: If the cash available for the final Distribution is less than $25,000, if feasible the Liquidating Trustee shall donate such funds to be added to the Charitable Funds and if not feasible than to a charity identified by the Liquidating Oversight Committee.

8.12   Medical Record Retention: Pursuant to the APA it is the Purchaser's responsibility to provide access to Debtor's medical records for 7 years. Purchaser entered into an agreement with the Debtor's former manager, Life Care Services LLC to provide access to said medical records for a period of 7 years.

# ARTICLE IX.
## EFFECT OF CONFIRMATION OF THE PLAN

9.1     <u>Legally Binding Effect</u>: Provisions of this Plan shall bind all Claimants, whether or not they accept this Plan. On and after the Effective Date, all Claimants shall be precluded and enjoined from asserting any Claim against the Liquidating Trustee, the Liquidating Trust or its assets or properties based on any transaction or other activity of any kind that occurred prior to the Effective Date, except as permitted under the Plan.

9.2     <u>Vesting of Property in the Liquidating Trust</u>: On the Effective Date, except as otherwise expressly provided in this Plan, title to all Liquidating Trust Assets shall vest in the Liquidating Trust free and clear of all Liens and Claims of any kind.

9.3     <u>Derivative Litigation Claims</u>: Claims or causes of action derivative of or from the Debtor are Estate property under Section 541 of the Bankruptcy Code. On and after the Effective Date, all such Claims, regardless of whether pending on the Petition Date, will be deemed Liquidating Trust Assets and retained by, vest in, and/or become property of the Liquidating Trust.

9.4     <u>Exculpation of the Debtor and Committee</u>: **To the extent permissible under the Bankruptcy Code: (i) the Debtor and its officers, directors, employees, agents, advisors, and/or professionals; and (ii) the Committee and its members and** professionals**, shall not have or incur any liability to any Claimant or Claim Holder or be subject to any Rights of Action for any act, event, or omission from the Petition Date (including preparation of the Petition Date pleadings) to the Effective Date relating to, connected with, or arising out of the Chapter 11 Case, Confirmation of this Plan, consummation of this Plan, administration of this Plan, or the assets and property to be distributed pursuant to this Plan and the Plan Documents, unless such Entity's action constitutes bad faith, gross negligence, willful misconduct, or actual fraud**. Nothing in the Plan shall be construed to release or exculpate any Entity from fraud, gross negligence, or criminal conduct.

9.5     **<u>Injunctions Against Interference with Consummation or Implementation of Plan</u>: All persons or entities including all Claimants shall be enjoined from commencing or continuing any** judicial **or administrative proceeding or employing any process against the Debtor, the Estate, the Liquidating Trust or the Liquidating Trustee with the intent or effect of**

**interfering with the consummation or implementation of this Plan or the transfers, payments or Distributions to be made hereunder**.

9.6     Dissolution of the Committee: On the Effective Date, the Committee shall be deemed to be dissolved and the members of the Committee shall be released and discharged from all duties and obligations arising from or related to the Chapter 11 Case, provided, however, that the Committee shall continue to exist, and the retention and employment of its Professionals shall continue to be in effect after the Effective Date for the purposes of filing fee applications of its Professionals, or reviewing and approving or filing objections to fee applications of Professionals for any periods prior to the Effective Date.

9.7     All Distributions Received in Full and Final Satisfaction: Except as otherwise set forth herein, all payments and all Distributions to be made in accordance with the Plan on account of Claims (including Administrative Claims) shall be received in full and final satisfaction, settlement and release of the Estate's obligations for such Claims as against the Debtor, its property and the Estate.

## ARTICLE X.
## RETENTION OF RIGHTS OF ACTION

10.1     Liquidating Trustee's Preservation, Retention and Maintenance of Rights of Action: Except as otherwise provided in this Plan or in any contract, instrument, release, or other agreement entered into in connection with the Plan, in accordance with Section 1123(b)(3) of the Bankruptcy Code, the Liquidating Trustee shall retain and have the exclusive right, authority, and discretion (without further order of the Bankruptcy Court) to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, or withdraw, litigate to judgment, or exercise attorney/client privilege in relation to any and all Rights of Action that the Debtor or the Estate may hold against any Entity, whether arising before or after the Petition Date, including, but not limited to, any action specifically enumerated in the Retained Rights of Action Schedule, a copy of which is attached hereto as **Exhibit D**, and shall have the powers and duties of a trustee under the Bankruptcy Code with respect to such Rights of Action. The Debtor reserves and shall retain all Rights of Action for the Liquidating Trust notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Case.

10.2     Preservation of All Rights of Action Not Expressly Settled or Released: Unless a Right of Action is expressly waived, relinquished, released, compromised or settled in this Plan or any Final Order, all such Rights of Action are expressly preserved (including any counterclaims) for later adjudication by the Liquidating

Trustee. Therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Rights of Action (including counterclaims) on or after the Confirmation of this Plan.

The failure of the Debtors to list a claim, right, cause of action, suit or proceeding in the Plan or on the Retained Rights of Action Schedule shall not constitute a waiver or release by the Debtors or their Estates of such claim, right of action, suit or proceeding. **No Entity may rely on the absence of a specific reference in the Disclosure Statement, the Plan, the Plan Supplement, or the Retained Rights of Action Schedule regarding any Right of Action against them as any indication that the Liquidating Trustee will not pursue any and all available Rights of Action against them. All Rights of Action, whether specifically referenced or not, are expressly reserved by the Debtor and transferred to the Liquidating Trust.**

10.3   <u>Preservation and Abandonment of Non-Medical Records</u>: To the extent that such documents and files are readily available to and accessible by Debtor, the Debtor shall preserve for the benefit of the Liquidating Trust all documents and files, including electronic data hosted on remote servers that are necessary to the prosecution of the Rights of Action and Claims resolution process. After the Effective Date, the Liquidating Trustee shall preserve the information until termination of the Trust, at which time the Liquidating Trustee will dispose of all records.

## ARTICLE XI.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

11.1   <u>Modification or Amendment of the Plan</u>: This Plan may be amended or modified by the Plan Proponent any time prior to the Confirmation Date and by the Liquidating Trustee as provided in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

## ARTICLE XII.
## RETENTION OF JURISDICTION

12.1   <u>Bankruptcy Court Jurisdiction</u>: Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court, even after the Chapter 11 Case has been closed, shall have jurisdiction over all matters arising under, arising in, or relating to the Chapter 11 Case, including proceedings to:

(a)     Ensure that this Plan is fully consummated and implemented;

(b)     Enter such orders that may be necessary or appropriate to implement, consummate, or enforce the provisions of this Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Sale Order, this Plan or the Disclosure Statement;

(c)     Consider any modification of this Plan under Section 1127 of the Bankruptcy Code;

(d)     Hear and determine all Claims, controversies, suits, and disputes against the Debtor or the Liquidating Trustee to the full extent permitted under 28 U.S.C. §§ 157 and 1334;

(e)     Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim, including the resolution of any and all objections to the allowance or priority of Claims;

(f)     Hear, determine, and adjudicate any litigation involving the Rights of Action or other claims or causes of action constituting Estate property or property of the Liquidating Trust;

(g)     Decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any motions or applications involving the Debtor or the Liquidating Trustee that are pending on or commenced after the Effective Date;

(h)     Resolve any case, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Plan, or any entity's obligations incurred in connection with this Plan, or any other agreements governing, instruments evidencing, or documents relating to any of the foregoing, including the interpretation or enforcement of any rights, remedies, or obligations under any of the foregoing;

(i)     Hear and determine all controversies, suits, and disputes that may arise out of or in connection with the enforcement of any subordination and similar agreements among creditors under Section 510 of the Bankruptcy Code;

(j)　　Hear and determine all requests for compensation and/or reimbursement of expenses that may be made for fees and expenses incurred before the Effective Date;

(k)　　Enforce any Final Order, the Confirmation Order, the Final Decree, and all injunctions contained in those orders;

(l)　　Enter an order concluding and terminating the Chapter 11 Case;

(m)　　Correct any defect, cure any omission, or reconcile any inconsistency in this Plan, or the Confirmation Order, or any other document or instruments created or entered into in connection with this Plan;

(n)　　Determine all questions and disputes regarding title to the Estate property;

(o)　　Classify the Claims of any Creditor and the treatment of those Claims under this Plan, re-examine Claims that may have been allowed for purposes of voting, and determine objections that may be filed to any Claims;

(p)　　Take any action described in this Plan involving the Debtor or the Liquidating Trustee;

(q)　　Enter and implement such orders that are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(r)　　Hear, determine and adjudicate any motions, contested or litigated motions brought pursuant to Section 1112 of the Bankruptcy Code;

(s)　　Hear, determine, and adjudicate all matters the Bankruptcy Court has authority to determine under Section 505 of the Bankruptcy Code, including determining the amount of any unpaid liability of the Debtor or the Estate for any tax incurred or accrued during the calendar year in which this Plan is confirmed;

(t)　　Enter a Final Decree as contemplated by Bankruptcy Rule 3022; and

(u)　　Hear, determine, and adjudicate any and all Claims brought under this Plan.

## ARTICLE XIII.
## LIMITATION OF JURISDICTION

In no event shall the provisions of this Plan be deemed to confer in the Bankruptcy Court jurisdiction greater than that established by the provisions of 28 U.S.C. §§ 157 and 1334.

## ARTICLE XIV.
## MISCELLANEOUS PROVISIONS

14.1    Conditions to Effectiveness: This Plan will not be effective unless:

(a)    The Confirmation Order becomes a Final Order; and

(b)    All documents necessary or appropriate to the implementation of this Plan have been executed, delivered, and where applicable, filed with the appropriate governmental authorities, including, but not limited to, the execution of the Liquidating Trust Agreement in the form attached to or filed with Plan.

14.2    Employee Claim Bar Date: To the extent that a person that was an employee of the Debtor as of the Petition Date and did not become an employee of the Purchaser asserts a Claim, proof of such Claim must be filed within 30 days after entry of the Confirmation Order, or such other period set by the Bankruptcy Court. Unless a proof of such Claim is timely filed as set forth herein, then such Claim shall be forever barred and shall not be enforceable against the Debtor, the Liquidating Trustee, or their respective property.

14.3    Further Authorizations: The Liquidating Trustee may seek such orders, judgments, injunctions, and rulings as it may deem necessary to further carry out the intentions and purposes of, and give full effect to the provisions of, this Plan.

14.4    Successors and Assigns: The rights, benefits and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

14.5    Exemption from Transfer Tax: Under Section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under this Plan, may not be taxed under any law imposing a stamp tax or similar tax.

14.6    U.S. Trustee Fees: Pre-confirmation fees owed to the U.S. Trustee will be paid by the Effective Date of this Plan or such other date as agreed upon by the Liquidating Trustee and the U.S. Trustee. After confirmation, the Liquidating Trustee will file with the Bankruptcy Court and serve on the U.S. Trustee quarterly financial reports in a format prescribed by the U.S. Trustee, and the Liquidating Trustee will be obligated to pay post-confirmation quarterly fees to the U.S. Trustee, if any are required, until a Final Decree is entered or the case is converted or dismissed as provided in 28 U.S.C. § 1930(a)(6).

14.7    Implementation: The Liquidating Trustee shall be authorized to perform all reasonable, necessary and authorized acts to consummate the terms and conditions of this Plan.

14.8    No Admissions: Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by the Debtor, the Liquidating Trust or any other Entity with respect to any matter set forth herein, including, without limitation, liability on any Claim or the propriety of the classification of any Claim.

14.9    Good Faith:  Confirmation of this Plan shall constitute a finding that: (i) this Plan has been proposed in good faith and in compliance with the provisions of the Bankruptcy Code; and (ii) the solicitation of acceptances or rejections of this Plan by all Entities.

Signed on December 6, 2021



/s/ Mark A. Randon

**Mark A. Randon**
**United States Bankruptcy Judge**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

IN RE:                                               Case No. 20-51066-MAR

HENRY FORD VILLAGE, INC.,                            Chapter 11

    Debtor.                                      Honorable Mark A. Randon

_____/

## EXHIBIT A TO HENRY FORD VILLAGE, INC.'S LIQUIDATING PLAN

### Defined Terms and Rules of Interpretation for Disclosure Statement and Chapter 11 Liquidating Plan

For the purposes of the Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise assigned shall have the meaning ascribed to them below. Any term used in the Plan that is not defined in the Plan, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to such terms in the Bankruptcy Code or the Bankruptcy Rules as the case shall be. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine and the feminine gender shall include masculine. The following terms shall have the respective meanings specified below, unless the context requires otherwise:

      1.    <u>Accounts Receivable</u> means the term "Accounts Receivable" as defined in the Asset Purchase Agreement which is the subject of the Sale Order.

      2.    <u>Addendum</u> means the addenda filed with the Resident Notices that amend the Base Lease and incorporate commitments made by the Purchaser to the Current Residents pursuant to the terms of the Asset Purchase Agreement.

      3.    <u>Administrative Claim</u> means a Claim, for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), or 507(b), of the Bankruptcy Code, including: (i) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries, or commissions for services, and payments for goods and other services); and (c) all fees and charges assessed against the Estate pursuant to 28 U.S.C. Chapter 123.

4.     <u>Administrative Claim Bar Date</u> has the meaning set forth in Section 2.1(b) of the Plan.

5.     <u>Allowed</u> means any Claim: (i) proof of which was timely and properly filed, or if no proof of claim was timely and properly filed, which is listed by the Debtor on its Schedules as liquidated in amount and not Disputed or contingent, and in either case, (a) as to which no objection to the allowance thereof or request for estimation has been interposed or (b) to the extent any objection to the allowance thereof or request for estimation interposed in accordance with clause has been determined by a Final Order in favor of the Holder of such Claim; (ii) to the extent Allowed by a Final Order, Confirmation Order or the provisions of the Plan; (iii) that is an Administrative Claim the amount to which the Debtor and the Claimant have agreed should be allowed pursuant to a written agreement; and (iv) is not identified in the Plan as a Disputed Claim. Unless otherwise specified in the Plan or by Final Order or Confirmation Order, "Allowed Administrative Claim" and "Allowed Claim" shall not, for purposes of computing distributions under the Plan, include interest on such Claim from and after the Petition Date, except as provided in section 506(b) of the Bankruptcy Code. A Claim which is Allowed as of November 26, 2021, at 4:00 p.m. (prevailing Eastern time) and which may thereby entitle the Holder of such Claim to vote on the Plan, shall not be deemed Allowed for purposes of distributions in accordance with the Plan unless the Claim is not a Disputed Claim and the time for objections to Claims as established by the Plan or Bankruptcy Court Order has expired.  With respect to Professional Fee Claims, the term "Allowed" shall mean the final approval for payment of any Professional Fee Claim fee application, as applicable, or pursuant to the terms of the Bankruptcy Court Order approving retention.

6.     <u>Allowed Date</u> means the calendar date a Claim is Allowed.

7.     <u>Allowed Current Resident Entrance Fee Claim</u> means the Claim of an Allowed Current Resident Entrance Fee Claimant in the amount identified by the Debtor on the Amended Schedules.

8.     <u>Allowed Current Resident Entrance Fee Claimant</u> means a Current Resident that is a Current Resident Entrance Fee Claimant that at the date upon which the Plan was filed either (i) executed a Base Lease with the Purchaser without an Addendum; or (ii) did not execute a Base Lease with the Purchaser (regardless of whether with or without the Addendum), and gave notice of voluntarily leaving the Facility in accordance with the terms of the Residency Agreement.

9.     _Amended Schedules_ means the amended schedule E/F of the official amended schedules and statement of financial affairs filed by the Debtor contemporaneously with the Plan.

10.     _Asset Purchase Agreement_ means the asset purchase agreement approved by the Sale Order.

11.     _Assumption Schedule_ means the schedule of Executory Contracts, other than Residency Agreements, which the Debtor will be deemed to have assumed as of the Effective Date pursuant to the Confirmation Order, and which will be filed with the Plan but which may be modified by a Plan Supplement.  For the avoidance of doubt, the Executory Contracts and unexpired leases that have been previously assumed by the Debtor pursuant to a Final Order of the Bankruptcy Court are assumed without inclusion on the Assumption Schedule.

12.     _Avoidance Actions_ means any and all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtor or the Estate under sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code and under similar state or federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such actions or remedies.

13.     _Bankruptcy Code_ means Title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Case.

14.     _Bankruptcy Court_ means the United States Bankruptcy Court under which this Chapter 11 Case is pending.

15.     _Bankruptcy Court Order_ means a signed directive by the Bankruptcy Court.

16.     _Bankruptcy Rules_ means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Case, including the local rules of the Bankruptcy Court.

17.     _Base Lease_ means a new form of agreement, without an Addendum, currently being utilized and offered by the Purchaser to both new incoming residents and Current Residents, the form of which was attached to the Resident Notices.

18.     _Business Day_ means any day of the calendar week, except Saturday, Sunday, a "legal holiday," as defined in Bankruptcy Rule 9006(a), or any day on

which commercial banks are authorized or required by law to close in New York, New York or Dearborn, Michigan.

19.    <u>Chapter 11 Case</u> means the case under chapter 11 of the Bankruptcy Code, commenced by the Debtor, styled "<u>In re Henry Ford Village, Inc.</u>" under case number 20-51066-MAR.

20.    <u>Charitable Account Funds</u> means collectively the restricted scholarship purposes charitable funds currently being held by the Debtor in segregated accounts and any residue thereof.

21.    <u>Charitable Annuities Account</u> means that certain account currently held at Merrill Lynch and identified as Charitable Annuities Account (CGA) (Acct. #2119).

22.    <u>Claim</u> has the meaning assigned to such term in Section 101(5) of the Bankruptcy Code.

23.    <u>Claim Objection Bar Date</u> means the deadline for objecting to a Claim, which shall be the date that is 180 days after the Effective Date, subject to extension by the Bankruptcy Court.

24.    <u>Claimant</u> means the Entity asserting a Claim.

25.    <u>Class</u> means a class of Claims as set forth in the Plan.

26.    <u>Committee</u> means the statutory committee of unsecured creditors appointed by the Office of the United States Trustee in the Chapter 11 Case pursuant to Section 1102 of the Bankruptcy Code.

27.    <u>Confirmation</u> means the entry of the Confirmation Order.

28.    <u>Confirmation Date</u> means the date upon which the Bankruptcy Court enters an order confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

29.    <u>Confirmation Order</u> means the Bankruptcy Court Order confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

30.    <u>Covered Persons</u> means the Debtor, the Estate, the Committee, the Liquidating Trustee, the Liquidating Trust Oversight Committee members, the Liquidating Trust and each of their respective affiliates, employees, attorneys or

professionals, or any of their duly designated agents or representatives in such capacity.

31.     Current Resident means any Person that is a resident of the Facility as of the Sale Closing Date.

32.     Current Resident Entrance Fee Claim means Claims by Current Residents that entered into one or more entrance fee contracts prior to June 10, 2020 and paid an entrance fee to the Debtor.

33.     Current Resident Entrance Fee Claimant means the Holder of a Current Resident Entrance Fee Claim.

34.     Current Resident Claim Bar Date means 30 days after entry of the Confirmation Order.

35.     Debtor means Henry Ford Village, Inc., after the Petition Date as a debtor-in-possession pursuant to Section 1107 of the Bankruptcy Code.

36.     Disallowed means, with reference to any Claim: (i) a Claim, or any portion thereof, that has been disallowed by a Final Order; (ii) a Claim, or any portion thereof, that is expressly disallowed under the Plan; or (iii) unless scheduled by a Debtor as a fixed, liquidated, non-contingent and undisputed Claim, a Claim as to which a Bar Date has been established by the Bankruptcy Code, Bankruptcy Rules, Final Order or this Plan as approved pursuant to the Confirmation Order and in which no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order, notwithstanding anything in Section 506(d) of the Bankruptcy Code to the contrary.

37.     Disclosure Statement means the disclosure statement that is part of the Joint Disclosure Statement and Plan of Liquidating for Henry Ford Village, Inc. including, without limitation, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

38.     Disputed means any Claim that is not yet Allowed and includes Claims (i) listed on the claims register that is not yet Allowed; (ii) listed on the Schedules as disputed, contingent or unliquidated; or (iii) is any Claim that is not otherwise addressed in Classes 1 or 2. In the event that any part of a Claim is a Disputed Claim, such Claim in its entirety may be deemed to constitute a Disputed Claim for purposes of Distributions unless the Liquidating Trustee and the Holder of such Claim agree otherwise; provided however that nothing in this definition is intended to or does

impair the rights of any Holder of a Disputed Claim to pursue its rights under Section 502 of the Bankruptcy Code.

39.  <u>Distribution</u> means distributions made in accordance with the Plan by the Debtor or Liquidating Trustee to Holders of Allowed Claims.

40.  <u>Distribution Date</u> means one or more dates selected by the Liquidating Trustee to make distributions on Allowed Claims that is not earlier than the Effective Date.

41.  <u>Distribution Fund</u> means the fund which shall be established on the Effective Date by the Liquidating Trustee to pay *pro rata* Allowed Class 2 General Unsecured Claims.

42.  <u>ECF</u> means the automated system utilized by the Bankruptcy Court that receives and stores papers filed in electronic format and when used in conjunction with a number, refers to the numbered location on the ECF system at which the document can be found.

43.  <u>Effective Date</u> means the date on which the Plan shall become effective, which date shall be as soon as reasonably practicable after the date on which the conditions specified in Article IV of the Plan have been satisfied or waived.

44.  <u>Entity</u> has the meaning assigned to such term by Section 101(15) of the Bankruptcy Code.

45.  <u>Estate</u> means the bankruptcy estate of the Debtor created by virtue of section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

46.  <u>Executory Contract</u> means a contract or unexpired lease to which the Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

47.  <u>Facility</u> means the senior continuing care retirement community previously owned by the Debtor located at 15101 Ford Rd, Dearborn, Michigan.

48.  <u>Final Order</u> means a Bankruptcy Court Order or judicial order of a another court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for

certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

49.     General Executory Contract means any Executory Contract that is not a Residency Agreement.

50.     General Executory Contract Rejection Claim Bar Date means unless a different date is provided for in the Confirmation Order or another Final Order, no later than 30 days after entry of the Confirmation Order.

51.     General Unsecured Claim means any Claim that is not a LARA Escrow Claim, Administrative Claim, Priority Tax Claim or a Claim entitled to priority under the Bankruptcy Code or any Final Order of the Bankruptcy Court.

52.     Government Claims means all governmental units holding Claims (whether secured, unsecured priority, or unsecured non-priority) including Claims for unpaid taxes.

53.     Holder means the Person or entity that is entitled to make a Claim.

54.     Impaired means a Class of Claims that is impaired within the meaning of section 1124 of the Bankruptcy Code.

55.     LARA means the State of Michigan Department of Licensing and Regulatory Affairs.

56.     LARA Escrow Agreement means that certain Continuing Care Community Disclosure Act Escrow Agreement by and between Henry Ford Village, Inc. and American Deposit Management, LLC, as Escrow Agent, dated September 23, 2020, approved by LARA to implement the LARA Order.

57.     LARA Escrow Claimant means any resident or prospective resident of the Facility that entered into a Residency Agreement on or after June 10, 2020 providing for payment of an entrance fee associated with an independent or assisted living unit, and paid an entrance fee that was escrowed pursuant to the LARA Order.

58.     LARA Escrow Claim means the Claim of a LARA Escrow Claimant.

59.     LARA Order Escrow Funds means the funds deposited with third party escrow agent American Deposit Management, LLC pursuant to the LARA Escrow Agreement that are the legal property of the Holder of a LARA Escrow Claim, and specifically excluding any amounts held in the escrow accounts established pursuant to the LARA Escrow Agreement that are the property of Debtor.

60.    LARA Order means the order issued on June 10, 2020 by LARA requiring funds derived pursuant to Entrance Fee Agreements entered into on or after June 10, 2020 to be placed in escrow.

61.    LARA Escrow Residents  Current Residents that entered into one or more entrance fee contracts on or after June 10, 2020, and paid an entrance fee to the Debtor that is subject to the LARA Order.

62.    Lien means any mortgage, lien, interest pledge, charge, security interest, encumbrance, mechanics' lien, statutory lien or right, and other consensual or non-consensual lien, whenever granted and including, without limitation, those charges or interests in property within the meaning of "lien" under Section 101(37) of the Bankruptcy Code.

63.    Liquidating Trust means the trust created pursuant to the Liquidating Trust Agreement as required by the Plan.

64.    Liquidating Trust Agreement means the agreement for the establishment and operation of the Liquidating Trust filed with the Plan or Plan Supplement.

65.    Liquidating Trust Assets means all assets of the Debtor's Estate as set forth in Article IV of the Plan, but excluding (i) the Professional Fee Reserve, and (ii) the Protected Funds except as provided in Section 4.2 of the Plan.

66.    Liquidating Trust Oversight Committee means the individuals appointed to advise the Liquidating Trustee with respect to implementing the terms of the Plan and the Liquidating Trust Agreement.

67.    Liquidating Trustee means the Person named in the Liquidating Trust Agreement or his or her designee appointed pursuant to the Plan for the purpose of acting as initial trustee of the Liquidating Trust or his or her successor appointed pursuant to the terms of the Liquidating Trust Agreement.

68.    Person has the meaning assigned to such term by Section 101(41) of the Bankruptcy Code.

69.    Petition Date means October 28, 2020 which is  the date that the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code.

70. <u>Plan</u> means this Chapter 11 plan, including all exhibits and schedules annexed hereto or to the Disclosure Statement in their present form or as it may be altered, amended or modified from time to time.

71. <u>Plan Supplement</u> means the compilation of documents and forms of documents, schedules, and exhibits to this Plan, if any, filed by the Debtor 15 days prior to the Confirmation Hearing and additional documents filed with the Bankruptcy Court prior to the Effective Date, as may be amended, supplemented or modified from time to time in accordance with the terms of this Plan, the Bankruptcy Code, and the Bankruptcy Rules, including but not limited to any documentation necessary or assists in the implementation of this Plan.

72. <u>Plan Proponent</u> means the Debtor.

73. <u>Priority Tax Claim</u> means any Claim of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

74. <u>Pro Rata</u> shall mean the proportion that the amount of a Claim in a particular Class or Classes bears to the aggregate amount of all Claims in such Class or Classes, unless this Plan otherwise provides.

75. <u>Professional Fee Claims</u> means any Claim for compensation for legal, financial advisory, accounting, and other services, and reimbursement of expenses Allowed pursuant to Sections 328, 330(a) or 331 of the Bankruptcy Code or otherwise for the period commencing on the Petition Date and ending on the Effective Date and includes the Claims of the following entities that were retained by the Debtor or the Committee in the Chapter 11 case: (i) Dykema Gossett PLLC; (ii) Kurtzman Carson Consultants, LLC; (iii) FTI Consulting, Inc.; (iv) RBC Capital Markets, LLC: (v) unpaid Ordinary Course Professionals, if any, as such term is referred to in the order granting Debtor's motion for entry of an order approving retention and payment of ordinary course professionals [ECF No. 354]; (vi) Perkins Coie LLP; and (vii) Howard & Howard Attorneys PLLC.

76. <u>Professional Fee Reserve</u> means a reserve to be funded in the estimated amount of Professional Fee Claims as set forth in section 2.2(b) of the Plan.

77. <u>Proof of Claim</u> has the meaning assigned to such term by section 3001 of the Federal Rules of Bankruptcy Procedure.

78. <u>Protected Funds</u> means (i) the proceeds of any Accounts Receivable received by the Debtor or the Liquidating Trust after the Sale Closing Date, (ii) the LARA Order Escrow Funds; and (iii) the Charitable Account Funds.

79.     Purchaser means the entity that purchased substantially all of the assets of the Debtor on the Sale Closing Date.

80.     Residency Agreement means any written agreements by and between the Debtor and a Current Resident or former resident of the Facility establishing the terms of such resident's occupancy at the Facility.

81.     Resident Notices means the notices that were hand delivered to Current Residents and which can be found at ECF Nos. 532, 533, 534, 555, 556, 557, 565, 566, and 567 (and, as applicable, amended by ECF No. 552) and which can be also be found through the Effective Date on the website hosted by Debtor's official claims, balloting and noticing agent Kurtzman Carson Consultants, LLC at http://www.kccllc.net/HFV searching by ECF number or by referencing the sale document tab.

82.     Retained Rights of Action Schedule means the non-exclusive schedule of Rights of Action attached to the Plan identifying Rights of Action that shall be retained by the Debtor and transferred to the Liquidating Trust pursuant to the Plan.

83.     Rights of Action means, without limitation, any and all actions, causes of action, Avoidance Actions, claims, controversies, damages, debts, demands, rights, defenses, judgments, suits, contracts, agreements, obligations, accounts, defenses, offsets, powers, privileges (including attorney/client privilege), licenses, and franchises of any kind or character whatsoever owned or held by the Debtor, either directly or derivatively, and whether assertible directly, indirectly, derivatively or in any representative or other capacity, whether known or unknown, asserted or unasserted, suspected or unsuspected, existing or hereafter arising, in law, contract, tort, or in equity, or under any other theory of law, based upon any act, failure to act, error, omission, transaction, advice, occurrence or other event arising or occurring prior to the Petition Date or during the course of the Chapter 11 Case through the Effective Date (except to the extent exculpated pursuant to Article 8 of the Plan and the Confirmation Order). For the avoidance of doubt, this includes, but is not limited to: (i) rights of setoff, counterclaim, or recoupment, and claims on contracts or for breaches of duties imposed by law, (ii) claims pursuant to section 362 of the Bankruptcy Code; (iii) such claims and defenses as fraud, mistake, duress, and usury; (iv) the right to object to or otherwise contest Claims, (vi) any claims or defenses, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code, and (vii) any causes of action arising under chapter 5 of the Bankruptcy Code.

84.     Sale Closing Date means 11:59 pm eastern standard time September 30, 2021, which was the date and time that the closing of the sale of substantially all of the Debtor's assets occurred pursuant to the terms of the Sale Order.

85.     Sale Order means the Final Order entered on May 25, 2021 at ECF No. 436 entitled Order (I) Approving the Asset Purchase Agreement Between the Debtor and HFV OPCO, LLC; (II) Authorizing the Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, Interests and Encumbrances, Except for Certain Assumed Liabilities; (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith; and (IV) Granting Related Relief.

86.     Schedules means the Schedules of Assets and Liabilities and the Statement of Financial Affairs filed by the Debtor as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007 as may be amended or supplemented from time to time by the Debtor through the Confirmation Date and includes the Amended Schedules.

87.     Unimpaired means a Class of Claims that is not identified as an Impaired Class.

88.     Wayne County Probate Order means a court order entered in the petition for Cy Pres filed by the Debtor in the Probate Court for the County of Wayne, State of Michigan or as applicable, a final judicial order of another court of competent jurisdiction with respect to the subject matter addressed in the petition for Cy Pres.

89.     Wind-Down Reserve means the reserves in the amount of $500,000 to fund the winding up of the affairs of the Debtor, payment of the Liquidating Trustee and his or her professionals, payment of expenses of the Liquidating Trust and payment of the costs of administering the Plan and Liquidating Trust. To the extent there are any excess funds in the Wind Down Reserve after payment of all amounts set forth above, such amounts shall be part of the Distribution Fund.

END OF DEFINITIONS.

# **EXHIBIT B**

Liquidating Trust Agreement

# LIQUIDATING TRUST AGREEMENT

This Liquidating Trust Agreement ("Liquidating Trust Agreement" or "Agreement"), dated as of [*], 2021, by and between Henry Ford Village, Inc. ("HFV" or the "Debtor"), as debtor and debtors in possession in the chapter 11 case pending in the United States Bankruptcy Court for the Eastern District of Michigan under case number 20-51066 and Sheldon Stone, the "Liquidating Trustee, is hereby being executed to facilitate the implementation of the *Chapter 11 Liquidating Plan of Henry Ford Village, Inc*. (as amended, modified or supplemented, the "Plan").[1] In the case of a conflict between this Liquidating Trust Agreement and the Plan, the Plan shall control.

**WHEREAS**, on October 28, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court" or "Court");

**WHEREAS**, on November 3, 2020, the United States Trustee for Region 9 (the "US Trustee") appointed the official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee");

**WHEREAS**, on October 18, 2021, the Debtors filed the Plan with the Bankruptcy Court;

**WHEREAS**, on [*], the Bankruptcy Court entered an order confirming the Plan (the "Confirmation Order");

**WHEREAS**, the Plan and the Confirmation Order provide for the establishment of this Agreement and the appointment of the Liquidating Trustee to administer the Liquidating Trust for the benefit of holders of Claims in Class 2 of General Unsecured Claims under the Plan, and to provide administrative services relating to the Plan's implementation;

**WHEREAS**, the Plan will become effective on the Effective Date;

**WHEREAS**, Sheldon Stone is hereby appointed Liquidating Trustee;

**WHEREAS**, a post-effective date committee, the Liquidating Trust Oversight Committee (the "LTOC") has been appointed effective as of the Effective Date to oversee the Liquidating Trust and to advise the Liquidating

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

Trustee in the performance of the Liquidating Trustee's duties and obligations under the Plan; and

**WHEREAS**, the Plan provides, *inter alia*, for:

(a) the transfer to the Liquidating Trust, on the Effective Date (or thereafter as specified in the Plan), of all Liquidating Trust Assets free and clear of all Claims and interests in accordance with section 1141 of the Bankruptcy Code;

(b) the distribution of the Liquidating Trust Assets and/or their proceeds in accordance with the terms of the Plan, including for the benefit of the holders of Allowed Class 2 General Unsecured Claims (collectively with all parties entitled to receive distributions from the Liquidating Trust under the terms of the Plan, the "Beneficiaries;" *provided, however*, that to the extent any Claim is not an Allowed Claim, the Holder of such Claim shall not be deemed a Beneficiary hereunder);

(c) the federal income tax treatment of (i) the Beneficiaries as the grantors of the Liquidating Trust and the owners of the Liquidating Trust Assets and (ii) the transfer of the Liquidating Trust Assets to the Liquidating Trust as a deemed transfer from the Debtor to the Beneficiaries followed by a deemed transfer by the Beneficiaries to the Liquidating Trust;

(d) the establishment of reserves necessary to effectuate the terms of the Plan, including the establishment of such reserves as reasonably necessary and appropriate to account for and pay all post-Effective Date expenses ,including the fees and expenses of the Liquidating Trustee; the fees and expenses of the professionals employed by the Liquidating Trustee; and other costs, expenses, and obligations of the Liquidating Trust (the "Post-Effective Date Expenses"; and

(e) the administration of the Liquidating Trust and the Liquidating Trust Assets by the Liquidating Trustee for the purposes and in the manner set forth in this Agreement, subject to the Plan; and

**WHEREAS**, the Liquidating Trust is intended to be treated as a liquidating trust pursuant to Treasury Regulations, Sec. 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124, and as a grantor trust subject to the provisions of Subtitle A, Chapter 1, Subchapter J, Part 1, Subpart E of the Tax Code (hereinafter defined) owned by the Beneficiaries as grantors;

**NOW, THEREFORE**, pursuant to the Plan and in consideration of the premises, the mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Debtor, the Committee, and the Liquidating Trustee hereby agree as follows:

## ARTICLE 1

## DECLARATION OF TRUST

**1.1** **Purpose of the Liquidating Trust.** The Debtor and the Liquidating Trustee, pursuant to the Plan and the Confirmation Order, and in accordance with the Bankruptcy Code, applicable tax statutes, rules, and regulations, to the extent incorporated in this Agreement, hereby constitute and create the Liquidating Trust for the purpose of effectuating certain aspects of the Plan and liquidating and administering the Liquidating Trust Assets for the benefit of the Beneficiaries, with no objective to continue or engage in the conduct of a trade or business. In particular, the Liquidating Trust, through the Liquidating Trustee, shall (i) pending the reduction to cash of the Liquidating Trust Assets (and any non-cash proceeds thereof), manage, and collect and obtain proceeds from, the Liquidating Trust Assets, with the goal of reducing the Liquidating Trust Assets (and any non-cash proceeds thereof) to cash; (ii) make distributions pursuant to this Agreement, the Plan, and the Confirmation Order; and (iii) take such steps as are reasonably necessary to accomplish such purposes, all as more fully provided in, and subject to the terms and provisions of, the Plan, the Confirmation Order, and this Agreement. The Liquidating Trust shall not have authority to engage in a trade or business, and no portions of the Liquidating Trust Assets shall be used in the conduct of a trade or business, except as is reasonably necessary for the prompt and orderly collection and reduction to cash of the Liquidating Trust Assets (and any non-cash proceeds thereof) and effectuate the applicable provisions of the Plan, with the goal of maximizing such assets for the benefit of the Beneficiaries.

**1.2** **Name of the Liquidating Trust.** The Liquidating Trust established hereby shall be known as the "HFV Liquidating Trust." In connection with the exercise of his or her powers, the Liquidating Trustee may use such name or such variation thereof as they see fit and may transact the business and affairs of the Liquidating Trust in such name.

**1.3** **Transfer of Assets to Create Liquidating Trust.** Pursuant to the Plan and the Confirmation Order, the Debtor and the Estate hereby irrevocably grant, release, assign, transfer, convey, and deliver to the Liquidating Trustee: (i) as of the Effective Date, all Liquidating Trust Assets available for transfer on that date; and (ii) from time to time after the Effective Date, (x) on such terms and at

such times set forth in the Plan, any Liquidating Trust Assets that are not available for transfer on the Effective Date and (y) such additional or different corpus as the Liquidating Trustee may from time to time acquire and hold in trust pursuant to the Plan or this Liquidating Trust Agreement, to have and to hold by the Liquidating Trustee and the Liquidating Trustee's successors in trust and to be applied as specified in the Plan and this Agreement. Upon the transfer of each Liquidating Trust Asset to the Liquidating Trust, the Debtor shall retain no interest in such Liquidating Trust Asset. On the Effective Date and from time to time thereafter, the Debtor shall execute and deliver or cause to be executed and delivered to or upon the direction of the Liquidating Trustee any and all such documents, in recordable form where necessary or appropriate, and the Debtor shall take or cause to be taken such further or other action, as the Liquidating Trustee may reasonably deem appropriate, to vest or perfect in or confirm to the Liquidating Trustee, title to and possession of all of the Liquidating Trust Assets. In connection herewith, the Liquidating Trustee shall be responsible for establishing and maintaining such accounts as the Liquidating Trustee shall deem necessary or appropriate to carry out the provisions of this Liquidating Trust Agreement, and to perform all obligations specified for the Liquidating Trustee under the Plan, the Confirmation Order, and this Agreement.

**1.4    Acceptance by Liquidating Trustee.** The Liquidating Trustee hereby accepts: (i) the appointment to serve as Liquidating Trustee; (ii) the transfer of the Liquidating Trust Assets on behalf of the Liquidating Trust; and (iii) the trust imposed by this Liquidating Trust Agreement. The Liquidating Trustee agrees to receive, hold, administer, and distribute the Liquidating Trust Assets and the income or other proceeds derived therefrom, if any, pursuant to the terms of the Plan, the Confirmation Order, and this Agreement. The Liquidating Trustee agrees to perform all activities reasonably necessary to ensure the transfer of the Liquidating Trust Assets on behalf of the Liquidating Trust.

## ARTICLE 2

## LIQUIDATING TRUSTEE — GENERALLY

**2.1    Appointment.** The initial Liquidating Trustee shall be Sheldon Stone.

**2.2    Term of Service**. The Liquidating Trustee shall serve until (i) the termination of the Liquidating Trust in accordance with article 9 of this Agreement, or (ii) the Liquidating Trustee's resignation, death, or removal, all in accordance with the provisions hereof.

**2.3    Services**. The Liquidating Trustee shall be entitled to engage in such other activities as the Liquidating Trustee deems appropriate that are not in conflict with the Plan, the Confirmation Order, this Agreement, the Liquidating Trust, or

the interests of the Beneficiaries resulting from this Agreement. The Liquidating Trustee shall devote such time as is necessary to fulfill all the Liquidating Trustee's duties as Liquidating Trustee.

**2.4     Resignation, Death, or Removal of Liquidating Trustee.** The Liquidating Trustee may resign at any time upon ninety (90) days written notice to the LTOC. Such resignation may become effective prior to the expiration of such ninety (90) day notice period upon the appointment of a successor Liquidating Trustee by order of the Bankruptcy Court. Any appointment of a successor Liquidating Trustee requires that such successor Liquidating Trustee execute an instrument accepting such appointment and shall file such acceptance with the Liquidating Trust records. The Liquidating Trustee may be removed by the Bankruptcy Court upon application for good cause shown, which application may be brought by any party in interest. Upon appointment pursuant to this section 2.4, the successor Liquidating Trustee, without any further act, shall become fully vested with all the rights, powers, duties, and obligations of his, her, their, or its predecessor.

**2.5     Appointment of Successor Liquidating Trustee**. Upon the resignation, death, incapacity, or removal of a Liquidating Trustee, a successor Liquidating Trustee shall be appointed by the LTOC. In the event no party in interest seeks the appointment of a successor Liquidating Trustee, the Bankruptcy Court may do so on its own motion. Any successor Liquidating Trustee so appointed shall consent to and accept its appointment as successor Liquidating Trustee, which may be done by e-mail or through acquiescence in not objecting to a motion for approval of its appointment as successor Liquidating Trustee.

**2.6     Trust Continuance.** The death, resignation, or removal of the Liquidating Trustee shall not terminate the Liquidating Trust or revoke any existing agency (other than any agency of such Liquidating Trustee as a Liquidating Trustee) created pursuant to this Liquidating Trust Agreement or invalidate any action theretofore taken by the Liquidating Trustee, and the successor Liquidating Trustee agrees that the provisions of this Liquidating Trust Agreement shall be binding upon and inure to the benefit of any successor Liquidating Trustee and all the Liquidating Trustee's heirs and legal and personal representatives, successors, or assigns.

**2.7     Compensation and Expenses of Liquidating Trustee.** The Liquidating Trustee shall receive fair and reasonable compensation for its services, which shall be a charge against, and paid out of, the Trust Assets. All costs, expenses, and obligations incurred by the Liquidating Trustee (or professionals who may be employed by the Liquidating Trustee in administering the Trust, in

carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid by the Trust from the Trust Assets prior to any Distribution to the Beneficiaries. The terms of the compensation of the Liquidating Trustee and the timing and manner of payment are set forth on **Exhibit A** hereto.

      **2.8**    **Retention of Professionals.** The Liquidating Trustee may retain and engage such attorneys, accountants, and other professionals and persons as may be necessary to carry out the Liquidating Trustee's duties under this Agreement, including any law or accounting firm of which the Liquidating Trustee is a partner or otherwise affiliated from time to time. The fees and expenses of all such professionals shall be borne exclusively by the Liquidating Trust, and such professionals may be compensated monthly upon submission of invoices to the Liquidating Trustee without review or approval of the Bankruptcy Court or any other party. All fees and expenses of administration of the Liquidating Trust, including pursuant to this section 2.8, shall be paid from the Liquidating Trust.

# ARTICLE 3
# POWERS AND LIMITATIONS OF THE TRUSTEE

      **3.1**    **General Powers of Liquidating Trustee.** In connection with the administration of the Liquidating Trust, except as otherwise set forth herein, the Liquidating Trustee is authorized to perform those acts necessary or desirable to accomplish the purposes of the Liquidating Trust. Subject to the limitations set forth in this Agreement, the Plan, and the Confirmation Order, and in addition to any powers and authority conferred by law, by the Plan, and the Confirmation Order, or by any other section or provision of this Agreement, the Liquidating Trustee may exercise all powers granted hereunder related to, or in connection with, the administration and liquidation of Liquidating Trust Assets and distribution of cash and other net proceeds derived therefrom in accordance with this Agreement, the Plan, and the Confirmation Order. Without limiting, but subject to the foregoing, the Liquidating Trustee shall be expressly authorized to:

      (a)    collect, sell, lease, license, abandon, or otherwise dispose of all assets of the Liquidating Trust subject to the terms of the Plan; including, notwithstanding section 9.1 of this Agreement, abandonment and/or destruction of books, records, and files of the Liquidating Trust prior to two (2) years after the Final Distribution Date (defined below) in the event that the Liquidating Trustee concludes that such books, records, and files are of no benefit to the Liquidating Trust;

      (b)    effect distributions to Class 2 General Unsecured Claims

pursuant to the terms of the Plan;

(c) effect any other distributions or disbursements from the Liquidating Trust as may be consistent with the terms of the Plan;

(d) pay all costs and expenses of administering the Liquidating Trust from and after the Effective Date (including the Post-Effective Date Expenses) and other powers necessary or incidental thereto, including, without limitation, the power to employ and compensate Persons and Entities to assist the Liquidating Trustee in carrying out the duties hereunder and under the Plan, and obtain and pay premiums for necessary insurance;

(e) implement the Plan including any other powers necessary or incidental thereto;

(f) prosecute objections to General Unsecured Claims and investigate and prosecute Rights of Action transferred to the Liquidating Trust consistent with the terms of the Plan;

(g) settle, without approval of the Bankruptcy Court, General Unsecured Claims and Rights of Action transferred to the Liquidating Trust consistent with the terms of the Plan;

(h) seek an estimation of contingent or unliquidated General Unsecured Claims pursuant to 11 U.S.C. 502(c);

(i) participate in any post-Effective Date motions to amend or modify the Plan or this Agreement, or appeals from the Confirmation Order;

(j) participate in actions to enforce or interpret the Plan;

(k) bind the Liquidating Trust;

(l) open and maintain bank accounts on behalf of or in the name of the Liquidating Trust, calculate and make distributions, and take other actions consistent with the Plan and the implementation thereof, including the establishment, re-evaluation, adjustment, and maintenance of appropriate reserves, in the name of the Liquidating Trust;

(m) receive, conserve, and manage the Liquidating Trust Assets;

(n) if the Liquidating Trustee determines that any of the Beneficiaries or the Liquidating Trust may, will, or has become

subject to adverse tax consequences, take such actions that the Liquidating Trustee, in his or her reasonable discretion, determines are intended to alleviate such adverse tax consequences, including, without limitation, dividing the Liquidating Trust Assets into several trusts or other structures;

(o) file, if necessary, any and all tax and information returns of the Liquidating Trust;

(p) hold legal title to any and all Liquidating Trust Assets;

(q) establish, fund, and administer reserves provided for in, or otherwise consistent with, the terms of the Plan, the Confirmation Order, or this Agreement;

(r) enter into contracts and other business arrangements on behalf of the Liquidating Trust;

(s) represent the Liquidating Trust before governmental and other regulatory bodies;

(t) remove Liquidating Trust Assets or the situs of administration of the Liquidating Trust from one jurisdiction to another at any time or from time to time;

(u) make decisions regarding the retention or engagement of professionals, employees, and consultants by the Liquidating Trust and pay, from the Liquidating Trust, the fees and charges incurred by the Liquidating Trust on or after the Effective Date, including for fees of professionals, disbursements, expenses, or related support services relating to the implementation of the Plan and this Agreement, without application to the Bankruptcy Court;

(v) pay all lawful expenses, debts, charges, and liabilities of the Liquidating Trust;

(w) withhold from the amount distributable to any Person or Entity such amount as may be sufficient to pay any tax or other charge that the Liquidating Trustee has determined, in the Liquidating Trustee's sole discretion, may be required to be withheld therefrom under the income tax laws of the United States or of any state or political subdivision thereof; and in the exercise of its discretion and judgment, the Liquidating Trustee may enter into agreements with taxing or other governmental authorities

for the payment of such amounts as may be withheld in accordance with the provisions of this section;

(x)    enter into any agreement or execute any document required by or consistent with the Plan, the Confirmation Order, or this Agreement and the purposes of the Trust, and perform all obligations under all the foregoing;

(y)    abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of its choice, any assets the Liquidating Trustee concludes are of no benefit to the Trust; including, notwithstanding section 9.1 of this Agreement, abandonment and/or destruction of books, records, and files of the Trust prior to two (2) years after the Final Distribution Date;

(z)    if any performance under this Agreement by the Liquidating Trustee is subject to the laws of any state or other jurisdiction in which the Liquidating Trustee is not qualified to act as trustee, nominate and appoint a Person or Entity duly qualified to act as trustee in such state or jurisdiction and require from each such trustee such security as designated by the Liquidating Trustee; confer upon such trustee any and all of the rights, powers, privileges, and duties of Liquidating Trustee, subject to the conditions and limitations of this Agreement and applicable law; require such trustee to be answerable to the Liquidating Trustee for all monies, assets, and other property that may be received in connection with the administration of all property; and remove such trustee, with or without cause, and appoint a successor trustee at any time by the execution by the Liquidating Trustee of a written instrument declaring such trustee removed from office, and specifying the effective date and time of removal;

(aa)    invest cash as deemed appropriate by the Liquidating Trustee in cash equivalents; provided, however, that the scope of any such permissible investments shall be limited to include only those investments, or shall be expanded to include any additional investments, as the case may be, that a "liquidating trust," within the meaning of Treasury Regulation Section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise; *provided,*

*however*, that any investment of Cash must be with institutions and in investment vehicles covered by Federal Deposit Insurance Corporation ("FDIC") insurance.

(bb)    hold title to any investment in its name as Liquidating Trustee or in a nominee's name;

(cc)    to the extent consistent with this Agreement, the Plan, and the Confirmation Order, sue and be sued, and participate in proceedings with respect to the Agreement, the Confirmation Order, General Unsecured Claims, or the Liquidating Trust;

(dd)    take all actions necessary to administer and effectuate an orderly wind down of the Liquidating Trust;

(ee)    delegate any or all the discretionary power and authority herein conferred at any time with respect to any portion of the Liquidating Trust Assets or other powers enumerated herein to any one or more reputable individuals or recognized institutional advisors or investment managers or consultants without any liability for any action taken or omission made because of such delegation, except for liability specifically provided for in this Liquidating Trust Agreement;

(ff)    take all actions and exercise all power and authority enumerated in Article IV of the Plan, and any other section of the Plan pertaining to the Liquidating Trust; and

(gg)    take all other actions consistent with the provisions of this Agreement, the Plan, and the Confirmation Order that the Liquidating Trustee deems reasonably necessary or desirable to administer the Liquidating Trust.

**3.2    Limitations on the Liquidating Trustee.** Anything in this Agreement to the contrary notwithstanding, the Liquidating Trustee shall not do or undertake any of the following:

(a)    take any action in contravention of the Plan, the Confirmation Order, or this Agreement;

(b)    take any action that would significantly jeopardize treatment of the Liquidating Trust as a "liquidating trust" for federal income tax purposes;

(c)    lend any Liquidating Trust Assets to the Liquidating Trustee;

(d)    purchase Liquidating Trust Assets from the Liquidating Trust;

(e)     transfer Liquidating Trust Assets to another trust with respect to which the Liquidating Trustee serves as trustee;

(f)     grant liens on any of the Liquidating Trust Assets; or

(g)     guarantee any debt incurred by any third party.

**3.3     Liquidating Trustee Conflicts of Interest.** If the Liquidating Trustee determines, in the exercise of the Liquidating Trustee's discretion, that the Liquidating Trustee has a conflict of interest with respect to any matter, the Liquidating Trustee may, after notice to the LTOC and the U.S. Liquidating Trustee, request the Bankruptcy Court to approve the Liquidating Trustee's choice of a designee to act on behalf of the Trust solely with respect to such matter, with such designee's authority to so act on behalf of the Liquidating Trust to terminate upon the matter's conclusion.

## ARTICLE 4

## LIABILITY OF THE TRUSTEE

**4.1     Liquidating Trustee Standard of Care; Exculpation; Limitation on Liability; Indemnification.** The Liquidating Trustee shall not be liable for any act the Liquidating Trustee may do or omit to do as Liquidating Trustee under the Plan and this Agreement while acting in good faith and in the exercise of his reasonable business judgment; nor will the Liquidating Trustee be liable in any event except for an act or omission that is determined by Final Order to be bad faith. gross negligence, willful misconduct, or actual fraud.

The foregoing limitation on liability also will apply to any Person or Entity employed by the Liquidating Trustee and acting on behalf of the Liquidating Trustee in the fulfillment of the Liquidating Trustee's duties hereunder or under the Plan.  In addition, the Liquidating Trustee and any Person or Entity employed by the Liquidating Trustee and acting on behalf of the Liquidating Trustee shall be entitled to indemnification and defense out of the assets of the Liquidating Trust against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that they may incur or sustain by reason of being or having been employed by the Liquidating Trust or the Liquidating Trustee of the Liquidating Trust or for performing any functions incidental to such service; *provided, however*, that the foregoing shall not relieve the Liquidating Trustee or any Person or Entity employed by the Liquidating Trustee from liability, nor entitle any of the foregoing entities to indemnification pursuant to the Plan or this Agreement, for bad faith. gross negligence, willful misconduct, or actual fraud as determined by a Final Order of the Bankruptcy Court. Persons or Entities dealing with the Liquidating Trustee or any of the

foregoing parties in their respective capacities as such, or seeking to assert claims against the Liquidating Trustee or any of the foregoing parties in their capacities as such, shall have recourse only to the Liquidating Trust Assets (excluding any fund to pay administrative costs) to satisfy any liability incurred by the Liquidating Trustee or any of the foregoing parties in their respective capacities as such to such Persons or Entities in carrying out the terms of this Agreement. Satisfaction of any obligation of the Liquidating Trust arising pursuant to the terms of this section shall be payable only from the Liquidating Trust Assets, and such right to payment shall be prior and superior to any other rights to receive on behalf of any Beneficiary any distribution of Liquidating Trust Assets or proceeds thereof. The Liquidating Trust shall have the right to control the defense and settlement of claims as to which it is obligated to indemnify.

**4.2 Bond.** The Liquidating Trustee shall not be obligated to give any bond or surety for the performance of any of its duties unless otherwise ordered by the Bankruptcy Court; if so ordered, all costs and expenses of procuring a bond shall be deemed expenses of and payable from the Liquidating Trust.

**4.3 No Liability for Acts of Predecessor Liquidating Trustees.** No successor Liquidating Trustee shall be in any way liable for the acts or omissions of any predecessor Liquidating Trustee unless a successor Liquidating Trustee expressly in writing assumes such responsibility.

**4.4 Reliance by Liquidating Trustee on Documents, Mistake of Fact, or Advice of Counsel.** Except as may be otherwise provided in this Agreement, the Liquidating Trustee may rely, and shall be protected from liability for acting, upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document reasonably believed by the Liquidating Trustee to be genuine and to have been presented by an authorized party. Also, the Liquidating Trustee shall not be liable if the Liquidating Trustee acts in good faith based on a mistake of fact before having actual knowledge of such mistake. The Liquidating Trustee shall not be liable for any action taken or suffered by the Liquidating Trustee in reasonably relying upon the advice of counsel or other professionals engaged by the Liquidating Trustee in accordance with this Agreement.

**4.5 Insurance.** The Liquidating Trustee may cause the Liquidating Trust to purchase errors and omissions insurance with regard to any liabilities, losses, damages, claims, costs, and expenses the Liquidating Trustee may incur, including but not limited to attorneys' fees, arising out of or due to his or her actions or omissions, or consequences of such actions or omissions, other than as a result of his or her bad faith. gross negligence, willful misconduct, or actual fraud, with

respect to the implementation and administration of the Plan, the Liquidating Trust, and this Agreement.

## ARTICLE 5
## DUTIES OF TRUSTEE

**5.1    General.** The Liquidating Trustee shall have all the duties specified in the Plan, the Confirmation Order, and this Agreement.

**5.2    Books and Records.** The Liquidating Trustee shall maintain, in respect of the Liquidating Trust, books and records relating to the Liquidating Trust Assets and income and proceeds realized therefrom, and the payment of expenses of and claims against or assumed by the Liquidating Trust, in such detail and for such period of time as may be necessary to enable him or her to make full and proper reports in respect thereof. Except as expressly provided in this Agreement, the Plan, or the Confirmation Order, nothing in this Agreement is intended to require the Liquidating Trustee to file any accounting or seek approval of any court with respect to the administration of the Liquidating Trust, or as a condition for making any payment or distribution out of the Liquidating Trust Assets or proceeds therefrom.

**5.3    Establishment of Accounts and Reserves.**

(a)    On the Effective Date or as soon as practicable thereafter, the Liquidating Trustee shall establish an account which shall consist of all Cash belonging to the Liquidating Trust, including all Cash transferred to the Liquidating Trust pursuant to the Plan (the "General Account"); *provided, however*, that all Cash must be deposited with institutions covered by FDIC insurance.

(b)    On the Effective Date or as soon as practicable thereafter, the Liquidating Trustee may, but is not required to, establish from and within the General Account a Liquidating Trust Reserve for the purposes of making distributions to any Holder of a Class 2 General Unsecured Claim that is Disputed or has otherwise not been Allowed in the event that such Claim becomes Allowed or, if such Claim becomes Disallowed, then to Holders of Allowed Class 2 General Unsecured Claims pursuant to the terms of the Plan or for such other purposes described in the Plan. The Liquidating Trustee shall have sole discretion to determine the amount to be funded into the Liquidating Trust Reserve provided that such discretion is not exercised in a manner that is inconsistent with the express provisions of the Plan. Unless otherwise provided in the Plan or this Agreement, when such a Class 2 General Unsecured Claim is Allowed or Disallowed (and thus becomes an Allowed Claim or a Disallowed Claim, in whole or in part), the funds

13

set aside on account of such Claim shall be released from the reserve and shall be treated as funds available for distribution in accordance with the terms of the Plan and this Agreement.

(c)     The Liquidating Trustee shall create from and within the General Account a reserve in an amount sufficient to pay for the Post-Effective Date Expenses of the Liquidating Trust (including compensation to the Liquidating Trustee and its professionals). Consistent with the Plan, the Liquidating Trustee, in the Liquidating Trustee's sole discretion, on and after the Effective Date, shall have authority to increase or decrease such reserve as appropriate.

(d)     Except as otherwise provided in the Plan, Confirmation Order, and this Agreement, the Liquidating Trustee shall make distributions to Holders of Allowed Class 2 General Unsecured Claims in accordance with the terms of the Plan in the exercise of the Liquidating Trustee's sound discretion, based on, among other things, the amount of Cash on hand, whether there remain any other unpaid obligations of the Liquidating Trust under the Plan, the time and status of pending or potential litigation or contested matters involving or affecting the Liquidating Trust, the amount of any necessary reserves, and any other factors that are relevant to the ability to make distributions from the Liquidating Trust Assets.

# ARTICLE 6

## BENEFICIARIES

**6.1     Effect of Death, Incapacity, or Bankruptcy of Beneficiary.** The death, incapacity, or bankruptcy of a Beneficiary during the term of the Liquidating Trust shall not operate to terminate the Liquidating Trust during the term of the Liquidating Trust nor shall it entitle the representatives or creditors of the deceased, incapacitated, or bankrupt Beneficiary to an accounting, or to take any action in any court or elsewhere for the distribution of the Liquidating Trust Assets or for a petition thereof, nor shall it otherwise affect the rights and obligations of the Beneficiary's representatives and creditors (in such capacity) under this Liquidating Trust Agreement or in the Liquidating Trust.

**6.2     Transfer of Beneficial Interest.** It is understood and agreed that the beneficial interests herein shall be non-transferable and non-assignable during the term of this Agreement except by operation of law. An assignment by operation of law shall not be effective until appropriate notification and proof thereof is submitted to the Liquidating Trustee, and the Liquidating Trustee may continue to cause the Trust to pay all amounts to or for the benefit of the assigning Beneficiaries until receipt of proper notification and proof of assignment by operation of law. The Liquidating Trustee may rely upon such proof without the requirement of any further investigation.

14

**6.3    Standing of Beneficiary.** Except as may be expressly provided in this Liquidating Trust Agreement, the Plan, or the Confirmation Order, a Beneficiary does not have standing to direct the Liquidating Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party (other than the Liquidating Trustee) upon or with respect to the Liquidating Trust Assets.

**6.4    Release of Liability by Beneficiary.** A Beneficiary shall not relieve the Liquidating Trustee from any duty, responsibility, restriction, or liability as to such Beneficiary that would otherwise be imposed under this Liquidating Trust Agreement unless such relief is approved by Final Order of the Bankruptcy Court.

## ARTICLE 7

## DISTRIBUTIONS

**7.1    Distributions from Liquidating Trust Assets.** All payments to be made by the Liquidating Trustee to any Person or Entity shall be made only in accordance with the Plan, the Confirmation Order, and this Agreement, and from the cash or cash proceeds of Liquidating Trust Assets, and only to the extent that the Liquidating Trust has sufficient cash to make such payments in accordance with and to the extent provided for in the Plan, the Confirmation Order, and this Liquidating Trust Agreement. Any distribution made by the Liquidating Trustee in good faith shall be binding and conclusive on all interested parties, absent manifest error.

**7.2    Distributions; Withholding.** The Liquidating Trustee shall make distributions at such times, consistent with the terms of the Plan, the Confirmation Order, and this Agreement, as the Liquidating Trustee deems appropriate from all net Cash income and all other Cash proceeds received by the Liquidating Trust; *provided, however,* that the Liquidating Trust may retain such amounts (i) as are reasonably necessary to meet known and contingent liabilities and to maintain the value of the Liquidating Trust Assets during the term of the Liquidating Trust, (ii) to pay reasonable administrative expenses, including, without limitation, the compensation and the reimbursement of reasonable costs, fees (including attorneys' and other professional fees), and expenses of the Liquidating Trustee in connection with the performance of their duties under this Liquidating Trust Agreement and under the Plan and Confirmation Order, and (iii) to satisfy all other liabilities incurred or assumed by the Liquidating Trust (or to which the Liquidating Trust Assets are otherwise subject) in accordance with the Plan, the Confirmation Order, and this Agreement. All such distributions shall be made, subject to any withholding or reserve, as provided in this Agreement, the Plan, or the Confirmation Order. Additionally, the Liquidating Trustee may withhold from amounts otherwise distributable on behalf of Beneficiaries any and all amounts,

determined in the Liquidating Trustee's reasonable sole discretion, that are required by any law, regulation, rule, ruling, directive, or other governmental requirement. The Liquidating Trustee may withhold the entire distribution to any Holder of an Allowed Claim until such time as the Holder provides the Liquidating Trustee with the necessary information to comply with any withholding requirements of any governmental unit.

Notwithstanding any other provision of the Plan, (i) each Holder of an Allowed Class 2 General Unsecured Claim that is to receive a distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution; and (ii) no distribution shall be made to or on behalf of such Holder pursuant to this Agreement or the Plan unless and until such Holder has made arrangements satisfactory to the Liquidating Trustee for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon any disbursing agent in connection with such distribution. Any property to be distributed pursuant to this Agreement or the Plan shall, pending the implementation of such arrangements, be treated as an undeliverable distribution under this Agreement or the Plan.

**7.3     Non-Cash Property.** Any non-cash property of the Liquidating Trust may be sold, transferred, or abandoned by the Liquidating Trustee. If, in the Liquidating Trustee's judgment, such property cannot be sold in a commercially reasonable manner, the Liquidating Trustee shall have the right to abandon or otherwise dispose of such property, including by donation of such property to a charity designated by the Liquidating Trustee. Except in the case of willful misconduct, no party in interest shall have a cause of action against the Liquidating Trust, the Liquidating Trustee, the LTOC or any partner, director, officer, employee, consultant, or professional of the Liquidating Trust or Liquidating Trustee arising from or related to the disposition of non-Cash property in accordance with this section.

16

**7.4    Method of Cash Distributions.** Any Cash payment to be made by the Liquidating Trust pursuant to the Plan will be in U.S. dollars and may be made, at the sole discretion of the Liquidating Trustee, by draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law. Mailed distributions shall be sent to the address provided for the Holder of an Allowed Class 2 General Unsecured Claim in its respective proof of claim filed with the Court or Claims agent provided for in the Plan, if any, or if no proof of claim was filed, at the address provided on the Schedules or such Holder's last address known to the Debtor. The Liquidating Trustee shall not be required to locate the current address for any Holder of an Allowed Claim whose distribution is returned to the Liquidating Trustee as undeliverable, in accordance with section 7.11 hereof.

**7.5    Distributions on Non-Business Days.** Any payment or distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

**7.6    Objections to Claims.**

(a)    <u>Claim Objection Procedures</u>. From and after the Effective Date, subject to the terms of Sections IV and VI of the Plan, the Liquidating Trustee shall have the right, standing, and authority to (i) object to and contest the allowance of General Unsecured Claims; (ii) compromise and settle, without approval of the Bankruptcy Court, Disputed General Unsecured Claims or General Unsecured Claims that have not otherwise been Allowed; and (iii) litigate to final resolution objections to General Unsecured Claims. No distribution shall be made pursuant to the Plan to a Holder of Claim, Disputed or otherwise, unless and until such Claim is or becomes an Allowed Claim. All objections to Claims shall be filed with the Bankruptcy Court, and served upon the Holders of such Claims, on or before the Claims Objection Bar Date.

(b)    <u>Resolution of Claims</u>. Subject to the terms of Sections IV and VI of the Plan, the Liquidating Trustee shall have the right to (i) compromise and settle any Disputed General Unsecured Claim or General Unsecured Claim that has not otherwise been Allowed, upon agreement with the Holder of such Disputed General Unsecured Claim or General Unsecured Claim that has not otherwise been Allowed, without further Order or approval of the Bankruptcy Court; and litigate to final resolution objections to General Unsecured Claims.

(c)    Until such time as an unliquidated Claim, contingent Claim, or a contingent portion of a Claim becomes Allowed or is Disallowed, such Claim will be treated as a Disputed Claim for all purposes related to distributions. The Holder of an unliquidated or contingent Claim will be entitled to a distribution

under the Plan only when and if such unliquidated or contingent Claim becomes an Allowed Claim.

**7.7    Conflicting Claims**. If any conflicting claims or demands are made or asserted with respect to the beneficial interest of a Beneficiary under this Agreement, or if there is any disagreement between the assignees, transferees, heirs, representatives, or legatees succeeding to all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any of such events, the Liquidating Trustee shall be entitled, in its sole discretion, to refuse to comply with any such conflicting claims or demands.

(a)    The Liquidating Trustee may elect to cause the Liquidating Trust to make no payment or Distribution with respect to the beneficial interest subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have exclusive jurisdiction over resolution of such conflicting claims or demands. Neither the Liquidating Trust nor the Liquidating Trustee shall be or become liable to any of such parties for their refusal to comply with any such conflicting claims or demands, nor shall the Liquidating Trust or Liquidating Trustee be liable for interest on any funds which may be so withheld.

(b)    The Liquidating Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court, or (ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the Liquidating Trustee, which agreement shall include a complete release of the Liquidating Trust and Liquidating Trustee. Until the Liquidating Trustee receives written notice that one of the conditions of the preceding sentence is met, the Liquidating Trustee may deem and treat the Beneficiary as the absolute owner under this Agreement of the beneficial interest in the Liquidating Trust the Beneficiary identified as the owner of that interest in the books and records maintained by the Liquidating Trustee. The Liquidating Trustee may deem and treat such Beneficiary as the absolute owner for purposes of receiving Distributions and any payments on account thereof for federal and state income tax purposes, and for all other purposes whatsoever.

(c)    In acting or refraining from acting under and in accordance with this section 7.7 of the Agreement, the Liquidating Trustee shall be fully protected and incur no liability to any purported claimant or any other Person to the extent set forth in Article IV of this Agreement.

**7.8    Identification of Beneficiaries.** The Liquidating Trustee may require any Beneficiary or such Beneficiary's assignees, transferees, heirs, representatives,

or legatees to furnish such additional information demonstrating a beneficial interest as the Liquidating Trustee requires, and the Liquidating Trustee may condition any Distribution to any Beneficiary upon receipt of such information. If a Beneficiary does not timely provide the Liquidating Trustee with such identifying information, then the Liquidating Trustee may object to the General Unsecured Claim of such Beneficiary in accordance with section 7.6 of this Agreement.

**7.9    Minimum Distributions.** If the amount of Cash to be distributed to the Holder of an Allowed Claim is less than $25 on a particular distribution date or otherwise so small that the cost of making the distribution exceeds the dollar amount of the distribution, the Liquidating Trustee may hold the Cash distributions to be made to such Holder until the aggregate amount of Cash to be distributed to such Holder is in an amount equal to or greater than $25 or such amount that exceeds the cost of making the Distribution. Notwithstanding the preceding sentence, if the aggregate amount of Cash distribution owed to any Holder of an Allowed Class 2 General Unsecured Claim never equals or exceeds $25 or such amount that exceeds the cost of making the Distribution, then the Liquidating Trustee shall not be required to distribute Cash to any such Holder, and such funds shall revert to the Liquidating Trust for distribution in accordance with the terms of the Plan and this Agreement.

**7.10    Rounding.** Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent, with one-half cent being rounded up to the nearest whole cent.

**7.11    Setoff and Recoupment.** Subject to and consistent with the terms of the Plan, the Liquidating Trustee may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, exercise the right of setoff or recoupment against any Allowed Class 2 General Unsecured Claim and the distributions to be made pursuant to the Plan on account of such Claim (before distribution is made on account of such Claim), the claims, rights, and causes of action of any nature that the Debtors' Estates may hold against the Holder of such Claim; *provided, however,* that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Liquidating Trustee or any other party in interest of any such claims, rights, and causes of action that the Liquidating Trust or the Debtors' Estates may possess against such Holder.

**7.11    Undeliverable Distributions.**    If any Allowed Class 2 General Unsecured Claim Holder's distribution is returned as undeliverable, no further distributions shall be made to such Holder unless and until the Liquidating Trustee is notified in writing of such Holder's then-current address. Undeliverable distributions shall remain in the possession of the Liquidating Trustee until such time as a distribution becomes undeliverable, as set forth below. Undeliverable Cash shall not be entitled to any interest, dividends or other accruals of any kind. Any check that is not cashed or otherwise deposited within three months after the check's date shall be deemed an undeliverable distribution.

Any Holder of an Allowed Class 2 General Unsecured Claim who does not assert a Claim in writing for an undeliverable distribution within one year after the date such distribution was due shall no longer have any Claim to or interest in such undeliverable distribution, and shall be forever barred from receiving any distributions under the Plan, or from asserting a Claim against the Liquidating Trust or its assets, and the Claim giving rise to the undeliverable distribution will be discharged.

Nothing contained in the Plan, the Confirmation Order, or this Agreement shall require the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim.

# ARTICLE 8
# TAXES

### 8.1    Income Tax Status.

(a)    It is intended that the Liquidating Trust be classified for federal income tax purposes as a "liquidating trust" pursuant to Treasury Regulations Section 301.7701- 4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124 and as a "grantor trust" subject to the provisions of Subtitle A, Chapter 1, Subchapter J, Part I, Subpart E of the Tax Code that is owned by its Beneficiaries. Accordingly, the parties hereto intend that the Beneficiaries of the Liquidating Trust be treated as if they had received a distribution of the applicable assets transferred to the Liquidating Trust and then contributed such assets to the Liquidating Trust. As such, notwithstanding anything set forth herein, the transfer of assets to the Liquidating Trust shall be treated for all purposes of the Tax Code as a transfer from the Estate to creditors to the extent the creditors are Beneficiaries of the Liquidating Trust followed by a deemed transfer by the Beneficiaries to the Liquidating Trust. The Beneficiaries will be treated as grantors and deemed owners of the Liquidating Trust.

(b)    All parties, including the Debtor, the Liquidating Trustee, and

all Beneficiaries of the Liquidating Trust, must value all assets transferred to the Liquidating Trust consistently, and those valuations must be used for all federal, state, and local income tax purposes. The Liquidating Trustee must file returns for the Liquidating Trust (if otherwise required by the Treasury Regulations) as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a). The assets shall be valued based upon the Liquidating Trustee's good faith determination of their fair market value.

(c)     Anything set forth herein to the contrary notwithstanding, the Liquidating Trust shall not receive or retain Cash or Cash equivalents in excess of a reasonable amount to meet claims and contingent liabilities or to maintain the value of Liquidating Trust Assets during liquidation. All income of the Liquidating Trust must be subject to tax on a current basis as otherwise applicable pursuant to the Treasury Regulations, including income retained in any reserves. The taxable income of the Liquidating Trust will be allocated to and among Beneficiaries who are grantors of the Liquidating Trust as required by virtue of their being grantors and deemed owners of the Liquidating Trust, and they shall each be responsible to report and pay taxes due on their appropriate share of Liquidating Trust income.

(d)     The Liquidating Trust shall be classified as a liquidating trust pursuant to Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124, and in the event of any inconsistency between any term or provision herein, in the Plan, or in the Confirmation Order necessary for the Liquidating Trust to be deemed at all times a liquidating trust pursuant to Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124 and any other term or provision herein, in the Plan, or in the Confirmation Order, the term(s) and provision(s) necessary for the Liquidating Trust to be deemed a liquidating trust pursuant to Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124 shall govern. Similarly, anything to the contrary set forth herein, in the Plan, or in the Confirmation Order notwithstanding, to the extent any term or provision herein, in the Plan, in the Confirmation Order would result in the Liquidating Trust not being classified as a liquidating trust at all times pursuant to Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124, such term or provision shall be ineffective and reformed to the extent necessary for the Liquidating Trust to be classified at all times as a liquidating trust pursuant to Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124.

(e)     As used in this Agreement, the following terms shall have the following meanings:

"Tax Code" shall mean the Internal Revenue Code of 1986, 26 U.S.C. § 1 et seq., as amended from time to time, and corresponding provisions of any subsequent federal revenue act. A reference to a section of the Tax Code shall include a reference to any and all Treasury Regulations interpreting, limiting or expanding such section of the Tax Code; and

"Treasury Regulations" shall mean regulations promulgated under the Tax Code, including, but not limited to the Procedure and Administration Regulations, as such regulations may be amended from time to time.

**8.2     Tax Returns.** The Liquidating Trustee shall prepare and provide to, or file with, the appropriate parties such notices, tax returns, information returns, and other filings as may be required by the Tax Code and may be required by applicable law of other jurisdictions. The Liquidating Trustee shall be responsible for filing all federal, state, and local tax returns and information returns of the Liquidating Trust. The Liquidating Trustee shall, when specifically requested by a Beneficiary in writing, make such tax information available to the Beneficiary for inspection and copying at the Beneficiary's expense, as is necessary for the preparation by such Beneficiary of its income tax return.

## ARTICLE 9

## TERMINATION OF TRUST

**9.1     Term**. The Liquidating Trust shall terminate upon the earlier of (a) the date on which all of the Liquidating Trust Assets are liquidated in accordance with the Plan, the funds in the Liquidating Trust have been completely distributed in accordance with the Plan, all tax returns and any other filings or reports have been filed with the appropriate state or federal regulatory authorities, and the Order closing the Chapter 11 Case is a Final Order or (b) five (5) years from the date of creation of the Liquidating Trust, unless extended by the Bankruptcy Court as provided herein. The Liquidating Trustee shall at all times endeavor to liquidate expeditiously the Liquidating Trust Assets (or any non-Cash proceeds thereof), and in no event shall the Liquidating Trustee unduly prolong the duration of the Liquidating Trust. The foregoing notwithstanding, in the event that the Liquidating Trustee determines that all of the Liquidating Trust Assets and/or proceeds thereof will not, despite reasonable efforts, be distributed by the date which is five (5) years from the date of creation of the Liquidating Trust, or for any other reason consistent with this Agreement and the Plan, and if warranted by the facts and circumstances, the Liquidating Trustee may petition the Bankruptcy Court to extend the term of the Liquidating Trust. Each and every such extension must be for a reasonable finite period based on the particular facts and circumstances, must be subject to the approval of the Bankruptcy Court and approved upon a finding that the extension

is necessary to the liquidating purpose of the Liquidating Trust and must be approved by the Bankruptcy Court within six (6) months of the beginning of the extended term. At such time as the Liquidating Trust has been fully administered (*i.e.*, when all things requiring action by the Liquidating Trustee have been done, and the Plan has been substantially consummated) and in all events within sixty (60) days after the final Distribution Date, the Liquidating Trustee will file a notice of the final distribution from the Liquidating Trust with the Court. Subject to the other provisions of this Agreement, upon final distribution pursuant to this Agreement, the Liquidating Trustee shall retain the books, records, and files that shall have been delivered to or created by the Liquidating Trustee, and at the Liquidating Trustee's discretion, all such records and documents may be destroyed at any time after two (2) years after the final Distribution Date.

**9.2     Event Upon Termination.** Upon the termination of the Liquidating Trust, the Liquidating Trustee shall distribute the remaining Liquidating Trust Assets (including any proceeds thereof), if any, consistent with the terms of the Plan, the Confirmation Order, or another order of the Bankruptcy Court.

**9.3     Winding Up and Discharge of the Liquidating Trustee.** For the purposes of winding up the affairs of the Liquidating Trust at its termination, the Liquidating Trustee shall continue to act as Liquidating Trustee until the Liquidating Trustee's duties have been fully discharged. After doing so, the Liquidating Trustee, and the Liquidating Trustee's agents, employees, and professionals shall have no further duties or obligations hereunder, except as required by this Agreement, the Plan, the Confirmation Order, or applicable law concerning the termination of a trust. Upon a motion by the Liquidating Trustee, the Bankruptcy Court may enter an order relieving and discharging the Liquidating Trustee, and the Liquidating Trustee's agents, employees, and professionals of any further duties.

# ARTICLE 10

## ADMINISTRATIVE EXPENSES

**10.1     Funding.** The costs and expenses of the Liquidating Trust, including, without limitation, the compensation to and the reimbursement of reasonable, actual, and necessary costs, fees (including attorneys' and other professional fees), and expenses of the Liquidating Trustee in connection with the performance of the Liquidating Trustee's duties in connection with the Plan and this Agreement, including the Post-Effective Date Expenses, shall be paid from the applicable reserves without the necessity for any approval by the Bankruptcy Court (the "Liquidating Trustee's Administrative Expense Fund"). The Liquidating Trustee's Administrative Expense Fund shall not be subject to charge for claims against the Liquidating Trust or the Liquidating Trust Assets (including any proceeds thereof),

including, without limitation, any claims under section 4.1 of this Agreement.

## ARTICLE 11

## THE LIQUIDATING TRUST OVERSIGHT COMMITTEE

**11.1   LTOC Members.**  On the Effective Date, the Committee shall be replaced by the LTOC that shall consist of not less than three (3) Persons or Entities that are Beneficiaries of the Liquidating Trust. The identities of the Persons and/or Entities that will serve on the LTOC as of the Effective Date are listed on Schedule 1 hereto. The LTOC's sole function and responsibility shall be to advise the Liquidating Trustee in the performance of the Liquidating Trustee's duties and obligations under the Plan for the benefit of the Holders of Allowed Class 2 General Unsecured Claims entitled to distribution from the Liquidating Trust.

**11.2   Consultation. Reimbursement.**   The Liquidating Trustee shall consult the Liquidating Oversight Committee as the Liquidating Trustee deems necessary or advisable or as reasonably requested by the Liquidating Trust Oversight Committee in carrying out the purpose and intent of the Liquidating Trust. Members of the Liquidating Trust Oversight Committee shall be entitled to reimbursement of the reasonable, necessary and actual out of pocket expenses incurred by them in carrying out the purpose of the Liquidating Trust Oversight Committee, which shall be payable by the Liquidating Trust from the Liquidating Trust Assets.

**11.3   Replacement of LTOC Member.**   Within reasonable ability, Liquidating Trust Oversight Committee members shall use good faith efforts to provide at least 3 business days written notification to the Liquidating Trustee and the other Liquidating Trust Oversight Committee members of any inability or unwillingness to continue to serve on the Liquidating Trust Oversight Committee. The remaining members of the Liquidating Trust Oversight Committee in consultation with the Liquidating Trustee shall use good faith efforts to replace the withdrawing Liquidating Trust Oversight Committee member.

**11.4   Discharge of LTOC Members.**   Upon the distribution of the Liquidating Trust Assets and the completion of the Liquidating Trustee's responsibilities, the members of the Liquidating Trust Oversight Committee shall be deemed to resign their positions, whereupon they shall be discharged from further duties and responsibilities.

**11.5   Limitation of Liability of LTOC Members.**   Notwithstanding anything to the contrary in this Plan, neither the Liquidating Trust Oversight Committee nor any of its members, designees, counsel, financial advisors or any duly designated agent or representatives of any such party shall be liable for the

act, default or misconduct of any other member of the Liquidating Trust Oversight Committee, nor shall any member be liable for anything other than such members' own gross negligence or willful misconduct, nor shall any Liquidating Trust Oversight Committee member owe any duties or obligations to any individual creditors. The Liquidating Trust Oversight Committee may, in connection with the performance of its duties, and in its sole and absolute discretion, consult with its or the Liquidating Trust or Liquidating Trustee's counsel, accountants or other professionals, and shall not be liable for anything done or omitted or suffered to be done in accordance with such advice or opinions. If the Liquidating Trust Oversight Committee determines not to consult with counsel, accountants or other professionals, such action or omission shall not be deemed to impose any liability on the Liquidating Trust Oversight Committee, or its members and/or designees.

## ARTICLE 12

## MISCELLANEOUS PROVISIONS

**12.1 Amendments.** The Liquidating Trustee may propose to the Bankruptcy Court the modification, supplementing, or amendment of this Agreement. Such proposed modification, supplementing, or amendment shall be in writing and filed with the Bankruptcy Court. No modification, supplementing, or amendment of this Agreement shall be effective except upon a Final Order of the Bankruptcy Court.

**12.2 Waiver.** No failure by the Liquidating Trustee to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

**12.3 Cumulative Rights and Remedies.** The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity.

**12.4 Irrevocability.** The Liquidating Trust is irrevocable.

**12.5 Division of Trust.** Under no circumstances shall the Liquidating Trustee have the right or power to divide the Liquidating Trust unless authorized to do so by the Bankruptcy Court.

**12.6 Governing Law.** This Agreement shall be governed and construed in accordance with the laws of the State of Michigan, without giving effect to rules governing the conflict of laws.

**12.7 Retention of Jurisdiction.** To the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the Liquidating Trust

after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits, and issues that may arise in connection therewith, or this Agreement, or any entity's obligations incurred in connection therewith or herewith, including, without limitation, any action against the Liquidating Trustee or any professional retained by the Liquidating Trustee or the Liquidating Trust, in each case in its capacity as such. Each party to this Agreement hereby irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court in any action to enforce, interpret, or construe any provision of this Agreement, or of any other agreement or document delivered in connection with this Agreement, and also hereby irrevocably waives any defense of improper venue, forum non conveniens, or lack of personal jurisdiction to any such action brought in the Bankruptcy Court. Each party further irrevocably agrees that (i) any action to enforce, interpret, or construe any provision of this Agreement will be brought only in the Bankruptcy Court and (ii) all determinations, decisions, rulings, and holdings of the Bankruptcy Court shall be final and non-appealable and not subject to reargument or reconsideration. Each party hereby irrevocably consents to the service as set forth in section 12.10 of this Agreement or such other address as such party may designate from time to time by notice given in the manner provided above, of any process in any action to enforce, interpret, or construe any provision of this Agreement.

**12.8   Severability.** In the event that any provision of this Agreement or the application thereof to any person or circumstance shall be determined by the Bankruptcy Court or another court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstances, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

**12.9   Limitation of Benefits.** Except as otherwise specifically provided in this Agreement, the Plan, or the Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Agreement.

**12.10 Notices.** All notices, requests, demands, consents, and other communication hereunder shall be in writing and shall be deemed to have been duly given, if delivered in person, by facsimile with an electromechanical report of delivery, sent by overnight courier or by registered or certified mail with postage prepaid, return receipt requested, or sent via electronic mail to the following addresses.

| If to the Debtor: | Dykema Gossett PLLC |
|---|---|
| | Sheryl L Toby |
| | 39577 Woodward Avenue, Suite 300 |
| | Bloomfield Hills, Michigan 48304 |
| | (248) 203-0700 |
| | SToby@dyekma.com |

| If to the Liquidating Trustee: | Capstone Partners |
|---|---|
| | Sheldon Stone |
| | 255 East Brown Street, Suite 120 |
| | Birmingham, MI 48009 |
| | (248) 633-2135 |
| | sstone@capstonepartners.com |

| If to the Committee: | Perkins Coie LLP |
|---|---|
| | Eric Walker |
| | 131 S. Dearborn Street, Suite 1700 |
| | Chicago, IL 60603 |
| | (312) 324-8400 |
| | EWalker@perkinscoie.com |

The parties may designate in writing from time to time other and additional places to which notices may be sent. All demands, requests, consents, notices, and communications shall be deemed to have been given (i) at the time of actual delivery thereof if by facsimile or electronic mail; (ii) if given by certified or registered mail, five (5) business days after being deposited in the United States mail, postage prepaid, and properly addressed; or (iii) if given by overnight courier, the next business day after being sent, charges prepaid, and properly addressed.

**12.11 Further Assurances.** From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Agreement, and to consummate the transactions contemplated hereby.

**12.12 Integration.** This Agreement, the Plan, and the Confirmation Order constitute the entire agreement, by and among the parties with respect to the subject matter hereof, and there are no representations, warranties, covenants, or obligations except as set forth herein, in the Plan, or in the Confirmation Order. This Agreement, together with the Plan and the Confirmation Order, supersedes all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto, relating to any transaction

27

contemplated hereunder.

**12.13 Successors or Assigns**. The terms of this Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

**12.14 Interpretation.** The enumeration and section headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof. Unless context otherwise requires, whenever used in this Agreement, the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations, and corporations. The words herein, hereby, and hereunder, and words with similar import, refer to this Agreement as a whole and not to any particular section or subsection hereof unless the context requires otherwise.

**12.15 Relationship to the Plan.** The principal purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order. In the event that any provision of this Agreement is found to be inconsistent with a provision of the Plan or the Confirmation Order, the provisions of the Plan or the Confirmation Order shall control.

**12.16 Counterparts.** This Agreement may be signed by the parties hereto in counterparts, each of which shall be deemed an original, and which, when taken together, shall constitute one and the same document. Delivery of any executed counterpart may be in "wet ink" form, via telecopy, or via electronic transmission attaching a copy in pdf format or the like.

IN WITNESS WHEREOF, the parties hereto have either executed this Agreement, or caused it to be executed on its behalf by its duly authorized officer, all as of the date first above written.

**DEBTOR:**

Henry Ford Village, Inc.

By:_____

Name:

Title:

**LIQUIDATING TRUSTEE:**

_____

[*]

**COMMITTEE CHAIRPERSON**

By: _____

Name:     RehabCare   Group   East,
LLC

By: Phil Martin _____

Its: Counsel _____

**Schedule 1**

**Members of the**
**Liquidating Trust Oversight Committee (the "LTOC")**

**[TO COME]**

# **EXHIBIT C**

Assumption Schedule

## Post Closing Assumed Contracts

| Vendor/Tenant | Description |
|---|---|
| Henry Ford Village Inc Utilities Account | Comerica Bank Account #8753 |
| HFV Lease Security Deposit Account | Comerica Bank Account #8738 |
| HFV Credit Card Collateral Account | Comerica Bank Account #6701 |
| HFV Benevolent Care, Scholarship and Quality of Life Donations | Comerica Bank Account #1135 |
| HFV Entrance Fee Escrow Account | Comerica Bank Account #9459 |
| HFV Operating 2 | Comerica Bank Account #0518 |
| HFV Payroll Account | Comerica Bank Account #1218 |
| HFV Pre-Occupancy Deposits | Comerica Bank Account #1010 |
| HFV Resident Clubs Account | Comerica Bank Account #1028 |
| HFV Operating 2 | Citizens Bank Account #3782 |
| Merrill Lynch | Charitable Annuities Account (CGA) (Acct. #2119) |
| Merrill Lynch | Endowed Scholarship Account (Acct. #2117) |
| American Deposit Management Co. | Escrow Agreement re: LARA Entrance Fees |
| LCS IT Extension Services Agreement | IT Services agreement |
| Kushant Shah | Independent Contractor Agreement |
| Rebecca Wallace | Independent Contractor Agreement |
| Faith Riddle | Independent Contractor Agreement |
| Eileen Hogg | Independent Contractor Agreement |
| Theresa Port | Independent Contractor Agreement |
| Chubb Insurance | Executive Package expiring 12/31/2021 |
| Lloyd's Syndicate | Cyber Liability expiring 6/30/2022 |
| General Liability & Professional Liability Policy #HC7BACAI6L001 | Extended Reporting Period or tail coverage option |
| Umbrella Policy #HC7SACAI6H001 | Extended Reporting Period or tail coverage option |
| Netsmart Technologies Inc | Information systems agreement. |

# **EXHIBIT D**

Rights of Action Schedule

## Schedule of Retained Rights of Action

The Debtor expressly reserves and transfers to the Liquidating Trust any and all Rights of Action, whether currently known or unknown and whether or not identified in the Disclosure Statement, the Plan, the Plan Supplement or this Retained Rights of Action Schedule. Through the Plan, the Debtor intends to preserve any and all Rights of Action in which the Debtor has an interest.

**No person or entity may rely on the absence of a specific reference to a Right of Action in the Disclosure Statement, the Plan, the Plan Supplement or this Retained Rights of Actin Schedule as any indication that the Debtor does not have a Right of Action against them or that the Liquidating Trustee will not pursue any and all available Rights of Action against them. Rights of Action not specifically identified in the Disclosure Statement, the Plan, the Plan Supplement or this Retained Rights of Action Schedule are nonetheless preserved and assigned to the Liquidating Trust.**

Pursuant to Article IV of the Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall have sole authority and responsibility for investigating, analyzing, commencing, prosecuting, litigating, compromising, collecting and otherwise administering all Liquidating Trust Assets, including all Rights of Action.

Without limiting the generality of the forgoing, the following is a non-exclusive list of actual or potential Rights of Action reserved by the Debtor and transferred to the Litigation Trust under the Plan and pursuant to Bankruptcy Code section 1123(b)(3)(B) and their estimated value (to the extent known):

I. <u>Rights of Action Under Chapter 5 of the Bankruptcy Code</u>. Debtor expressly reserves all Rights of Action for the recovery of preferential and fraudulent transfers from any entity that received cash or any other interest in property from the Debtor as identified in the Debtor's bankruptcy schedules and statement of financial affairs or as identified in the Debtor's books and records. The estimated value of these Rights of Action is $3.2 million, the estimated costs of litigation of these Rights of Action is $200,000, and the estimated net value of these Rights of Action is approximately $3 million.

II. <u>Rights of Action Against Life Care</u>. Debtor expressly reserves all Rights of Action against Life Care Companies LLC, Life Care Services LLC, and any of their respective affiliates, successors in interest, or assigns (together, "<u>Life Care</u>"), for breach of contract, negligence, conversion, overpayment, unjust enrichment, intentional or

constructive fraudulent conveyance, whether under federal law or the laws of any state, and preferential and fraudulent transfers under chapter 5 of the Bankruptcy Code. The estimated value of these claims is $1.15 million, the estimated costs of litigation of these claims is $150,000, and the estimated net value of these claims is approximately $1 million.

III. <u>Rights of Action Against Debtor's Directors, Officers and Management</u>. Debtor expressly reserves all Rights of Action against all of the Debtor's directors, officers, executive director, management personnel, employees or other insiders, including without limitation any derivative actions that may be brought on behalf of the Debtor, relating to breach of fiduciary duty, breach of duty of good faith and fair dealing, corporate waste, breach of contract, negligence, conversion, fraud, negligent misrepresentation, tortious interference with contract, statutory or common law conspiracy, aiding and abetting any act or omission of any Person, intentional or constructive fraudulent conveyance, whether under federal law or the laws of any state, and preferential and fraudulent transfers under chapter 5 of the Bankruptcy Code *provided, however,* nothing shall affect any exculpation provided in the Plan. The estimated value of these Rights of Action is $5 million, the estimated costs of litigation of these Rights of Action is $500,000, and the estimated net value of these Rights of Action is $4 million.

IV. <u>Rights of Action for Professional Malpractice</u>. Debtor expressly reserves all Rights of Action arising out of professional services provided to the Debtor related to its business practices against any and all accountants, auditors, financial advisors, management consultants, attorneys, and other professionals who provided services to the Debtor, *provided, however*, nothing shall affect any exculpation provided in the Plan. The estimated value, the estimated costs of litigation, and the estimated net value of these Rights of Action is subject to investigation by the Liquidating Trustee and has not yet been determined.

V. <u>Rights of Action Related to Insurance Policies</u>. Debtor expressly reserves all Rights of Action based in whole or in part upon any and all insurance contracts and insurance policies to which the Debtor is a party or pursuant to which the Debtor has any rights whatsoever, regardless of whether such contract or policy is specifically identified in the Plan or any amendments thereto, including, without

120951.000002 4814-0169-7022.3

limitation, Rights of Action against insurance carriers, reinsurance carriers, insurance brokers, underwriters, occurrence carriers, or surety bond issuers relating to coverage, indemnity, contribution, reimbursement, or any other matters. The estimated value, the estimated costs of litigation, and the estimated net value of these Rights of Action is subject to investigation by the Liquidating Trustee and has not yet been determined.

This Retained Rights of Action Schedule and the estimated values, costs and net recoveries of such Rights of Action was prepared exclusively by the Committee, based on limited information currently available to it, to comply with the Court's Requirements for Information to Include in the Combined Plan and Disclosure Statement. In some instances, the Committee includes potential Rights of Action that require additional investigation by the Liquidating Trustee to provide an estimated value, cost of litigation or net recovery. These estimated values, including estimated costs of litigation and net recoveries, may change as the result of, among other things, further investigation by the Liquidating Trustee and whether Rights of Action are pursued by attorneys and other professionals under alternative fee arrangements, including but not limited to contingency fee agreements, that may be more economical for the Liquidating Trust. Each of the actual and potential Rights of Action listed on this Retained Rights of Action Schedule—and all other actual and potential Rights of Action not listed here—are expressly reserved by the Debtor and assigned to the Liquidating Trust for further investigation and analysis and, if appropriate, prosecution, collection, compromise or settlement by the Liquidating Trustee.

120951.000002 4814-0169-7022.3